EXHIBIT 1

STATE OF NEW MEXICO

COUNTY OF BERNALILLO

SECOND JUDICIAL DISTRICT

**FILED**
**2ND JUDICIAL DISTRICT COURT**
**Bernalillo County**
**2/2/2021 4:56 PM**
**CLERK OF THE COURT**
**Blair Sandoval**

Case No**.**  D-202-CV-2021-00769

ALBUQUERQUE AMBULATORY EYE
SURGERY CENTER LLC,

      Plaintiff,

v.

TRANSPORTATION INSURANCE COMPANY,
an Illinois Insurance Company,

      Defendant.

## COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, STATUTORY VIOLATIONS, AND DECLARATORY JUDGMENT

Plaintiff Albuquerque Ambulatory Eye Surgery Center LLC ("AAESC"), by and through its counsel, complains and moves for judgment against Defendant Transportation Insurance Company (hereafter "CNA"), and respectfully alleges as follows:

### NATURE OF THE ACTION

1.      The novel coronavirus SARS-CoV-2 ("Coronavirus") pandemic has had a devastating impact on the United States, killing hundreds of thousands, shutting down the country, and crippling businesses big and small nationwide.  New Mexico's residents and businesses endured and continue to endure significant harm during the pandemic.  This action is brought by Plaintiff Albuquerque Ambulatory Eye Surgery Center LLC, an eye surgery center in Albuquerque, New Mexico, against its insurer, Defendant CNA.  Specifically, AAESC seeks coverage from CNA for AAESC's loss of its insured premises, lost business income, extra expenses and other business-related losses in light of the Coronavirus and the governmental authorities' closure and limitation of its covered business premises.

2.      Additionally, AAESC seeks a declaratory judgment that CNA breached its coverage obligations under the policy.  AAESC also seeks damages for CNA's bad faith conduct in violation of the New Mexico Insurance Practices Act and the New Mexico Unfair Practices Act.

3.      On March 16, 2020, AAESC was forced to close its center and cease its normal operations.  Few patients entered Plaintiff's facilities, and then only if their condition was diagnosed as urgent and emergent.  State and local governments have required Plaintiff and its employees, customers, and others to "shelter in place" and abide by strict "social distancing" guidelines.  The mandated closures resulted in the immediate loss of income for AAESC, forcing it to lay off 23 employees, almost half its staff.  The employees who kept their jobs reduced hours worked to a maximum of 30 hours to help offset the losses.

4.      To protect against these sorts of unanticipated losses, AAESC purchased from CNA a policy that provided business interruption insurance for all risks that were not expressly excluded.  Importantly, the purchased policy does not exclude losses caused by viruses.  Put differently, AAESC ensured it would be covered in the event of a virus affecting its business.  This is critical for companies like AAESC in the medical and health industry.

5.      The CNA policy also provided express coverage for losses arising from civil authority government orders like those issued in New Mexico (the "Government Orders").  Plaintiff therefore reasonably believed and expected that its CNA policy would cover the extensive losses it sustained due to the Coronavirus pandemic and the ensuing Government Orders.

6.      But CNA has not upheld its promise to provide coverage.  Instead, CNA summarily denied coverage – with little to no analysis or review of AAESC's claim – ignoring that the policy does not contain a virus exclusion.

7.      AAESC paid premiums for CNA's "all risks" policy that covers the Coronavirus risk and related Government Orders (and all other risks except those expressly excluded).  AAESC did not get what it paid for.  CNA refuses to honor its coverage promise.  CNA's interpretation of the policy is

2

unreasonable, wrong and self-serving; it constitutes a breach of the contract. Accordingly, Plaintiff seeks compensatory damages, attorneys' fees and costs, interest, and declaratory relief.

## PARTIES

8.   Albuquerque Ambulatory Eye Surgery Center LLC is a New Mexico company doing business in Albuquerque, New Mexico.

9.   Upon information and belief, Defendant Transportation Insurance Company is duly licensed as an insurance company and authorized to conduct business in the State of New Mexico.

## JURISDICTION & VENUE

10.   AAESC brings this action against CNA for first-party coverage for losses stemming from the Coronavirus pandemic and Government Orders. The Government Orders include but are not limited to the March 23, 2020 Executive Order by the Governor of the State of New Mexico and the March 24, 2020, New Mexico Department of Public Health Order. These Government Orders, and others, closed all non-essential businesses, severely restricted AAESC's operations to only emergency medical procedures – a significant reduction from its normal practice – and ordered New Mexico residents to "shelter in place."

11.   AAESC's losses occurred and continue to occur in Albuquerque.

12.   Because the insured risk and premises are located in New Mexico, and the policy was issued in New Mexico, New Mexico law applies.

13.   Further, the New Mexico Superintendent of Insurance is the statutory registered agent for CNA.

14.   NMSA 1978, § 59A-16-20 prohibits certain unfair insurance claims practices which occur in New Mexico. Likewise, NMSA 1978, §§ 57-12-1, *et seq*. prohibits certain unfair trade practices which occur in New Mexico.

15.   This Court has jurisdiction over this matter and venue is proper in Albuquerque pursuant to NMSA 1978, § 38-3-1.

## FACTUAL BACKGROUND

### I.   AAESC SERVES NEW MEXICO

16.     AAESC was created in 2002 for the purpose of providing a facility for the delivery of quality surgical care to the people of New Mexico.

17.     As a joint venture, out-patient ophthalmology surgical center, AAESC has 25 ophthalmologists and anesthesiologists with privileges and, prior to the Coronavirus pandemic, employed over 50 healthcare professionals such as nurses, nursing assistants, operating room technicians, certified registered nurse anesthetists, and clerical staff to work in the facility, Mondays through Fridays.

18.     AAESC serves as a resource for its credentialed ophthalmologists throughout New Mexico who have patients in need of their specialized services and expertise.  AAESC is also used by Presbyterian Health Systems as a center for surgical cases for senior citizens in New Mexico.

19.     Prior to the Coronavirus pandemic, AAESC performed, on average, over 1,100 surgical procedures per month.  Approximately 66% of the patients AAESC treats are classified as senior patients, many with underlying health conditions which put them at greater risk.

### II.   THE POLICY

20.     AAESC recognized that its business needed to be properly protected, so it contracted with CNA for an all-risk commercial property policy, policy no. 2067314575 (the "Policy"), effective June 1, 2019 to June 1, 2020.  Exhibit 1.

21.     AAESC paid premiums, dutifully making all required payments.

#### A.  Direct "Loss" Coverage

22.     The Policy CNA sold AAESC – like most property policies sold in the United States – is an "all-risk" property damage policy.  These types of policies, in contrast to specific peril policies,[1] cover

---

[1] Specific peril policies cover a risk of loss if that risk is expressly identified as a covered risk (e.g., hurricane, earthquake, H1N1).

all risks of loss except for risks that are expressly and specifically excluded.  In short, that which is not excluded, is covered.

23.     In line with this, Defendant CNA committed to "pay for direct physical loss of or damage to Covered Property at the premises [] caused by or resulting from any Covered Cause of Loss."  Under the Policy, "Covered Causes of Loss" are "risks of direct physical loss unless the loss is [] excluded or limited."  "Loss" is not defined by the Policy.

24.     The Policy also fails to define "physical loss" or "damage."  Consistent with New Mexico contract law, absent a definition in the Policy, words must be accorded their ordinary meaning.  Phrases like "physical loss" must be given a separate meaning from "damage" so that the Policy language can be read without rendering any words meaningless or surplusage.

25.     Under the Policy, CNA agrees to pay $1,766,530 for loss and business interruption losses.

26.     The Policy does not have any applicable exclusions.  More specifically, the Policy does not include a virus exclusion.  Nor does the Policy exclude governmental shutdown orders relating to viruses or public health emergencies.

27.     Accordingly, loss due to the Coronavirus is a "Covered Cause of Loss" under the Policy because it is not excluded or limited.

28.     The Policy also provides certain express coverages, including coverage for Business Income Loss and Extra Expenses, Civil Authority orders, and Business Income Loss from Dependent Property.

**B.  Business Income and Extra Expense Coverage**

29.     Business interruption and extra expense insurance is critical for businesses like AAESC when faced with unanticipated losses.

30.     Under the Business Income coverage that CNA sold AAESC, CNA agrees to "pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'"

31.     Under the Extra Expense coverage, CNA agrees to pay the "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss of or damage to property. . . ."  CNA further promises to pay expenses to "avoid or minimize the 'suspension' of business and to continue 'operations' at the premises . . . or minimize the 'suspension' of business if you cannot continue 'operations.'"

32.     Under the Policy, "Suspension" means a "partial or complete cessation of your business activities; or that a part or all of the described premises is rendered untenantable."

33.     "Operations" is defined in relevant part as "your business activities occurring at the described premises and tenantability of the described premises."

34.     "Period of restoration" means: "the period of time that: (a) Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and (b) Ends on the earlier of: (1) the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) the date when business is resumed at a new permanent location."

### C.  Civil Authority Coverage

35.     The Policy provides an independent basis for coverage for Business Income and Extra Expense when civil authorities take certain actions.  The Civil Authority coverage provides in relevant part:

> The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss.

36.     There are no relevant exclusions to this coverage.  The Policy expressly excludes coverage only for governmental action related to the seizure or destruction of property.  That is not at issue in this action.

37.     By excluding certain specific government actions, CNA acknowledges that *other* government actions are covered perils within the meaning of the Policy.

6

**D.  Dependent Property Business Income Coverage**

38.     AAESC relies on its credentialed physicians with privileges to schedule patients directly to its facility.

39.     Accordingly, the Policy includes an endorsement for additional coverage for Business Income and Extra Expense – Dependent Property loss.

40.     Under the Policy, CNA agrees to pay for "the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur due to the 'suspension' of your 'operations' during the 'period of restoration.'  The 'suspension' must be caused by direct physical loss or damage at the premises of a Dependent Property, caused by or resulting from any Covered Cause of Loss."

41.     "Dependent Property" means "property operated by other whom you depend on to . . . (d) attract customers to your business."

**III.    THE CORONAVIRUS PANDEMIC**

42.     The Coronavirus is linked to a deadly, infectious disease known as COVID-19.

43.     According to the United Nations: "People can catch COVID-19 from others who have the virus.  The disease can spread from person to person through small droplets from the nose or mouth which are spread when a person with COVID-19 coughs or exhales.  These droplets land on objects and surfaces around the person.  Other people then catch COVID-19 by touching these objects or surfaces, then touching their eyes, nose or mouth."[2]

44.     Researchers estimate the number of people that an individual infected with COVID-19 will go on to infect is between 3.3 and 6.5.[3]

---

[2] *See* COVID-19 Response General FAQs, "How does COVID-19 spread?," United Nations, *available at* https://www.un.org/en/coronavirus/covid-19-faqs (last visited Nov. 4, 2020).

[3] *See* Ying Liu et al., The reproductive number of Covid-19 is higher compared to SARS coronavirus, Journal of Travel Medicine (Feb. 13, 2020), *available at* https://academic.oup.com/jtm/article/27/2/taaa021/5735319 (last visited Nov. 4, 2020).

45.     For these reasons, "[p]ublic health experts and elected officials have emphasized again and again that social distancing is the best tool . . . to slow the coronavirus outbreak."[4]

46.     Although COVID-19 droplets are smaller and less visible than rust, mold, or paint, they are physical in form and can travel to other objects and cause harm.

47.     These droplets can spread COVID-19 when they land on habitable surfaces where they can pass to a potential human host.[5]

48.     Droplets containing COVID-19 infect a variety of surfaces and objects for a period of hours, days, or weeks, if not longer.  For instance, research has shown that COVID-19 can persist on surfaces for up to 28 days.[6]

49.     In another example, after inspecting a cruise ship inhabited by passengers who carried COVID-19, the CDC reported that the virus was detectable on surfaces inside the ship up to 17 days after passengers had vacated the cabins.[7]

50.     Further, recent scientific evidence shows that COVID-19 can survive and remain virulent on stainless steel and plastic for three to six days; on glass and banknotes for three days; and on wood and cloth for 24 hours.[8]  These materials are prevalent and unavoidable throughout AAESC's facilities.

---

[4] *See* Yuliya Pashina-Kottas, et al., "This 3-D Simulation Shows Why Social Distancing Is So Important," The New York Times (Apr. 21, 2020), *available at* https://www.nytimes.com/interactive/2020/04/14/science/coronavirus-transmission-cough-6-feet-ar-ul.html (last visited Nov. 4, 2020).

[5] *See, e.g.*, "How COVID-19 Spreads," Centers for Disease Control, *available at* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited Nov. 4, 2020).

[6] Gunter Kampf et al., Persistence of coronaviruses on inanimate surfaces and their inactivation with biocidal agents, 104 J. of Hospital Infection 246 (2020), *available at* https://www.journalofhospitalinfection.com/article/S0195-6701(20)30046-3/fulltext (last visited Nov. 4, 2020).

[7] *See* Leah E. Moriarty, et al., "Public Health Responses to COVID-19 Outbreaks on Cruise Ships – Worldwide, February-March 2020," 69 Morbidity and Mortality Weekly Report 347 (Mar. 23, 2020), *available at* https://www.cdc.gov/mmwr/volumes/69/wr/pdfs/mm6912e3-H.pdf (last visited Nov. 4, 2020).

[8] *See* Neeltje van Doremalen et al., "Aerosol and Surface Stability of SARS-CoV-2 as Compared to SARS-CoV1," New England Journal of Medicine (Mar. 17, 2020), *available at* https://www.nejm.org/doi/pdf/10.1056/NEJMc2004973 (last visited May 5, 2020); Alex W.H. Chin et

51.     In addition to attaching to and infecting surfaces, recent scientific communities report that the Coronavirus can be airborne, lingering and spreading in the air, particularly in enclosed places like medical offices.[9]

52.     The first public reports of the Coronavirus infecting humans was issued in December 2019, resulting from an outbreak in Wuhan, China.

53.     On January 21, 2020, the CDC reported the first American COVID-19 case in the State of Washington.

54.     After the virus continued to spread across the country, the United States government declared the Coronavirus outbreak a national emergency beginning on March 1, 2020.  Exhibit 2.

## IV.     THE CORONAVIRUS SPREADS TO NEW MEXICO

55.     The first confirmed cases of COVID-19 in New Mexico were reported on March 11, 2020.

56.     That same day, on March 11, 2020, because of the Coronavirus's increasing spread, Michelle Lujan Grisham, the Governor of the State of New Mexico, declared that a Public Health Emergency exists in New Mexico under the Public Health Emergency Response Act, and invoked her authority under the All Hazards Emergency Management Act ("Executive Order 2020-04").  Exhibit 3.

57.     The purpose of Executive Order 2020-04 was to minimize the spread of COVID-19 and "the attendant physical and economic harms."

58.     On March 12, 2020, Kathyleen Kunkel, the Secretary of State of New Mexico's Department of Health, issued the first of multiple public health orders restricting conduct.

---

al., "Stabilizing of SARS-CoV-2 in different environmental conditions," The Lancet Microbe (Apr. 2, 2020), *available at* https://doi.org/10.1016/S2666-5247(20)30003-3 (last visited Nov. 4, 2020).

[9] *See* "Scientific Brief: SARS-CoV-2 & Potential Airborne Transmission," Center for Disease Control and Prevention, *available at* https://www.cdc.gov/coronavirus/2019-ncov/more/scientific-brief-sars-cov-2.html (last visited Nov. 4, 2020).

59.     On March 16, 2020, New Mexico's Department of Health issued a second public health

order limiting gatherings of more than 100 people.[10]  *See* Exhibit 4.  The order observed that "the further

spread of COVID-19 in the State of New Mexico *poses a threat to the health, safety, wellbeing, and*

*property of the residents in the State*, due to, among other things, illness from COVID-19 . . . and

potential closures of schools or other places of public gathering[.]"  (Emphasis added).

60.     The Department of Health further recognized that the Coronavirus "poses an imminent

threat of substantial harm to the population of New Mexico." Citizens were "**strongly advised to stay**

**at home and undertake only those outings absolutely necessary for their health, safety, or welfare.**"

(Emphasis in original).

61.     On March 18, 2020, the American Academy of Ophthalmology, which provides the

industry standard for proper ophthalmology procedure and due care, also weighed in on the Coronavirus

pandemic, deeming it essential that "all ophthalmologists cease providing any treatment other than

urgent or emergent care immediately."[11]

62.     On March 19, 2020, New Mexico's Department of Health issued another Public Health

Order, requiring that "typical business environments that are not engaged in the provision of an essential

service should limit operations to the greatest extent possible and minimize employee contact."

63.     Then, on March 23, 2020, New Mexico's Department of Health issued a Public Health

Order, directing that "all businesses, except those identified as 'essential businesses', are hereby directed

to reduce the in-person workforce at each business or business location by 100%.  'Essential businesses'

---

[10] The New Mexico Department of Health possesses the legal authority pursuant to the Public Health Act, NMSA 1978, §§ 24-1 to -40, the Public Health Emergency Response Act, NMSA 1978, §§ 12-10A-1 to -10, the Department of Health Act, NMSA 1978, §§ 9-7-1 to -18, and inherent constitutional police powers of the New Mexico state government, to preserve and promote public health and safety, to adopt isolation and quarantine, and to close public places and forbid gatherings of people when deemed necessary by the Department for the protection of public health.

[11] *See* "Recommendations for Urgent and Nonurgent Patient Care," American Academy of Ophthalmology (Mar. 18, 2020) *available at* https://www.aao.org/headline/new-recommendations-urgent-nonurgent-patient-care (last visited Nov. 4, 2020).

may remain open provided they minimize their operations and staff to the greatest extent possible, adhere to social distancing protocol and maintain at least six-foot social distancing from other individuals, avoid person-to-person contact, and direct employees to wash their hands frequently.  Further, all essential businesses shall ensure that all surfaces are cleaned routinely." *See* Exhibit 5.

64.     Under the order, gatherings of five or more individuals in a single room or connected space where individuals are within six feet of each other was prohibited.

65.     The next day, on March 24, 2020, the Department of Health issued an order "imposing temporary restrictions on non-essential health care services, procedures, and surgeries; providing guidance on those restrictions, and requiring a report from certain health care providers."  This order prohibited all facilities like AAESC's from providing non-essential health care services, procedures, and surgeries.  *See* Exhibit 6.

66.     The March 23, 2020 order defined "non-essential" services as: "health care services, procedures, and surgeries' include those which can be delayed for three (3) months without undue risk to the patient's health."  The order included an example of "threat of permanent dysfunction of the . . . eyes" as what would be deemed essential.  Thus, although AAESC was permitted to provide emergency medical care or surgery, this newest Public Health Order effectively prevented AAESC from using its space for the vast majority of its services for at least three months.

67.     On April 6, 2020, the Department of Health issued another Public Health Order declaring that: "**The bottom line is that all New Mexicans should be staying in their homes for all but the most essential activities and services.**"  (Emphasis in original).  This directive, like the others before it, prohibited the majority of AAESC's clientele and staff from entering AAESC's facilities.

68.     The order also emphasized that "Social distancing is the sole way New Mexicans can minimize the spread of COVID-19 and currently constitutes the most effective means of mitigating the potentially devastating impact of this pandemic in New Mexico."

69.     These orders successively forced AAESC to use less of its premises and greatly minimize its operations and staffing, which it did.  The Government Orders also required AAESC to incur extra expenses for additional cleaning and protective measures for staff and patients.

70.     The New Mexico government renewed and expanded on several of its orders over the next several months.  Most recently, on October 16, 2020, the directives in Executive Order 2020-004 declaring the statewide public health emergency in New Mexico were extended through November 13, 2020.

71.     Local and municipal governments across New Mexico also entered orders mandating that residents shelter in place and that businesses limit or cease operations as certain areas were particularly hard hit.  At times, these local orders mandated more stringent restrictions on the movement of people and the use or access to goods, services, and facilities, which directly impacted AAESC's business.

72.     The situation in New Mexico continues to worsen.  Even after Executive Order 2020-004 and the other Government Orders were issued, COVID-19 infections spread rapidly across New Mexico.

73.     AAESC took seriously the physical danger presented by the Coronavirus and respected all Government Orders.  On March 16, 2020, AAESC closed its facilities except to provide limited urgent and emergency services.  AAESC did not reopen until April 17, 2020, but then only under strict social distancing guidelines and at volumes much less than before the Coronavirus pandemic.

74.     As explained, AAESC's closures were ordered by state and local governments who required Plaintiff and their employees, customers, and others to shelter at home, abide by strict "social distancing" requirements, cease all non-essential activities and adhere to strict affirmative operational standards (like routine disinfecting cleanings of business premises).

75.     These Government Orders resulted in losing physical use of, physical access to, and physical enjoyment of Plaintiff's property by its owners, patients, employees, and others.  The Coronavirus and Government Orders also resulted in significant interruption to AAESC's business including the suspension of all non-emergency services and a steep reduction of patient services.

76.     For instance, in March 2020, after the Government Orders first took effect, appointments were down substantially.  By April and May 2020, appointments were down 96% and 60%, respectively. The closures and limitations on business – and immediate losses in revenue – also forced Plaintiff to limit staff onsite (to maintain social distancing and gathering requirements).

77.     AAESC's insured premises remain limited to essential activities and minimum necessary operations, with reduced capacity.

78.     Even with operations limited to only essential services with reduced staffing, there is still great risk to AAESC, as it has treated patients with COVID-19, known or unknown, at its insured premises.

79.     Since the Coronavirus was announced as a public health emergency, AAESC has had three employees who have tested positive for COVID-19, with additional employee absences at one time or another of all of the employees for symptoms or possible exposure to the virus at the facility. Additionally, AAESC has been informed by six patients that they had visited AAESC's facilities and subsequently tested positive for COVID-19.

80.     In addition to the lost business income from closing most of its locations, and the dangerous conditions presented from providing limited emergency services, AAESC incurred additional expenses relating to the health and safety of its staff, physicians and patients' potential for COVID-19 exposure at its facilities.  This includes costs for additional cleaning and protective measures (e.g., cleaning supplies, hand sanitizer, additional PPE, thermometers), and building protective, mitigating measures at AAESC's facility (e.g., screens and shields).

81.     To date, AAESC estimates it has spent over $50,000 on extra expenses.

82.     The period of restoration when this interruption and AAESC's losses will end is still unknown.  Medical experts have opined that the Coronavirus pandemic and official closures may extend into 2021.

83.     The Coronavirus harmed and continues to harm AAESC, causing physical loss and loss of intended use and physical damage to the premises, including its air.  Medical experts agree that the Coronavirus attaches and remains on building surfaces.  The spread of the virus, both airborne and on physical surfaces, and the Government Orders caused the closure and drastic reduction of AAESC's business.

84.     Moreover, the same conditions resulted in the closure and restriction of access to other businesses immediately surrounding Plaintiff's business, including many "feeder" businesses, i.e., businesses and medical practices that depend on the AAESC.  That is, the same dangerous conditions created by the Coronavirus and Government Orders that restricted use, access, and services at AAESC's insured premises, also affected the hospitals, doctors' offices, clinics, and others who would have referred patients to AAESC in normal times.

85.     Worse, the Coronavirus is by no means under control in New Mexico.  As of January 21, 2021, the Albuquerque Journal shows New Mexico has over 166,823 confirmed COVID-19 cases and over 3,044 deaths.

86.     Fortunately, AAESC had the foresight to protect its business from perils and business interruption through insurance from CNA.

## V.   CNA FAILED TO FAIRLY INVESTIGATE THE CLAIM

87.     AAESC's business was directly affected by the Coronavirus and Government Orders. The presence of the Coronavirus caused "direct physical loss of or damage to" its "covered property" by denying use of and damaging the Covered Property and by causing a necessary suspension of operations.

88.     The Coronavirus also presented an imminent risk and dangerous conditions at the Covered Property, where at least one person had COVID-19.

89.     The Government Orders prohibited full use of AAESC's property and the area immediately surrounding the Covered Property, in response to direct loss and the dangerous physical conditions resulting from the Coronavirus.

14

90.     Several dependent properties that served as referral sources to AAESC also were shut down, affecting AAESC's business.

91.     Accordingly, as a result of the presence of Coronavirus and the Government Orders, AAESC lost Business Income and incurred Extra Expense.

92.     On May 8, 2020, AAESC notified CNA of its claim under the Policy, seeking coverage for its growing loss.

93.     That same day, CNA issued a letter to AAESC introducing its claims handler and informing AAESC that it "can expect next: investigation and fact gathering." CNA assured AAESC that its claims handler would "work with you to gather necessary information regarding the incident and request applicable documentation pertinent to your damaged property." CNA also noted that as part of its investigation, AAESC "may receive communications requesting additional information or a follow up call. I may also take a recorded statement about your loss."

94.     CNA, however, failed to do any of this. CNA did not follow up with its insured, request an interview, or visit the covered location. CNA also failed to review ample publicly available and easily accessible information regarding AAESC's claim.

95.     Instead, before AAESC even submitted its documentation in response to CNA's May 8 inquiries, on May 22, 2020, without reviewing any facts around the claim or seeking additional information, CNA denied coverage.

96.     Still, AAESC knew it was entitled to coverage. Accordingly, on July 10, 2020, AAESC responded, explaining that the Coronavirus resulted in physical loss, lost business income, and significant expenses. In support of its claim, AAESC gave estimates of its losses and provided additional copies of the controlling Executive Orders and Public Health Orders.

97.     Instead of considering the additional information, however, CNA forced AAESC to chase a series of claims handlers for a response. Each time AAESC thought its claim was being reconsidered, it learned that CNA had once again changed claims handlers who were reviewing the claim.

15

98.     On October 7, 2020, after passing AAESC from claims handler to claims handler, yet failing to consider any of the policy language, facts, or case law identified by AAESC, CNA confirmed its denial of coverage.

99.     Even now, CNA fails to revise its coverage denial in light of multiple court rulings finding there *is* coverage for Coronavirus and Government Order business interruption claims under similar policy language.  *See Cherokee Nation, et al. v. Lexington Ins. Co.*, No. CV-2020-150 (Cherokee Cnty. Okla. Jan. 14, 2021), *see* Exhibit 7; *see North State Deli, LLC, et al. v. The Cincinnati Ins. Co., et al.*, No. 20-CVS-02569 (N.C. Oct. 7, 2020), *see* Exhibit 8; *see also Studio 417, Inc., et al. v. The Cincinnati Ins. Co.*, No. 20cv-03127-SRB (W.D. Mo. Aug. 12, 2020), *see* Exhibit 9.

100.    In short, despite dragging out the process for months, CNA did not investigate the claim or properly consider coverage.

## VI.   CNA IMPROPERLY DENIED COVERAGE

101.    CNA's May 22 and October 7 denial letters ignored several key issues.  As a preliminary matter, CNA ignores that CNA issued an "all risk" policy.  That is, the Policy covers AAESC for any peril, imaginable or unimaginable, unless expressly excluded or limited.  Neither the Coronavirus nor the Government Orders are excluded perils, and thus are covered.

102.    Yet, CNA improperly denied coverage by claiming (1) that there was no physical damage or loss to the property; and if there was, (2) the pollution exclusion or the loss of use exclusion would preclude coverage.  CNA is wrong on all fronts.

### A.   CNA's Denial Conflates Physical Damage and Physical Loss Coverage

103.    The Policy covers "physical loss or damage."  CNA provides no explanation for why AAESC's physical loss of its space by Coronavirus and Government Order is not a "loss" under the Policy.

104.    CNA ignores that the terms "physical loss" and "damage" are undefined in the Policy. Undefined phrases must be construed reasonably and within their ordinary meanings.

105.     Here, the Coronavirus and the Government Orders did cause a physical loss of space and the ability to use the insured premises for their intended use and capacity.  Losing the ability to access, occupy or use one's property is a direct loss of physical, material rights and advantages, substantial and important.  Such losses are direct in that ouster of and limitation, prohibition, and/or interdiction of access and use by all nonessential people resulted directly in a physical loss.

106.     This physical loss caused the suspension of AAESC's business operations and rendered its premises untenantable in whole or in part.

107.     Although AAESC presented this clear claim for "physical loss" – and the Policy provides coverage for such "physical loss" – CNA denied coverage on the basis that the Coronavirus does not result in a "direct physical loss" of AAESC's property.

108.     In so doing, CNA failed to distinguish between *damage* and physical *loss*.  But the phrases are different and should be treated as having independent meanings.  Under basic contract interpretation principles, policies are to be interpreted so that all words have meaning and nothing is rendered surplusage.

109.     In addition, or in the alternative, CNA also ignores that the presence of virus or disease can constitute physical damage to property – even if not permanent or resulting in a visible deformation.  The Coronavirus affixes to surfaces creating dangerous physical conditions.  It also can be airborne, thus damaging the insured premises with the physical presence of the Coronavirus.  That the surfaces can be repaired by sanitization processes does not disprove that until sanitized, the surfaces are damaged.

110.     CNA's conclusory May 22 and October 7 denials do not supersede the Policy's undefined terms.

111.     Accordingly, AAESC has properly noticed a claim for direct loss under the Policy, and CNA has no basis for denying coverage.

### B.  The Policy Has No Applicable Exclusions

112.     The Policy does not contain a virus exclusion.

113.     CNA could have added such an express exclusion to AAESC's Policy – which was widely available to the insurance industry when the Policy was issued – but chose not to do so.

114.     CNA – as sole drafter of the Policy – relied on materials generated by the Insurance Services Office ("ISO") in drafting the Policy.  The ISO provides standard policy language for use in insurance contracts.

115.     The ISO and insurers like CNA became aware of the possibility of virus-related losses during multiple prior health-related crises across the world, including: the 2002 SARS epidemic; 2009 H1N1 swine flu epidemic; 2012 MERS epidemic; 2014 Ebola epidemic; and the 2016 Zika epidemic, among others.

116.     In 2006, after the SARS epidemic, the ISO drafted a new endorsement, CP 01 40 07 06, entitled "Exclusion of Loss Due to Virus or Bacteria," acknowledging that claims for business interruption losses could be filed under existing policy language for losses resulting from pandemics or the presence of disease-causing agents.

117.     This new endorsement form was available to the entire insurance market, including CNA. Other insurers incorporated the exclusion into their policies so that they would not "pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

118.     Despite the widespread recognition of virus-related perils, CNA did not incorporate this exclusion into the Policy it sold AAESC.  Had CNA wanted to exclude coverage for virus-induced pandemics, it could have done so using this form.

119.     CNA had ample notice and ability to directly exclude virus-induced Business Interruption coverage since 2006, but failed to do so in AAESC's Policy.

120.     Now, after selling AAESC a policy without a virus exclusion – CNA belatedly tries to rewrite its Policy to preclude coverage.  In its May 22 denial letter, CNA invoked the pollution exclusion in lieu of a virus exclusion.

121.    The pollution exclusion is not a virus exclusion.  There is no language in the Policy that supports interpreting it as broadly as CNA now tries to do.  At no point is "virus" or "disease" listed as excluded – in this exclusion or elsewhere in the Policy.

122.    In fact, certain pollution exclusions in the insurance market expressly include the word "virus"; the CNA pollution exclusion does not.  The absence of this specific word is significant in an "all-risk" policy like the one CNA sold AAESC.

123.    CNA also tries to invoke the "loss of use, delay, or loss of market" exclusion.  CNA ignores that this exclusion applies only to losses that are consequential.  That is, those that flow from the loss of use are excluded – but the loss of use itself caused by Government Orders – is not excluded.

124.    To interpret this exclusion so broadly would render all coverage under the Policy illusory.

125.    Accordingly, there is no exclusion – virus, pollution, or loss of use – that would preclude coverage for AAESC's claim.

126.    CNA's improper denial turns well-established New Mexico law on its head.  For an all-risk policy, AAESC is required only to meet its minimal threshold burden of proving that it suffered a loss within the scope of the Policy, which AAESC did.

127.    The burden then shifts to the insurer, CNA, to prove the claim is excluded.  CNA cannot carry this burden.

128.    There is no legitimate dispute that AAESC lost use of its insured property and its business was significantly interrupted by the Coronavirus and Government Orders – neither of which are excluded perils under the Policy.  However, CNA improperly refuses to provide coverage – ignoring the extent of AAESC's loss from covered causes.

129.    Instead, CNA incorrectly claims that there is no coverage because AAESC has not established physical loss.  Yet, CNA's reasoning is based only on whether there was damage – not physical loss.  CNA also improperly denies Civil Authority coverage, ignoring the physical loss pled

19

and that the Government Orders expressly acknowledge the dangerous physical conditions – the "attendant harm" – presented by the Coronavirus.

130.    AAESC provided adequate documentation of its loss, and ample explanation refuting CNA's incorrect coverage denial, but CNA continues to withhold coverage.

131.    Meanwhile, AAESC continues to respect the Government Orders, to the extreme detriment of its business.  To date, AAESC has forecasted over $2.5 million in losses.

132.    CNA's repudiation of the insurance contract that AAESC purchased to protect its business is unlawful.

133.    CNA's improper coverage denial follows from its failure to conduct a reasonable and fair evaluation of AAESC's coverage.  CNA did not conduct a non-biased investigation, nor did they diligently consider the evidence that supports AAESC's claim.  CNA flouts controlling New Mexico law in refusing to pay AAESC's claim, instead only going through the motions of an "investigation."

134.    CNA has unreasonably deprived AAESC of insurance benefits to which it is entitled by purposefully (i) failing to give at least equal regard to AAESC's interests in being made whole under the Policy as CNA did to its own interest in attempting to avoid the cost of fulfilling this obligation, and (ii) disregarding its obligation to refrain from doing anything that would frustrate the agreed upon purposes of the Policy.

135.    CNA wrongfully refused to honor its obligations with a reckless disregard for AAESC's rights.

136.    CNA misconduct exposed AAESC to additional damage and expense, forcing AAESC to bear the burden and impact of its business losses while simultaneously incurring the expense of pursuing CNA to fully comply with its Policy obligations.

137.    In addition to the unreasonable conduct described above, upon information and belief, CNA may have further breached its duty of good faith and fair dealing by other acts or omissions that AAESC has not yet discovered.

## FIRST CAUSE OF ACTION
### (Breach of Contract against CNA)

138.    Plaintiff incorporates herein the above paragraphs as if fully set forth herein.

139.    The Policy is a valid contract under which AAESC paid premiums in exchange for CNA's promise to pay AAESC for claims covered by the Policy.

140.    Specifically, CNA agreed to pay AAESC's claims for direct loss caused by or resulting from the necessary suspension of its operations caused by physical damage or loss and/or mandated by civil authority governmental orders, including but not limited to business income and extra expense. Coverage for these losses is in no way limited or excluded under the Policy's terms.  This loss includes lost Business Income and Extra Expenses.

141.    The Policy further requires payment of losses caused by action of civil authority that prohibits access to premises other than Plaintiff's premises where the Coronavirus or Government Orders – covered causes of loss – caused damage or loss to those other premises and where access to the area immediately surrounding the affected property is prohibited by civil authority as a result of the damage or dangerous physical conditions.

142.    The Policy also requires payment of losses associated with dependent properties. Coverage for these losses is in no way limited or excluded by the Policy's terms.

143.    CNA has not honored and has no intention of honoring its obligations under the Policy. By denying coverage to AAESC, CNA breached the contract.

144.    CNA's reasons for refusing to pay the claims of AAESC are frivolous or unfounded.

145.    CNA's failure to pay AAESC's claim is unreasonable.

146.    As a result of CNA's breach of the Policy, AAESC has sustained and will continue to sustain substantial damages for which CNA is liable in an amount to be established at trial.

147.    Accordingly, AAESC is entitled to compensatory and consequential damages, loss of interest (pre-judgment and post-judgment), and statutory attorneys' fees pursuant to NMSA 1978, § 39-2-1.

**SECOND CAUSE OF ACTION**
**(Breach of Duty of Good Faith and Fair Dealing against CNA)**

148.    Plaintiff incorporates herein the above paragraphs as if fully set forth herein.

149.    In every insurance policy there is an implied duty for the insurance company to deal fairly with the policyholder.  Fair dealing means to act honestly and in good faith in the performance of the contract.  Here, CNA failed to give equal consideration to its own interests and the interests of its insured, AAESC.

150.    CNA's reasons for refusing to pay the claims of AAESC are frivolous or unfounded.

151.    CNA breached its duty of good faith and fair dealing by, including but not limited to: (i) failing to properly investigate AAESC's claim; (ii) refusing to timely pay the claim; (iii) ignoring and wrongfully denying AAESC's claim; (iv) failing to acknowledge coverage within a reasonable time; and (v) failing to reconsider the claim denial and ignoring AAESC's assertion that there was coverage under the Policy.  AAESC reserves the right to add further allegations of bad faith as more information is learned.

152.    When an insurer delays and fails to timely provide first-party coverage to its insured, it may be deemed to be acting unreasonably and in bad faith.

153.    The insurer must give equal consideration to its own interests and the interests of its policyholder.

154.    CNA's misconduct was performed intentionally, willfully, wantonly or with reckless disregard of the interests of its insured.

155.    As a result of CNA's breach of the duty of good faith and fair dealing, AAESC has suffered and will continue to suffer damages in an amount to be established at trial, including noneconomic damages.

156.    Accordingly, CNA is entitled to compensatory and consequential damages, loss of interest (pre-judgment and post-judgment), punitive damages and statutory attorneys' fees pursuant to NMSA 1978, § 39-2-1.

### THIRD CAUSE OF ACTION
### (Violations of New Mexico's Insurance Practices Act against CNA)

157.    Plaintiff incorporates herein the above paragraphs as if fully set forth herein.

158.    CNA is an "insurer" under the meaning of New Mexico's Trade Practices and Frauds Act [NMSA 1978, § 59A-16-1, *et seq*.].

159.    CNA either knowingly, or with such frequency as to indicate a general business practice, violated certain portions of the New Mexico Insurance Practices Act, NMSA § 59A-16-20:

(A) Misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue;

(B) Failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies;

(C) Failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies;

(D) Failing to affirm or deny coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured;

(N) failing to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

160.    Due to CNA's violations of NMSA § 59A-16-20, AAESC is entitled to recover actual damages, attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### (Violation of the New Mexico Unfair Practices Act against CNA)

161.   Plaintiff incorporates herein the above paragraphs as if fully set forth herein.

162.   The New Mexico Unfair Trade Practices Act ("UPA"), NMSA 1978, § 57-12-2(D) prohibits unfair, deceptive or unconscionable sales practices.

163.   UPA Section 57-12-2(D)(14) prohibits: "using . . . ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive."  Ambiguity exists with respect to coverage offered by CNA.

164.   UPA Section 57-12-2(D)(17) prohibits: "failing to deliver the quality or quantity of goods or services contracted for."  CNA promised to indemnify AAESC by offering first-party all-risk insurance coverage and charging a premium for coverage, and now denies all coverage.

165.   UPA Section 57-12-2(E) prohibits any person from engaging in any "act or practice in connection with the sale . . . or in connection with the offering for sale . . . of any goods or services . . . that to a person's detriment . . . takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree."  The Policy sold by CNA is a first-party commercial property policy which includes coverage for AAESC, which CNA is now withholding on a basis it failed to disclose to AAESC when it first sold the Policy.

166.   CNA thus offered first-party commercial property insurance with an intent not to supply the reasonably expected coverage.

167.   At the time and under the circumstances surrounding the sale of the Policy, and thereafter, CNA knew, or as a professional provider of insurance should have known, that under New Mexico law, its denial of coverage under the circumstances would amount to a failure to deliver the quality of goods and/or services promised at the time of sale.

168.    At the time of the sale of the Policy, CNA knew, or as a professional provider of insurance, should have known that under New Mexico law it makes no difference whether it intended to deceive or defraud AAESC.

169.    CNA's acts and omissions were unfair and deceptive trade practices, which proximately resulted in damages to AAESC, and were otherwise in violation of the UPA Section 57-12-1, *et seq*.

170.    CNA has willfully engaged in unfair and deceptive trade practices or unconscionable trade practices entitling AAESC to an award treble damages.

171.    Plaintiff additionally seeks recovery of its attorneys' fees and costs pursuant to NMSA 1978, § 57-12-10(C).

## FIFTH CAUSE OF ACTION
### (Declaratory Judgment against CNA)

172.    Plaintiff incorporates herein the above paragraphs as if fully set forth herein.

173.    AAESC seeks a declaratory judgment pursuant to NMSA 1978, §§ 44-6-1, 44-6-2, and 44-6-4, *et seq.*, for the purpose of determining an actual controversy between AAESC and CNA.

174.    An actual and justiciable controversy exists between AAESC and CNA regarding the terms and conditions of coverage under the Policy with respect to a proper adjustment of the claim, including but not limited to, CNA's wrongful refusal to pay the full business interruption loss due to AAESC based upon the physical loss of its space and related business interruption and extra expenses from the Coronavirus and/or the Government Orders.

175.    As a direct and proximate result of CNA's coverage denial and its failure to properly investigate, there exists an actual controversy between the parties that requires an action for declaratory judgment pursuant to NMSA 1978 §§ 44-6-2 and 44-6-4.

176.    AAESC's loss is covered under the Policy.  AAESC seeks a judicial determination and declaration that CNA is obligated to insure the direct physical loss to AAESC under the Policy.

177.     This controversy is ripe and of sufficient immediacy to justify the issuance of a declaratory judgment.

178.     A judicial declaration is necessary and appropriate at this time because AAESC and CNA have failed to reach an agreement on CNA's obligations under the Policy.

179.     CNA's acts and omissions warrant the entry of a judgment declaring and determining that as a matter of law CNA breached their obligations to act reasonably, promptly and fully investigate the claim, and provide the requisite coverage.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for the following judgment in its favor and against Defendant:

1)  An order finding Defendant to have breached the Policy and must promptly provide coverage;

2)  An order finding Defendant to have breached the duty of good faith and fair dealing;

3)  Declaratory relief, as described herein to include that AAESC's business income, extra expenses, civil authority, and dependent properties losses incurred in connection with the Coronavirus and Government Orders are insured losses under the Policy, and Defendant is obligated to pay the full amount of these losses;

4)  Consequential and compensatory damages;

5)  An award of punitive and exemplary damages;

6)  Treble damages under the New Mexico Unfair Practices Act, NMSA 1978§ 57-12-10;

7)  Statutory damages pursuant to New Mexico's Trade Practices and Frauds Act;

8)  Attorneys' fees and costs, as provided by law;

9)  Pre- and post- judgment interest at the highest rate allowed by law; and

10) Such other and further relief as this Court may deem just, equitable or proper.

## JURY DEMAND

Plaintiff demands a trial by jury of the claims so triable.

Respectfully submitted,

PEIFER, HANSON, MULLINS & BAKER, P.A.


By: */s/ Robert E. Hanson*
         Robert E. Hanson
20 First Plaza, Suite 725
Albuquerque, New Mexico 87102
Tel:    (505) 247-4800
Fax:    (505) 243-6458
Email: rhanson@peiferlaw.com

Kristin C. Davis (*pro hac vice* to be submitted)
THOMPSON HAMMERMAN DAVIS LLP
1015 15th Street NW, Suite 600
Washington, DC 20005
Tel: (202) 367-6178
Fax: (202) 318-5356
kdavis@thompsonhd.com

*Attorneys for Plaintiff*

 **CNA**

**Policyholder Notice – Countrywide**

# IMPORTANT INFORMATION

## REQUEST FOR JURISDICTIONAL
## INSPECTION OF PRESSURE EQUIPMENT

Many states and some cities issue certificates permitting the continued operation of certain equipment such as boilers, water heaters and pressure vessels. Periodic inspections are required to renew these certificates. In most jurisdictions, as part of an equipment breakdown policy, insurance company employees who have been licensed are authorized to perform these inspections.

**If:**

- You own/operate pressure equipment that requires a certificate from a state, county, city or parish to operate legally, and
- We insure that equipment under this Policy, and
- You would like CNA to perform the next required inspection:

**Then:**

Complete the form on page 2 and email, mail or fax as instructed:

**No need to call or respond if you do not have boilers or pressure vessels that require operating certificates.**

**BY EMAIL**:   **EBinspections@cna.com** (please scan the completed form and attach)

**BY MAIL**:                                                                  **BY FAX**:      609-524-3649

CNA Equipment Breakdown Risk Control
184 Liberty Corner Road
4th Floor, Suite 402
Warren, NJ 07059                                              **BY PHONE**:    call 866-262-0540 – press "4"

Questions or inquiries can be made via any of the above methods of communication.

**Please note the following**:

- Your jurisdiction(s) may charge you a fee for renewing a certificate. It is your responsibility to pay such a fee.
- If CNA is required to pay the fee on your behalf, CNA will invoice you to recover that fee.
- All the provisions of the INSPECTION AND SURVEYS condition apply to the inspections described in this notice.

**Failure to notify us can result in fines and penalties being issued to the equipment owner by the governing jurisdiction. CNA is not responsible for said fines or penalties.**

### REMINDER

If new equipment is installed or old equipment replaced that requires a jurisdictional inspection, please let us know by transmitting the new information to the postal address/fax number/email address listed above and on the following page.

If this is a renewal and information (locations) has not changed, please disregard this notice.

If inspection and maintenance are outside of your area of responsibility, we would appreciate your forwarding this notice to the appropriate person. **If no response is received, we are assuming there are no jurisdictional objects at your location(s) and no inspections are required.**

**Note: Jurisdictional inspections are not conducted outside of the United States, its territories, possessions, or Canada.**

**EXHIBIT**

**1**

1002000752067314575115B



**Policyholder Notice – Countrywide**

# REQUEST FOR JURISDICTIONAL INSPECTION

| **Insured Name:** |
|---|
| **Facility/Location Name:** |

| **Policy Number:** | **Policy Term:** |
|---|---|

| **Contact Person & Title:** | |
|---|---|
| **Contact Phone Number(s)—Office:** | **Cell:** |
| **Contact Email Address:** | |

| **Location Address[1]** | **City** | **State** | **Zip** |
|---|---|---|---|
| **1.** | | | |
| **2.** | | | |
| **3.** | | | |

| **Equipment Type[2,3,4]** **(Boiler, Pressure Vessel)** | **Registration Number (State #)** | **Certificate Expiration Date** |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

**Completed By (Name & Date):** _____

**Telephone #/Email Address:** _____

**BY EMAIL:**     EBinspections@cna.com (please scan the completed form and attach)

**BY MAIL:**                                                                **BY FAX:** 609-524-3649
CNA Equipment Breakdown Risk Control
184 Liberty Corner Road
4th Floor, Suite 402
Warren, NJ 07059                                        **BY PHONE**: call 866-262-0540 – press "4"

[1]If multiple objects and/or multiple locations, please list all required information on separate page(s).

[2]Boiler is defined as an enclosed vessel heated by fuel or electricity to produce steam or hot water.

[3]Pressure Vessel is defined as an enclosed vessel (tank) greater than 6 cubic feet (18 inches x 40 inches) to store liquid or gas under pressure for use when needed.

[4]LPG (ex: propane, propylene, butane & butylenes) Tank with vapor pressures not exceeding that allowed for commercial propane. California requirement only.

**CNA**

**Policy Holder Notice – Countrywide**

# IMPORTANT INFORMATION

## NOTICE – OFFER OF TERRORISM COVERAGE; DISCLOSURE OF PREMIUM

**THIS NOTICE DOES NOT FORM A PART OF THE POLICY, GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

As used herein, 1) "we" means the insurer listed on the Declarations or the Certificate of Insurance, as applicable; and 2) "you" means the first person or entity named on the Declarations or the Certificate of Insurance, as applicable.

You are hereby notified that under the Terrorism Risk Insurance Act, as extended and reauthorized ("Act"), you have a right to purchase insurance coverage of losses arising out of acts of terrorism, as defined in Section 102(1) of the Act, subject to all applicable policy provisions. The Terrorism Risk Insurance Act established a federal program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks.

This Notice is designed to alert you to coverage restrictions and to certain terrorism provisions in the policy. If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply.

CHANGE IN THE DEFINITION OF A CERTIFIED ACT OF TERRORISM

The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. Originally, the Act provided that to be certified, an act of terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest to coerce the government or population of the United States. However, the 2007 re-authorization of the Act removed the requirement that the act of terrorism must be committed by or on behalf of a foreign interest, and now certified acts of terrorism may encompass, for example, a terrorist act committed against the United States government by a United States citizen, when the act is determined by the federal government to be "a certified act of terrorism."

In accordance with the Act, we are required to offer you the ability to purchase coverage for losses resulting from an act of terrorism that is certified under the federal program. The other provisions of this policy, including nuclear, war or military action exclusions, will still apply to such an act.

DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The Department of the Treasury will pay a share of terrorism losses insured under the federal program. In 2015, the federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention, and shall decrease by 1 percentage point per calendar year until equal to 80%.

LIMITATION ON PAYMENT OF TERRORISM LOSSES

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.





 Copyright CNA All Rights Reserved.



**Policy Holder Notice – Countrywide**

Further, this coverage is subject to a limit on our liability pursuant to the federal law where, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

CONFIRMATION OF ACCEPTANCE OF COVERAGE

In accordance with the Act, we offered you coverage for losses resulting from an act of terrorism that is certified under the federal program. This notice confirms that you have chosen to accept our offer of coverage for certified acts of terrorism. The policy's other provisions, including nuclear, war or military action exclusions, will still apply to such an act. The premium charge for terrorism coverage, if any, is shown separately on the Declarations or the Certificate of Insurance, as applicable.

Copyright CNA All Rights Reserved.

**CNA**

# IMPORTANT INFORMATION

## TO OUR CNA CONNECT POLICYHOLDERS

## PREMISES INFORMATION UPDATE

As your Businessowners insurance carrier, we encourage you to ensure that the information about the premise(s) you own or occupy is current. Specifically, if you, or your landlord, have taken steps to improve the premises, you may be eligible for a premium discount. While we cannot guarantee a discount, make sure to let your agent know if you, or your landlord, have completed any of the following work and provide the year in which it was completed:

1. **Roof replacement:** The complete removal of the various layers of the roof system, including insulation and decking as needed, followed by the installation of all new materials.

2. **Electrical system replacement/update:** The complete replacement of the main electrical service, transformers under the care of the insured, sub-electrical panels and wiring.

3. **Plumbing system replacement/update:** The complete replacement of all pipes & tubing including fittings and valves, fixtures (toilets, sinks, and faucets), water heaters and related hardware

4. **Heating and air conditioning system replacement/update:** The replacement of the entire system including, but not limited to compressors, air handlers/furnaces/heat pumps, gas/oil lines and thermostats

If you own or occupy more than one location, please provide the specific information by location.

Please complete the information on Page 2 of this notice and return it to the Agent Name and Address shown in your Renewal Declarations. If you have any questions, please contact your agent.





CNA91765XX (Ed. 03-2018)                    Copyright, CNA  All Rights Reserved.                    Page 1 of 3



Copyright, CNA  All Rights Reserved.

**CNA**

Named Insured: _____   Policy Number:_____

Location Address: _____

Year Built: _____

| | Year Completed |
|---|---|
| Roof Replacement | |
| Electrical System Replacement | |
| Plumbing System Replacement | |
| HVAC Replacement | |

Location Address: _____

Year Built: _____

| | Year Completed |
|---|---|
| Roof Replacement | |
| Electrical System Replacement | |
| Plumbing System Replacement | |
| HVAC Replacement | |

Location Address: _____

Year Built: _____

| | Year Completed |
|---|---|
| Roof Replacement | |
| Electrical System Replacement | |
| Plumbing System Replacement | |
| HVAC Replacement | |

**CNA Agent**: Please forward the completed form to:

> **CNA Commercial Insurance**
> **500 Colonial Center Parkway**
> **Suite 400**
> **Lake Mary, FL 32748**
>
> **E-Mail: cnamissinginfo@cna.com**



**CNA Connect**

Renewal Declaration

| POLICY NUMBER | COVERAGE PROVIDED BY | FROM - POLICY PERIOD - TO |
|---|---|---|
| B 2067314575 | TRANSPORTATION INSURANCE COMPANY | 06/01/2019   06/01/2020 |
| | 151 N Franklin | |
| | CHICAGO, IL  60606 | |

**INSURED NAME AND ADDRESS**
ALBUQUERQUE AMBULATORY EYE SURGERY CENTER LLC
8801 Horizon Blvd NE

ALBUQUERQUE, NM  87113

**AGENCY NUMBER**
089080

**AGENCY NAME AND ADDRESS**
WESTERN ASSURANCE CORP.
3701 PASEO DEL NORTE
PO BOX 94600 (87199)
ALBUQUERQUE, NM  87113
Phone Number: (505)265-8481

**BRANCH NUMBER**
650

**BRANCH NAME AND ADDRESS**
ALBUQUERQUE BRANCH
STE. 6200
2155 LOUISIANA BLVD., NE
ALBUQUERQUE, NM  87110
Phone Number: (505)271-6500

This policy becomes effective and expires at 12:01 A.M. standard time at your mailing address on the dates shown above.

The Named Insured is a Corporation.

Your policy is composed of this Declarations, with the attached Common Policy Conditions, Coverage Forms, and Endorsements, if any. The Policy Forms and Endorsement Schedule shows all forms applicable to this policy at the time of policy issuance.

      The Estimated Policy Premium Is      $4,851.00

**Terrorism Risk Insurance Act Premium**      **$72.00**

Audit Period is Not Auditable



**POLICY NUMBER**      **INSURED NAME AND ADDRESS**
B 2067314575      ALBUQUERQUE AMBULATORY EYE SURGERY CENTER LLC
     8801 Horizon Blvd NE
     ALBUQUERQUE, NM 87113

| **PROPERTY COVERAGE** | **LIMIT OF INSURANCE** |
|---|---|

The following deductible applies unless a separate deductible is shown on the Schedule of Locations and Coverage.

Deductible:     $1,000

| | |
|---|---|
| Business Income and Extra Expense Coverage | |
|     Business Income and Extra Expense | 12 Months Actual Loss Sustained |
| Business Income and Extra Expense - Dependent Properties | $10,000 |
| Employee Dishonesty | $25,000 |
| Forgery and Alteration | $25,000 |

| **LIABILITY COVERAGE** | **LIMIT OF INSURANCE** |
|---|---|
| Liability and Medical Expense Limit - Each Occurrence | $2,000,000 |
| Medical Expense Limit -- Per Person | $10,000 |
| Personal and Advertising Injury | $2,000,000 |
| Products/Completed Operations Aggregate | $4,000,000 |
| General Aggregate | $4,000,000 |
| Damage To Premises Rented To You | $300,000 |
| Employment Practices/Fiduciary Liability   Retroactive Date:   06/01/2008     EPLI Deductible: $0 | $10,000 |
| Hired Auto Liability | $1,000,000 |
| Nonowned Auto Liability | $1,000,000 |

| **CRIME COVERAGE** | **LIMIT OF INSURANCE** |
|---|---|
| Welfare and Pension Plan ERISA Compliance | $25,000 |

**POLICY NUMBER**        **INSURED NAME AND ADDRESS**
B 2067314575            ALBUQUERQUE AMBULATORY EYE SURGERY CENTER LLC
                        8801 Horizon Blvd NE
                        ALBUQUERQUE, NM   87113

## SCHEDULE OF LOCATIONS AND COVERAGE

**LOCATION   1  BUILDING   1**

5901 Harper NE
Albuquerque, NM   87109

Construction: Fire Resistive

Class Description: Surgeons Offices

    Building Glass Deductible: $100

    Broadened Wind

| PROPERTY COVERAGE | LIMIT OF INSURANCE |
|---|---|
| Accounts Receivable | $25,000 |
| Building | Not Covered |
| Business Income for Interruption of Practice | $10,000 |
| Business Personal Property | $1,766,530 |
| Electronic Data Processing | $50,000 |
| Equipment Breakdown | $1,766,530 |
| Fine Arts | $25,000 |
| Ordinance or Law - Demolition Cost, Increased Cost of Construction | $25,000 |
| Seasonal Increase: 25% | |
| Sewer or Drain Back Up | $25,000 |
| Spoilage Coverage | |
|   Description of Property:   Perishable Stock | |
|   Limit of Insurance | $10,000 |
|   Deductible:     $1,000 | |
|   Refrigeration Maintenance Agreement     X | |
|   Causes of Loss | |
|   Breakdown of Contamination     X | |
|   Power Outage     X | |
|   Selling Price     X | |
| Valuable Papers & Records | $25,000 |



**POLICY NUMBER**          **INSURED NAME AND ADDRESS**
B 2067314575              ALBUQUERQUE AMBULATORY EYE SURGERY CENTER LLC
                          8801 Horizon Blvd NE
                          ALBUQUERQUE, NM  87113

### ADDITIONAL INTEREST SCHEDULE

**LOCATION**    1  **BUILDING**    1

    **Type:** Owners , Lessees or  Contractors
    **Additional Interest Name and Address:**
AAESC LLC INVESTORS
8801 Horizon Blvd NE
Suie 360
ALBUQUERQUE                        , NM  87113

    **Type:** Owners , Lessees or  Contractors
    **Additional Interest Name and Address:**
Presbyterian Healthcare Service Attn: Real Estate Department
PO BOX 26666
ALBUQUERQUE                        , NM  87125-6666

    **Type:** Owners , Lessees or  Contractors
    **Additional Interest Name and Address:**
EYE ASSOCIATES OF NEW MEXICO
317 Commercial NE
Suite 100-G
ALBUQUERQUE                        , NM  87102

    **Type:** Owners , Lessees or  Contractors
    **Additional Interest Name and Address:**
SOUTHWEST HEALTH FOUNDATION
8801 Horizon Blvd. NE
Suite 360
Albuquerque                        , NM  87113

### LOSS PAYEE SCHEDULE

All loss payees as their interests may appear in the Covered Property.

The following provisions apply in accordance with the insurable interest of the loss payee: Loss Payee

Description of Property: Any Covered Property in which a loss payee, creditor or lender holds an interest, including any person or organization you have entered a contract with for the sale of Covered Property.

**POLICY NUMBER**
B 2067314575

**INSURED NAME AND ADDRESS**
ALBUQUERQUE AMBULATORY EYE SURGERY CENTER LLC
8801 Horizon Blvd NE
ALBUQUERQUE, NM  87113

## FORMS AND ENDORSEMENTS SCHEDULE

The following list shows the Forms, Schedules and Endorsements by Line of Business that are a part of this policy.

**COMMON**

| FORM NUMBER | | FORM TITLE |
|---|---|---|
| CNA79203XX | 06/2014 | Exclusion - Access or Disclosure of Confidential |
| CNA80103XX | 09/2014 | Primary and Non Contributory - Other Ins Condition |
| CNA81751XX | 03/2015 | Cap on Losses from Certified Acts of Terrorism |
| CNA91765XX | 03/2018 | Policyholder Notice - Premises Information |
| SB147001C | 05/2015 | New Mexico Changes |
| SB147005A | 01/2006 | NM Changes -Property Claim Settlmnt in Catastrophe |
| SB147044A | 01/2006 | Important Information - New Mexico Businessowners |
| SB147075A | 01/2006 | Economic and Trade Sanctions Condition |
| SB147082E | 04/2014 | Businessowners Common Policy Conditions |
| SB147086B | 04/2010 | Loss Payable Provisions |

**COMMERCIAL PROPERTY**

| FORM NUMBER | | FORM TITLE |
|---|---|---|
| SB146801I | 04/2014 | Businessowners Special Property Coverage Form |
| SB146802E | 06/2016 | Business Income and Extra Expense |
| SB146803A | 01/2006 | Seasonal Increase |
| SB146804A | 01/2006 | Arson and Theft Reward |
| SB146805B | 06/2016 | Claim Data Expense |
| SB146806B | 01/2008 | Debris Removal |
| SB146807E | 06/2016 | Employee Dishonesty |
| SB146808A | 01/2006 | Expediting Expenses |
| SB146809C | 07/2009 | Fine Arts |
| SB146810A | 01/2006 | Fire Department Service Charge |
| SB146811A | 01/2006 | Fire Protective Equipment Discharge |
| SB146812C | 04/2010 | Forgery and Alteration |
| SB146813B | 01/2008 | Newly Acquired or Constructed Property |
| SB146814B | 03/2006 | Ordinance or Law |
| SB146815A | 01/2006 | Outdoor Trees, Shrubs, Plants and Lawns |
| SB146816A | 01/2006 | Pollutant Clean Up and Removal |
| SB146817A | 01/2006 | Preservation of Property |
| SB146818A | 01/2006 | Temporary Relocation of Property |
| SB146819A | 01/2006 | Water Damage, Other Liquids, Solder, Molten Damage |
| SB146820C | 06/2011 | Accounts Receivable |
| SB146821A | 01/2006 | Appurtenant Buildings and Structures |
| SB146822A | 01/2006 | Building Glass |
| SB146823B | 01/2008 | Business Income Extra Expense - Dependent Property |
| SB146824B | 01/2008 | Business Income Extra Expense-Newly Acquired Locs |
| SB146825C | 06/2011 | Business Personal Property Off Premises |
| SB146826B | 01/2008 | Civil Authority |
| SB146827F | 06/2011 | Electronic Data Processing |
| SB146828E | 04/2014 | Equipment Breakdown |
| SB146830B | 01/2008 | Money Orders and Counterfeit Paper Currency |
| SB146831B | 06/2011 | Nonowned Detached Trailers |
| SB146832B | 01/2008 | Ordinance or Law-Increased Period of Restoration |
| SB146833A | 01/2006 | Outdoor Property |
| SB146834A | 01/2006 | Personal Effects |
| SB146835A | 01/2006 | Signs |
| SB146836A | 01/2006 | Spoilage Consequential Loss |
| SB146837A | 01/2006 | Theft Damage to Rented Property |



POLICY NUMBER                          INSURED NAME AND ADDRESS
B 2067314575                           ALBUQUERQUE AMBULATORY EYE SURGERY CENTER LLC
                                       8801 Horizon Blvd NE
                                       ALBUQUERQUE, NM  87113

### FORMS AND ENDORSEMENTS SCHEDULE

**COMMERCIAL PROPERTY**

| FORM NUMBER | | FORM TITLE |
|---|---|---|
| SB146838C | 06/2011 | Valuable Papers and Records |
| SB146839F | 06/2011 | Sewer or Drain Back Up |
| SB146841B | 06/2011 | Broadened Wind Coverage |
| SB146843E | 04/2014 | Business Income For Interruption of Practice |
| SB146855B | 01/2008 | Spoilage Coverage |
| SB146856D | 07/2009 | Utility Services - Direct Damage |
| SB146857D | 07/2009 | Utility Services - Time Element |
| SB146997B | 07/2009 | Fungus, Wet Rot, Dry Rot and Bacteria Exclusion |
| SB300129B | 01/2008 | Targeted Hacker Attack |
| SB300456A | 07/2007 | Concurrent Causation, Earth Movmnt, Water Excl Chg |
| SB300596A | 01/2008 | Identity Theft/Recovery Services Endorsement |

**COMMERCIAL GENERAL LIABILITY**

| FORM NUMBER | | FORM TITLE |
|---|---|---|
| SB146902G | 06/2016 | Hired Auto and Non-owned Auto Liability |
| SB146932F | 06/2016 | Blanket Additional Insured - Liability Extension |
| SB147023A | 01/2006 | Fungi / Mold / Mildew / Yeast / Microbe Exclusion |
| SB147079A | 01/2006 | War Liability Exclusion |
| SB147080A | 01/2006 | Exclusion - Silica |
| SB147088A | 01/2006 | Exclusion - Asbestos |
| SB147089A | 01/2006 | Employment - Related Practices Exclusion |
| SB300000D | 04/2014 | Businessowners Liability Coverage Form |
| SB300120C | 06/2011 | Additional Insured - Owners, Lessees or Contractor |
| SB300441A | 01/2007 | Fiduciary Liability Coverage Form |
| SB300449A | 01/2007 | Single Limit of Insurance Endorsement |
| SB300450A | 01/2007 | Employment Practices Liability Coverage Form |
| SB300849A | 07/2009 | Recd and Distribution of Material or information |

**COMMERCIAL CRIME**

| FORM NUMBER | | FORM TITLE |
|---|---|---|
| SB300043D | 06/2011 | Welfare and Pension Plan ERISA Compliance |

### *** PLEASE READ THE ENCLOSED IMPORTANT NOTICES CONCERNING YOUR POLICY ***

| FORM NUMBER | | FORM TITLE |
|---|---|---|
| CNA62823XX | 07/2017 | Req For Jurisdictional Inspection Of Pressure Equp |
| CNA81758XX | 03/2015 | Notice - Offer of Terrorism Disclosure of Premium |

_____
                                          Countersignature

Chairman of the Board                                          Secretary

**CNA**

CNA79203XX
(06-14)

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

It is understood and agreed that this endorsement amends the **BUSINESSOWNERS LIABILITY COVERAGE FORM** as follows:

Under **Exclusions**, the exclusions **Applicable to Business Liability Coverage** are amended to:

**I.**   Delete the exclusion entitled **Electronic Data** and replace it with the following:

This insurance does not apply to:

**Access or Disclosure Of Confidential Or Personal Information And Data-related Liability**

**(1)**   Damages, other than damages because of "personal and advertising injury," arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)**   Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury."

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**II.**   Add the following to the exclusion entitled **Personal and Advertising Injury:**

This insurance does not apply to:

**Personal And Advertising Injury**

"Personal and advertising injury":

Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any person's or organization's confidential or personal information.

All other terms and conditions of the Policy remain unchanged.



CNA79203XX (06-14)
Page 1 of 1

Copyright, CNA  All Rights Reserved.



CNA80103XX
(09-14)

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PRIMARY AND NONCONTRIBUTORY-
## OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COMMON POLICY CONDITIONS

The following is added to Paragraph **H. Other Insurance** and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

1. The additional insured is a Named Insured under such other insurance; and

2. You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

All other terms and conditions of the Policy remain unchanged.

Copyright, CNA  All Rights Reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission

**CNA**

CNA81751XX
(Ed. 3-15)

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT

## SCHEDULE

Solely with respect to any Coverage Part set forth in the Schedule, it is understood and agreed as follows:

Whenever used in this endorsement, 1) "we" means the insurer listed on the Declarations or the Certificate of Insurance, as applicable; and 2) "you" means the first person or entity named on the Declarations or the Certificate of Insurance, as applicable.

**A. Cap on Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the Terrorism Risk Insurance Act, as extended and reauthorized (the "Act"). The criteria contained in the Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B. Application of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

All other terms and conditions of the Policy remain unchanged.



Copyright, CNA  All Rights Reserved.



SB-146801-I
(Ed. 04-14)

# BUSINESSOWNERS
## SPECIAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the company providing the insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION G – PROPERTY DEFINITIONS, and SECTION H – MALICIOUS CODE, SYSTEM PENETRATION, AND DENIAL OF SERVICE DEFINITIONS.**

## A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause Of Loss.

**1. Covered Property**

Covered Property includes Buildings as described under **a.** below, Business Personal Property as described under **b.** below, or both, depending on whether a Limit of Insurance is shown in the Declarations for the type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph **A.2.** Property Not Covered.

**a. Buildings**, meaning the buildings and structures at the premises described in the Declarations, including:

(1) Completed Additions;

(2) Fences

(3) Fixtures, including outdoor fixtures;

(4) Retaining walls, whether or not attached;

(5) Permanently installed:

(a) Machinery; and

(b) Equipment;

(6) Outdoor swimming pools;

(7) Personal Property owned by you that is used to maintain or service the building or structure or the premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings;

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(e) Lawn maintenance and snow removal equipment; and

(f) Alarm systems;

(8) If not covered by other insurance:

(a) Alterations and repairs to the building structure;

(b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making alterations or repairs to the building or structure.

**b. Business Personal Property** located in or on the buildings at the described premises or in the open (or in a vehicle) within 1,000 feet of the described premises, including:

(1) Property that you own that is used in your business;

(2) Property of others that is in your care, custody or control;

(3) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy or lease but do not own; and

(b) You acquired or made at your expense but are not permitted to remove;

(4) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **A.1.b.(2).**;

(5) Your leasehold interest in improvements and betterments which are not damaged or destroyed, but which you lose because your lease is cancelled by the lessor as a result of damage to the building from a Covered Cause of Loss. When this occurs, we will calculate the value of your interest in the improvements and

betterments as though they had been damaged or destroyed and not repaired or replaced promptly, as provided In the Valuation Loss Condition;

(6) Your "money" and "securities";

(7) "Stock."

(8) Tools and equipment owned by your employees which are used in your business operations.

**2.   Property Not Covered**

Covered Property does not include:

**a.**   Aircraft;

**b.**   Automobiles held for sale;

**c.**   Vehicles or self-propelled machines that are:

(1) Licensed for use on public roads (subject to motor vehicle registration); or

(2) Operated principally away from the described premises;

This paragraph does not apply to:

(1) Vehicles or self-propelled machines or autos that you manufacture, process or warehouse;

(2) Vehicles or self-propelled machines, other than autos, that you hold for sale; or

(3) Trailers or semi-trailers, except as provided in the Non-Owned Detached Trailers Coverage.

**d.**   Dams or dikes;

**e.**   Contraband, or property in the course of illegal transportation or trade;

**f.**   The cost of excavating, grading, backfilling or filling (except those costs necessary due to repair of buildings insured under this Coverage Form from a Covered Cause of Loss), reclaiming or restoring land or water;

**g.**   Water or land whether in its natural state or otherwise (including land on which the property is located), land improvements, growing crops or standing timber;

**h.**   Outdoor trees, shrubs, plants and lawns, other than "stock" except as provided in the Outdoor Trees, Shrubs, Plants and Lawns Additional Coverage;

**i.**   The following property while outside of the buildings:

(1) Bridges, walks, roadways, patios or other paved surfaces; or

(2) Outdoor radio or television antennas (including satellite dishes) and including their lead-in wiring, masts or towers;

Except as provided in the Outdoor Property Coverage Extension;

**j.**   Watercraft (including motors, equipment and accessories) while afloat;

**k.**   Accounts and bills, except as provided in the Accounts Receivable Coverage Extension;

**l.**   "Valuable Papers and Records," except as provided in the Valuable Papers and Records Coverage Extension;

**m.**   Property that is covered under another Coverage Form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**n.**   "Fine Arts," except as provided in the Fine Arts Additional Coverage;

**o.**   Bullion, gold, silver, platinum and other precious alloys or metals, unless they are used in your "operations" (theft limitation applies);

**p.**   "Electronic data processing equipment" and "Electronic media and data" (not including "stock"),except as provided in the Electronic Data Processing Equipment, Electronic Media and Data and Electronic Data (EDP Coverage Form) Coverage Extension, the Business Income And Extra Expense Coverage Extension, the Accounts Receivable Coverage Extension or the Targeted Hacker Attack Coverage Extension;

Your Business Personal Property coverage is extended to provide excess coverage for loss to the Electronic Data Processing Equipment and Electronic Media and Data (EDP Coverage Form) located only at the described premises and resulting from a covered cause of loss. All exclusions applicable to Business Personal Property apply to this excess coverage. This excess coverage is included in and is not in addition to the limits applicable to your Business Personal Property.

**q.**   Outdoor signs, except as provided in the Signs Coverage Extension.

**3.   Covered Causes of Loss**

RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

**a.**   Excluded in section B. EXCLUSIONS;

**b.**   Limited in paragraph A.4. Limitations; or

1002000752067314575167

SB-146801-I
(Ed. 04-14)

c. Excluded or limited by other provisions of this policy.

4. **Limitations**

a. We will not pay for loss of or damage to:

(1) The "interior of any building or structure" or to personal property in the building or structure, caused by rain, snow, sleet or ice whether driven by wind or not, unless:

(a) The building or structure first sustains actual damage to the roof or walls by wind or hail and then we will pay only for the loss to the "interior of the building or structure" or the personal property in the building or structure that is caused by rain, snow, sleet, sand or dust entering the building(s) or structure(s) through openings in the roof or walls made by direct action of wind; or

(b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

(2) Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gasses or fuel within the furnace of any fired vessel or within the flues or passages through which the gasses of combustion pass.

(3) Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

b. We will not pay for loss of or damage to the following types of property unless caused by any of the "specified causes of loss" or building glass breakage

(1) Live animals, birds or fish, and then only if they are killed or their destruction is made necessary. This limitation does not apply to animals, birds or fish owned by you and held as "stock."

(2) Fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken. This limitation does not apply to:

(a) Glass that is part of the exterior or interior of a building or structure;

(b) Containers or property held for sale; or

(c) Photographic or scientific instrument lenses.

c. For loss or damage by theft, the following types of property are covered only up to the limits shown:

(1) $2,500 for furs, fur garments, and garments trimmed with fur.

(2) $5,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $500 or less per item.

(3) $25,000 for patterns, dies, molds and forms.

d. We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss if the building where loss or damage occurs has been "vacant" for more than 60 consecutive days before that loss or damage occurs:

(1) Vandalism;

(2) Sprinkler leakage, unless you have protected the system against freezing;

(3) Building glass breakage;

(4) Discharge or leakage of water;

(5) "Theft"; or

(6) Attempted "theft."

With respect to Covered Causes of Loss other than those listed in 4.d.(1) through 4.d.(6) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

5. **Additional Coverages**

Additional Coverages may be attached to this Policy (designation would appear in the attached form(s)). Unless otherwise stated, payments made under these Additional Coverages are in addition to the applicable Limits of Insurance.

6. **Coverage Extensions**

Coverage forms may be attached to this Policy and designated as Coverage Extensions (such designation would appear in the attached form(s)). Unless otherwise stated, payments made under these Coverage Extensions are subject to and not in addition to the applicable Limits of Insurance in this Coverage Form.

B. **EXCLUSIONS**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or

damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance or Law**

(1) The enforcement of any ordinance or law:

(a) Regulating the construction, use or repair of any property; or

(b) Requiring the tearing down of any property, including the cost of removing its debris.

(2) This exclusion applies whether the loss results from:

(a) An ordinance or law that is enforced even if the property has not been damaged; or

(b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

(1) Earthquake, including any earth sinking, rising or shifting related to such event;

(2) Landslide, including any earth sinking, rising or shifting related to such event;

(3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

(4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in Paragraphs **(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

(5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

(a) Airborne volcanic blast or airborne shock waves;

(b) Ash, dust or particulate matter; or

(c) Lava flow.

All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Power Failure or Fluctuation**

The failure or fluctuation of power or other utility service supplied to the described premises, however caused, if the cause of the failure or fluctuation occurs away from the described premises.

But if the failure or fluctuation of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that covered cause of Loss.

**f. War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or



SB-146801-I
(Ed. 04-14)

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** "Flood," surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

**(2)** Mudslide or mudflow;

**(3)** Water or sewage that backs up or overflows from a sewer, drain or sump; or

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings.

But if Water, as described in Paragraphs **(1)** through **(4)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h. Neglect**

Neglect of an insured to use reasonable means to save and preserve property from further damage at and after the time of loss.

**i. Collapse of Buildings**

Collapse of buildings meaning an abrupt falling down or caving in of a building or any part of a building with the result being that the building or part of a building cannot be occupied for its intended purpose.

**(1)** This exclusion does not apply to collapse of buildings if caused only by one or more of the following:

**(a)** A "specified cause of loss" or breakage of building glass;

**(b)** Decay, insect or vermin damage that is hidden from view, unless the presence of such decay or insect or vermin damage is known to an insured prior to collapse;

**(c)** Weight of people or personal property;

**(d)** Weight of rain that collects on a roof; or

**(e)** Use of defective material or methods in construction, remodeling or

renovation if the collapse occurs during the course of construction, remodeling or renovation; or

**(f)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in Paragraphs **(a)** through **(d)** above.

In the event collapse results in a Covered Cause of Loss, we will only pay for the resulting loss or damage by that Covered Cause of Loss.

**(2)** We will not pay for loss of or damage to the following types of property, if otherwise covered in this Coverage Form under Paragraphs **(1)(b)** through **(1)(f)** above, unless the loss or damage is a direct result of the collapse of a building:

**(a)** Awnings, gutters and downspouts;

**(b)** Outdoor radio or television antennas (including microwave or satellite dishes) and their lead-in wiring, masts or towers;

**(c)** Fences;

**(d)** Piers, wharves and docks;

**(e)** Beach or diving platforms or appurtenances;

**(f)** Retaining walls;

**(g)** Walks, roadway and other paved surfaces;

**(h)** Yard fixtures; or

**(i)** Outdoor swimming pools.

**(3)** A building or part of a building that:

**(a)** Is in imminent danger of abruptly falling down or caving in; or

**(b)** Suffers a substantial impairment of structural integrity;

is not considered to have collapsed but is considered to be in a state of imminent collapse.

**(4)** With respect to buildings in a state of imminent collapse, we will not pay for loss or damage unless the state of imminent collapse first manifests itself during the policy period and is cause only by one or more of the following which occurs during the policy period:

Includes copyrighted material of Insurance Services Office, Inc., with its permission

SB-146801-I
(Ed. 04-14)

**(a)** A "specified cause of loss" or breakage of glass

**(b)** Weight of people or personal property;

**(c)** Weight of rain that collects on a roof; or

**(d)** Use of defective material or methods in construction, remodeling or renovation if the state of imminent collapse occurs during the course of construction, remodeling or renovation.

**j. Malicious Code**

Any "malicious code."

**k. System Penetration**

Any "system penetration."

**l. Denial of Service**

Any "denial of service."

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a. Electrical Apparatus**

Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by fire.

**b. Consequential Loss**

Delay, loss of use or loss of market.

**c. Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**d. Other Types Of Loss**

**(1)** Wear and tear;

**(2)** Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

**(d)** Changes in flavor, color, texture or finish;

**(e)** Evaporation or leakage; or

**(8)** Contamination by other than "pollutants."

But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(8)** above results in a "specified cause of loss," building glass breakage, or "breakdown" to "covered equipment" (only if otherwise a Covered Cause of Loss), we will pay for the loss or damage caused by that "specified cause of loss," building glass breakage or "breakdown" to "covered equipment" (only if otherwise a Covered Cause of Loss).

**e. Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f. Seepage**

Continuous or repeated seepage or leakage of water, or the presence of condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g. Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.   Dishonesty**

Dishonest or criminal acts by you, or any of your partners, "members," officers, "managers," "employees" (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1)  Acting alone or in collusion with others;

(2)  Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction to your property, or your "Electronic data processing equipment," "Electronic media and data," and "Electronic data," by your "employees" (including leased employees); but theft by employees (including leased employees) is not covered, except as provided in the Employee Dishonesty Additional Coverage.

**i.   False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.   Exposed property**

Rain, snow, sand, dust, ice or sleet to personal property in the open, except as provided in the Coverage Extension for Outdoor Property.

**k.   Pollution**

Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss," we will pay for the loss or damage caused by that "specified cause of loss"

**l.   Inventory     Shortage,     mysterious disappearance**

Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This exclusion does not apply to "money" and "securities"

**m.   Inventory Computation**

Loss of property or that part of any loss, the proof of which as to its existence or amount is dependent on:

(1)  Any inventory computation; or

(2)  A profit and loss computation.

**n.   Transfer of Property**

The transfer of property to a person or to a place outside the described premises, on the basis of unauthorized instructions.

**o.   Accounting Errors**

Loss of "money" or "securities" caused by or resulting from accounting or arithmetic errors or omissions.

**p.   Cost of Correction**

The cost of correcting or making good the damage to personal property attributable to such property being processed, manufactured, tested, repaired, restored, retouched or otherwise being worked on.

**3.**   We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.   Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **B.1.** above to produce the loss or damage.

**b.   Acts or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.   Negligent Work**

Faulty, inadequate or defective:

(1)  Planning,      zoning,      development, surveying, siting;

(2)  Design,   specifications,   workmanship, repair,   construction,   renovation, remodeling, grading, compaction;

(3)  Materials used in repair, construction, renovation or remodeling; or

(4)  Maintenance;

of part or all of any property on or off the described premises.

SB-146801-I
(Ed. 04-14)

If an excluded cause of loss that is listed in Paragraphs (1) through (4) above results in a Covered Cause of Loss, we will pay for the resulting loss or damage caused by that Covered Cause of Loss. But we will not pay for:

(1) Any cost of correcting or making good the fault, inadequacy or defect itself, including any cost incurred to tear down, tear out, repair or replace any part of any property to correct the fault, inadequacy or defect; or

(2) Any resulting loss or damage by a Covered Cause of Loss to the property that has the fault, inadequacy or defect until the fault, inadequacy or defect is corrected.

**4. Business Income and Extra Expense Exclusions**

a. We will not pay for:

(1) Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

(a) Delay in rebuilding, repairing or replacing the property or resuming "operations," due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations," we will cover such loss that affects your Business Income during the "period of restoration."

b. Any other consequential loss.

**C. Limits of Insurance**

1. Unless otherwise stated, the most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations, Schedules, Coverage Forms, or endorsements.

2. Inflation Guard

a. When a percentage for Inflation Guard is shown in the Declarations, the Limit of Insurance for property to which this coverage applies will automatically increase by that annual percentage.

b. The amount of increase will be:

(1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, multiplied by

(2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 5% is .05), multiplied by

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

Example:

If:

| | |
|---|---|
| The applicable Building limit is | $100,000 |
| The annual percentage increase is | 5% |
| The number of days since the beginning of the policy year (or last policy change) is | 146 |

The amount of increase is

$100,000 x .05 x (146/365) =        $2,000

**D. DEDUCTIBLES**

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Businessowners Property Coverage Deductible amount shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

2. Regardless of the amount of the Businessowners Property Coverage Deductible, the most we will deduct from any loss or damage under the Building Glass Coverage Extension in any one occurrence is the Building Glass Deductible shown in the Declarations.

3. The Businessowners Property Coverage Deductible does not apply to any of the following if they are included as part of this policy:

a. Fire Department Service Charge

b. Business Income and Extra Expense

c. Arson and Theft Reward; and

d. Accounts Receivable;

e. Any other property coverage with a specific deductible amount shown in the coverage form or declaration.

1002000752067314575170

**4.** If more than one deductible applies to loss or damage in any one occurrence, we will apply each deductible separately. But the total of all deductible amounts applied in any one occurrence will not exceed the largest applicable deductible.

## E.   PROPERTY LOSS CONDITIONS

### 1.   Abandonment

There can be no abandonment of any property to us.

### 2.   Appraisal

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### 3.   Duties In The Event Of Loss Or Damage

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance. However, we will not pay for any loss or damage from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**(9)** Resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

### 4.   Loss Payment – Building and Personal Property

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of **4.e.** below or any applicable provision which amends or supersedes the value of Covered Property.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to

enforcement of any ordinance or law regulating the construction, use or repair of any property, except as provided in the Ordinance or Law Additional Coverage.

**c.** We will give notice of our intentions within 30 days after we receive the proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We will determine the value of Covered Property as follows:

**(1)** At replacement cost (without deduction for depreciation), except as provided in **(2)** through **(18)** below.

  **(a)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

  **(b)** We will not pay on a replacement cost basis for any loss or damage:

    **(i)** Until the lost or damaged property is actually repaired or replaced; and

    **(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

  With respect to tenants' improvements and betterment's, the following also applies:

    **a)** If the conditions in **(b)(i)** and **(b)(ii)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth under **4.e.(7)** below; and

    **b)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

    **c)** We will not pay more for loss or damage on a replacement cost basis than the least of **(i)**, **(ii)**, or **(iii)** subject to **(d)** below:

      **(i)** The Limit of Insurance applicable to the lost or damaged property;

      **(ii)** The cost to replace the lost or damaged property with other property:

        **a)** Of comparable material and quality; and

        **b)** Used for the same purpose; or

      **(iii)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

      If a building is rebuilt at a new premises, the cost described in **(c)(ii)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

    **(d)** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the Declarations indicate that Actual Cash Value applies to Buildings or Business Personal Property, paragraph **(1)** above does not apply to the property for which Actual Cash Value is indicated.

**(3)** Property of others at the amount you are liable plus the cost of labor, materials, or services furnished or arranged by you on personal property of others, not to exceed the replacement cost.

**(4)** The following property at actual cash value:

  **(a)** Used or second-hand merchandise held in storage or for sale;

  **(b)** Household furnishings;

  **(c)** Personal effects.

**(5)** "Fine Arts" as follows:

  **(a)** If there is a schedule of "fine arts" on file which includes a description and value of the lost or damaged item, we will pay the value as stated in the schedule for that item if there is a total loss to that item. If there is a partial loss to an item, we will pay the cost of reasonably restoring or repairing that item.



**(b)** For "fine arts" without a schedule on file as described in paragraph (a) above, the value of "fine arts" will be the least of the following amounts:

    **(i)** Market value of the lost or damaged item at the time and place of loss;

    **(ii)** The cost of reasonably restoring the lost or damaged item; or

    **(iii)** The cost of replacing that lost or damaged item with property substantially the same.

**(6)** Glass at the cost of replacement with safety glazing material if required by law.

**(7)** Tenants' Improvements and Betterments at:

    **(a)** Replacement cost if you make repairs promptly.

    **(b)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

        **(i)** Multiply the original cost by the number of days from the loss or damage to the expiration date of the lease; and

        **(ii)** Divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

        If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

    **(c)** Nothing, if others pay for repairs or replacement.

**(8)** "Valuable Papers and Records" at the cost of restoration or replacement. To the extent that the contents of the "valuable papers and records" are not restored or replaced, the "valuable papers and records" will be valued at the cost of replacement with blank material of substantially identical type.

**(9)** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**(10)** Property in transit (other than "stock" you have sold) at the amount of invoice, including your prepaid or advanced freight

charges and other charges which may have accrued or become legally due from you since the shipment. If you have no invoice, the actual cash value will apply.

**(11)** "Money" at its face value.

**(12)** "Securities" at their value at the close of business on the day the loss is discovered.

**(13)** Accounts Receivable as follows:

    **(a)** If you cannot accurately establish the amount of Accounts Receivable outstanding as of the time of loss, we will:

        **(i)** Determine the total of the average monthly amounts of Accounts Receivable for the 12 months immediately preceding the month in which the loss occurs; and

        **(ii)** Adjust that total for any normal fluctuations in the amount for Accounts Receivable for the month in which the loss occurred or for any demonstrated variance from the average for that month.

    **(b)** If you can accurately establish the amount of Accounts Receivable outstanding, that amount will be used in the determination of loss.

    **(c)** The following will be deducted from the total amount of Accounts Receivable, however that amount is established:

        **(i)** The amount of the accounts for which there was no loss;

        **(ii)** The amount of the accounts that you are able to reestablish or collect;

        **(iii)** An amount to allow for probable bad debts that you are normally unable to collect; and

        **(iv)** All unearned interest and service charges.

**(14)** "Electronic Data Processing Equipment" at replacement cost as of the time and place of loss, without deduction for physical deterioration, depreciation, obsolescence or depletion. However, in the event of replacement of "electronic data processing equipment" with identical property is impossible, the replacement cost will be the cost of items that are

similar to the damaged or destroyed equipment and intended to perform the same function, but which may include technological advances.

"Electronic data processing equipment" that is obsolete or no longer used by you will be valued at actual cash value.

**(15)** "Electronic Media and Data" at the cost of the same or similar blank media.

**(16)** "Electronic Data":

**(a)** For which duplicates or back-ups do not exist, will be valued at your cost to research, replace or restore the "electronic data," but only if the "electronic data" is actually replaced or restored.

**(b)** For which full duplicates or back-ups exist, will be valued at your cost of labor to copy the "electronic data" from such duplicates or back-ups, but only if the "electronic data" is actually copied.

**(c)** For which partial duplicates or back-ups exist, will be valued at your cost of labor to copy the partial "electronic data" from such duplicates or back-ups, and your cost to research, replace or restore the remaining "electronic data," but only if the "electronic data" is actually copied and replaced or restored.

**(d)** In the event that you are not able to copy "electronic data" from back-ups, or replace or restore, "electronic data" will be valued at your cost of labor up to the point in time that you reach that determination.

**(17)** The value of United States Government Internal Revenue taxes and custom duties and refundable state and local taxes paid or fully determined on the following property held for sale will not be considered in determining the value of Covered Property:

**(a)** Distilled spirits;

**(b)** Wines;

**(c)** Rectified products; or

**(d)** Beer.

**(18)** Lottery tickets at their initial cost to you except for winning tickets at their redeemed value.

**f.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property, if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**g.** We may elect to defend you against suits arising from claims of owners of property. We will do so at our expense.

**h.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss provided you have complied with all of the terms of this policy; and

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**i.** At our option, we may make a partial payment toward any claims, subject to the policy provisions and our normal adjustment process. To be considered for partial claim payment, you must submit a partial sworn proof of loss with supporting documentation. Any applicable policy deductibles must be satisfied before any partial payments are made.

**j.** Pair, Sets or Parts

**1.** Pair or Set. In case of "loss" to any part of a pair or set we may:

**(a)** Repair or replace any part to restore the pair or set to its value before the "loss"; or

**(b)** Pay the difference between the value of the pair or set before and after the "loss."

**2.** Parts. In case of "loss" to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

**k.** Commodity Stock

We will determine the value of merchandise and raw materials that are bought and sold at an established market exchange. We will determine the value at:

**(1)** The posted market price as of the time and place of loss;

**(2)** Less discounts and expenses you otherwise would have had.

1002000752067314575172

5. **Loss Payment – Business Income and Extra Expense**

   a. If the Declarations indicate that Business Income and Extra Expense applies to Buildings or Business Personal Property, the amount of Business Income loss will be determined based on:

      (1) The Net Income of the business before the direct physical loss or damage occurred;

      (2) The likely Net Income of the business if no likely loss or damage occurred, but not including any likely increase in Net Income attributable to an increase in the volume of business as a result if favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

      (3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

      (4) Other relevant sources of information, including:

         (a) Your financial records and accounting procedures;

         (b) Bills, invoices and other vouchers; and

         (c) Deeds, liens or contracts.

   b. The amount of Extra Expense will be determined based on:

      (1) All reasonable and necessary expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

         (a) The salvage value that remains of any property bought for temporary use during the "period of restoration," once "operations" are resumed; and

         (b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

      (2) All reasonable and necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

   c. We will reduce the amount of your:

      (1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations," in whole or in part, by using damaged or undamaged property (including merchandise or "stock") at the described premises or elsewhere; or

      (2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

   d. If you do not resume "operations," or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

   e. We will pay for covered loss or damage within 30 days after we receive your sworn proof of loss provided you have complied with all of the terms of this policy; and

      (1) We have reached agreement with you on the amount of loss; or

      (2) An appraisal award has been made.

6. **Vacancy**

   a. **Description of Terms**

      (1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs (a) and (b) below:

         (a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

         (b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

            i. Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

            ii. Used by the building owner to conduct customary operations.

      (2) Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

With respect to Covered Causes of Loss other than those listed in paragraphs **(1)(a)** through **(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay the recovery expenses and the expenses to repair the recovered property, subject to the applicable Limit of Insurance.

**8. Noncumulative Limit**

No Limit of Insurance cumulates from policy period to policy period.

**F. COMMERCIAL PROPERTY CONDITIONS**

**1. Concealment, Misrepresentation or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This policy;

**b.** The Covered Property;

**c.** Your interest in the Covered Property; or

**d.** A claim under this policy.

**2. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more premises will not affect coverage at any premises where, at the time of loss or damage, the breach of condition does not exist.

**3. Insurance Under Two or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**4. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form unless:

**a.** There has been full compliance with all of the terms of this Coverage Form; and

**b.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**5. Liberalization**

If, during your policy period, we adopt any revision that would broaden the coverage under this policy without additional premium the broadened coverage will immediately apply to this policy. The broadened coverage will also apply to the renewal of this policy if such renewal was in process, or was mailed prior to the date we adopted such revision.

**6. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**7. Other Insurance**

**a.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Form. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Form bears to the Limits of Insurance of all insurance covering on the same basis.

**b.** If you have other insurance covering the same loss or damage, other than that described in Paragraph a. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**8. Policy Period, Coverage Territory**

Under this Coverage Form:

a. We cover loss or damage you sustain through acts committed or events occurring:

   (1) During the policy period shown in the Declarations; and

   (2) Within the coverage territory; and

b. The coverage territory is:

   (1) The United States of America (including its territories and possessions);

   (2) Puerto Rico; and

   (3) Canada

9. **Transfer of Rights of Recovery Against Others To Us**

   Applicable to the Businessowners Property coverage:

   If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing.

   a. Prior to a loss to your Covered Property or Covered Income; or

   b. After a loss to your Covered Property only if, at the time of loss, that party is one of the following:

      (1) Someone insured by this insurance;

      (2) A business firm:

         (a) Owned or controlled by you; or

         (b) That owns or controls you; or

      (3) Your tenant.

      This will not restrict your insurance.

10. **Coinsurance**

    If a Coinsurance percentage is shown in the Declarations, the following condition applies.

    a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss multiplied by the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property

       Instead, we will determine the most we will pay using the following steps:

       (1) Multiply the value of Covered Property at the time of loss by the Coinsurance Percentage;

    (2) Divide the Limit of Insurance of the property by the figure determined in step (1);

    (3) Multiply the total amount of the covered loss, before the application of any deductible, by the figure determined in step (2) above; and

    (4) Subtract the deductible from the figure determined in step (3).

    We will pay the amount determined in step (4) or the limit of insurance, whichever is less.

    For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

    **Example No. 1 (Under Insurance):**

    When:

| | |
|---|---|
| The value of the property is | $250,000 |
| The coinsurance percent for it is | 90% |
| The Limit of Insurance for it is | $112,500 |
| The Deductible is | $250 |
| The amount of loss is | $40,000 |

    Step (1): $250,000 x 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements)

    Step (2): $112,500/$225,000 = .50

    Step (3): $40,000 x .50 = $20,000

    Step (4): $20,000 - $250 = $19,750

    We will pay no more than $19,750. The remaining $20,250 is not covered.

    **Example No. 2 (Adequate Insurance):**

    When:

| | |
|---|---|
| The value of the property is | $250,000 |
| The Coinsurance percentage for it is | 90% |
| The Limit of Insurance for it is | $225,000 |
| The Deductible is | $250 |
| The amount of loss is | $40,000 |

    The minimum amount of insurance to meet your Coinsurance requirement is $225,000 ($250,000 x 90%).

    Therefore, the Limit of Insurance in this Example is adequate and no penalty applies.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

SB-146801-I
(Ed. 04-14)

We will pay no more than $39,750 ($40,000 amount of loss minus the deductible ($250).

**b.** Coinsurance does not apply to:

**(1)** "Money" and "securities";

**(2)** Additional Coverages;

**(3)** Coverage Extensions; or

**(4)** Loss or damage in any one occurrence totaling less than $2,500.

**11. Mortgageholders**

**a.** The term, mortgageholder, includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Form, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership or occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Form will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's rights to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. PROPERTY DEFINITIONS**

**1.** **"Banking Premises"** means the interior of that portion of any building which is occupied by a banking institution or similar safe depository.

**2.** **"Breakdown"**

**a.** Means:

**(1)** Failure of pressure or vacuum equipment;

**(2)** Mechanical failure, including rupture or bursting caused by centrifugal force; or

**(3)** Electrical failure including arcing;

That causes physical damage to "covered equipment" and necessitates its repair or replacement; and

**b.** Does not mean:

**(1)** Malfunction, including but not limited to adjustment, alignment, calibration, cleaning or modification;

**(2)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(3)** Damage to any vacuum tube, gas tube, or brush;

**(4)** Damage to any structure or foundation supporting the "covered equipment" or any of its parts;

**(5)** The functioning of any safety or protective device; or

**(6)** The cracking of any part on any internal combustion gas turbine exposed to the products of combustion.

**3.** **"Communication Supply Services"**

**a.** Means property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

100200075206731457 51174



Includes copyrighted material of Insurance Services Office, Inc., with its permission

**(1)** Communication transmission lines, including fiber optic transmission lines;

**(2)** Coaxial cables; and

**(3)** Microwave radio relays, except satellites and;

**b.** Does not mean overhead transmission lines.

**4.** **"Covered Equipment"**

**a.** Means the following types of equipment:

**(1)** Equipment designed and built to operate under internal pressure or vacuum other than weight of contents;

**(2)** Electrical or mechanical equipment that is used in the generation, transmission or utilization of energy;

**(3)** Refrigeration or Air Conditioning systems;

**(4)** Fiber optic cable; and

**(5)** Hoists and cranes;

**b.** Does not mean any

**(1)** "Electronic data processing equipment";

**(2)** "Electronic media and data" or "electronic data";

**(3)** Part of pressure or vacuum equipment that is not under internal pressure of its contents or internal vacuum;

**(4)** Insulating or refractory material;

**(5)** Pressure vessels and piping that are buried below ground and require the excavation of materials to inspect, remove, repair, or replace;

**(6)** Structure, foundation, cabinet or compartment supporting or containing the "covered equipment" or part of the "covered equipment" including pen-stock, draft tube or well casing;

**(7)** Vehicle, aircraft, self-propelled equipment or floating vessel, including any equipment mounted on or used solely with any vehicle, aircraft, self-propelled equipment or floating vessel;

**(8)** Elevator or escalator, but not excluding any electrical machine or apparatus mounted on or used with this equipment; or

**(9)** Equipment or any part of such equipment manufactured by you for sale.

**5.** **"Diagnostic Equipment"** means any:

**a.** Equipment; or

**b.** Apparatus;

used solely for research, diagnostic, medical, surgical, therapeutic, dental or pathological purposes.

**6.** **"Electronic Data"**

**a.** Means information reduced to an electronic format for processing with and storage in "electronic data processing equipment," software and programming records and instructions used for "electronic data processing equipment."

**b.** Any reference to your "electronic data" means "electronic data" owned or licensed by you and stored on your "electronic data processing equipment."

**c.** Does not mean "valuable papers and records."

**7.** **"Electronic Media and Data"**

**a.** Means physical media on which "electronic data" is stored, and the "electronic data" stored thereon, including without limitation, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other repositories used with electronically controlled equipment.

**b.** Any reference to your "electronic media and data" means "electronic media and data" owned by you and stored on your "electronic data processing equipment."

**c.** "Electronic media and data" does not mean any "valuable papers & records."

**8.** **"Electronic Data Processing Equipment"**

**a.** Means any of the following equipment:

**(1)** Computers, facsimile machines, word processors, multi-functional telephones and computer servers, and

**(2)** Any component parts and peripherals of such equipment, including related surge protection devices.

**(3)** Laptops and personal digital assistants.

**(4)** "Diagnostic Equipment"

**b.** "Electronic data processing equipment" does not mean equipment used to operate production type of:

**(1)** Machinery; or

**(2)** Equipment.

**c.** Any reference to your "electronic data processing equipment" means "electronic data processing equipment" used in your

"operations" and controlled and operated by you, and includes any "electronic data processing equipment" controlled or operated by a third party on your behalf.

9.  **"Employee(s)"** means:

    a.  Any natural person:

        (1) While in your service (and for 30 days after termination of service); and

        (2) Whom you compensate directly by salary, wages or commissions; and

        (3) Whom you have the right to direct and control while performing services for you.

    b.  Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the premises.

    c.  Your directors or trustees while acting as a member of any of your elected or appointed committees to perform on your behalf specific, as distinguished from general, directorial acts.

    But "employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character.

10. **"Employee Dishonesty"** means only dishonest acts, committed by an "employee," whether identified or not, acting alone or in collusion with other persons, except you, a partner, a "member" or a "manager," including the "theft" of Personal Property of Others in your care custody or control by an "employee," with the manifest intent to:

    a.  Cause you, your customers or clients to sustain loss; and also

    b.  Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

        (1) The "employee"; or

        (2) Any person or organization intended by the "employee" to receive that benefit.

11. **"Fine Arts"**

    a.  Means paintings, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, marbles, bronzes, antique furniture, rare books, antique silver, porcelains, rare glass, bric-a-brac, and similar property with historical value, or artistic merit; and

    b.  Does not mean any glass that is a part of a building or structure.

12. **"Flood"** means a general and temporary condition of partial or complete inundation of normally dry land areas, whether caused by natural occurrences, acts or omissions of man or any other cause or combination of causes.

    All flooding in a continuous or protracted event will constitute a single "flood."

13. **"Forgery"** means the signing of the name of another person or organization with intent to deceive. "Forgery" does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity for any purpose.

14. **"Interior of any building or structure"** as used in this policy means all portions of the structure that are within the exterior skin of the structure's walls and roof, including, but not limited to lathe, sand paper, framing, wallboard and tarpaper.

15. **"Maintenance Fees"** means the regular payment made to you by unit-owners and used to service the common property.

16. **"Manager"** means a person serving in a directorial capacity for a limited liability company.

17. **"Member"** means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager."

18. **"Money"** means currency and coins in current use, bank notes, travelers checks, register checks and money orders held for sale to the public.

19. **"Operations"** means the type of your business activities occurring at the described premises and tenantability of the described premises.

20. **"Period of restoration"** means the period of time that:

    a.  Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

    b.  Ends on the earlier of:

        (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

        (2) The date when business is resumed at a new permanent location.

    "Period of restoration" does not include any increased period required due to the enforcement of any law that:

1002000752067314575175

Includes copyrighted material of Insurance Services Office, Inc., with its permission

**(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(b)** Regulates the prevention, control, repair, clean-up or restoration of environmental damage.

The expiration date of this policy will not cut short the "period of restoration."

**21. "Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste, and any unhealthful or hazardous building materials (including but not limited to asbestos and lead products or materials containing lead). Waste includes materials to be recycled, reconditioned or reclaimed.

**22. "Power Generating Equipment"**

**a.** Means the following types of equipment or apparatus:

**(1)** Pressure;

**(2)** Mechanical; or

**(3)** Electrical;

Used in or associated with the generation of electrical power; and

**b.** Does not mean such equipment that is used solely to generate emergency power that is less than or equal to 1000KW

**23. "Power Supply Services"**

**a.** Means the following types of property supplying electricity, steam or gas to the described premises:

**(1)** Utility generating plants;

**(2)** Switching stations;

**(3)** Substations;

**(4)** Transformers; and

**(5)** Transmission Lines; and

**b.** Does not mean overhead transmission lines.

**24. "Production Equipment"**

**a.** Means any:

**(1)** Production machinery; or

**(2)** Process machinery that processes, shapes, forms or grinds:

**i.** Raw materials;

**ii.** Materials in process; or

**iii.** Finished products; and

**b.** Includes "covered equipment" that is used solely with or forms an integral part of the:

**(1)** Production;

**(2)** Process; or

**(3)** Apparatus.

**25. "Rental Value"** means Business Income that consist of:

**a.** Net income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including the fair rental value of any portion of the described premises which is occupied by you; and

**b.** Continuing normal operating expenses incurred in connection with that premises, including:

**(1)** Payroll; and

**(2)** The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

**26. "Securities"** means negotiable and nonnegotiable instruments or contracts representing either "money" or other property and includes:

**a.** Tokens, tickets except lottery tickets, revenue and other non-postage stamps whether or not in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which are not of your own issue;

but does not include "money." Lottery tickets held for sale are not securities.

**27. "Specified causes of loss"** means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss of or damage to:

Includes copyrighted material of Insurance Services Office, Inc., with its permission

**(1)** Personal Property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the ground surface.

**28.** **"Stock"** means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**29.** **"Suspension"** means:

**a.** The partial or complete cessation of your business activities; or

**b.** That a part or all of the described premises is rendered untenantable.

**30.** **"Theft"** means any act of stealing.

**31.** **"Vacant"** means the following

**a.** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary business operation.

**b.** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(1)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

**(2)** Used by the building owner to conduct customary operations.

**32.** **"Valuable papers and records"** means inscribed, printed or written:

**a.** Documents;

**b.** Manuscripts; and

**c.** Records;

Including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean:

**a.** "Money" or securities";

**b.** "Electronic data";

**c.** "Electronic media and data";

**33.** **"Water Supply Services"** means the following types of property supplying water to the described premises:

**a.** Pumping stations; and

**b.** Water mains.

**H.** **MALICIOUS CODE, SYSTEM PENETRATION AND DENIAL OF SERVICE DEFINITIONS:**

**1.** **"Denial of Service"** means any failure or inability of any person, user, customer, "electronic data processing equipment," computer system or computer network to communicate with, gain access to, or use, any "electronic data processing equipment," computer system, computer network, "electronic media and data" or "electronic data" because an excessive volume of data, requests or communications is sent to, received by or processed by such "electronic data processing equipment," computer system or computer network, and depletes the bandwidth, capacity or

computational resources thereof, including without limitation, any business interruption caused by the foregoing.

2. **"Electronic Data Peril"** means:

   **a.** Corruption, unauthorized use, distortion, deletion, damage, destruction or any other harm to, or misappropriation or copying of, "electronic data" or information;

   **b.** Interruption, delay, disruption, suspension, loss of functionality of, inaccessibility to, unauthorized access to or inability to use or communicate with, "electronic data processing equipment," "electronic media and data," "electronic data," computer resources, electronic devices, computer system, computer network or equipment; or

   **c.** Misappropriation, transfer or copying of any property, "money," "securities" or "stock," including without limitation, the use of any computer to cause such misappropriation, transfer or copying;

3. **"Malicious Code"** means any data, computer program, software, firmware or computer code designed to cause or result in, or that does cause or result in (whether designed to do so or not), any "electronic data peril," including without limitation, computer viruses, worms or Trojan horses.

4. **"Mass Attack Malware"** means any "malicious code":

   **a.** Capable of replicating or mutating;

   **b.** Propagating, spreading or moving to other "electronic data processing equipment," "electronic media and data," "electronic data," electronic devices, media, computer systems, equipment or computer networks, including without limitation, by attaching to applications, e-mails, e-mail attachments or otherwise;

   **c.** Designed to exploit a vulnerability that is common to or present on more than one "electronic data processing equipment," "electronic media and data," "electronic data," electronic devices, media, computer systems, equipment or computer networks; or

   **d.** That infects, is stored upon, exists within or resides on more than one "electronic data processing equipment," "electronic media and data," "electronic data," electronic device, media, computer system, equipment or computer network.

5. **"Mass System Penetration"** means any "system penetration" that:

   **a.** Exploits, or is designed to exploit, a vulnerability that is common to or present on more than one "electronic data processing equipment," "electronic media and data," "electronic data," electronic devices, media, computer systems, equipment or computer networks; or

   **b.** Targets or exploits more than one "electronic data processing equipment," "electronic media and data," "electronic data," electronic device, media, computer system, equipment or computer network.

6. **"System Penetration"** means any access to or use of any "electronic data processing equipment," "electronic media and data," "electronic data," electronic device, computer system, equipment or computer network intended to cause or result in, or that does cause or result in, any "electronic data peril," which is not directly or indirectly enabled by "malicious code" and which is achieved by a person without the use or assistance, directly or indirectly, of "malicious code."

7. **"Targeted Hacker Attack"** means the corruption, distortion, damaging, deletion or destruction of your "electronic data" resulting from "targeted system penetration" or "targeted malware."

8. **"Targeted Malware"** means any "malicious code" that:

   **a.** Is intended by a hacker to specifically infect, or be stored or reside on, only your "electronic data processing equipment";

   **b.** Is incapable of replicating, mutating, propagating, spreading or moving to other "electronic data processing equipment," "electronic media and data," "electronic data," electronic devices, media, computer systems or computer networks;

   **c.** Does not infect or reside on any other "electronic data processing equipment," "electronic media and data," "electronic data," computer system, electronic device, or computer network that is not yours; and

   **d.** Exploits a vulnerability that is unique to, and present on, only your "electronic data processing equipment," and such vulnerability is not common to or present on any other "electronic data processing equipment," computer, electronic device, medium, computer system, equipment or computer network.

SB-146801-I
(Ed. 04-14)

9. "**Targeted System Penetration**" means "system penetration" that is designed to target and exploit, and that does target and exploit, a vulnerability that is unique to, and present on, only your "electronic data processing equipment," and such vulnerability is not common to or present on any other "electronic data processing equipment," computer, electronic device, medium, computer system, equipment or computer network.



SB146802E
(Ed. 6-16)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**BUSINESS INCOME AND EXTRA EXPENSE**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.** Coverage.

**Business Income and Extra Expense**

Business Income and Extra Expense is provided at the premises described in the Declarations when the Declarations show that you have coverage for Business Income and Extra Expense.

1. **Business Income**

   a. Business Income means:

      (1) Net Income (Net Profit or Loss before Income taxes) that would have been earned or incurred, including:

         (a) "Rental Value"; and

         (b) "Maintenance Fees," if you are a condominium association; and

      (2) Continuing normal operating expenses incurred, including payroll, subject to 90 day limitation if indicated on the Declaration page.

   b. We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

   c. Your loss of Business Income is covered up to 30 consecutive days when caused as a direct result of damage, by a Covered Cause of Loss, to property adjacent to your premises.

   d. With respect to the requirements set forth in Paragraph **b.** above, if you rent, lease or occupy only part of the site at which the described premises are located, the described premises means:

      (1) The portion of the building which you rent, lease or occupy; and

      (2) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

   e. **Property in Transit**

      (1) We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur during the "period of restoration" due to direct physical loss of or damage to:

         (a) Your business personal property; or

         (b) Personal property of others in your care, custody or control;

         while such property in the due course of transit.

         If caused by such loss or damage to property in the due course of transit, we will also pay for the actual loss of Business Income you sustain during the additional period of coverage provided under the Extended Business Income Additional Coverage.

      (2) Insurance under this Additional Coverage applies only if the loss or damage to the property in transit is caused by a Covered Cause of Loss. Insurance under this Additional Coverage does not apply to any loss of Business Income or Extra Expense due to loss of or damage to:

Copyright, CNA  All Rights Reserved.

**CNA**

SB146802E
(Ed. 6-16)

**(a)** Vehicles or self propelled machines (including motor vehicles, trailers, aircraft, watercraft and similar conveyances) unless such vehicles are themselves in the due course of transit in or on another transporting conveyance;

**(b)** Property while waterborne, except in regular ferry operations in the course being moved by other means of transportation;

**(c)** Property shipped by mail;

**(d)** Contraband, or property in the course of illegal transportation or trade;

**(e)** Import shipments that have not been unloaded from any importing aircraft or watercraft, or that are under the protection of marine insurance;

**(f)** Export shipments once loaded on board exporting aircraft or watercraft, or under the protection of marine insurance; or

**(g)** Properly sold by you under conditional sale, trust agreement, installment payment or other deferred payment plan, after delivery to customers.

**(3)** The most we will pay for loss under this Additional Coverage is $10,000 unless a different Limit of Insurance is shown in the Declarations for Property in Transit – Business Income and Extra Expense.

**2. Extra Expense**

**a.** Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.

**b.** We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations; or

**(2)** Minimize the "suspension" of business if you cannot continue "operations."

**c.** We will also pay Extra Expense (including Expediting Expenses) to repair or replace the property, but only to the extent it reduces the amount of loss that otherwise would have been payable under Paragraph **1.** Business Income above.

**3. Extended Business Income**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under Paragraph **1.** Business Income above, we will also pay for the actual loss of Business Income you sustain during the period that:

**a.** Begins on the date property is actually repaired, rebuilt or replaced and "operations are resumed; and

**b.** Ends on the earlier of:

**(1)** The date you could restore your "operations" with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage occurred; or

**(2)** Sixty consecutive days after the date determined in paragraph **a.** above.

However, this extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of loss in the area where the described premises are located.

**4.** If the Declarations show for Business Income and Extra Expense:

**a.** Actual loss sustained for 12 consecutive months, then we will pay for loss of Business Income and Extra Expense that occurs within 12 consecutive months following the date of direct physical loss or damage; or actual loss sustained for the number of months shown on the Declaration page; or

**b.** Subject to a. above, if a maximum dollar limit is shown on the Declarations page, then we will pay actual loss sustained up to a maximum dollar limit, for the loss of Business Income and Extra Expense.



Copyright, CNA  All Rights Reserved.



SB146802E
(Ed. 6-16)

5.  "Electronic Data Processing Equipment" and "Electronic Media and Data"

    **a.**  "Electronic data processing equipment" and "electronic media and data" shall be considered covered property as referenced in this Coverage Part.

    **b.**  We shall not be liable for any payment for the Extra Expense you incur, and loss of Business Income you sustain, during the first 12 hours following the start of a necessary "suspension" of your "operations" during the "period of restoration" that is caused by direct physical loss of or damage to "electronic data processing equipment" or "electronic data and media" at the described premises; or at the premises of a 3rd party vendor who is managing or controlling your "electronic data processing equipment" on your behalf, provided, however, if the Business Income And Extra Expense – 72 Hour Deductible endorsement is part of this policy, the 72 hour deductible stated in that endorsement shall apply with respect to this sub-paragraph **5.b.** instead of the 12 hour deductible set forth above.

All other terms and conditions of the Policy remain unchanged.

Copyright, CNA  All Rights Reserved.

**CNA**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SEASONAL INCREASE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form:

Subject to the Exclusions, Conditions and Limitations of this policy, you may extend this insurance as indicated below.

Unless otherwise stated, payments made under the following coverage will not increase the applicable Limits of Insurance.

1. The Limit of Insurance for Business Personal Property shown in the Declarations will automatically increase by 25%, or the amount shown in the Declarations to provide for seasonal variations.

2. This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

   a. The 12 months immediately preceding the date of the loss or damage occurs; or

   b. The period of time you have been in business at the location where the loss or damage occurs, on the date the loss or damage occurs.





SB-146804-A
(Ed. 01/06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ARSON & THEFT REWARD

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Section **A.5. Additional Coverages.**

Unless otherwise stated, payments made under the following Additional Coverage is in addition to the applicable Limits of Insurance.

**Arson and Theft Reward**

1.  We will pay for reasonable expenses you incur for rewards that lead to:

    a.  An arson conviction in connection with a covered fire or explosion loss; or

    b.  A "theft" conviction in connection with a covered "theft" loss.

2.  The most we will pay under this Additional Coverage in connection with a particular loss is $5,000.

**CNA**

SB146805B
(Ed. 6-16)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CLAIM DATA EXPENSE**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage under Section **A.5. Additional Coverages**:

Unless otherwise stated, payments made under the following Additional Coverage is in addition to the applicable Limit of Insurance.

Claim Data Expense

1.  We will pay the reasonable and necessary expenses you incur in preparing claim data when we require such data or we request you prepare income statements to show the extent of covered loss or damage. This includes the cost of taking inventories, making appraisals, preparing income statements, and preparing other documentation.

2.  Under this Additional Coverage, we will not pay for:

    a.  Any fees, costs or expenses incurred, directed or billed by or payable to:

        (1)  attorneys, public adjusters, loss adjusters, loss consultants or their associates or subsidiaries; or

        (2)  insurance brokers or agents, or their associates or subsidiaries, including related forensic accounting services, without our written consent prior to such expenses being incurred.

    b.  Any costs incurred in connection with Paragraph E.2. Appraisal.

3.  The most we will pay for preparation of claim data under this Additional Coverage in any one occurrence is $5,000 regardless of the number of premises involved.

All other terms and conditions of the Policy remain unchanged.



SB146805B (Ed. 6-16)
Page 1 of 1

Copyright, CNA  All Rights Reserved.



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DEBRIS REMOVAL

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.5. Additional Coverages.**

Unless otherwise stated, payments made under the following Additional Coverage is in addition to the applicable Limit of Insurance.

**Debris Removal**

1. We will pay your expense to remove debris of Covered Property, other than outdoor trees, shrubs, plants and lawns as described in the Outdoor Trees, Shrubs, Plants and Lawns Coverage Extension, caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us within 180 days of the date of direct physical loss or damage

2. Debris Removal does not apply to costs to:

   a. Extract "pollutants" from land or water; or

   b. Remove, restore or replace polluted land or water.

3. Except as provided in Paragraph **4.** below, payment for Debris Removal is included within the applicable Limit of Insurance shown in the Declarations. The most we will pay under this Additional Coverage is 25% of:

   a. The amount we pay for the direct physical loss or damage to Covered Property; plus

   b. The deductible in this Coverage Form applicable to that loss or damage.

4. When the debris removal expense exceeds the 25% limitation in Paragraph **3.** above or when the sum of the debris removal expense and the amount we pay for the direct physical loss of or damage to Covered Property exceeds the applicable Limit of Insurance, we will pay up to an additional $25,000, or the limit shown in the Declarations, for debris removal expense in any one occurrence, at each described premises.

**CNA**

SB146807E
(Ed. 6-16)

## EMPLOYEE DISHONESTY

This endorsement modifies insurance provided under the following:

  BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.5. Additional Coverages:**

Unless otherwise stated, payments under the following Additional Coverage are in addition to the applicable Limit of Insurance.

**Employee Dishonesty**

1.   We will pay for loss of or damage to Business Personal Property resulting directly from "employee dishonesty."

     We will pay for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

2.   Paragraphs **A.2.m., A.2.n., A.2.p., B.1.k., B.2.h., B.2.i., B.2.n.** and **B.2.o.** do not apply to this Additional Coverage.

3.   We will not pay for loss resulting from the dishonest acts of any "employee" if coverage for that "employee" was either cancelled or excluded from any previous insurance of yours providing "employee dishonesty" coverage.

4.   This Additional Coverage is cancelled as to any "employee" immediately upon discovery by:

     **a.**   You; or

     **b.**   Any of your partners, "members," "managers," officers, directors or trustees not in collusion with the "employee,"

     of any fraudulent dishonest act committed by that "employee" before or after being employed by you.

5.   We will pay for covered loss or damage only if discovered no later than one year from the end of the Policy Period.

6.   The most we will pay for loss under this Additional Coverage in any one occurrence is the limit shown on the Declarations regardless of the number of premises involved.

7.   With respect to this Additional Coverage, occurrence means all loss or damage caused by or involving the same "employee(s)" whether the result of a single act or series of acts.

8.   If, during the period of any prior "Employee Dishonesty" insurance, you (or any predecessor in interest) sustained loss or damage that you could have recovered under that insurance, except that the time within which to discover loss or damage has expired, we will pay for it under this Additional Coverage, subject to the following:

     **a.**   This insurance became effective at the time of cancellation or termination of the prior insurance; and

     **b.**   The loss or damage would have been covered by this insurance had it been in effect when the acts or events causing the loss or damage were committed or occurred.

9.   The insurance provide under paragraph **8.** above is part of, not in addition to the Limit of Insurance described in Paragraph **6.** above and is limited to the lesser of the amount recoverable under:

     **a.**   This Additional Coverage, as of its effective date; or

     **b.**   The prior "Employee Dishonesty" insurance, had it remained in effect.

10. We will not pay for loss or damage under this endorsement until the amount of loss or damage in any one occurrence exceeds $250. We will then pay the amount of loss or damage in excess of the $250 up to the Limit of Insurance.



SB146807E (Ed. 6-16):
Page 1 of 2

Copyright, CNA  All Rights Reserved.



**11.** Under **PROPERTY DEFINITIONS**, and only for the purpose of the coverage provided by this **Employee Dishonesty** Additional Coverage, the definition of "employee" is deleted and replaced by the following:

**"Employee(s)"** means:

**a.** Any natural person:

    **(1)** While in your service (and for 30 days after termination of service); and

    **(2)** Whom you compensate directly by salary, wages or commissions; and

    **(3)** Whom you have the right to direct and control while performing services for you.

**b.** Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding, however, any such person while having custody of property outside the premises.

**c.** Any natural person, whether or not compensated, while performing services for you as a member or chairperson of any committee.

**d.** Your natural person director or trustee while acting as a member of any of your elected or appointed committees to perform on your behalf specific, as distinguished from general, directorial acts.

But "employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character.

All other terms and conditions of the Policy remain unchanged.

Copyright, CNA  All Rights Reserved.

**CNA**

SB-146808-A
(Ed. 01/06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXPEDITING EXPENSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.5.** Additional Coverages.

Unless otherwise stated, payments made under the following Additional Coverage is in addition to the applicable Limits of Insurance.

**Expediting Expenses**

1.  In the event of direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss, we will pay for the reasonable and necessary additional expenses you incur to make temporary repairs, expedite permanent repairs, or expedite permanent replacement, at the premises sustaining loss or damage. Expediting expenses include overtime wages and the extra cost of express or other rapid means of transportation. Expediting expenses do not include expenses you incur for the temporary rental of property or temporary replacement of damaged property.

2.  With respect to this Additional Coverages, "breakdown" to "covered equipment" will not be considered a Covered Cause of Loss, even if otherwise covered elsewhere in this Policy.

3.  The most we will pay under this Additional Coverage in any one occurrence is $25,000, regardless of the number of premises involved.







SB-146809-C
(Ed. 07/09)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FINE ARTS

This endorsement modifies insurance provided under the following:

BUSINESS OWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.5.** Additional Coverages.

Unless otherwise stated, payments made under the following Additional Coverage is in addition to the applicable Limits of Insurance.

**Fine Arts**

1. When a Limit of Insurance is shown in the Declarations for Building or Business Personal Property at any described premises, we will pay for direct physical loss of or damage to "fine arts" which are owned by:

   a. You; or

   b. Others and in your care, custody or control;

   caused by or resulting from a Covered Cause of Loss, including while on exhibit, or in transit, anywhere within the Coverage Territory.

2. The breakage limitation under Paragraph **A.4.b.(2)** does not apply to this Additional Coverage.

3. The following exclusions apply to this Additional Coverage:

   a. We will not pay for loss or damage caused by or resulting from wear and tear, any quality in the property that causes it to damage or destroy itself, gradual deterioration, insects, birds, rodents or other animals;

   b. We will not pay for loss or damage caused by or resulting from dampness or dryness of atmosphere, or changes in extremes of temperature;

   c. We will not pay for loss or damage cause by or resulting from any repairing, restoration or retouching process;

   d. We will not pay for loss or damage cause by or resulting from faulty packing;

   e. Paragraph **B.1.b.** Earth Movement;

   f. Paragraph **B.1.c.** Governmental Action;

   g. Paragraph **B.1.d.** Nuclear Hazard;

   h. Paragraph **B.1.f.** War and Military Action;

   i. Paragraph **B.1.g. (1), (2) and (4)** Water;

   j. Paragraph **B.1.h.** Neglect; and

   k. Paragraph **B.2.g.** Frozen Plumbing

   No other exclusions in Paragraph **B.** Exclusions apply to this Additional Coverage. However, if any exclusions are added by endorsement to this policy, such exclusions will apply to this Additional Coverage.

4. The most we pay for loss or damage under this Additional Coverage in any one occurrence is $25,000, or the amount shown in the Declarations for "fine arts," whichever is greater.

5. This Additional Coverage does not apply to property:

   a. While in the custody of the United States Postal Service;

   b. After delivery to customers.

**CNA**

SB-146810-A
(Ed. 01/06)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FIRE DEPARTMENT SERVICE CHARGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.5.** Additional Coverages.

Unless otherwise stated, payments made under this following Additional Coverage is in addition to the applicable Limit of Insurance.

When the fire department is called to save or protect Covered Property from a Covered Cause of loss, we will pay up to $25,000 for your liability for fire department service charges:

**1.** Assumed by contract or agreement prior to loss; or

**2.** Required by local ordinance.



SB-146811-A
(Ed. 01/06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FIRE PROTECTIVE EQUIPMENT DISCHARGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.5.** Additional Coverages.

Unless otherwise stated, payments made under the following Additional Coverage is in addition to the Applicable Limits of Insurance.

1. If fire protective equipment discharges accidentally or to control a Covered Cause of Loss, we will pay your cost to:

   a. Refill or recharge the system with the extinguishing agents that were discharged; and

   b. Replace or repair faulty valves or controls which caused the discharge.

2. The most we will pay under this Additional Coverage in any one occurrence is $10,000, regardless of the number of premises involved.



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## FORGERY AND ALTERATION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.5.** Additional Coverages.

Unless otherwise stated, payment made under the following Additional Coverage is in addition to the applicable Limits of Insurance.

**Forgery and Alteration**

1.  We will pay for loss resulting directly from "forgery" or alteration of, on, or in any check, draft, promissory note, bill of exchange, or similar written promise, order or direction to pay a sum certain money, made or drawn by or drawn upon you, or made or drawn by one acting as an agent or claiming to have been so made or drawn.

    We will consider signatures that are produced or reproduced electronically, mechanically or by facsimile the same as handwritten signatures.

    We will pay for loss that you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

2.  We will not pay for loss resulting from any dishonest or criminal acts committed by your or any of your partners, "employees," "members," "managers," officers, directors or trustees whether acting alone or in collusion with other persons.

3.  We will pay for covered loss discovered no later than one year from the end of the Policy Period.

4.  The most we will pay for loss under this Additional Coverage in any one occurrence is the limit shown on the Declarations regardless of the number of premises involved.

5.  With respect to this Additional Coverage, occurrence means all loss caused by any person, or in which that person is concerned or implicated, either resulting from a single act or any number of such acts, whether the loss involves one or more instruments.

6.  If, during the period of any prior Forgery or Alteration insurance, you (or any predecessor in interest) sustained loss or damage that you could have recovered under that insurance, except that the time within which to discover loss or damage has expired, we will pay for it under this Additional Coverage provided:

    **a.** This insurance became effective at the time of cancellation or termination of the prior insurance; and

    **b.** The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

7.  The insurance provided under Paragraph **6.** above is part of, and not in addition to the limit described in Paragraph **4.** above and is limited to the lesser of the amount recoverable under:

    **a.** This Additional Coverage up to the applicable Limit of Insurance under this Policy, as of its effective date; or

    **b.** The prior Forgery or Alteration insurance, had it remained in effect.

8.  If you are sued for refusing to pay any covered instrument described in Paragraph **1.** above on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay any reasonable legal expenses that you incur and pay in that defense. The amount we pay for these legal expenses will be part of and not in addition to the limit described in Paragraph **4.** above.

9.  The following definition is added:

    **"Forgery"** means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity for any purpose.

10. Paragraphs **B.2.i.,** and **B.2.n.** do not apply to this Additional Coverage.





SB-146813-B
(Ed. 01/08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEWLY ACQUIRED OR CONSTRUCTED PROPERTY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.5.** Additional Coverages.

Unless otherwise stated, payments made under the following Additional Coverage is in addition to the applicable Limits of Insurance.

Newly Acquired or Constructed Property

**1. Buildings**

   **a.** We will pay for direct physical loss of or damage to the following property caused by or resulting from a Covered Cause of Loss:

      **(1)** Your:

         **(a)** New buildings while being built on a premises shown in the Declarations;

         **(b)** New buildings while being built on newly acquired premises; and

            **(i)** intended for similar use as a building described in the Declarations; or

            **(ii)** used as a warehouse

         **(c)** Materials, equipment, supplies and temporary structures used in connection with such buildings while they are being built; or

      **(2)** Buildings you acquire by purchase or lease at any premises, including those premises shown in the Declarations.

   **b.** The most we will pay for loss of or damage to newly constructed buildings or newly acquired buildings under this Additional Coverage in any one occurrence is $1,000,000 at each premises.

**2. Business Personal Property**

   **a.** When a Limit of Insurance is shown in the Declarations for Business Personal Property at any described premises, we will pay for direct physical loss of or damage to the following property caused by or resulting from a Covered Cause of Loss:

      **(1)** Business Personal Property, including such property that you newly acquire, at a building you acquire by purchase or lease at any premises, including those premises shown in the Declarations; and

      **(2)** Business Personal Property that you newly acquire at a described premises.

   **b.** The most we will pay for loss of or damage to Business Personal Property under this Additional Coverage in any once occurrence is $250,000 at each premises.

**3. Period of Coverage**

   **a.** With respect to insurance under this Additional Coverage, coverage will end when any of the following first occurs:

      **(1)** This policy expires;

      **(2)** 180 days expire after you acquire the property or begin to construct the property;

      **(3)** You report values to us; or

      **(4)** The property is more specifically insured.

   **b.** We will charge you additional premium for values reported to us from the date construction begins or you acquire the property.

**CNA**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ORDINANCE OR LAW

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Section **A.5. Additional Coverages.**

Unless otherwise stated, payments made under the following Additional Coverage is in addition to the applicable Limits of Insurance.

1. In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay for:

   **a.** Loss in value of the undamaged portion of the building as a consequence of enforcement of the minimum requirements of any ordinance or law that requires the demolition of undamaged parts of the same building;

   **b.** Demolition cost, meaning the cost to demolish and clear the site of undamaged parts of the same building as a consequence of enforcement of the minimum requirements of any ordinance or law that required demolition of such undamaged property; and

   **c.** The increased cost of construction, meaning the increased cost to repair, rebuild or reconstruct the property as a consequence of enforcement of the minimum requirements of any ordinance or law. This increased cost of construction coverage applies only if:

      **(1)** The building is insured for replacement cost;

      **(2)** The building is repaired, rebuilt or reconstructed; and

      **(3)** The repaired, rebuilt or reconstructed building is intended for similar occupancy as the current building, unless otherwise required by zoning or land use ordinance or law.

2. The ordinance or law referred to in this Additional Coverage is an ordinance or law that:

   **a.** Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

   **b.** Is in force at the time of the loss.

3. We will not pay under this Additional Coverage for:

   **a.** Loss due to any ordinance or law that:

   **(1)** You were required to comply with before the loss, even if the building was undamaged; and

   **(2)** You failed to comply with; or

   **b.** Costs associated with the enforcement of any ordinance or law that requires any insured or other to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

4. Paragraph **B.1.a.** does not apply to this Additional Coverage.

5. Subject to the limit described in Paragraph **6.** below:

   **a.** The insurance provided under this Additional Coverage for loss in value to the undamaged portion of the building is limited as follows:

      **(1)** If Replacement Cost Coverage applies and the building is repaired or replaced on the same or another premises, we will not pay more than the lesser of:

         **(a)** The amount you actually spend to repair, rebuild or reconstruct the undamaged portion of the building; or

         **(b)** The amount it would cost to restore the undamaged portion of the building on the same premises and to the same height, floor area, style and comparable quality of the original undamaged portion of the building; or

      **(2)** If Replacement Cost Coverage applies and the building is not repaired or replaced, or if Replacement Cost Coverage does not apply, we will not pay more than the actual cash value of the undamaged portion of the building at the time of loss.

   **b.** We will not pay more for demolition costs than the amount you actually spend to demolish and clear the site of the described premises.

   **c.** The insurance provided under this Additional Coverage for increased cost of construction is limited as follows:

      **(1)** If the building is repaired or replaced at the same premises, or if you elect to





1020000752067314575118S

SB-146814-B
(Ed. 03/06)

rebuild at another premises, the most we will pay is the increased cost of construction at the same premises; or

**(2)** If the ordinance or law requires relocation to another premises, the most we will pay is the increased cost of construction at the new premises.

**6.** The most we will pay for loss under this Additional Coverage for the total of all coverages described in:

**a.** Paragraph **1.a.** above in any one occurrence is the Building Limit at each described premises shown in the Declarations, if this coverage has been selected and is indicated on the Declarations.

**b.** Paragraph **1.b. and 1.c.** above in any one occurrence is $25,000 or the limit shown in the Declarations, whichever is greater at each described premises.

**CNA**

SB-146815-A
(Ed. 01/06)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## OUTDOOR TREES, SHRUBS, PLANTS AND LAWNS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Section **A.5.** Additional Coverages.

Unless otherwise stated, payments made under the following Additional Coverage is in addition to the applicable Limits of Insurance.

**Outdoor Trees, Shrubs, Plants and Lawns**

1.  We will pay for direct physical loss of or damage to outdoor trees, shrubs, plants (other than "stock"

of trees, shrubs or plants) and lawns located at the described premises caused by or resulting from a Covered Cause of Loss.

2.  The most we will pay for loss or damage under this Additional Coverage in any one occurrence is $3,000 at each described premises.

3.  Debris removal, because of covered loss or damage to outdoor trees, shrubs, plants and lawns, is included within the limits described in Paragraph **2.** above.



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLLUTANT CLEAN UP AND REMOVAL

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Property Coverage Form under Paragraph **A.5.** Additional Coverages.

Unless otherwise stated, payments made under the following Additional Coverage is in addition to the applicable Limits of Insurance.

**Pollutant Clean Up and Removal**

1. We will pay your necessary and reasonable expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from "specified causes of loss" that occurs:

   a. On the described premises;

   b. To Covered Property; and

   c. During the policy period.

2. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the "specified cause of loss" occurs.

3. This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants." But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

4. The most we will pay under this Additional Coverage is $25,000 for the sum of all covered expenses arising out of all Covered Causes of Loss occurring during each separate 12 month period of this policy beginning with the effective date of this policy. This amount applies regardless of the number of premises involved.

**CNA**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PRESERVATION OF PROPERTY

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.5.** Additional Coverages.

Unless otherwise stated, payments made under the following Additional Coverage is in addition to the applicable Limits of Insurance.

**Preservation of Property**

1. If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for:

   **a.** Any direct physical loss or damage to this property:

   **(1)** While it is being moved; or

   **(2)** Temporarily stored at another location only if the loss or damage occurs within 90 days after the property is first moved; and

   **b.** The costs incurred to:

   **(1)** Remove such property from the described premises; and

   **(2)** Return such property to the described premises.

2. Coverage under this Additional Coverage will end when any of the following first occurs:

   **a.** When the policy is amended to provide insurance at the new location;

   **b.** The property is returned to the original described premises;

   **c.** 90 days expire after the property is first moved; or

   **d.** This policy expires.

3. Payments under this Additional Coverage are subject to and not in addition to the applicable Limit of Insurance.





SB-146818-A
(Ed. 01/06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TEMPORARY RELOCATION OF PROPERTY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.5.** Additional Coverages.

Unless otherwise stated, payments made under the following Additional Coverage is in addition to the applicable Limits of Insurance.

**Temporary Relocation of Property**

1.  If Covered Property is removed from the described premises and stored temporarily at a location you own, lease or operate while the described premises is being renovated or remodeled, we will pay for loss or damage to that stored property:

    **a.**  Caused by or resulting from a Covered Cause of Loss;

    **b.**  Up to $50,000 at each temporary location; and

    **c.**  During the storage period of up to 90 consecutive days but not beyond expiration of this policy.

2.  This Additional Coverage does not apply if the stored property is more specifically insured.

**CNA**

SB-146819-A
(Ed. 01/06)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WATER DAMAGE, OTHER LIQUIDS, SOLDER OR MOLTEN MATERIAL DAMAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.5.** Additional Coverages.

Unless otherwise stated, payments made under the following Additional Coverage is in addition to the applicable Limits of Insurance.

**Water Damage, Other Liquids, Solder or Molten Material Damage**

1. If loss or damage caused by or resulting from covered water or other liquid, solder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

2. We will not pay the cost to repair any defect to a system or appliance from which the water, other liquid, solder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

   a. Results in discharge of any substance from an automatic fire protection system; or

   b. Is directly caused by freezing.

3. Payments made under this Additional Coverage are subject to and not in addition to the applicable Limit of Insurance.





## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ACCOUNTS RECEIVABLE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.6.** Coverage Extensions.

Unless otherwise stated, payments made under the following Coverage Extension is subject to and not in addition to the applicable Limits of Insurance.

**Accounts Receivable**

1. When a Limit of Insurance is shown in the Declarations for Building or Business Personal Property at the described premises, you may extend that insurance to apply to loss, as described in Paragraph **2.** below, due to direct physical loss of or damage to your records of accounts receivable (including those on electronic data processing media) caused by or resulting from a Covered Cause of Loss. Credit card company media will be considered accounts receivable until delivered to the credit card company.

2. We will pay for:

   a. All amounts due from your customers that you were unable to collect;

   b. Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

   c. Collection expenses in excess of your normal collection expenses that are made necessary by the loss or damage; and

   d. Other reasonable expenses that you incur to re-establish your records of accounts receivable.

3. The following exclusions apply to this Coverage Extension:

   a. We will not pay for loss caused by or resulting from bookkeeping, accounting or billing errors or omissions;

   b. We will not pay for loss that requires an audit of records or any inventory computation to prove its factual existence;

   c. We will not pay for loss caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of money, securities or other property. But this exclusion applies only to the extent of wrongful giving, taking or withholding;

   d. Paragraph **B.1.b.** Earth Movement;

   e. Paragraph **B.1.c.** Governmental Action;

   f. Paragraph **B.1.d.** Nuclear Hazard;

   g. Paragraph **B.1.f.** War and Military Action;

   h. Paragraph **B.1.g. (1), (2), and (4)** Water;

   i. Paragraph **B.1.h.** Neglect; and

   j. Paragraph **B.2.i.** False Pretense;

   No other exclusions in Paragraph **B.** Exclusions apply to this Coverage Extension. However, if any exclusions are added by endorsement to this Policy, such exclusions will apply to this Coverage Extension.

4. The most we will pay under this Coverage Extension for loss of or damage to records of accounts receivable in any one occurrence while in transit or at a premises other than the described premises is $25,000.

5. The most we will pay under this Coverage Extension for loss of or damage to records of accounts receivable in any one occurrence at each described premises is $25,000 or the amount shown in the Declarations for Accounts Receivable, whichever is greater.

6. Payments made under this Coverage Extension are in addition to the applicable Limits of Insurance.

**CNA**

SB-146821-A
(Ed. 01/06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# APPURTENANT BUILDINGS AND STRUCTURES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.6.** Coverage Extensions.

Unless otherwise stated, payments made under the following Coverage Extension is subject to and not in addition to the applicable Limits of Insurance.

**Appurtenant Buildings and Structures**

1. When a Limit of Insurance is shown in the Declarations for Building at the described premises, you may extend that insurance to apply to direct physical loss of or damage to incidental appurtenant buildings or structures, within 1,000 feet of that described premises, caused by or resulting from a Covered Cause of Loss.

2. When a Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises, you may extend that insurance to apply to direct physical loss of or damage to Business Personal Property within incidental appurtenant buildings or structures within 1,000 feet of that

described premises, caused by or resulting from a Covered Cause of Loss.

3. Incidental appurtenant buildings or structures include:

   **a.** Storage buildings;

   **b.** Carports;

   **c.** Garages;

   **d.** Pump houses; or

   **e.** Above ground tanks;

   Which have not been specifically described in the Declarations.

4. The most we will pay for loss or damage under this Coverage Extension in any one occurrence for any combination of loss of or damage to Building and Business Personal Property is $50,000, regardless of the number of described premises involved.

5. Payments made under this Coverage Extension are in addition to the applicable Limits of Insurance.



SB-146821-A
(Ed. 01/06)

Page 1 of 1



SB-146822-A
(Ed. 01/06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUILDING GLASS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.6.** Coverage Extensions.

Unless otherwise stated, payments made under the following Coverage Extension is subject to and not in addition to the applicable Limits of Insurance.

**Building Glass**

1. **If:**

   a.  You are the building owner; and

   b.  A Limit of Insurance is shown in the Declarations for Building at the described premises;

   you may extend that insurance to apply to direct physical loss of or damage to all exterior and interior building glass caused by or resulting from a Covered Cause of Loss, including glass breakage and damage to glass by chemicals accidentally or maliciously applied to glass. If a specific deductible has been selected for building glass as shown on the Declarations we will apply that deductible to any covered loss. If no deductible is selected for building glass, the policy deductible will be applied to covered building glass losses.

2. **If:**

   a.  You are a tenant;

   b.  A Limit of Insurance shown in the Declarations for Building or Business Personal Property at the described premises; and

   c.  You are contractually obligated to repair or replace building glass at the described premises;

   you may extend that insurance to apply to direct physical loss of or damage to all exterior and interior building glass caused by or resulting from a Covered Cause of Loss, including glass

breakage and damage to glass by chemicals accidentally or maliciously applied to glass. If a specific deductible has been selected for building glass as shown on the Declarations we will apply that deductible to any covered loss. If no deductible is selected for building glass, the policy deductible will be applied to covered building glass losses.

3.  We will also pay for necessary expenses in connection with loss or damage covered in Paragraphs **1.** or **2.** above, incurred by you to:

    a.  Put up temporary plates or board up openings;

    b.  Repair or replace encasing frames; and

    c.  Remove or replace obstructions.

4.  The following exclusions apply to this Coverage Extension:

    a.  We will not pay for loss or damage caused by or resulting from:

        **(1)**  Wear and tear;

        **(2)**  Hidden or latent defect;

        **(3)**  Corrosion; or

        **(4)**  Rust;

    b.  Paragraph **B.1.b.** Earth Movement;

    c.  Paragraph **B.1.c.** Governmental Action;

    d.  Paragraph **B.1.d.** Nuclear Hazard;

    e.  Paragraph **B.1.f.** War and Military Action; and

    f.  Paragraph **B.1.g.** Water.

No other exclusions in Paragraph **B.** Exclusions apply to this Coverage Extension. However, if any exclusions are added by endorsement to this Policy, such exclusions will apply to this Coverage Extension.

**CNA**

SB-146825-C
(Ed. 06/11)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BUSINESS PERSONAL PROPERTY OFF PREMISES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.6.** Coverage Extensions.

Unless otherwise stated, payments made under the following Coverage Extension is subject to and not in addition to the applicable Limits of Insurance.

**Business Personal Property Off Premises**

1. When a Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises, you may extend that insurance to apply to direct physical loss of or damage to such property caused by or resulting from a Covered Cause of Loss while:

   **a.** In the course of transit, more than 1,000 feet from the described premises;

   **b.** Temporarily away from the described premises and:

      **(1)** At a premises you do not own, lease or operate; or

      **(2)** At any fair, trade show or exhibition at a premises you do not own or regularly occupy.

2. This Coverage Extension does not apply to property:

   **a.** While in the custody of the United States Postal Service;

   **b.** Rented or leased to others;

   **c.** After delivery to customers;

   **d.** Temporarily at a premises for more than 60 consecutive days, except "money" and "securities" at a "banking premises";

   **e.** Otherwise covered under the Fine Arts Additional Coverage; or

   **f.** Otherwise covered under the following Coverage Extensions:

      **(1)** Accounts Receivable;

      **(2)** Electronic Data Processing;

      **(3)** Personal Effects; or

      **(4)** Valuable Papers and Records.





SB-146826-B
(Ed. 01/08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CIVIL AUTHORITY

This endorsement modifies insurance provided under the following:

BUSINESS INCOME AND EXTRA EXPENSE COVERAGE FORM
BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.6.** Coverage Extensions.

Unless otherwise stated, payments made under the following Coverage Extension is subject to and not in addition to the applicable Limits of Insurance.

**Civil Authority**

1.  When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss.

2.  The coverage for Business Income will begin 24 hours after the time of that action and will apply for a period of four consecutive weeks after coverage begins.

3.  The coverage for Extra Expense will begin immediately after the time of that action and will end when your Business Income coverages ends for this Coverage Extension.

**CNA**

SB-146827-F
(Ed. 06/11)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ELECTRONIC DATA PROCESSING EQUIPMENT AND ELECTRONIC MEDIA AND DATA
## (EDP COVERAGE FORM)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.6.** Coverage Extension:

**Electronic Data Processing**

1. When a Limit of Insurance is shown in the Declarations for Electronic Data Processing at the described premises, that insurance applies to:

   **a.** Direct physical loss of or damage to your "electronic data processing equipment" caused by or resulting from a Covered Cause of Loss; and

   **b.** Direct physical loss of or damage to your "electronic media and data" caused by or resulting from a Covered Cause of Loss.

2. Worldwide coverage is provided under this Coverage Extension. The coverage territory as described in Paragraph **F.8.b** does not apply to this Coverage Extension.

3. This Coverage Extension does not apply to:

   **a.** "Stock"; or

   **b.** Property that is leased or rented to others.

4. The following exclusions as described in Section **B.,** Exclusions, of the Businessowners Special Property Coverage Form do not apply to the Insuring Agreement set forth in Paragraph **1.a.** or **1.b.** of this Coverage Extension:

   **a.** Paragraph **1.e.;** and

   **b.** Paragraph **1.g.(3);** and

   **c.** Paragraph **2.a.**

   The following exclusion as described in Section **B.,** Exclusions, of the Businessowners Special Property Coverage Form does not apply to the Insuring Agreement set forth in Paragraph **1.a.** of this Coverage Extension: **Paragraph 2.d.(6).**

5. The following additional exclusions apply:

   With respect to this Coverage Extension, we will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

   **a.** Programming errors or omissions, or incorrect instructions to a machine, including without limitation, incorrect instructions to "electronic data processing equipment" from a user incorrectly operating with, or committing an error using an input device (including, without limitation, a keyboard, mouse or touchpad) and corrupting, distorting, deleting, damaging or destroying "electronic data"; provided, however, that this exclusion shall not apply to an otherwise covered mechanical breakdown of "electronic data processing equipment" under the Insuring Agreement set forth in Paragraph **1.a.** of this Coverage Extension.

   **b.** Unauthorized viewing, copying or use of "Electronic Media and Data" or "Electronic Data" (or any proprietary or confidential information or intellectual property) by any person, even if such activity is characterized as "theft."

   **c.** Errors or deficiency in design, installation, maintenance, repair or modification of your "electronic data processing equipment," "electronic media and data" or "electronic data" or any "electronic data processing equipment," electronic devices, computer system or network to which your "electronic data processing equipment" "electronic media and data" or "electronic data" is connected or dependent; provided, however, that this exclusion shall not apply to an otherwise covered mechanical breakdown of "electronic data processing equipment" under the Insuring Agreement set forth in Paragraph 1.a. of this Coverage Extension.

1002000752067314575119I



SB-146827-F
(Ed. 06/11)

**d.** Unexplained or indeterminable failure, malfunction or slowdown of a "electronic data processing equipment" "electronic media and data" or "electronic data."

6. The most we will pay under this Coverage Extension for all direct physical loss of or damage to "electronic data processing equipment" and "electronic media and data" (combined) in any one occurrence while in transit or at a premises other than the described premises is $25,000, or the limit shown in the Declarations.

7. The most we will pay under this Coverage Extension for loss of or damage to "Electronic Media and Data" while stored at a separate premises from where your original "Electronic Media and Data" are kept, in any one occurrence, is $25,000.

8. The most we will pay under this Coverage Extension for all direct physical loss or damage to "electronic data processing equipment" and "electronic media and data" (combined) you acquire after the inception date of the policy in any one occurrence is $25,000.

   Provided, however, with respect to insurance coverage under this Coverage Extension on any such newly acquired "electronic data processing equipment" or "electronic media and data," coverage will end on the date and time that any of the following first occurs:

   **a.** This policy expires;

   **b.** 180 days after you acquire the "electronic data processing equipment" or "electronic media and data"; or

   **c.** You report values to us.

9. The most we will pay under this Coverage Extension for all direct physical loss of or damage to "electronic data processing equipment" and "electronic media and data" (combined) at the described premises in any one occurrence is the Limit of Insurance shown in the Declarations or $50,000, whichever is greater.

10. A separate Blanket Limit of Insurance applies to "electronic data processing equipment" and "electronic media and data" at all scheduled premises, if indicated in the declarations as Blanket Electronic Data Processing

11. Payments made under this Coverage Extension are in addition to the applicable Limits of Insurance.



SB146828E
(Ed. 04/14)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EQUIPMENT BREAKDOWN

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.6.** Coverage Extensions.

Unless otherwise stated, payments made under the following Coverage Extension are subject to and not in addition to the applicable Limits of Insurance.

**Equipment Breakdown**

1.  When a Limit of Insurance is shown in the Declarations for Equipment Breakdown, at the described premises, the limit applies to direct physical loss of or damage to Covered Property at the described premises caused by or resulting from a "breakdown" to "covered equipment."

    For the purposes of this coverage form, "covered equipment" includes, but is not limited to, the following:

    **a.** "Diagnostic Equipment";

    **b.** "Power Generating Equipment";

    **c.** "Production Equipment."

    With respect to otherwise covered Business Income and Extra Expense, "breakdown" to "covered equipment" will be considered a Covered Cause of Loss.

    If an initial "breakdown" causes other "breakdowns," all will be considered one "breakdown." All "breakdowns" that manifest themselves at the same time and are the result of the same cause will also be considered one "breakdown."

2.  Under this Coverage Extension, the following coverages also apply:

    **a.** Expediting Expenses

    **(1)** In the event of direct physical loss of or damage to Covered Property caused by or resulting from a "breakdown" to "covered equipment," we will pay for the reasonable additional expenses you necessarily incur to make temporary repairs to, or expedite the permanent repair or replacement of, the lost or damaged Covered Property.

    **(2)** Expediting expenses include overtime wages and the extra cost of express or other rapid means of transportation.

    **(3)** The most we will pay under this Coverage Extension for all Expediting Expenses arising out of any one "breakdown" is $25,000. This limit is part of and not in addition to the Limit of Insurance that applies to lost or damage Covered Property.

    **b.** "Pollutants"

    **(1)** In the event of direct physical loss of or damage to Covered Property caused by or resulting from a "breakdown" to "covered equipment," we will pay for the additional cost to repair or replace Covered Property because of contamination by "pollutants." This includes the additional expenses to clean up or dispose of such property. Additional costs mean those beyond what would have been required had no "pollutants" been involved.

    **(2)** The most we will pay under this Coverage Extension for loss or damage to Covered Property caused by contamination by "pollutants" arising out of any one "breakdown" is $25,000. This limit is subject to and not in addition to the Limit of Insurance that applies to lost or damaged Covered Property.



SB146828E (Ed. 04/14)
Page 1 of 3

Copyright CNA All Rights Reserved.   Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**c.** Service Interruption

When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to loss caused by or resulting from a "breakdown" to equipment that is owned, operated or controlled by a local public or private utility or distributor that directly generates, transmits, distributes or provides the following utility services:

**(1)** "Water Supply Services";

**(2)** "Communication Supply Services"; or

**(3)** "Power Supply Services."

**d.** **Data Restoration**

We will pay for your cost to research, replace and restore "electronic data" and "electronic media and data" that is lost as a result due to a "breakdown" to "Covered Equipment." The most we will pay for loss or expenses under this coverage is $100,000 or the limit shown in the Declarations for Equipment Breakdown Coverage at the described premises, whichever is less.

The limit provided for the Data Restoration Coverage is a part of, and does not increase the Limit of Insurance for Equipment Breakdown Coverage.

**3.** We will not pay under this Coverage Extension for loss or damage caused by or resulting from any of the following tests:

**a.** A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or

**b.** An insulation breakdown test of any type of electrical equipment.

**4.** We will not pay under this Coverage Extension for loss or damage caused by or resulting from a change in:

**a.** Temperature; or

**b.** Humidity;

as a consequence of "breakdown" to "covered equipment."

**5.** The following limitations in Paragraph **A.4.** do not apply to this Coverage Extension:

**a.** Paragraph **a.(2);** and

**b.** Paragraph **a.(3).**

**6.** The following exclusions in Paragraph B. Exclusions do not apply to this Coverage Extension:

**a.** Paragraph **2.a.;**

**b.** Paragraph **2.d.(6);** and

**c.** Paragraph **2.e.**

**7.** With respect to this Coverage Extension, the following condition is added to Paragraph F. Commercial Property Conditions:

**Suspension**

If any "covered equipment" is found to be in or exposed to a dangerous condition, any of our representatives may immediately suspend the insurance provided by this Coverage Form for loss or damage caused by or resulting from a "breakdown" to that "covered equipment." This can be done by delivering or mailing a notice of suspension to:

**a.** Your last known address; or

**b.** The address where the "covered equipment" is located.

Once suspended in this way, such insurance can only be reinstated by a written endorsement issued by us. If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment." But the suspension will be effective even if we have not yet made or offered a refund.

Copyright CNA All Rights Reserved.   Includes copyrighted material of Insurance Services Office, Inc., with its permission.

SB146828E
(Ed. 04/14)

8. The following Loss Payment Condition is added under **E.4.e. Loss Payment Building and Personal Property** of the Businessowners Special Property Coverage Form:

   **(19)** "Covered Equipment" as follows:

   If Equipment Breakdown Property requires replacement due to an Equipment Breakdown, we will pay your additional cost to replace it with equipment that is better for the environment, safer or more efficient than the equipment being replaced. However, we will not pay more than 125% of what the cost would have been to repair or replace with property of comparable material and quality. This coverage does not increase any of the applicable limits. This coverage does not apply to any property indicated as being valued on an Actual Cash Value basis.

   If you wish to retrofit air conditioning or refrigeration equipment that utilizes a refrigerant containing CFC (chlorofluorocarbon) substances to accept a non-CFC refrigerant, we will consider this better for the environment. Any associated Business Income or Extra Expense will be included, in determining the additional cost, if Business Income and Extra Expense apply to this policy.

All other terms and conditions of the Policy remain unchanged.

Copyright CNA All Rights Reserved.   Includes copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MONEY ORDERS AND COUNTERFEIT PAPER CURRENCY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.6.** Coverage Extensions:

Unless otherwise stated, payments made under this Coverage Extension are subject to and not in addition to the applicable Limits of Insurance.

When a Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises, you may extend that insurance to apply to loss due to the good faith acceptance of:

**1.** Any U.S. or Canadian post office or express money order, issued or claiming to have been issued by any post office or express company, if the money order is not paid upon presentation; or

**2.** Counterfeit United States or Canadian paper currency.

in exchange for merchandise, "money" or services or as part of a normal business transaction.

**CNA**

SB-146831-B
(Ed. 06/11)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NON-OWNED DETACHED TRAILERS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.6.** Coverage Extensions.

Unless otherwise stated, payments made under the following Coverage Extension is subject to and not in addition to the applicable Limits of Insurance.

1. When a Limit of Insurance is shown in the Declarations for Building or Business Personal Property at the described premises you may extend the insurance that applies to your Business Personal Property to apply to loss or damage to trailers or semi-trailers that you do not own, provided that:

   a. The trailer is used in your business;

   b. The trailer is in your care, custody or control at the premises described in the Declarations; and

   c. You have a contractual responsibility to pay for loss or damage to the trailer.

2. We will not pay for any loss or damage that occurs:

   a. While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

   b. During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

3. The most we will pay for loss or damage under this Coverage Extension in any one occurrence is $5,000 regardless of the number of described premises, trailers or semi-trailers involved.

4. This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.





SB-146832-B
(Ed. 01/08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ORDINANCE OR LAW – INCREASED PERIOD OF RESTORATION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
BUSINESS INCOME AND EXTRA EXPENSE COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.6.** Coverage Extensions.

Unless otherwise stated, payments made under the following Coverage Extension is subject to and not in addition to the applicable Limits of Insurance.

**Ordinance or Law – Increased Period of Restoration**

1. When:

   a. A Covered Cause of Loss occurs to property at the described premises; and

   b. The Declarations shown that you have coverage for Business Income and Extra Expense;

   you may extend that insurance to apply to the amount of actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur during the increased period of "suspension" of "operations" caused by or resulting from the enforcement of any ordinance or law that:

   (1) Regulates the construction, repair or replacement of any property;

   (2) Requires the tearing down or replacement of any parts of property not damaged by a Covered Cause of Loss; and

   (3) Is in force at the time of loss.

2. This Coverage Extension applies only to the period that would be required, with reasonable speed, to reconstruct, repair or replace the property to comply with the minimum requirements of the ordinance or law.

3. This Coverage Extension does not apply to:

   a. Loss due to an ordinance or law that:

      (1) You were required to comply with before the loss, even if the property was undamaged; and

      (2) You failed to comply with; or

   b. Costs associated with the enforcement of any ordinance or law that requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants."

4. Paragraph **B.1.a.,** does not apply to this Coverage Extension.

5. The most we will pay for loss under this Coverage Extension in any one occurrence is $25,000 at each described premises.

6. Payments made under this Coverage Extension are in addition to the applicable Limits of Insurance.

**CNA**

SB-146833-A
(Ed. 01/06)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OUTDOOR PROPERTY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.6.** Coverage Extensions.

Unless otherwise stated, payments made under the following Coverage Extension is subject to and not in addition to the applicable Limits of Insurance.

**Outdoor Property**

1. When a Limit of Insurance is shown in the Declarations for Building or Business Personal Property at the described premises, you may extend that insurance to apply to direct physical loss of or damage to the following types of outdoor property at that described premises caused by or resulting from a Covered Cause of Loss:

   **a.** Radio or television antennas (including microwave or satellite dishes) and their lead in wiring, masts or towers; or

   **b.** Bridges, walks, roadways, patios and other paved surfaces.

2. The most we will pay for loss or damage under this Coverage Extension in any one occurrence is $10,000 at each described premises.





**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PERSONAL EFFECTS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.6.** Coverage Extensions.

Unless otherwise stated, payments made under the following Coverage Extension is subject to and not in addition to the applicable Limits of Insurance.

**Personal Effects**

1. When a Limit of Insurance is shown in the Declarations for Building or Business Personal Property at the described premises, you may extend that insurance to apply to direct physical loss of or damage to personal effects owned by:

   a. You; or

   b. Your officers, partners, "members", "managers", "employees", directors or trustees;

   caused by or resulting from a Covered Cause of Loss.

2. Such property must be located at a described premises.

3. The most we will pay for loss or damage under this Coverage Extension in any one occurrence is $25,000 at each described premises.

4. Payments under this Coverage Extension are in addition to the applicable Limits of Insurance.

**CNA**

SB-146835-A
(Ed. 01/06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SIGNS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

Subject to the Exclusions, Conditions and Limitations of this policy, you may extend this insurance as indicated below.

Unless otherwise stated, payments made under the following coverage will not increase the applicable Limits of Insurance.

Your Building or Business Personal Property insurance is extended to cover outdoor signs attached to the building or on or within 1,000 feet of the described premises.





SB-146836-A
(Ed. 01/06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SPOILAGE – CONSEQUENTIAL LOSS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.6.** Coverage Extensions.

Unless otherwise stated, payments made under the following Coverage Extension is subject to and not in addition to the applicable Limits of Insurance.

**Spoilage – Consequential Loss**

1.  When a Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises, you may extend that insurance to apply to consequential loss to your Business Personal Property caused by a change in:

    **a.** Temperature; or

    **b.** Humidity;

    caused by or resulting from a Covered Cause of loss to any of the following types of equipment situated within the building at the described premises:

    **a.** Refrigerating;

    **b.** Cooling;

    **c.** Humidifying;

    **d.** Air conditioning;

    **e.** Heating;

    **f.** Generating or converting power; or

    **g.** Connections, supply or transmission lines and pipes associated with the above equipment.

2.  With respect to this Coverage Extension, "breakdown" to "covered equipment" will not be considered a Covered Cause of Loss, even if otherwise covered elsewhere in this Policy.

3.  Paragraphs **B.2.d.(7)(a)** and **B.2.d.(7)(b)** do not apply to this Coverage Extension.

**CNA**

SB-146837-A
(Ed. 01/06)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## THEFT DAMAGE TO RENTED PROPERTY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.6.** Coverage Extensions.

Unless otherwise stated, payments made under the following Coverage Extension is subject to and not in addition to the applicable Limits of Insurance.

**Theft Damage to Rented Property**

**1.** When a Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises, you may extend that insurance to apply to direct physical loss of or damage to the following caused by or resulting by "theft" or attempted "theft":

    **a.** That part of a building you occupy, but do not own, which contains Covered Property; and

    **b.** Property within such non-owned building used for maintenance or service of such non-owned building.

**2.** We will not pay under this Coverage Extension for loss or damage:

    **a.** Caused by or resulting from fire or explosion; or

    **b.** To glass (other than glass building blocks) or to any lettering, ornamentation or burglar alarm tape on glass.

**3.** This Coverage Extension applies only if you are a tenant and you are contractually obligated to insure this exposure.





SB-146838-C
(Ed. 06/11)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VALUABLE PAPERS AND RECORDS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.6.** Coverage Extensions.

Unless otherwise stated, payments made under the following Coverage Extension is subject to and not in addition to the applicable Limits of Insurance.

**Valuable Papers and Records**

1. When a Limit of Insurance is shown in the Declarations for Building or Business Personal Property at the described premises, you may extend that insurance to apply to loss, as described in Paragraph **2.** below, due to direct physical loss of or damage to "valuable papers and records" that:

   **a.** You own; or

   **b.** Are owned by others, but in your care, custody or control;

   caused by or resulting from a Covered Cause of loss.

2. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

3. The following exclusions apply to this Coverage Extension:

   **a.** We will not pay for any loss or damage to "valuable papers and records" caused by or resulting from any errors or omissions in processing or copying. But if errors or omissions in processing or copying results in fire or explosion, we will pay for the resulting loss or damage caused by that fire or explosion.

   **b.** Paragraph **B.1.b.** Earth Movement;

   **c.** Paragraph **B.1.c.** Governmental Action;

   **d.** Paragraph **B.1.d.** Nuclear Hazard;

   **e.** Paragraph **B.1.f.** War and Military Action;

   **f.** Paragraph **B.1.g. (1), (2) and (4)** Water;

   **g.** Paragraph **B.1.h.** Neglect;

   **h.** Paragraph **B.2.g.** Frozen plumbing.

   No other exclusions in Paragraph **B.** Exclusions apply to this Coverage Extension. However, if any exclusions are added by endorsement to this Coverage Form, such exclusions will apply to this Coverage Extension.

4. The most we will pay under this Coverage Extension for loss of or damage to "valuable papers and records" in any one occurrence while in transit or at a premises other than the described premises is $25,000.

5. The most we will pay under this Coverage Extension for loss of or damage to "valuable papers and records" in any one occurrence at each described premises is $25,000 or the amount shown in the Declarations for Valuable Papers and Records, whichever is greater.

6. Payments made under this Coverage Extension are in addition to the applicable Limits of Insurance.



SB-146839-F
(Ed. 06/11)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SEWER OR DRAIN BACK UP

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
CONCURRENT CAUSATION, EARTH MOVEMENT & WATER EXCLUSION CHANGES

The following coverage is added to your Businessowners Special Property Coverage Form:

Unless otherwise stated, payments made under the following coverage will not increase the applicable Limits of Insurance.

Subject to the Exclusions, Conditions and Limitations of this policy, you may extend this insurance as indicated below.

1. We will pay for loss or damage to covered property caused by water that backs up or overflows from a sewer, drain, sump, or from water that overflows due to the failure of a sump pump, sump pump well, or any other type of system designed to remove subsurface water from the foundation area, subject to the following limitations:

   a. We will not pay for loss or damage under this Additional Coverage caused by the emanation of water from a sewer or drain, sump, sump pump, sump pump well, or any other type of system designed to remove subsurface water from the foundation area, that itself caused by, or is the result of:

      (i) "Flood," surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

      (ii) Mudslide or mudflow.

   b. The most we will pay for direct physical damage is the limit of insurance shown in the Declarations for Sewer or Drain Back Up.

2. With respect to otherwise covered Business Income and Extra Expense, loss or damage to covered property caused by water that backs up or overflows from a sewer, drain, sump, or from water that overflows due to the failure of a sump pump, sump pump well, or any other type of system designed to remove subsurface water from the foundation area, will be considered a Covered Cause of Loss.

3. Exclusion **B.1.g. (3)** of the Businessowners Special Property Coverage Form does not apply to this Additional Coverage.



SB-146841-B
(Ed. 06/11)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BROADENED WIND COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The **Businessowners Special Property Coverage Special Form** is changed as follows:

When Broadened Wind coverage is indicated in the declarations at the described premises, the following is changed:

**1.** Paragraph **A.4.a.(1)** does not apply.



SB146843E
(Ed. 04/14)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESS INCOME FOR INTERRUPTION OF PRACTICE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
BUSINESS INCOME AND EXTRA EXPENSE

The following coverage is added to your Businessowners Special Property Coverage Form:

Except at otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

This insurance applies only when Business Income Coverage is included with the policy.

1.  The following changes are made to the coverages of Business Income and Extra Expense, Civil Authority, and Utility Services – Time Element, if attached to this policy:

    For Loss of Business Income at each scheduled location affected by the suspension of your "operations" we will pay:

    a.  The daily limit shown in the Declarations without reduction for discontinuing expenses or rescheduled clients, but only for the initial 30 days of loss, or portion of a day, for each occurrence, or

    b.  The actual loss of Business Income during the "period of restoration."

    For each occurrence you can select either **a.** or **b.** above. When **b.,** actual loss of Business Income is selected, all payment for one occurrence will be made based on actual loss of Business Income. When a., daily limit is selected, payment for loss after the initial 30 days will be made based on actual loss of Business Income.

    Payment of the daily limit in **a.** covers full payment for Loss of Business Income continuing normal operating expenses incurred including payroll, Extra Expense, Civil Authority and Extended Business Income.

    The 12 hour waiting period in the coverage for Utility Services – Time Element applies to both **a.** daily limit, or **b.** actual loss of business income.

    A day means a period of 24 hours, beginning at 12:01 A.M. and during which your practice was or would be conducted.

    The portion of a day shall be calculated as the ratio of reduced practice hours compared to normal daily practice hours.

2.  Business Income Extension for Drinkable Water

    (This applies only to water provided by a water supply company. Private water systems are not applicable.)

    The following coverage is added:

    We will pay up to the daily limit shown in the Declarations at each described premises to cover loss of Business Income you sustain due to the interruption of business resulting from your inability to obtain drinkable water as determined by the public health authority. The determination must be made during the policy period by any public health authority having jurisdiction.

    This additional coverage will apply during the period that:

    a.  Begins 12 hours after the time the determination by the public health authority is made; and

    b.  Ends on the earlier of:

        (1) The time when the property at the described premises should be repaired or restored with reasonable speed and quality; or

        (2) 30 consecutive days after the time determined in **a.** above.

    All other terms and conditions are applicable to this additional coverage.

All other terms and conditions of the Policy remain unchanged.

Copyright CNA All Rights Reserved.   Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1002000752067314575199



SB-146855-B
(Ed. 01/08)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPOILAGE COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

### SCHEDULE

| Premises Location Number | Description of Property |
|---|---|
|  |  |

| Limit of Insurance | Deductible | Refrigeration Maintenance Agreement | Causes of Loss Breakdown or Contamination | Power Outage | Selling Price |
|---|---|---|---|---|---|
| $ | $ |  |  |  |  |

**\*  Information required to complete the Schedule, if not shown on this endorsement, will be shown in the Declarations.**

**A.** The Businessowners Special Property Coverage Form is changed as follows:

   **1.** The following is added to Paragraph **A.6:**

    Spoilage Coverage

    **(1)** When a Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises and such described premises is shown in the Declaration or in the Schedule above, you may extend that insurance to apply to direct physical loss of or damage to Perishable Stock caused by or resulting from a covered cause of loss described in Paragraph **(3)** below and not excluded in Paragraph **(5)** below.

    **(2)** This Coverage Extension does not apply to Perishable Stock while located:

      **a.** On buildings;

      **b.** In the open; or

      **c.** In vehicles.

    **(3)** With respect to this Coverage Extension, covered cause of loss means the following only if indicated by an "X" in the schedule above or if the coverages appear in the Declarations:

      **a.** Breakdown or Contamination, meaning:

        **(i)** Change in temperature or humidity resulting from mechanical breakdown or failure of refrigeration, cooling or humidity control apparatus or equipment, only while such

equipment or apparatus is at the described premises; or

        **(ii)** Contamination by a refrigerant, only while the refrigerating apparatus or equipment is at the described premises shown in the schedule; or

      **b.** Power Outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

    **(4)** With respect to otherwise covered Business Income and Extra Expense, loss or damage to covered property caused by Spoilage will be considered a Covered Cause of Loss

    **(5)** The following exclusions apply to this Coverage Extension:

      **a.** We will not pay for loss or damage caused directly or indirectly by any of the following, regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

        **(i)** Manual disconnecting of any refrigeration, cooling, heating or humidity control system from the source of electrical power;

        **(ii)** Terminating of electric power due to throwing or turning off any switch or other device usual to the shutting off of electric power on the premises shown in the schedule above; or

**(iii)** Intentional decision of an electric utility company or other source of electric power not to provide sufficient power or the inability of such company or source to provide sufficient power, due to lack of fuel, governmental order or lack of generating capacity to meet the demand.

**b.** In addition, the following exclusions, found in the Businessowners Special Property Coverage Form, also apply to this coverage extension:

   **1.** Paragraph **B.1.b.** Earth Movement;

   **2.** Paragraph **B.1.c.** Governmental Action;

   **3.** Paragraph **B.1.d.** Nuclear Hazard;

   **4.** Paragraph **B.1.f.** War and Military Action;

   **5.** Paragraph **B.1.g.** Water; and

   **6.** Paragraph **B.1.h.** Neglect.

No other exclusions in Paragraph **B.** Exclusions apply to this Coverage Extension. However, if any exclusions are added by endorsement to this Policy, such exclusions will apply to this Coverage Extension.

**(6)** Under this Coverage Extension, the following coverages also apply:

**a.** Claim Mitigation Expense

We will pay the reasonable expenses you incur to prevent or reduce loss or damage to the extent that such loss or damage is reduced, but such payment will not increase the applicable Limit of Insurance.

**b.** Clean-up and Disposal

We will pay your expenses to clean-up and dispose of spoiled Covered Property. Payment for Clean up and Disposal is included within the Limit of Insurance shown in the schedule above.

**(7)** With respect to this Coverage Extension, if Selling price is indicated by an "X" in the schedule above or the coverage appears in the Declarations, the following is added to Paragraph **E.4.:**

We will determine the value of finished Perishable Stock in the event of loss or damage at:

**a.** The selling price, as if no loss or damage had occurred;

**b.** Less discounts and expenses you otherwise would have had.

**(8)** With respect to this Coverage Extension, Perishable Stock means personal property:

**a.** Maintained under controlled conditions for its preservation; and

**b.** Susceptible to loss or damage if the controlled temperature or humidity conditions change.

**(9)** Subject to Paragraph **(10)** below, the most we will pay for loss or damage under this Coverage Extension in any one occurrence is the Limit of Insurance shown in the Declaration.

**(10)** Regardless of the amount of the Businessowners Property Coverage Deductible, we will not pay for loss or damage under this Coverage Extension in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the schedule above. We will then pay the amount of loss or damage in excess of this Deductible, up to the applicable Limit of Insurance.

**(11)** Paragraph **C.2.** does not apply to this Coverage Extension.

**(12)** Refrigeration Maintenance Agreement

**a.** If:

   **(i)** Breakdown or Contamination is designated by an "X" as a covered cause of loss in the schedule above or in the Declarations; and

   **(ii)** Refrigeration Maintenance Agreement is shown as applicable by an "X" in the schedule above;

then the following condition applies:

You must maintain a Refrigeration Maintenance Agreement as described in Paragraph **b.** below. If you voluntarily terminate this agreement and do not notify us, the insurance provided by this endorsement under the Breakdown or Contamination covered cause of loss will be automatically suspended at the describe premises involved.

**b.** Refrigeration Maintenance Agreement means a written service contract, between you and the refrigeration service organization, which provides for regular periodic inspection of the refrigeration equipment at the insured location, and the servicing and repair of equipment, including emergency response at the insured location.

1002000752067314575I200



SB-146856-D
(Ed. 07/09)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UTILITY SERVICES – DIRECT DAMAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

| Prem. Loc. No. | Utility Services Limit of Insurance | Water Supply | Communication Supply Property (not including overhead transmission lines) | Communication Supply Property (including overhead transmission lines) | Power Supply Property (not including overhead transmission lines) | Power Supply Property (including overhead transmission lines) |
|---|---|---|---|---|---|---|
| 001 | $    25,000 | X | | X | | X |
| * Information required to complete the Schedule, if not shown on this endorsement, will be shown in the Declarations. | | | | | | |

**A.** The Businessowners Special Property Coverage Form is changed as follows:

**1.** The following is added to Paragraph **A.6.**:

**Utility Services – Direct Damage**

**(1)** We will pay for loss of or damage to Covered Property caused by the interruption of services to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property not on the described premises if such property is indicated by an "X" in the schedule above.

    **(a)** "Water Supply Services";

    **(b)** "Communication Supply Services"; or

    **(c)** "Power Supply Services."

**(2)** If there is an "X" in the schedule above under Communication Supply Property (including overhead transmission lines) for the described premises, then Paragraph **G.3.b.** is deleted with respect to this endorsement for such described premises and replaced with the following:

**Communication Supply Services,** meaning, property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

    **a.** Communication transmission lines, including optic fiber transmission lines;

    **b.** Coaxial cables; and

    **c.** Microwave radio relays except satellites.

It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

**(3)** If there is an "X" in the schedule above under Power Supply Property (including overhead transmission lines) for the described premises, then Paragraph **G.23.b.** is deleted with respect to this endorsement for such described premises and replaced with the following:

**Power Supply Services,** meaning the following types of property supplying electricity, steam or gas to the described premises:

    **a.** Utility generating plants;

    **b.** Switching stations;

    **c.** Substations;

    **d.** Transformers; and

    **e.** Transmission lines.

It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

**(4)** The most we will pay for loss under this Coverage Extension in any one occurrence for the described premises is the Utility Services Limit of Insurance shown in the schedule above or in the Declarations for such described premises.

**(5)** Payments under this Additional Coverage are subject to and not in addition to the applicable Limit of Insurance.

**2.** For the coverage provided by this endorsement, exclusions **B.1.e.** and **B.2.a,** do not apply.

**CNA**

SB-146857-D
(Ed. 07/09)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UTILITY SERVICES – TIME ELEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

| Prem. Loc. No. | Utility Services Limit of Insurance | Water Supply | Communication Supply Property (**not** including overhead transmission lines) | Communication Supply Property (including overhead transmission lines) | Power Supply Property (not including overhead transmission lines) | Power Supply Property (including overhead transmission lines) |
|---|---|---|---|---|---|---|
| 001 | $    25,000 | X | | X | | X |

\*  Information required to complete the Schedule, if not shown on this endorsement, will be shown in the Declarations.

**A.** The Businessowners Property Coverage Special Form is changed as follows:

   **1.** The following is added to Paragraph **A.6.**:

     **Utility Services – Time Element**

     **(1)** When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the loss of Business Income or Extra Expense caused by the interruption of services to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property not on the described premises if such property is indicated by an "X" in the schedule above.

       **(a)** "Water Supply Services";

       **(b)** "Communication Supply Services"; or

       **(c)** "Power Supply Services."

     **(2)** We will pay the actual loss sustained from the initial time of service(s) failure at the described premises but only when the service interruptions at the described premises exceed 24 hours immediately following the direct physical loss or damage. Coverage does not apply to any reduction of income after service has been restored to your premises.

     **(3)** If there is an "X" in the schedule above under Communication Supply Property (including overhead transmission lines) for the described premises, then Paragraph **G.3.b.** is deleted with respect to this endorsement for such described premises and replaced with the following:

       **Communication Supply Services,** meaning, property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

       **a.** Communication transmission lines, including optic fiber transmission lines;

       **b.** Coaxial cables; and

       **c.** Microwave radio relays except satellites.

       It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

     **(4)** If there is an "X" in the schedule above under Power Supply Property (including overhead transmission lines) for the described premises, then Paragraph **G.23.b.** is deleted with respect to this endorsement for such described premises and replaced with the following:

       **Power Supply Services,** meaning the following types of property supplying electricity, steam or gas to the described premises:



SB-146857-D
(Ed. 07/09)

**a.** Utility generating plants;

**b.** Switching stations;

**c.** Substations;

**d.** Transformers; and

**e.** Transmission lines.

It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

**(5)** The most we will pay for loss under this Coverage Extension in any one occurrence for the described premises is the Utility Services Limit of Insurance shown in the schedule above for such described premises.

**2.** For the coverage provided by this endorsement, exclusion **B.1.e.** does not apply.



SB146902G
(Ed. 6-16)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**HIRED AUTO AND NON-OWNED AUTO LIABILITY**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS LIABILITY COVERAGE FORM
BUSINESSOWNERS COMMON POLICY CONDITIONS

SCHEDULE

Insurance is provided only with respect to those coverages for which a specific limit is shown:

| COVERAGE | LIMIT |
|---|---|
| Hired Auto Liability: | $ _____ |
| Non-owned Auto Liability: | $ _____ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**PROVISIONS**

**A.  COVERAGE**

With respect only to the Coverage(s) for which a limit is shown in the SCHEDULE above, the insurance provided under **Coverage A.1. Business Liability** for "bodily injury" and "property damage" also applies to "bodily injury" or "property damage" arising out of the maintenance or use of a:

•   "Hired auto" used by you or your "employee" in the course of your business; and/or

•   "Non-owned auto" used in the course of your business. Maintenance or use of a "non-owned auto" includes test driving in connection with an "auto business."

With respect only to the coverage provided by this endorsement, under **Coverages**, coverage **A.1. Business Liability** is amended to:

**1.**   Delete paragraph **A.1.b.(1)(b)** and replace it with the following:

    **b.**   This insurance applies:

        **(1)**   To "bodily injury" and "property damage" only if:

            **(b)**   The "occurrence" occurs during the policy period; and

**2.**   Delete paragraph **A.1.b.(2),**.

**B.  LIMITS OF INSURANCE**

With respect only to the coverage provided by this endorsement, **SECTION D. Liability And Medical Expenses Limits of Insurance** is deleted in its entirety and replaced with the following:

**D.  Limits Of Insurance**

    **1.**   Regardless of the number of:

        **a.**   Insureds;

        **b.**   Claims made or "suits" brought;

        **c.**   Persons or organizations making claims or bringing "suits"; or

        **d.**   "Autos,"

    the applicable Hired Auto Liability limit or Non-Owned Auto Liability limit shown in the Declarations is the most we will pay for damages under **SECTION A. Coverages** because of all "bodily injury" and "property damage" resulting from any one "occurrence" arising out of the maintenance or use of a "hired auto" or "non-owned auto."

SB146902G (Ed. 6-16)
Page 1 of 3

1002000752067314575120 2

Copyright, CNA  All Rights Reserved.

**CNA**

SB146902G
(Ed. 6-16)

## C. EXCLUSIONS

With respect only to the insurance provided by this endorsement:

1. Under **Exclusions**, the paragraph entitled **Applicable to Business Liability Coverage** is amended to delete all exclusions except exclusions **a.**, **b.**, **d.**, **e.**, **f.** and **i.** and to add the following exclusions:

   This insurance does not apply to:

   • **Fellow Employee**

   "Bodily injury" to:

   **(1)** Any fellow "employee" of the insured arising out of and in the course of employment by the insured or while performing duties related to the conduct of the insured's business; or

   **(2)** The spouse, child, parent, brother or sister of that fellow "employee" while as a consequence of Paragraph **(1)** above.

   • **Care, Custody or Control**

   "Property Damage" to:

   **(1)** Property owned or being transported by, or rented or loaned to the insured; or

   **(2)** Property in the care, custody or control of the insured.

## D. WHO IS AN INSURED

With respect only to the insurance provided by this endorsement, **Who Is An Insured** is replaced by the following:

Each of the following is an insured under this insurance to the extent set forth below:

1. You;

2. Subject to paragraph **3.c.** below, your "employee" while operating an "auto" hired or rented under a contract or agreement, with your permission, in that "employee's" name, while performing duties related to the conduct of your business.

3. Anyone else including any partner or "executive officer" of yours while using with your permission a "hired auto" or a "non-owned auto" except:

   **a.** The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner or lessee of a "non-owned auto" or any agent or "employee" of any such owner or lessee;

   **b.** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household;

   **c.** Your "employee" if the covered "auto" is leased, hired or rented by him or her or a member of his or her household under a lease or rental agreement for a period of 180 days or more;

   **d.** Any partner or "executive officer" with respect to any "auto" owned by such partner or officer or a member of his or her household;

   **e.** Any partner or "executive officer" with respect to any "auto" leased or rented to such partner or officer or a member of his or her household under a lease or rental agreement for a period of 180 days or more;

   **f.** Any person while employed in or otherwise engaged in duties in connection with an "auto business," other than an "auto business" you operate;

   **g.** Anyone other than your "employees," partners, a lessee or borrower or any of their "employees," while moving property to or from a "hired auto" or a "non-owned auto"; or

4. Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under **1.**, **2.** or **3.** above.

## E. AMENDED DEFINITION

The Definition of "insured contract" in Section **F – Definitions** is amended by the addition of the following exceptions to paragraph **f.**:

Copyright, CNA  All Rights Reserved.

**CNA**

SB146902G
(Ed. 6-16)

Paragraph **f.** does not include that part of any contract or agreement:

- That pertains to the loan, lease or rental of an "auto" to you or any of your "employees," if the "auto" is loaned, leased or rented with a driver; or

- That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**F.   ADDITIONAL DEFINITIONS**

Section **F.** Definitions is amended by the addition of the following definitions:

**a.**   "Auto Business" means the business or occupation of selling, repairing, servicing, storing or parking "autos."

**b.**   "Hired auto" means any "auto" you or your "employee" lease, hire, rent or borrow in the course of your business. This does not include:

**i.**   Any "auto" you lease, hire or rent under a lease or rental agreement for a period of 180 days or more, or

**ii.**   Any "auto" you lease, hire, rent or borrow from any of your "employees," partners, stockholders, or members of their households.

**c.**   "Non-owned auto" means any "autos" you do not own, lease, hire, rent or borrow that are being used in the course and scope of your business at the time of the "occurrence." This includes "autos" owned by your "employees" or partners or members of their households but only while being used in the course and scope of your business at the time of the "occurrence."

If you are a sole proprietor, "non-owned auto" means any "autos" you do not own, lease, hire, rent or borrow that are being used in the course and scope of your business or personal affairs at the time of the "occurrence."

**G.**   With respect only to the operation of a "hired auto" or "non-owned auto," **Paragraph H**, of the Businessowners Common Policy Conditions is deleted and replaced with the following:

**H.   Other Insurance**

**1.**   Except for any liability assumed under an "insured contract" the insurance provided by this Coverage Form is excess over any other collectible insurance.

However, if your business is the selling, servicing, repairing, parking or storage of "autos," the insurance provided by this endorsement is primary when covered "bodily injury" or "property damage" arises out of the operation of a customer's "auto" by you or your "employee."

**2.**   When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

All other terms and conditions of the Policy remain unchanged.



Copyright, CNA  All Rights Reserved.



SB146932F
(Ed. 6-16)

# BLANKET ADDITIONAL INSURED
## AND
# LIABILITY EXTENSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS LIABILITY COVERAGE FORM
BUSINESSOWNERS COMMON POLICY CONDITIONS

| **TABLE OF CONTENTS** |
|---|
| **I.   Blanket Additional Insured Provisions** |
| **A.   Additional Insured – Blanket Vendors** |
| **B.   Miscellaneous Additional Insureds** |
| **C.   Additional Provisions Pertinent to Additional Insured Coverage** |
| **1.   Primary – Noncontributory provision** |
| **2.   Definition of "written contract."** |
| **II.   Liability Extension Coverages** |
| **A.   Bodily Injury – Expanded Definition** |
| **B.   Broad Knowledge of Occurrence** |
| **C.   Estates, Legal Representatives and Spouses** |
| **D.   Legal Liability – Damage to Premises** |
| **E.   Personal and Advertising Injury – Discrimination or Humiliation** |
| **F.   Personal and Advertising Injury – Broadened Eviction** |
| **G.   Waiver of Subrogation - Blanket** |

## I.   BLANKET ADDITIONAL INSURED PROVISIONS

### A.   ADDITIONAL INSURED – BLANKET VENDORS

Who Is An Insured is amended to include as an additional insured any person or organization (referred to below as vendor) with whom you agreed under a "written contract" to provide insurance, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

**1.** The insurance afforded the vendor does not apply to:

**a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in the product made intentionally by the vendor;

**d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

Copyright, CNA  All Rights Reserved.



SB146932F
(Ed. 6-16)

e.  Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

f.  Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

g.  Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

h.  "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

   (1)  The exceptions contained in Subparagraphs **d.** or **f.**; or

   (2)  Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

2.  This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

3.  This provision **2.** does not apply to any vendor included as an insured by an endorsement issued by us and made a part of this Policy.

4.  This provision **2.** does not apply if "bodily injury" or "property damage" included within the "products-completed operations hazard" is excluded either by the provisions of the Policy or by endorsement.

**B.  MISCELLANEOUS ADDITIONAL INSUREDS**

1.  **Who Is An Insured** is amended to include as an insured any person or organization (called additional insured) described in paragraphs **3.a.** through **3.j.** below whom you are required to add as an additional insured on this policy under a "written contract.":

2.  However, subject always to the terms and conditions of this policy, including the limits of insurance, we will not provide the additional insured with:

   a.  A higher limit of insurance than required by such "written contract";

   b.  Coverage broader than required by such "written contract" and in no event greater than that described by the applicable paragraph a. through k. below; or

   c.  Coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard." But this paragraph **c.** does not apply to the extent coverage for such liability is provided by paragraph **3.j.** below.

Any coverage granted by this endorsement shall apply only to the extent permitted by law.

3.  Only the following persons or organizations can qualify as additional insureds under this endorsement:

   a.  **Controlling Interest**

      Any persons or organizations with a controlling interest in you but only with respect to their liability arising out of:

      (1)  such person or organization's financial control of you; or

      (2)  Premises such person or organization owns, maintains or controls while you lease or occupy these premises;

      provided that the coverage granted to such additional insureds does not apply to structural alterations, new construction or demolition operations performed by or for such additional insured.

SB146932F (6-16)
Page 2 of 7

Copyright, CNA  All Rights Reserved.

10020007520673145751204



**b.  Co-owner of Insured Premises**

A co-owner of a premises co-owned by you and covered under this insurance but only with respect to the co-owners liability for "bodily injury", "property damage" or "personal and advertising injury" as co-owner of such premises.

**c.  Grantor of Franchise**

Any person or organization that has granted a franchise to you, but only with respect to such person or organization's liability for "bodily injury", "property damage", or "personal and advertising injury" as grantor of a franchise to you.

**d.  Lessor of Equipment**

Any person or organization from whom you lease equipment, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part by your maintenance, operation or use of such equipment, provided that the "occurrence" giving rise to such "bodily injury" or "property damage" or the offense giving rise to such "personal and advertising injury" takes place prior to the termination of such lease.

**e.  Lessor of Land**

Any person or organization from whom you lease land, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" arising out of the ownership, maintenance or use of that specific part of the land leased to you, provided that the "occurrence" giving rise to such "bodily injury" or "property damage" or the offense giving rise to such "personal and advertising injury", takes place prior to the termination of such lease. The insurance hereby afforded to the additional insured does not apply to structural alterations, new construction or demolition operations performed by, on behalf of or for such additional insured.

**f.  Lessor of Premises**

An owner or lessor of premises leased to you, or such owner or lessor's real estate manager, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" arising out of the ownership, maintenance or use of such part of the premises leased to you, and provided that the "occurrence" giving rise to such "bodily injury" or "property damage" or the offense giving rise to such "personal and advertising injury", takes place prior to the termination of such lease. The insurance hereby afforded to the additional insured does not apply to structural alterations, new construction or demolition operations performed by, on behalf of or for such additional insured.

**g.  Mortgagee, Assignee or Receiver**

A mortgagee, assignee or receiver of premises but only with respect to such mortgagee, assignee, or receiver's liability for "bodily injury", "property damage" or "personal and advertising injury" arising out of the ownership, maintenance, or use of a premises by you.

This insurance does not apply to structural alterations, new construction or demolition operations performed by, on behalf of or for such additional insured.

**h.  State or Political Subdivisions**

A state or government agency or subdivision or political subdivision that has issued a permit or authorization, but only with respect to such government agency or subdivision or political subdivision's liability for "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**(1)**  The following hazards in connection with premises you own, rent, or control and to which this insurance applies:

**(a)**  The existence, maintenance, repair, construction, erection, or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoistaway openings, sidewalk vaults, street banners, or decorations and similar exposures; or

**(b)**  The construction, erection, or removal of elevators; or

**(c)**  The ownership, maintenance or use of any elevators covered by this insurance; or

Copyright, CNA  All Rights Reserved.

**CNA**

SB146932F
(Ed. 6-16)

(2) The permitted or authorized operations performed by you or on your behalf. But the coverage granted by this paragraph does not apply to:

   (a) "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the state or government agency or subdivision or political subdivision); or

   (b) "Bodily injury" or "property damage" included within the "products-completed operations hazard."

With respect to this provision's requirement that additional insured status must be requested under a "written contract", we will treat as a "written contract" any governmental permit that requires you to add the governmental entity as an additional insured.

**i.   Trade Show Event Lessor**

With respect to your participation in a trade show event as an exhibitor, presenter or displayer, any person or organization .whom you are required to include as an additional insured, but only with respect to such person or organization's liability for "bodily injury", "property damage", or "personal and advertising injury" cause by:

**a.**   Your acts or omissions; or

**b.**   Acts or omissions of those acting on your behalf;

in the performance of your ongoing operations at the trade show premises during the trade show event.

**j.   Other Person or Organization**

Any person or organization who is not an additional insured under paragraphs **a.** through **i.** above. Such additional insured is an insured solely for "bodily injury", "property damage" or "personal and advertising injury" for which such additional insured is liable because of your acts or omissions.

The coverage granted by this paragraph does not apply to any person or organization:

(1) For "bodily injury," "property damage," or "personal and advertising injury" arising out of the rendering or failure to render any professional services;

(2) For "bodily injury" or "property damage" included in the "products-completed operations hazard." But this provision **(2)** does not apply to such "bodily injury" or "property damage" if:

   (a) It is entirely due to your negligence and specifically results from your work for the additional insured which is the subject to the "written contract"; and

   (b) The "written contract" requires you to make the person or organization an additional insured for such "bodily injury" or "property damage"; or

(3) Who is afforded additional insured coverage under another endorsement attached to this policy.

**C.  ADDITIONAL PROVISIONS PERTINENT TO ADDITIONAL INSURED COVERAGE**

With respect only to additional insured coverage provided under paragraphs A. and B. above:

**1.**   The **BUSINESSOWNERS COMMON POLICY CONDITIONS** are amended to add the following to the Condition entitled **Other Insurance**:

This insurance is excess of all other insurance available to an additional insured whether primary, excess, contingent or on any other basis. However, if a "written contract" requires that this insurance be either primary or primary and noncontributing, then this insurance will be primary and non-contributory relative solely to insurance on which the additional insured is a named insured.

**2.**   Under **Liability and Medical Expense Definitions**, the following definition is added:

"Written contract" means a written contract or agreement that requires you to make a person or organization an additional insured on this policy, provided the contract or agreement:

**a.**   Is currently in effect or becomes effective during the term of this policy; and

**b.**   Was executed prior to:

Copyright, CNA  All Rights Reserved.

1002000752067314575120





SB146932F
(Ed. 6-16)

**(1)** The "bodily injury" or "property damage"; or

**(2)** The offense that caused the "personal and advertising injury";

for which the additional insured seeks coverage.

## II.  LIABILITY EXTENSION COVERAGES

It is understood and agreed that this endorsement amends the **Businessowners Liability Coverage Form**. If any other endorsement attached to this policy amends any provision also amended by this endorsement, then that other endorsement controls with respect to such provision, and the changes made by this endorsement to such provision do not apply.

**A. Bodily Injury – Expanded Definition**

Under **Liability and Medical Expenses Definitions**, the definition of "Bodily injury" is deleted and replaced by the following:

"Bodily injury" means physical injury, sickness or disease sustained by a person, including death, humiliation, shock, mental anguish or mental injury by that person at any time which results as a consequence of the physical injury, sickness or disease.

**B. Broad Knowledge of Occurrence**

Under Businessowners Liability Conditions, the Condition entitled Duties In The Event of Occurrence, Offense, Claim or Suit is amended to add the following:

Paragraphs **a.** and **b.** above apply to you or to any additional insured only when such "occurrence," offense, claim or "suit" is known to:

**(1)** You or any additional insured that is an individual;

**(2)** Any partner, if you or an additional insured is a partnership;

**(3)** Any manager, if you or an additional insured is a limited liability company;

**(4)** Any "executive officer" or insurance manager, if you or an additional insured is a corporation;

**(5)** Any trustee, if you or an additional insured is a trust; or

**(6)** Any elected or appointed official, if you or an additional insured is a political subdivision or public entity.

This paragraph applies separately to you and any additional insured.

**C. Estates, Legal Representatives and Spouses**

The estates, heirs, legal representatives and spouses of any natural person insured shall also be insured under this policy; provided, however, coverage is afforded to such estates, heirs, legal representatives and spouses only for claims arising solely out of their capacity as such and, in the case of a spouse, where such claim seeks damages from marital common property, jointly held property, or property transferred from such natural person insured to such spouse. No coverage is provided for any act, error or omission of an estate, heir, legal representative or spouse outside the scope of such person's capacity as such, provided however that the spouse of a natural person Named Insured and the spouses of members or partners of joint venture or partnership Named Insureds are insureds with respect to such spouses' acts, errors or omissions in the conduct of the Named Insured's business.

**D. Legal Liability – Damage To Premises**

**1.** Under **B. Exclusions, 1. Applicable to Business Liability Coverage**, Exclusion **k. Damage To Property**, is replaced by the following:

**k.  Damage To Property**

"Property damage" to:

**1.** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of

Copyright, CNA  All Rights Reserved.



such property for any reason, including prevention of injury to a person or damage to another's property;

**2.** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**3.** Property loaned to you;

**4.** Personal property in the care, custody or control of the insured;

**5.** That particular part of any real property on which you or any contractors or subcontractors working directly or indirectly in your behalf are performing operations, if the "property damage" arises out of those operations; or

**6.** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **2** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **1**, **3**, and **4**, of this exclusion do not apply to "property damage" (other than damage by fire or explosion) to premises:

**(1)** rented to you:

**(2)** temporarily occupied by you with the permission of the owner, or

**(3)** to the contents of premises rented to you for a period of 7 or fewer consecutive days.

A separate limit of insurance applies to Damage To Premises Rented To You as described in Section D – Liability and Medical Expenses Limits of Insurance.

Paragraphs **3**, **4**, **5**, and **6** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **6** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**2.** Under **B. Exclusions, 1. Applicable to Business Liability Coverage**, the following paragraph is added, and replaces the similar paragraph, if any, beneath paragraph **(14)** of the exclusion entitled **Personal and Advertising injury**:

Exclusions **c, d, e, f, g, h, i, k, l, m, n, and o**, do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner or to the contents of premises rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to this coverage as described in **Section D. Liability And Medical Expenses Limits Of Insurance**.

**3.** The first Paragraph under item **5. Damage To Premises Rented To You Li**mit of the section entitled **Liability And Medical Expenses Limits Of Insurance** is replaced by the following:

The most we will pay under Business Liability for damages because of "property damage" to any one premises, while rented to you or temporarily occupied by you with the permission of the owner, including contents of such premises rented to you for a period of 7 or fewer consecutive days, is the Damage to Premises Rented to You limit shown in the Declaration.

**E.   Personal and Advertising Injury – Discrimination or Humiliation**

**1.** Under **Liability and Medical Expenses Definitions**, the definition of "personal and advertising injury" is amended to add the following:

**h.** Discrimination or humiliation that results in injury to the feelings or reputation of a natural person, but only if such discrimination or humiliation is:

**(1)** Not done intentionally by or at the direction of:

**(a)** The insured; or



Copyright, CNA  All Rights Reserved.



**(b)** Any "executive officer," director, stockholder, partner, member or manager (if you are a limited liability company) of the insured; and

**(2)** Not directly or indirectly related to the employment, prospective employment, past employment or termination of employment of any person or person by any insured.

2.  Under **B. Exclusions, 1. Applicable to Business Liability Coverage**, the exclusion entitled **Personal and Advertising injury** is amended to add the following additional exclusions:

**(15) Discrimination Relating to Room, Dwelling or Premises**

Caused by discrimination directly or indirectly related to the sale, rental, lease or sub-lease or prospective sale, rental, lease or sub-lease of any room, dwelling or premises by or at the direction of any insured.

**(16) Employment Related Discrimination**

Discrimination or humiliation directly or indirectly related to the employment, prospective employment, past employment or termination of employment of any person by any insured.

**(17) Fines or Penalties**

Fines or penalties levied or imposed by a governmental entity because of discrimination.

3.  This provision **(Personal and Advertising Injury – Discrimination or Humiliation)** does not apply if **Personal and Advertising Injury Liability** is excluded either by the provisions of the Policy or by endorsement.

## F.  Personal and Advertising Injury - Broadened Eviction

Under **Liability and Medical Expenses Definitions**, the definition of "Personal and advertising injury" is amended to delete Paragraph c. and replace it with the following:

**c.**   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room dwelling or premises that a person or organization occupies committed by or on behalf of its owner, landlord or lessor.

## G.  Waiver of Subrogation – Blanket

We waive any right of recovery we may have against:

**a.**   Any person or organization with whom you have a written contract that requires such a waiver.

All other terms and conditions of the Policy remain unchanged.

Copyright, CNA  All Rights Reserved.

**CNA**

SB-146997-B
(Ed. 07/09)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## "FUNGUS," WET ROT, DRY ROT AND BACTERIA
## EXCLUSION/LIMITED COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

**A.** The following is added to Section **B.1., EXCLUSIONS:**

**m. "Fungus," Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria.

But if "fungus," wet or dry rot or bacteria results in a "specified cause of loss," we will pay for the loss or damage caused by that "specified cause of loss."

This exclusion does not apply:

1. When "fungus," wet or dry rot or bacteria results from fire or lightning; or

2. To the extent that coverage is provided in the Additional Coverage – Limited Coverage For "Fungus," Wet Rot, Dry Rot And Bacteria Section of this endorsement.

**B.** Section **B.2., EXCLUSIONS,** Paragraph **2.d.(2),** is deleted in its entirety and replaced by the following:

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**C.** Section **B.1.,EXCLUSIONS,** Paragraph **g. Water,** is deleted in its entirety and replaced by the following:

**g. Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more. But if the continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor results in Equipment Breakdown not otherwise excluded, we will pay for the loss or damage caused by that Equipment Breakdown.

**D.** The following is added to Section **A. COVERAGE,** Paragraph **5.** of the **ADDITIONAL COVERAGES** section:

**Additional Coverage – Limited Coverage for "Fungus," Wet Rot, Dry Rot and Bacteria**

1. The coverage described below in paragraphs **D.2.** and **D.6.** of this Limited Coverage endorsement only applies when the "fungus," wet or dry rot or

bacteria is the result of Covered Causes of Loss other than fire or lightning that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

2. We will pay for loss or damage by "fungus," wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

**a.** Direct physical loss or damage to Covered Property caused by "fungus," wet or dry rot or bacteria, including the cost of removal of the "fungus," wet or dry rot or bacteria;

**b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus," wet or dry rot or bacteria; and

**c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus," wet or dry rot or bacteria are present.

3. The coverage described under paragraph **D.2.** of this Limited Coverage endorsement is limited to $25,000, unless a different limit is shown in the Declarations. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of Covered Causes of Loss (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus," wet or dry rot or bacteria, we will not pay more than a total of $25,000 (unless a different limit is shown in the Declarations), even if the "fungus," wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus," wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

102000752067314575I207




SB-146997-B
(Ed. 07/09)

If there is covered loss or damage to Covered Property, not caused by "fungus," wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus," wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5.  The terms of this Limited Coverage do not increase or reduce the coverage provided under the Additional Coverages Section of the Special Property Coverage Forms.

6.  The following paragraphs, **6.a.** or **6.b.** applies to the Business Income and Extra Expense coverage and only if the suspension (slowdown or cessation) of "operations" satisfies all terms and conditions of the applicable Business Income and Extra Expense coverage. The coverage provided under this Limited Coverage is part of and does not increase the applicable Limit of Insurance on the Business Income and Extra Expense coverage.

    a.  If the loss which resulted in "fungus," wet or dry rot or bacteria does not in itself necessitate a suspension of "operations," but such suspension is necessary due to loss or damage to property caused by "fungus," wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

    b.  If a covered suspension of "operations" was caused by loss or damage other than "fungus," wet or dry rot or bacteria but remediation of "fungus," wet or dry rot or bacteria prolongs the "period of restoration," we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

E.  Under this policy, we will not pay under the Ordinance Or Law Coverage for:

1.  Loss or expense sustained due to the enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to the presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria; or

2.  The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "fungus," wet or dry rot or bacteria.

F.  The following is added to Section **G. PROPERTY DEFINITIONS:**

    **"Fungus"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**CNA**

SB147001C
(Ed. 05/15)

# NEW MEXICO CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
BUSINESSOWNERS COMMON POLICY CONDITIONS

**A.** The **Businessowners Special Property Coverage Form** is amended as follows:

    **1.** The following exclusion and related provisions are added to Paragraph **B.2. Exclusions**:

        **r.** We will not pay for loss or damage arising out of any act committed:

            **(1)** By or at the direction of any insured; and

            **(2)** With the intent to cause a loss.

        **s.** However, this exclusion will not apply to deny coverage to an innocent co-insured victim of "domestic abuse" who did not cooperate in or contribute to the creation of the loss provided that the loss is otherwise covered under this Coverage Form and is proximately related to and in furtherance of "domestic abuse."

        **t.** If we pay a claim pursuant to Paragraph **1.b.**, our payment to the insured is limited to the extent of that person's interest in the property. In no event will we pay more than the Limit of Insurance.

    **2.** With respect to coverage provided under this Policy for one through four family residential buildings which you own and lease to others for use as a residence, the following is added to Paragraph **E.4. Loss Payment** Property Loss Condition and supersedes any provision to the contrary:

        **a.** We will pay, subject to the Limit of Insurance, no more than the actual cash value of the damaged residential building until the actual repair or replacement is complete. However, if the actual cash value amount is insufficient to initiate repair or replacement of the damaged residential building, we will advance to you the amount necessary for you to initiate such repair or replacement. After the payment of actual cash value or such greater amount as described above, we will advance further amounts as necessary to continue the repair or replacement. The total of all advances and other payments hereunder will not exceed the amount allowed under Paragraph **4.e.(1)(c)**, nor will that total exceed the amount of loss payment we agree upon.

        Under this loss settlement procedure, the following special provisions apply:

            **(1)** You shall promptly forward to us evidence of the agreement with the party repairing or replacing the damaged residential building, showing the cost and estimated completion date of the repairs to the building; and

            **(2)** We will send to you the balance, if any, of the loss payment previously agreed upon when you forward to us evidence of the completion of the repairs to the damaged residential building.

        **b.** Paragraph **4.e.(2)** concerning the "Actual Cash Value Buildings" option does not apply.

**B.** The **Businessowners Common Policy Conditions** are amended as follows:

    **1.** Paragraph **A.2. Cancellation** is replaced by the following:

    **2. Permissible Reasons And Notice Period**

        **a.** If this policy has been in effect less than 60 days and is not a renewal of a policy we issued, we may cancel for any reason by mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation, provided that the cancellation becomes effective before the Policy has been in effect for 60 days.

        **b.** If Paragraph **a.** does not apply, we may cancel only for one or more of the following reasons:

            **(1)** Nonpayment of premium.

            **(2)** There has been a substantial change in the risk assumed by us since the policy was issued.

            **(3)** The policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by us.



SB147001C (Ed. 05/15)
Page 1 of 2

Copyright, CNA  All Rights Reserved.

SB147001C
(Ed. 05/15)

**(4)** Willful and negligent acts or omissions by the insured have substantially increased the hazards insured against.

**(5)** You presented a claim based on fraud or material misrepresentation.

**c.** If we cancel subject to **2.b.** above, we will mail or deliver to the first Named Insured written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation, for the reason set forth in **2.b.(1).**

**(2)** 30 days before the effective date of cancellation, for the reason set forth in **2.b.(2).**

**(3)** 15 days before the effective date of cancellation, for a reason set forth in **2.b.(3), 2.b.(4) or 2.b.(5).**

The written notice will state the reason for cancellation, except that such statement may be omitted from a notice mailed to an additional insured or lienholder under this policy.

**2.** The following is added to Paragraph **K. Transfer Of Rights Of Recovery Against Others To Us:**

If we pay an innocent co-insured victim of "domestic abuse" for loss arising out of an act of "domestic abuse" by another insured, the rights of the innocent co-insured to recover damages from the perpetrator of the "domestic abuse" are transferred to us to the extent of our payment. Following the loss, the innocent co-insured may not waive such rights to recover against the perpetrator of the "domestic abuse."

**3.** The following paragraph is added and supercedes any provision to the contrary:

**M. Nonrenewal**

If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of the nonrenewal not less than 30 days before the expiration date of the policy.

Proof of mailing will be sufficient proof of notice.

**C.** In Paragraphs **A.1.** and **B.2** of this endorsement, "domestic abuse" means attempting to cause or intentionally, knowingly or recklessly causing damage to property for the purpose of intimidating or attempting to control the behavior of another person, including a minor.

All other terms and conditions of the Policy remain unchanged.

Copyright, CNA  All Rights Reserved.

**CNA**

SB-147005-A
(Ed. 01/06)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW MEXICO CHANGES – PROPERTY CLAIMS
# SETTLEMENT IN THE EVENT OF A CATASTROPHE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

**A.** The provisions of this endorsement apply to a claim for direct physical loss or damage to Covered Property, provided that:

  **1.** The claim is for loss or damage that results from a catastrophe declared by the Superintendent of Insurance; and

  **2.** The catastrophic event is a Covered Cause of Loss.

**B.** The following provisions, **B.1.** and **B.2.,** are added to the policy and supersede any provisions to the contrary:

  **1.** If you reported your claim to us:

  **a.** Before the catastrophe was declared, we will reach agreement with you on the amount of loss within 90 days after the date the catastrophe was declared;

  **b.** After the catastrophe was declared, we will reach agreement with you on the amount of loss within 90 days after the date on which you reported the claim.

**2.** However, the time periods specified in **B.1.** above will be extended by the period of time taken to resolve the following situations:

  **a.** We suspect the claim is fraudulent and commence an investigation to make such a determination;

  **b.** You do not provide the necessary information regarding the nature of the claim, following our request for such information, or

  **c.** You filed suit against us in connection with the claim before expiration of the applicable 90-day period.

**C.** All other provisions of this policy continue to apply in the event of a catastrophe, including the Legal Action Against Us and Appraisal conditions.

**D.** This endorsement does not invalidate our right to deny your claim, nor the right of either party to seek judgment in a court having jurisdiction



Copyright, Insurance Services Office, Inc., 1993



SB-147023-A
(Ed. 01/06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI / MOLD / MILDEW / YEAST / MICROBE EXCLUSION WITH LIMITED PROPERTY DAMAGE EXCEPTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS LIABILITY COVERAGE FORM

**A.** The following exclusion is added to **SECTION B. 1., EXCLUSIONS – Applicable to Business Liability Coverage:**

This insurance does not apply to:

**Fungi and Microbes**

**(1)** "Bodily injury" arising out of or relating to, in whole or in part, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or growth or presence of any "fungi" or "microbes." This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage, loss, cost or expense. But this exclusion does not apply where your business is food processing, sales, or serving, and the "bodily injury" is caused solely by food poisoning in connection with such processing, sales, or serving.

**(2)** "Property damage" arising out of or related to the actual, alleged or threatened contact with, exposure to, existence of, or growth or presence of any "fungi" or "microbes." But this exclusion does not apply to the first $25,000 of "property damage" that would be covered by this policy but for the operation of this exclusion. Refer to the Limits section as revised by this endorsement (in Paragraph **C.,** below).

**(3)** Any loss, cost or expense (other than the first $25,000 of "property damage" as described above) arising out of or relating to the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to or assessing the effects of "fungi" or "microbes" by any insured or by anyone else.

**B.** The following exclusion is added to **SECTION B.1.q.** and **B.1.r., EXCLUSIONS – Applicable to Business Liability Coverage / "Personal injury" or "advertising injury":**

This insurance does not apply to:

**Fungi and Microbes**

**(1)** "Personal injury" or "advertising injury " arising out of or relating to, in whole or in part, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or growth or presence of any "fungi" or "microbes."

**(2)** Any loss, cost or expense arising out of or relating to the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to or assessing the effects of "fungi" or "microbes" by any insured or by anyone else.

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to such injury, loss, cost or expense.

**C.** **SECTION D., LIMITS OF INSURANCE** is amended to append the following paragraph:

Subject to **2.,** or **3.** above, whichever applies, $25,000 is the most we will pay under **SECTION A** for damages because of "property damage" arising out of or relating to the actual, alleged or threatened contact with, exposure to, existence of, or growth or presence of any "fungi" or "microbes."

**D.** The following definitions are added to **SECTION F., DEFINITIONS:**

"Fungi" means any form of fungus, including but not limited to, yeast, mold, mildew, rust, smut or mushroom, and including any spores, mycotoxins, odors, or any other substances, products, or byproducts produced by, released by, or arising out of the current or past presence of fungi. But "fungi" does not include any fungi intended by the insured for consumption.

"Microbe(s)" means any non-fungal microorganism or non-fungal, colony-form organism that causes infection or disease. "Microbe" includes any spores, mycotoxins, odors, or any other substances, products, or byproducts produced by, released by, or arising out of the current or past presence of microbes. But "microbe" does not mean microbes that were transmitted directly from person to person.

**E.** The following condition is added to **SECTION E, GENERAL CONDITIONS:**

**Arbitration**

For "property damage," the determination of what portion of a loss is attributable to "fungi" and "microbes," and what portion is not, shall be made by us. If you disagree with that determination, you and we

SB-147023-A
(Ed. 01/06)

agree to submit to binding arbitration according to the Commercial Arbitration Rules of the American Arbitration Association, or according to such other rules as you and we agree to. If binding arbitration of insurance disputes is not allowed in the state where you are incorporated (or, if you are not a corporation, the state where you are domiciled), then arbitration shall be non-binding, and shall only proceed if both you and we agree to enter into it. The arbitration will be held in the county where you are headquartered, or at such other location as may be jointly agreed to by the arbitrators. Each party will bear its own arbitration costs.

SB-147023-A
(Ed. 01/06)

Incorporates materials copyrighted by Insurance Services Office, reprinted with their permission.

Page 2 of 2



# IMPORTANT INFORMATION

## FOR OUR NEW MEXICO BUSINESSOWNERS POLICYHOLDERS

[   ] **NEW POLICY**

With respect to Rate Modification Plans, the New Mexico Rate Modification Plan Rule provides that, at the time a new policy is issued, the policyholder must be notified, in writing, of the factors, whether credits or debits, which resulted in the rating modification applied. If your policy is eligible for application of the Individual Risk Premium Modification Rating Plan, the factors used in the development of the Individual Risk Premium Modification are indicated below.

[ X ] **RENEWAL POLICY**

With respect to Rate Modification Plans, the New Mexico Rate Modification Plan Rule provides that, at the time a renewal policy is issued, the policyholder must be notified, in writing, of the removal of credits or the addition of debits in the rating modification, and the reason the credits have been removed or the debits have been added. If credits have been removed or debits have been added in the application of the Individual Risk Premium Modification Rating Plan, these changed factors and the reason for the changes are indicated below.

**INDIVIDUAL RISK MODIFICATION RATING PLAN**

| Characteristic | Credit | Debit | Renewal Policy Reason For Modification Change |
|---|---|---|---|
| Management | | | |
| Location | | | |
| Building Features | | | |
| Premises and Equipment | | | |
| Employees | | | |
| Protection | | | |

If you have any questions regarding this modification, please contact your CNA independent agent.

**CNA**

SB-147075-A
(Ed. 01/06)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ECONOMIC AND TRADE SANCTIONS CONDITION

The following condition is added to the **COMMON POLICY CONDITIONS:**

### ECONOMIC AND TRADE SANCTIONS CONDITION

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void **ab initio** (void from its inception) with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1. Any insured, or any person or entity claiming the benefits of an insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2. Any claim or "suit" that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3. Any claim or "suit" that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

4. Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5. Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

SB-147075-A
(Ed. 01/06)



SB-147079-A
(Ed. 01/06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS LIABILITY COVERAGE FORM

**I.** The following provisions are added to the Business Liability Coverage Forms:

**A. War** Exclusion **i.** under Paragraph **B.1., Exclusions – Applicable to Business Liability Coverage** is replaced by the following:

This insurance does not apply to War.

"Bodily injury," "property damage," "personal and advertising injury," however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**II.** The following provision is added to the Business Liability Coverage Form:

**A.** Exclusion **h.** under Paragraph **B.2., Exclusions – Applicable To Medical Expenses Coverage** does not apply. Medical Expenses due to war are now subject to Exclusion **g.** of Paragraph **B.2.,** since "bodily injury" arising out of war is now excluded under Paragraph **B.1., Exclusions – Applicable To Business Liability Coverage.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2003

**CNA**

SB-147080-A
(Ed. 01/06)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – SILICA

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS LIABILITY COVERAGE FORM

**A.** The following exclusion is added to **Section B.1. EXCLUSIONS – Applicable to Business Liability Coverage:**

This insurance does not apply to:

**1.** "Bodily injury" arising in whole or in part out of the actual, alleged or threatened respiration or ingestion at any time of "silica"; or

**2.** "Property damage" arising in whole or in part out of the actual, alleged or threatened presence of "silica."

**3.** This insurance does not apply to "personal and advertising injury" arising in whole or in part out of the actual, alleged or threatened exposure at any time to or the presence of "silica."

**B.** The following definition is added:

"Silica" means the chemical compound silicon dioxide (SiO2) in any form, including dust which contains "silica."





SB-147082-E
(Ed. 04/14)

# BUSINESSOWNERS COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions:

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy.

      (1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

         (a) Seasonal unoccupancy; or

         (b) Buildings in the course of construction, renovation or addition.

         Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

      (2) After damage by a covered cause of loss, permanent repairs to the building:

         (a) Have not started, and

         (b) Have not been contracted for,

         within 30 days of initial payment of loss.

      (3) The building has:

         (a) An outstanding order to vacate;

         (b) An outstanding demolition order; or

         (c) Been declared unsafe by governmental authority.

      (4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

      (5) Failure to:

         (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

      (b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   b. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   c. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

SB-147082-E
(Ed. 04/14)

**E.  Inspections And Surveys**

We have the right but are not obligated to:

**1.**  Make inspections and surveys at any time;

**2.**  Give you reports on the conditions we find; and

**3.**  Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**1.**  Are safe or healthful; or

**2.**  Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**F.  Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G.  Liberalization**

If, during your policy period, we adopt any revision that would broaden the coverage under this policy without additional premium the broadened coverage will immediately apply to this policy.   The broadened coverage will also apply to the renewal of this policy if such renewal was in process or was mailed prior to the date we adopted such revision.

**H.  Other Insurance**

**1.**  If you have other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**2.**  Business Liability Coverage is excess over:

**a.**  Any other insurance that insures for direct physical loss or damage; or

**b.**  Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured.

**3.**  When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will

undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

**I.  Premiums**

**1.**  The first Named Insured shown in the Declarations:

**a.**  Is responsible for the payment of all premiums; and

**b.**  Will be the payee for any return premiums we pay.

**2.**  The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**3.**  With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

**a.**  Paid to us prior to the anniversary date; and

**b.**  Determined in accordance with Paragraph **2.** above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

**4.**  Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J.  Premium Audit**

**1.**  This policy is subject to audit if the Declarations show an Audit Period other than 'Not Auditable.' We will compute the final premium due when we determine your actual exposures.

**2.**  Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**3.**  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

10020007520673145751213

SB-147082-E
(Ed. 04/14)

**K.  Transfer Of Rights Of Recovery Against Others To Us**

    **1.**  Applicable to Businessowners Property Coverage:

       If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

       **a.**  Prior to a loss to your Covered Property.

       **b.**  After a loss to your Covered Property only if, at time of loss, that party is one of the following:

          **(1)**  Someone insured by this insurance;

          **(2)**  A business firm:

             **(a)**  Owned or controlled by you; or

             **(b)**  That owns or controls you; or

          **(3)**  Your tenant.

       You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

    **2.**  Applicable to Businessowners Liability Coverage:

       If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**L.  Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission



SB-147086-B
(Ed. 04/10)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

## SCHEDULE*

| Prem. No. | Description of Property | Loss Payee (Name & Address) | Provision Applicable (Indicate Paragraph A, B, C or D) |
|---|---|---|---|

### REFER TO LOSS PAYEE SCHEDULE

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

The following is added to the Businessowners Special Property Coverage Form LOSS PAYMENT Loss Condition, as shown in the Declarations or by an "A," "B" "C," or "D" in the Schedule:

**A. LOSS PAYABLE CLAUSE**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. LENDER'S LOSS PAYABLE CLAUSE**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor (including a mortgageholder or trustee) with whom you have entered a contract for the sale of Covered Property, whose interest in that Covered Property is established by such written contracts as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading; or

   d. Financing statements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

   b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

   c. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still

have the right to receive loss payment if the Loss Payee:

   (1) Pays any premium due under this policy at our request if you have failed to do so;

   (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of the Businessowners Special Property Coverage Form will then apply directly to the Loss Payee.

   d. If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   (2) The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

      At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

   a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.



1002000752067314575 1214

SB-147086-B
(Ed. 04/10)

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. CONTRACT OF SALE CLAUSE**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

    **a.** Adjust losses with you; and

    **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the OTHER INSURANCE Businessowners Common Policy Condition:

    For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. BUILDING OWNER LOSS PAYABLE CLAUSE**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

**CNA**

SB-147088-A
(Ed. 01/06)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – ASBESTOS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

This insurance does not apply to:

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened exposure at any time to asbestos; or

**(2)** Any loss, cost or expense that may be awarded or incurred:

    **(a)** by reason of a claim or "suit" for any such injury or damage; or

    **(b)** in complying with a governmental direction or request to test for, monitor, clean up, remove, contain or dispose of asbestos.

Asbestos means the mineral in any form whether or not the asbestos was at any time:

**(1)** airborne as a fiber, particle or dust;

**(2)** contained in, or formed a part of a product, structure or other real or personal property;

**(3)** carried on clothing;

**(4)** inhaled or ingested; or

**(5)** transmitted by any other means.





SB-147089-A
(Ed. 01/06)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
## EMPLOYMENT – RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS LIABILITY COVERAGE FORM

The following exclusion is added to Section **B. EXCLUSIONS** of the Businessowners Liability Coverage Form:

This insurance does not apply to:

**r.** "Bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any;

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in paragraphs **(1)**, **(2)** or **(3)** above is directed.

This exclusion applies:

**a.** Whether the insured may be liable as an employer or in any other capacity; and

**b.** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

**CNA**

# BUSINESSOWNERS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the company providing the insurance.

The word "insured" means any person or organization qualifying as such under Section **C.** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION **F** – LIABILITY DEFINITIONS.

**A. Coverages**

  **1. Business Liability (Bodily Injury, Property Damage, Personal and Advertising Injury)**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage" or "personal and advertising injury," to which this insurance does not apply. We may at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section **D** – Liability And Medical Expenses Limits Of Insurance; and

   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses to which this insurance applies.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension – Supplementary Payments.

  **b.** This insurance applies:

   **(1)** To "bodily injury" and "property damage" only if:

    **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(b)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

   **(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Section **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Section **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission



10020007520673145751216

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**f. Coverage Extension – Supplementary Payments**

(1) In addition to the Limit of Insurance of Liability we will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

(a) All expenses we incur.

(b) Up to $1,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

(c) The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

(d) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

(e) All court costs taxed against the insured in the "suit." However, these payments do not include attorneys' fees or attorney expenses taxed against the insured.

(f) Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

(g) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limits of Insurance.

(2) If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

(a) The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

(b) This insurance applies to such liability assumed by the insured;

(c) The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

(d) The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

(e) The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

(f) The indemnitee:

(i) Agrees in writing to:

i. Cooperate with us in the investigation, settlement or defense of the "suit";

ii. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

iii. Notify any other insurer whose coverage is available to the indemnitee; and

iv. Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(ii) Provides us with written authorization to:

Includes copyrighted material of Insurance Services Office, Inc., with its permission

i. Obtain records and other information related to the "suit"; and

ii. Conduct and control the defense of the indemnitee in such "suit."

**(3)** So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** Exclusions in Section **B - EXCLUSIONS**, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**(a)** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**(b)** The conditions set forth above, or the terms of the agreement described in **f.** above are no longer met.

**2. Medical Expenses**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the

applicable Limit of Insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**B. Exclusions**

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by an insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d.** **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e.** **Employer's Liability**

"Bodily Injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

    **(a)** Employment by the insured; or

    **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

**f.** **Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage,

migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat, cool or dehumidify the building or equipment that is used to heat water for personal use by the buildings occupants or their guests;

    **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    **(i)** Any insured; or

    **(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in

connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants."

**(2)** Any loss, cost or expense arising out of any:

**a.** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**b.** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

**g.    Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** An aircraft that is:

**(a)** Hired, chartered, or loaned with a paid crew; but

**(b)** Not owned by any insured;

**(2)** A watercraft while ashore on premises you own or rent;

**(3)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(4)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided

1002000752067314575121B

the "auto" is not owned by or rented or loaned to you or the insured;

**(5)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(6)** "Bodily injury" or "property damage" arising out of the operation of any of the following equipment:

    **(a)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(b)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Professional Services**

"Bodily injury," "property damage," "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Supervisory, inspection or engineering services;

**(4)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** Body piercing services;

**(9)** Services in the practice of pharmacy;

**(10)** Veterinary medicine services;

**(11)** Mortician services; and

**(12)** Services rendered in connection with the creation and/or development, modification, or repair of "software," including, but not limited to design, specifications, system or "software" configuration and consultation.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage," or the offense which caused the "personal and advertising injury," involved the rendering or failure to render any professional service.

**k. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire or explosion) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Paragraph **D.** Liability And Medical Expenses Limit Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products – completed operations hazard."

**l.   Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m.   Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products – completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n.   Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o.   Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p.   Personal And Advertising Injury**

"Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(3)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(4)** Arising out of a criminal act committed by or at the direction of any insured;

**(5)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(6)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**(7)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**(8)** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

**(9)** Committed by an insured whose business is:

**(a)** Advertising, broadcasting, publishing or telecasting;

1002000752067314575121 9

**(b)** Designing or determining content of web-sites for others; or

**(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under Paragraph **F.** Liability And Medical Expenses Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting.

**(10)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(11)** With respect to any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of, "pollutants."

**(12)** Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control.

**(13)** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

**(14)** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

Exclusions **c., d., e., f., g., h., i., k., l., m., n.** and **o.** in **Section II – Liability** do not apply to damage by fire or explosion to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate

Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph **D.** Liability And Medical Expenses Limits of Insurance.

**q.** **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**2.** **Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

**a.** To any insured, except "volunteer workers."

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products – completed operations hazard."

**g.** Excluded under Business Liability Coverage.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**3.** Applicable To Both Business Liability Coverage And Medical Expenses Coverage – Nuclear Energy Liability Exclusion

This insurance does not apply:

**a.** Under Business Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy

Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

(a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

(b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

b. Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

c. Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the nuclear material"; if:

(1) The "nuclear material":

(a) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

(b) Has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

d. As used in this exclusion:

(1) "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(2) "Hazardous properties" include radioactive, toxic or explosive properties;

(3) "Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for:

(i) Separating the isotopes of uranium or plutonium;

(ii) Processing or utilizing "spent fuel"; or

(iii) Handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

(4) "Nuclear material" means "source material," "special nuclear material" or "byproduct material";

(5) "Nuclear reactor" means an apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(6) "Property damage" includes all forms of radioactive contamination of property.

(7) "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(8) "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(9) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has

1002000752067314575122O

been used or exposed to radiation in a "nuclear reactor";

**(10)** "Waste" means any waste material:

**(a)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any one processed primarily for its "source material" content; and

**(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraph **(a)** and **(b)** of the definition of "nuclear facility."

**C. Who Is An Insured**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an Insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these

"employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(a)** or **(b)**; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees," "volunteer workers," any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership of majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Bodily Injury and Property Damage coverage does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Personal and Advertising Injury coverage does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

   No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."

2. The most we will pay for:

   a. Injury or damages under the "products completed operations hazard" arising from all "occurrences" during the policy period is the Products-Completed Operations Aggregate Limit shown in the Declarations.

   b. All other injury or damages, including medical expenses, arising from all "occurrences" during the policy period is the General Aggregate Limit shown in the Declarations.

      This General Aggregate Limit applies separately to each of your "locations" owned by or rented to you.

      "Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway or right-of-way of a railroad.

      This aggregate Limit does not apply to "property damage" to premises rented to you arising out of fire, lightning or explosion.

3. Subject to item **2.** above, the most we will pay for the sum of all damages because of all "bodily injury," "property damage" and medical expenses arising out of any one "occurrence" is the Liability and Medical Expense Limit shown in the Declarations.

   The most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses Limit shown in the Declarations.

4. Subject to item **2.** above, the most we will pay for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization is the Personal and Advertising Injury Limit shown in the Declarations.

5. The most we will pay under Business Liability Coverage for damages because of "property damage" to premises rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner, is the Damage To Premises Rented To You Limit shown in the Declarations.

   The Damage to Premises Rented To You Limit applies to all damage proximately caused by the same event, whether such damage results from fire, lightning, or explosion or any combination of the three.

   If more than one limit of insurance under this policy and any endorsements attached thereto applies to any claim or "suit," the most we will pay under this policy and the endorsements is the single highest limit of liability of all coverages applicable to such claim or "suit." However, this paragraph does not apply to the Medical Expenses limit set forth in paragraph **3.** above.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

1002000752067314575122
1

The Limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Businessowners Liability Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or

damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Financial Responsibility Laws**

**a.** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the policy for "bodily injury" liability and "property damage" liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by that law.

**b.** With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

**4. Legal Action Against Us**

No person or organization has a right under this policy:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**5. Separation Of Insureds**

Except with respect to the Limits of Insurance in this policy, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

**6. Unintentional Failure to Disclose Hazards**

It is agreed that based on our reliance on your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we shall not deny any coverage under this Coverage Form because of such failure.

**F. Liability And Medical Expenses Definitions**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

   **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

   **c.** All other parts of the world if the injury or damage arises out of:

      **(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

      **(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

      **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

      **(1)** The repair, replacement, adjustment or removal of "your product" or "your work"; or

      **(2)** Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be



SB-300000-D
(Ed. 04/14)

imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(c)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection or engineering services.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraphs **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraphs **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

   **f.** The use of another's advertising idea in your "advertisement"; or

   **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed

**16.** "Products – completed operations hazard":

   **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   **(1)** Products that are still in your physical possession; or

   **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

   **(a)** When all of the work called for in your contract has been completed.

   **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

   **(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or

   replacement, but which is otherwise complete, will be treated as completed.

   The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

   **b.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**17.** "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Software" means:

   **a.** Electronic data processing, recording or storage media such as films, tapes, cards, discs, drums or cells; and

   **b.** Data and programming records used for electronic data processing or electronically controlled equipment stored on such media; and

   **c.** Written or printed data, such as programs, routines, and symbolic languages, essential to the operation of computers; and

   **d.** Documents containing information on the operation and maintenance of computers.

10200007520673145751223

**19.** "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**20.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**21.** "Volunteer worker" means a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**22.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**23.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

**CNA**

SB-300043-D
(Ed. 06/11)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WELFARE AND PENSION PLAN ERISA COMPLIANCE

This endorsement applies only to the EMPLOYEE DISHONESTY COVERAGE.

### PROVISIONS

In compliance with certain provisions of the Employee Retirement Income Security Act (ERISA):

1. If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance for the WELFARE AND PENSION PLAN ERISA COMPLIANCE COVERAGE FORM that is sufficient to provide an amount of insurance for each Plan that is at least equal to that required if each Plan were separately insured.

2. If the Insured first named in the Declarations is an entity other than a Plan, any payment we make to that Insured for loss sustained by any Plan will be held by that Insured for the use and benefit of the Plan(s) sustaining the loss.

3. If two or more Plans are insured under this insurance, any payment we make for loss:

   a. Sustained by two or more Plans or

   b. Of commingled funds or other property of two or more Plans

   that arises out of one "occurrence," is to be shared by each Plan sustaining loss in the proportion that the amount of insurance required for each such Plan under ERISA provisions bears to the total of those amounts.

4. The **Deductible** provision of the EMPLOYEE DISHONESTY COVERAGE does not apply to loss sustained by any Plan subject to ERISA which is insured under this insurance.

5. Limit of Insurance

   The most we will pay in any one occurrence is the limit of insurance shown in the Declarations for Welfare and Pension Plan ERISA Compliance.

   If, during the policy period, the Plan assets increase resulting in a Limit of Insurance applicable that is less than the amount required under ERISA, then that Limit of Insurance will be automatically increased to the Limit of Insurance equal to 10% of the total assets for that Plan, but not to exceed the applicable maximum required Per Plan Limit of Insurance required under ERISA.

6. "Employee" also includes any natural person who is:

   a. A trustee, an officer, employee, administrator or a manager, except an administrator or a manager who is an independent contractor, of any Employee Welfare or Pension Benefit Plan (hereafter called Plan) insured under this insurance, and

   b. Your director or trustee while that person is handling funds or other property of any Plan insured under this insurance.





SB-300120-C
(Ed. 06/11)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION - WITH PRODUCTS COMPLETED OPERATIONS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS LIABILITY COVERAGE FORM

**SCHEDULE\***

| Name Of Person Or Organization: |
| --- |
| |

| \* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations. |
| --- |

**A.** The following is added to Paragraph **C. Who Is An Insured:**

**4.** Any person(s) or organization(s) shown in the Schedule is also an additional insured, but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury," caused, in whole or in part, by:

**a.** Your acts or omissions; or

**b.** The acts or omissions of those acting on your behalf

in the performance of your ongoing operations for the additional insured(s); at the location(s) designated above; or

**c.** "Your work" that is included in the "products-completed operations hazard" and performed for the additional insured, but only if this Policy provides such coverage, and only if the written contract or written agreement requires you to provide the additional insured such coverage.

**B.** The insurance provided to the additional insured does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of:

**1.** The rendering of, or the failure to render any professional architectural, engineering, or surveying services, including:

**(a)** The preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

**(b)** Supervisory, inspection, architectural or engineering activities.

**2.** "Bodily Injury," "property damage," or "personal and advertising injury" arising out of any premises or work for which the additional insured is specifically listed as an additional insured on another endorsement attached to this Policy.

**C.** The following is added to **Paragraph H.** of the **Businessowners Common Policy Conditions:**

**H.** Other Insurance

This insurance is excess over any other insurance naming the additional insured as an insured whether primary, excess, contingent or on any other basis unless a written contract or written agreement specifically requires that this insurance be either primary or primary and noncontributing.

**CNA**

SB-300129-B
(Ed. 01/08)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TARGETED HACKER ATTACK

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.6.** Coverage Extensions. Unless otherwise stated, payments made under this Coverage Extension are subject to and not in addition to the applicable Limits of Insurance.

**Targeted Hacker Attack**

1. We will pay up to the Limits of Insurance indicated in Paragraphs **9.** and **10.** below, for the following:

   **a.** Corruption, distortion, deletion, damage or destruction of your "electronic data" caused by or resulting from a "targeted hacker attack."

   **b.** Subject to paragraph **8.** below, actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by the necessary interruption or suspension of your "electronic data processing equipment" resulting from a "targeted hacker attack" that corrupts, distorts, deletes, damages or destroys your "electronic data."

   **c.** Subject to paragraph **8.** below, with respect to a "suspension" of your "operations" as described in paragraph **1.b.** above, the "extra expense" (other than the expense to repair or replace property) to:

      **(1)** Avoid or minimize the "suspension" of business and to continue "operations"; or

      **(2)** Minimize the "suspension" of business if you cannot continue "operations."

2. Worldwide coverage is provided under this Coverage Extension. The coverage territory as described in Paragraph **F.8.b** does not apply to this Coverage Extension.

3. This Coverage Extension does not apply to:

   **a.** "Stock"; or

   **b.** Property that is licensed, leased or rented to others.

4. The following exclusions as described in Section **B.,** Exclusions, of the Businessowners Special Property Coverage Form do not apply to this Coverage Extension:

   **a.** Paragraph **1.j.;** and

   **b.** Paragraph **1.k.**

5. The following additional exclusions apply:

   With respect to this Coverage Extension, we will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a.** Programming errors or omissions, or incorrect instructions to a machine, including without limitation, incorrect instructions to "electronic data processing equipment" from a user incorrectly operating with, or committing an error using, an input device (including, without limitation, a keyboard, mouse or touchpad) and corrupting, distorting, deleting, damaging or destroying "electronic data."

   **b.** Misappropriation, theft, copying, transfer or unauthorized viewing of any property, proprietary or confidential information, "money," "securities," "stock," "electronic data processing equipment" "electronic media and data" or "electronic data" including without limitation, the use of any computer to cause such misappropriation, transfer or copying.

   **c.** Errors or deficiency in design, installation, maintenance, repair or modification of your "electronic data processing equipment," "electronic media and data" or "electronic data" or any "electronic data processing equipment," electronic devices, computer system or network to which your "electronic data processing equipment" "electronic media and data" or "electronic data" is connected or dependent; provided, however, this exclusion shall not apply with respect to any such error or deficiency in design, installation, maintenance, repair or modification that is exploited as part of an otherwise covered " targeted hacker attack."

   **d.** Unexplained or indeterminable failure, malfunction or slowdown of a "electronic data processing equipment" "electronic media and data" or "electronic data."

   **e.** Suspension, interruption, delay, disruption, loss of functionality of, inaccessibility to, or inability to use or communicate with, any "electronic data

102000752067314575122S

processing equipment," "electronic media and data," "electronic data," computer resource, electronic device, computer system, computer network or equipment.

**f.** "Mass attack malware."

**g.** "Mass system penetration."

6. The following definitions apply to this Coverage Extension:

   **a.** Business Income means:

   **(1)** Net Income (Net Profit or Loss before Income taxes) that would have been earned or incurred, including; and

   **(2)** Continuing normal operating expenses incurred, including payroll.

   **b.** Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no necessary interruption or suspension of your "electronic data processing equipment" resulting from a "targeted hacker attack" that corrupts, distorts, deletes, damages or destroys your "electronic data." Provided, however, that Extra Expense shall not mean the costs you incur to copy, research, replace or restore "electronic data."

7. For purposes of this Coverage Extension only, the definition for "period of restoration" as set forth in the Businessowners Special Property Coverage Form is changed to the following (the definition shall remained unchanged with respect to all other parts of the policy):

   **"Period of restoration"** means the period of time that:

   **a.** Begins on the date and time of the necessary interruption or suspension of your "electronic data processing equipment"; and

**b.** Ends on the date and time that the necessary interruption or suspension of your "electronic data processing equipment" ends, or would have ended had you acted with due diligence and dispatch.

Provided, however, that "period of restoration" shall not mean more than, or exceed, thirty (30) days. The expiration date of this policy will not cut short the "period of restoration."

8. We shall not be liable for any payment for the "extra expense" you incur, and loss of Business Income you sustain, during the first 12 hours following the date and time the necessary interruption or suspension of your "electronic data processing equipment" begins; provided, however, if the "business income and extra expense" – 72 Hour Deductible endorsement is part of this policy, the "12 hours" reference in this paragraph shall be changed to "72 hours" and the 72 hour deductible stated in that endorsement shall apply with respect to this Coverage Extension.

9. The most we will pay in the aggregate under this Coverage Extension and the policy for all corruption, distortion, deletion, damage, destruction or any other harm to "electronic data" (combined) caused by or resulting from a "targeted hacker attack," during each separate 12 month period of this policy beginning with the effective date of this policy, is $25,000 or the limit shown on the Declaration page.

10. The most we will pay in the aggregate under this Coverage Extension and the policy for all "extra expense" and loss of "business income" (combined) during each separate 12 month period of this policy beginning with the effective date of this policy is $25,000.

**CNA**

# FIDUCIARY LIABILITY COVERAGE FORM

THIS IS A CLAIMS MADE COVERAGE FORM. PLEASE READ ALL PROVISIONS AND CONTACT YOUR AGENT IF YOU HAVE ANY QUESTIONS. THIS INSURANCE APPLIES ONLY TO "WRONGFUL ACTS" THAT OCCUR BETWEEN THE RETROACTIVE DATE AND THE END OF THE "POLICY PERIOD." THIS INSURANCE APPLIES ONLY TO "CLAIMS" FIRST MADE AGAINST THE INSURED AFTER THE INCEPTION DATE AND BEFORE THE END OF THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD AND REPORTED TO US IN ACCORDANCE WITH THE PROVISIONS OF THIS FORM. UPON TERMINATION OF YOUR POLICY AN AUTOMATIC EXTENDED REPORTING PERIOD WILL BE PROVIDED, AND A SUPPLEMENTAL EXTENDED REPORTING PERIOD WILL BE AVAILABLE.

Various provisions in this Coverage Form restrict coverage. Read the entire Coverage Form carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the terms "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." The terms "we," "us" and "our" refer to the Stock Insurance Company named on the Declarations providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **III** – Definitions.

## SECTION I – INSURING AGREEMENTS

### A. Coverage

We will pay those sums in excess of the deductible and subject to the limits of liability that the Insured becomes legally obligated to pay as "damages" because of a claim resulting from a "wrongful act" provided:

**1.** The "wrongful act" takes place in the "coverage territory";

**2.** The "wrongful act" did not occur before the Retroactive Date, if any, shown in the Declarations nor after the end of the "policy period"; and

**3.** A "claim" arising out of a "wrongful act" is first made against an insured, during the "policy period" or Extended Reporting Period, if applicable and is reported to us in accordance with Section **VIII**, Conditions, paragraph **C**, Duties in the event of a "Claim"; and

**4.** Prior to the inception date of this Coverage Form:

   **a.** The Insured did not give notice to a prior insurer of a "related claim";

   **b.** The Insured did not give notice to a prior insurer of any such "wrongful act" or "interrelated wrongful act."

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided

for under paragraph **1.D.** – **Supplementary Payments**

### B. Defense

We have the right and duty to defend all "suits," even if the allegations are groundless, false or fraudulent. We shall have the right to appoint counsel and to make such investigation and defense of a "suit" as we deem necessary. Alternatively we may, at our option, give our written consent to the defense of any such "suit" to the insured. Our obligation to defend any "suit" or pay any "damages" and "defense expenses" for any "claim" shall be completely fulfilled and extinguished if the limit of insurance has been exhausted by payment of "damages" or "defense expenses."

### C. Consent To Settle

We shall not settle a "claim" without your written consent . If you refuse to consent to a settlement or compromise recommended by us, and acceptable to the claimant, then the applicable limit of insurance under this Coverage Form shall be reduced to the amount for which the "claim" could have been settled plus all "defense expenses" incurred up to the time we made our recommendation.

### D. Supplementary Payments

We will pay, with respect to any "claim" or "suit" we investigate or settle, or any "suit" against an insured we defend all "defense expenses." These payments

102000752067314575122 6

SB-300441-A
(Ed. 01/07)

are included within and reduce the Limits of Insurance.

## SECTION II – WHO IS AN INSURED

**A.** If you are designated in the Declarations as:

    **1.** A partnership or joint venture, you are an insured. Your partners or members are also insureds.

    **2.** A limited liability company, you are an insured. Your members and managers are also insureds.

    **3.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your directors, officers and trustees are also insureds.

**B.** Your "plans" and their employees, directors, officers and trustees are also insureds.

**D.** Your employees are also insureds, unless otherwise excluded in this policy.

**E.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. You must notify us of such acquisition or formation as soon as practicable. However, coverage under this provision:

    **1.** Is afforded only until the 90th day after you acquire or form the organization, or until the end of the "policy period," whichever is earlier; and

    **2.** Does not apply to an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – DEFINITIONS

The following defined words shall have the same meaning throughout this Coverage Form, whether expressed in the singular or the plural.

**A.** "Claim" means:

    **1.** A "suit"; or

    **2.** A written demand for monetary or non-monetary damages made against an insured, arising out of a "wrongful act,"

**B.** "Coverage territory" means:

    **1.** The United States of America (including its territories or possessions) and Puerto Rico; or

    **2.** All parts of the world if the "insured's" responsibility to pay "damages" is determined in a "suit" on the merits brought in the territory described in Paragraph **1.** above or in a settlement of a "claim" that we agree to.

**C.** "Damages" means sums, settlements, judgments (including any award of pre-judgment and post-judgment interest) for which you are legally obligated to pay on account of a covered "claim." "Damages" shall not include:

    **1.** Any taxes, sanctions, criminal or civil fines, or penalties imposed by law other than:

        **a.** The five percent or less or the twenty percent or less penalty imposed upon an insured as a Fiduciary under Section 502(i) or 502(l) of ERISA;

        **b.** Those civil fines or penalties imposed under 42 USC 1320d-5(a) the Health Insurance Portability and Accountability Act of 1996 provided however that our maximum limit of insurance for all such fines and penalties shall be $10,000 in the aggregate, regardless of the number of "claims" made or Insureds covered under this Coverage Form. This sublimit of insurance is part of and not in addition to the limit of insurance set forth on the Declarations.

    **2.** Any amount for which an "insured person" is absolved from payment by reason of any covenant, agreement or court order;

    **3.** Any matters deemed uninsurable under the law pursuant to which this Policy is construed.

Notwithstanding anything to the contrary above, "damages" shall include punitive or exemplary damages, if insurable, to the fullest extent permitted by any applicable law. Where you reasonably determine that punitive, exemplary or multiple damages are insurable under any applicable law, we shall not challenge that determination of insurability.

**D.** "Defense expenses" means all fees charged by attorneys designated by us, or by you, with our written consent and all other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a "claim" if incurred by us or you with our written consent, including the costs of appeal, attachment or similar bonds. We have no obligation to provide such bonds. "Defense Expenses" shall not include salaries, wages, fees, overhead or benefit expenses associated with the directors, officers, and employees of yours.

**E.** "Domestic Partner" means any person qualifying as such under any federal, state or local laws or under your employee benefit plans.

**F.** "ERISA or any Similar Act" means the Employee Retirement Income Security Act of 1974, as

amended, or any similar common or statutory law of the United States, Canada or their states, territories or provinces or any other jurisdiction anywhere in the world.

**G.** **"Executive officer"** means your chairperson, chief executive officer, president, chief financial officer and in-house general counsel;

**H.** **"Insured Persons"** means all of those natural person insureds who are your partners, trustees, members, managers, "executive officers," directors and employees

**I.** **"Interrelated Wrongful Acts"** means any "wrongful acts" which are logically or causally connected by reason of any common fact, circumstance, situation, transaction or event.

**J** **"Pension Plan"** means any employee pension benefit plan as defined in 29 U.S.C. §1002 subject to regulation under "ERISA or any Similar Act." "Pension plan" shall not include an excess benefit plan as defined in 29 U.S.C. §1002 or an employee stock ownership plan as defined in 26 U.S.C. §4975.

**K.** **"Plan"** means:

   **a.** Any "welfare plan" which was, is now, or hereafter becomes, sponsored solely by you, or sponsored jointly by you and a labor organization, solely for the benefit of your employees;

   **b.** Any "pension plan" which was, on or prior to the effective date of this Policy, sponsored solely by you, or sponsored jointly by you and a labor organization, solely for the benefit of your employees;

   **c.** Any "pension plan" which, after the effective date of this Policy, becomes sponsored solely by you, or jointly by you and a labor organization, solely for the benefit of your employees, if and to the extent coverage with respect such "pension plan" is afforded pursuant to Section XIV.1 of the General Terms & Conditions of this Policy; or

   **d.** Any government-mandated insurance for workers' compensation, unemployment, social security or disability benefits for employees of Named Company or any Subsidiary.

**L.** **"Welfare Plan"** means any employee welfare benefit plan as defined in 29 U.S.C. §1002 subject to regulation under ERISA or any Similar Act. Welfare Plan shall not include an excess benefit plan as defined in 29 U.S.C. §1002.

**M.** **"Policy Period"** means the period from the effective date of this Coverage Form to the expiration date stated on the Declarations, or its earlier cancellation date.

**N.** **"Pollutants"** means any substance exhibiting hazardous characteristics as, is or may be defined or

identified on any list of hazardous substances issued by the United States Environmental Protection Agency or any state or local or foreign counterpart. "Pollutants" also means, without limitation, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste (including materials to be recycled, reconditioned or reclaimed), as well as any air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos, or asbestos products or any noise.

**O.** **"Related claims"** mean all claims arising out of a single "wrongful act" or arising out of "interrrelated wrongful acts."

**P.** **"Suit"** means a formal civil, criminal, administrative, or regulatory proceeding or investigation or an arbitration against an "insured," including any appeal therefrom.

**Q.** **"Wrongful act"** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty by the insureds in the discharge of their duties in their capacities, or solely by reason of their status as fiduciaries or administrators (as defined in "ERISA or any similar act") of any "plan," including, without limitation:

   **(i)** Counseling employees, beneficiaries or "plan" participants with respect to any "plans";

   **(ii)** Providing interpretations with respect to any "plan";

   **(iii)** Handling records in connection with any "plan";

   **(iv)** Enrolling, terminating or canceling employees under any "plan"; or

   **(v)** Otherwise performing or failing to perform "ERISA or any similar act" obligations relating to any "plan."

## SECTION IV– EXTENDED REPORTING PERIOD

**A.** If the first Named Insured cancels or non-renews this Coverage Form or if we decide not to offer any renewal terms for this Coverage Form, the first Named Insured shall have the right to purchase, upon payment of an additional premium not to exceed 200% of the annual premium for this coverage, an extension of this Coverage Form for a period of 12 months immediately following the end of the "policy period," but only with respect to any "wrongful act" committed before the earlier of the end of the "policy period";

   This period shall be referred to as the Extended Reporting Period.

**B.** As a condition precedent to the right to purchase the Extended Reporting Period, the total premium for this Coverage Form must have been paid. The right to purchase the Extended Reporting Period shall end

1002000752067314575122

unless we receive written notice and full payment of the premium for such period within 30 days after the end of the "policy period."

**C.** If the Extended Reporting Period is purchased, the entire premium shall be deemed fully earned at its commencement without any obligation by us to return any portion thereof.

**D.** There is no separate or additional limit of insurance for the Extended Reporting Period.

## SECTION V- LIMIT OF INSURANCE

Your rights and ours are stated in the attached Single Limit of Insurance Endorsement For Employment Practices/Fiduciary Liability Coverage Forms

## SECTION VI - EXCLUSIONS

**A. Exclusions Applicable to Damages and Defense Expenses**

We will not be liable to pay any "damages" or "defense expenses" under this Coverage Form in connection with any "claim" made against an insured:

**1. Bodily Injury/Property Damage**

For any actual or alleged bodily injury (including death), sickness, disease of any person, or damage to or destruction of any tangible property including loss of use;

**2. Violation of Law**

For any actual or alleged violation of any law governing workers' compensation, unemployment insurance, social security, disability benefits or any other similar federal, state or local statutory or regulatory law or common law anywhere in the world except the Consolidated Omnibus Budget Reconciliation Act of 1985 or the Health Insurance Portability and Accountability Act of 1996 or any amendments to such laws or any rules or regulations promulgated under such laws.

**3. Pollution**

Based upon, directly or indirectly arising out of or in any way involving: any nuclear reaction, radiation or contamination, or any actual, alleged or threatened discharge, release, escape, or disposal of, or exposure to, "pollutants"; any request, direction or order that any of the insureds test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effect of "pollutants" or nuclear reaction, radiation or contamination, or any voluntary decision to do so; or any actual or alleged property damage, or bodily injury, sickness, disease or death of any person resulting from any of the aforementioned matters.

**4. Prior Wrongful Acts of Subsidiaries**

For:

**(a)** Any "wrongful act" by an insured of any of your subsidiaries, or by such subsidiary occurring before the date such entity became a subsidiary, or

**(b)** Any other "wrongful act," whenever occurring, which, together with a "wrongful act" described in **(a)** above, would constitute "interrelated wrongful acts."

**5. Assumed Liability**

Based upon, directly or indirectly arising out of or in any way involving the insured's assumption of the liability of others in any oral or written contract or agreement, unless such liability would have attached to an Insured in the absence of such agreement.

**B. Exclusions Applicable to Non-Monetary Relief**

We will not be liable to pay any "damages" under this Coverage Form that represent:

**1.** The return or reversion to you of any contribution or asset of any "plan";

**2.** Any costs incurred by an insured to comply with any order for remedial, preventive, injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

**3.** Benefits due or to become due under any "plan," or benefits which would be due under any "plan" if such "plan" complied with all applicable law, except to the extent that:

**i.** An "insured person" is legally obligated to pay such benefits as a personal obligation, and

**ii.** Recovery for the benefits is based upon a covered "wrongful act"; or

**4.** An employer's contributions owed to a "plan" and other amounts for which the insureds are legally obligated to pay by reason of the failure to collect such contributions.

## SECTION VII – CONDITIONS

**A. Bankruptcy**

Bankruptcy or insolvency of the insured or of the "insured's" estate will not relieve us of our obligations under this policy.

**B. Duties In The Event Of A "Claim"**

**1.** If, during the "policy period' or any Extended Reporting Period, if applicable, any "claim" is first made against the "insured," the insured shall, as a condition precedent to our obligations under this Coverage Form, give us written notice as

soon as practicable but in no event later than ninety (90) days after the end of the "policy period" or the Extended Reporting Period, if applicable.

**2.** You must:

   **a.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

   **b.** Authorize us to obtain records and other information; and

   **c.** Cooperate with us in the investigation or settlement of the "claim" or defense of the "suit."

**3.** No insured shall voluntarily make a payment, assume any obligation, or incur any expense without our written consent.

**C. Duties in the Event of A "Wrongful Act" That May Result In A "Claim"**

If, during the "policy period," you first become aware of a specific "wrongful act" which may reasonably give rise to a future "claim," and during the "policy period" give written notice to us of:

**1.** The names of any potential claimants and a description of the "wrongful act" which forms the basis of their potential "claim";

**2.** The identity of the specific insureds allegedly responsible for such specific "wrongful act";

**3.** The consequences which have resulted or may result from such specific "wrongful act";

**4.** The nature of the potential monetary damages which may be sought in consequence of such specific "wrongful act"; and

**5.** The circumstances by which you first became aware of such specific "wrongful act";

Then any "claim" otherwise covered pursuant to this Coverage Form which is subsequently made and which arises out of such "wrongful act" shall be deemed to have been first made and reported to us by you at the time we received such written notice. No coverage is provided for fees and expenses incurred prior to the time such notice results in a "claim."

**D. When a "Claim" is Deemed Made**

A "claim" shall be deemed made:

**1.** In the case of a civil, criminal, administrative or regulatory proceeding or arbitration, on the earliest of the date of service upon or other receipt by the insured of a complaint, indictment, notice of charge or similar document against the insured in such proceeding or arbitration;

**2.** In the case of an investigation, on the earliest of the date of service upon or other receipt by the insured of a written notice or subpoena from the investigating authority identifying such "insured person" as an individual against whom a formal proceeding may be commenced;

**3.** In the case of a written demand for monetary damages or non monetary relief, upon the insured's receipt of such written demand.

**E. Other Insurance**

The **Other Insurance** clause, Section **H.** of the Common Policy Conditions is deleted and replaced with the following:

If any "damages" and "defense expenses" resulting from any "claim" are insured under any other policies, this Coverage Form shall apply only to the extent the "damages" and "defense expenses" exceed the amount paid under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over this Coverage Form.

**F. Section IV. Estates, Legal Representatives and Spouses/Domestic Partners**

Section **L.** of the Common Policy Conditions, Transfer Of Your Rights And Duties Under This Policy, is deleted in its entirety and replaced as follows:

The estates, heirs, legal representatives, assigns, spouses and any "domestic partner" of "insured persons" shall be considered insureds under this Coverage Form; provided, however, coverage is afforded to such estates, heirs, legal representatives, assigns and spouses only for a "claim" arising solely out of their status as such and, in the case of a spouse or "domestic partner," where such "claim" seeks damages from marital community property, jointly held property or property transferred from the "insured person" to the spouse or "domestic partner." No coverage is provided for any act, error or omission of an estate, heir, legal representative, assign, spouse or "domestic partner." All terms and conditions of this Coverage Form, including without limitation the deductible applicable to "damages" and "defense expenses" incurred by the "insured person" shall also apply to "damages" and "defense expenses" incurred by such estates, heirs, legal representatives, assigns, spouses and "domestic partners."

**G. No Action Against Us**

**1.** No action shall be taken against us unless, as a condition precedent, there shall have been full compliance with all the provisions of this Coverage Form nor until the amount of your obligation to pay shall have been finally determined either by final and nonappealable

judgment against you after trial or by written agreement by you, the claimant and us.

2. No person or organization shall have any right under this Coverage Form to join us a party to any "suit" against you to determine your liability, nor shall we be impleaded by you or your legal representatives in any such "suit."

**H. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Form those rights are transferred to us. The insured must do nothing after a "claim" is made to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

In no event shall the insured be entitled to recoup from recoveries any amount to satisfy any deductible until after all amounts which we are required to pay or do pay under this Coverage Form are reimbursed to us.

**I. Transfer Of Duties When Limit Of Insurance Is Exhausted**

1. If we conclude that, based on "claims" which have been reported to us and to which this insurance may apply, the limit of insurance is likely to be exhausted in the payment of "damages" or "defense expenses," we will notify the first named insured, in writing, to that effect;

2. When the limit of insurance has actually been exhausted by payments of "damages" or "defense expenses," we will:

   a. Notify the first "named insured" in writing, as soon as practicable, that such limit has been exhausted and that our obligations under this Coverage Form shall be deemed completely fulfilled and extinguished;

   b. Initiate, and cooperate in, the transfer of control, to any appropriate insured, of all open "claims" to you; and

   c. Take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "claims" until such transfer is

completed, provided you are cooperating in completing such transfer.

3. Upon receipt of such notice, you, must:

   a. Cooperate in the transfer of control of "claims"; and

   b. Arrange for the defense of such "claim" within such time period as agreed to between you and us. Arrangements for the defense of such "claim" must be made as soon as practicable.

4. We will take no action with respect to defense for any "claim" if such "claim" is reported to us after the applicable limit of insurance is exhausted. It becomes the your responsibility to arrange defense for such "claim."

5. You will reimburse us as soon as practicable for expenses we incur in taking those steps we deem appropriate in accordance with Paragraph **2.** above.

6. The exhaustion of the applicable limit of insurance and the resulting end of our duty to defend will not be affected by our failure to comply with any of the provisions of this Condition.

**J. Named Insured Authorization**

The insureds agree that the first named insured will act on behalf of all insureds with respect to giving of all notice to us (except notices provided in Section **VII.** Paragraph **B** and **C**)**,** the receipt of notices from us, the payment of the premiums, the receipt of any return premiums that may become due under this Coverage Form, and the acceptance of endorsements.

**K. Assignment of Interest**

Assignment of interest under this Coverage Form shall not bind us unless its consent is endorsed to this Coverage Form.

**L. Common Policy Conditions**

Unless otherwise stated in this Coverage Form, all of the terms and conditions of the Businessowners Common Policy Conditions shall be included and incorporated into this Coverage Form.

**CNA**

SB-300449-A
(Ed. 01/07)

## SINGLE LIMIT OF INSURANCE ENDORSEMENT FOR
## EMPLOYMENT PRACTICES/FIDUCIARY LIABILITY COVERAGE FORMS

In consideration of the premium paid for this Policy, it is hereby understood and agreed that the following endorsement is applicable to the Employment Practices Liability and Fiduciary Liability Coverage Forms:

### SINGLE LIMIT OF INSURANCE/DEDUCTIBLE

**A.** The Employment Practices/Fiduciary Liability single limit of insurance shown in the Declarations and subject to the provisions of the Employment Practices Liability and Fiduciary Liability Coverage Forms is the total amount we will pay as "damages" and "defense expenses" under both the Employment Practices Liability and Fiduciary Liability Coverage Forms combined, regardless of the number of insureds, "claims" made or persons or entities making "claims" under such Coverage Forms. If "related claims" are subsequently made against the insured and reported to us, all such "related claims," whenever made, shall be considered a single "claim" first made and reported to us within the "policy period" in which the earliest of the "related claims" was first made and reported to us.

**B.** The Employment Practices/Fiduciary Liability single limit of insurance shown in the Declarations shall be our maximum aggregate limit of insurance for all "damages" and "defense expenses" under the Employment Practices Liability and Fiduciary Liability Coverage Forms combined, regardless of the number of:

**1.** Insureds;

**2.** "Claims";

**3.** "Damages" or "defense expenses" incurred; or

**4.** Claimants;

Our obligations under both the Employment Practices Liability and Fiduciary Liability Coverage Forms, shall be completely fulfilled and extinguished if the Employment Practices/Fiduciary Liability single limit of insurance is exhausted by payment of "damages" or "defense expenses."

**C.** We will pay "damages" and "defense expenses" in excess of the EPL Deductible shown on the Declarations, up to the applicable Employment Practices/Fiduciary Liability single limit of insurance.

**Example No. 1**

EPL Deductible: $5,000

Employment Practices/Fiduciary Single Limit of Insurance: $100,000

"Damages" and "Defense Expenses": $75,000

The EPL Deductible will be subtracted from the amount of "damages" and "defense expenses" in calculating the amount payable:

$75,000 - $5,000 = $70,000 Amount Payable

**Example No. 2**

EPL Deductible: $5,000

Employment Practices/Fiduciary Single Limit of Insurance: $100,000

"Damages" and "Defense Expenses": $120,000 The EPL Deductible will be subtracted from the amount of "damages" and "defense expenses" ($120,000 - $5,000 = $115,000). Since the amount of the "damages" and "defense expenses" minus the EPL Deductible exceeds the Employment Practices/Fiduciary Liability single limit of insurance, the policy will pay the full Employment Practices/Fiduciary Liability Single Limit of Insurance ($100,000).

**D.** Subject to Paragraph **E.** below, we may pay any part or all of the EPL Deductible amount to effect settlement of any "claim" and, upon notification of the action taken, you shall promptly reimburse us for such part of the EPL Deductible amount as has been paid by us.

**E..** No deductible applies with respect to any "claim" against any "insured person" if you are not permitted to advance "defense expenses" or to indemnify such "insured person" for "damages" by reason of:

**1.** Financial insolvency; or

**2.** A good faith determination by you that such payment is not permitted under the broadest construction of applicable law

1002000752067314575122 9





# EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

> THIS IS A CLAIMS MADE COVERAGE FORM. PLEASE READ ALL PROVISIONS AND CONTACT YOUR AGENT IF YOU HAVE ANY QUESTIONS. THIS INSURANCE APPLIES ONLY TO "WRONGFUL ACTS" THAT OCCUR BETWEEN THE RETROACTIVE DATE AND THE END OF THE "POLICY PERIOD." THIS INSURANCE APPLIES ONLY TO "CLAIMS" FIRST MADE AGAINST THE INSURED AFTER THE INCEPTION DATE AND BEFORE THE END OF THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD AND REPORTED TO US IN ACCORDANCE WITH THE PROVISIONS OF THIS FORM. UPON TERMINATION OF YOUR POLICY AN AUTOMATIC EXTENDED REPORTING PERIOD WILL BE PROVIDED, AND A SUPPLEMENTAL EXTENDED REPORTING PERIOD WILL BE AVAILABLE.

Various provisions in this Coverage Form restrict coverage. Read the entire Coverage Form carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the terms "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." The terms "we," "us" and "our" refer to the Stock Insurance Company named on the Declarations providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **III** Definitions.

## SECTION I - INSURING AGREEMENTS

### A. Coverage

We will pay those sums in excess of the deductible and subject to the limits of liability that the Insured becomes legally obligated to pay as "damages" because of a "claim" resulting from a "wrongful employment practice" provided:

1. The "wrongful employment practice" takes place in the "coverage territory";

2. The "wrongful employment practice" did not occur before the Retroactive Date, if any, shown in the Declarations nor after the end of the "policy period"; and

3. A "claim" arising out of a "wrongful employment practice" is first made against an insured, during the "policy period" or Extended Reporting Period, if applicable and is reported to us in accordance with Section **VIII**, Conditions, paragraph **C**, Duties in the event of a "Claim"; and

4. Prior to the inception date of this Coverage Form:

   a. the Insured did not give notice to a prior insurer of a "related claim";

   b. the Insured did not give notice to a prior insurer of any such "wrongful employment practice" or "interrelated wrongful employment practice."

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under paragraph **1.D. - Supplementary Payments**

### B. Defense

We have the right and duty to defend all "suits," even if the allegations are groundless, false or fraudulent. We shall have the right to appoint counsel and to make such investigation and defense of a "suit" as we deem necessary. Alternatively we may, at our option, give our written consent to the defense of any such "suit" to the insured. Our obligation to defend any "suit" or pay any "damages" and "defense expenses" for any "claim" shall be completely fulfilled and extinguished if the limit of insurance has been exhausted by payment of "damages" or "defense expenses."

### C. Consent To Settle

We shall not settle a "claim" without your written consent. If you refuse to consent to a settlement or compromise recommended by us, and acceptable to the claimant, then the applicable limit of insurance under this Coverage Form shall be reduced to the amount for which the "claim" could have been settled plus all "defense expenses" incurred up to the time we made our recommendation.

### D. Supplementary Payments

We will pay, with respect to any "claim" or "suit" we investigate or settle, or any "suit" against an insured we defend all "defense expenses." These payments are included within and reduce the Limits of Insurance.

## SECTION II – WHO IS AN INSURED

**A.** If you are designated in the Declarations as:

   **1.** A partnership or joint venture, you are an insured. Your partners or members are also insureds.

   **2.** A limited liability company, you are an insured. Your members and managers are also insureds.

   **3.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are also insureds.

**B.** Your "employees" are also insureds, unless otherwise excluded in this policy.

**C.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. You must notify us of such acquisition or formation as soon as practicable. However, coverage under this provision:

   **1.** Is afforded only until the 90th day after you acquire or form the organization, or until the end of the policy period, whichever is earlier; and

   **2.** Does not apply to an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – DEFINITIONS

The following defined words shall have the same meaning throughout this Coverage Form, whether expressed in the singular or the plural.

**A.** "Claim" means a "suit" or written demand for monetary damages against an insured and made by or on behalf of a natural person who is an "employee" or applicant for employment for a "wrongful employment practice."

**B.** "Coverage territory" means:

   **1.** The United States of America (including its territories or possessions) and Puerto Rico; or

   **2.** All parts of the world if the insured's responsibility to pay "damages" is determined in a "suit" on the merits brought in the territory described in Paragraph **1.** above or in a settlement of a "claim" that we agree to.

**C.** "Damages" means sums (including back pay and front pay), settlements, judgments (including any award of pre-judgment and post-judgment interest) for which you are legally obligated to pay on account of a covered "claim." "Damages" shall not include:

   **1.** criminal or civil fines or penalties imposed by law;

   **2.** taxes;

   **3.** liquidated or the multiple portion of any multiplied damages, amounts which may be deemed uninsurable under the law pursuant to which this policy shall be construed;

   **4.** compensation earned by the claimant in the course of employment but unpaid by the Insured, including salary, wages, commissions, bonus or incentive compensation;

   **5.** any amounts for which an Insured is liable due to breach of any written contract of employment;

   **6.** amounts representing medical or insurance premiums or benefit claim payments;

   **7.** any amount for which an Insured is absolved from payment by reason of any covenant, agreement or court order; or

   **8.** future salary, wages or commissions of a claimant who is hired, promoted or reinstated to employment pursuant to a settlement of, order in, or other resolution of any "claim"

Notwithstanding anything to the contrary above, "damages" shall include punitive or exemplary damages, if insurable, to the fullest extent permitted by any applicable law. Where you reasonably determine that punitive, exemplary or multiple damages are insurable under any applicable law, we shall not challenge that determination of insurability.

**D.** "Defense expenses" means all fees charged by attorneys designated by us, or by you, with our written consent and all other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a "claim" if incurred by us or you with our written consent, including the costs of appeal, attachment or similar bonds. We have no obligation to provide such bonds. "Defense Expenses" shall not include salaries, wages, fees, overhead or benefit expenses associated with the directors, officers, and employees of yours.

**E.** "Domestic Partner" means any person qualifying as such under any federal, state or local laws or under your employee benefit plans.

**F.** "EEOC Proceeding" means an investigative proceeding before the Equal Employment Opportunity Commission or an adjudicatory or investigative proceeding before any similar federal, state or local government body whose purpose is to address "wrongful employment practices."

**G.** "Employee" means all of your past, present or future full-time or part-time employees, including seasonal and temporary employees and employees leased or loaned to you. "Employee" does not include an independent contractor.

SB-300450-A
(Ed. 01/07)

H. **"ERISA or any Similar Act"** means the Employee Retirement Income Security Act of 1974, as amended, or any similar common or statutory law of the United States, Canada or their states, territories or provinces or any other jurisdiction anywhere in the world.

I. **"Executive officer"** means your chairperson, chief executive officer, president, chief financial officer and in-house general counsel, and, the director of human resources or equivalent position;

J. **"Insured Persons"** means all of those natural person insureds who are your partners, members, managers, "executive officers," directors and "employees"

K. **"Interrelated Wrongful Employment Practices"** means any "wrongful employment practices" which are logically or causally connected by reason of any common fact, circumstance, situation, transaction or event.

L. **"Policy Period"** means the period from the effective date of this Coverage Form to the expiration date stated on the Declarations, or its earlier cancellation date.

M. **"Pollutants"** means any substance exhibiting hazardous characteristics as, is or may be defined or identified on any list of hazardous substances issued by the United States Environmental Protection Agency or any state or local or foreign counterpart. "Pollutants" also means, without limitation, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste (including materials to be recycled, reconditioned or reclaimed), as well as any air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos, or asbestos products or any noise.

N. **"Related claims"** mean all claims arising out of a single "wrongful employment practice" or arising out of "interrelated wrongful employment practices."

O. **"Suit"** means a formal civil, administrative, or regulatory proceeding (including an "EEOC Proceeding") or investigation or an arbitration against an insured, including any appeal therefrom.

P. **"Wrongful Employment Practice"** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by the "insured persons" in their capacity as such or by you constituting related to

1. Wrongful dismissal or discharge or termination of employment, whether actual or constructive;

2. Employment-related misrepresentation;

3. Violation of any federal, state or local laws (whether common-law or statutory) concerning employment or discrimination in employment, including the Americans with Disabilities Act of 1992, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866;

4. Sexual harassment or other unlawful harassment in the work place;

5. Wrongful deprivation of career opportunity or failure to employ or promote;

6. Wrongful discipline of "employees";

7. Retaliation against "employees" for the exercise of any legally protected right or for engaging in any legally protected activity;

8. Negligent evaluation of "employees";

9. Failure to adopt adequate workplace or employment policies and procedures;

10. Employment-related defamation or invasion of privacy; or

11. Employment-related wrongful infliction of emotional distress.

## SECTION IV– EXTENDED REPORTING PERIOD

A. If the first Named Insured cancels or non-renews this Coverage Form or if we decide not to offer any renewal terms for this Coverage Form, the first Named Insured shall have the right to purchase, upon payment of an additional premium not to exceed 200% of the annual premium for this coverage, an extension of this Coverage Form for a period of 12 months immediately following the end of the "policy period," but only with respect to any "wrongful employment practice" committed before the earlier of the end of the "policy period";

This period shall be referred to as the Extended Reporting Period.

B. As a condition precedent to the right to purchase the Extended Reporting Period, the total premium for this Coverage Form must have been paid. The right to purchase the Extended Reporting Period shall end unless we receive written notice and full payment of the premium for such period within 30 days after the end of the "policy period."

C. If the Extended Reporting Period is purchased, the entire premium shall be deemed fully earned at its commencement without any obligation by us to return any portion thereof.

D. There is no separate or additional limit of insurance for the Extended Reporting Period.

SB-300450-A
(Ed. 01/07)

## SECTION V - LIMIT OF INSURANCE

Your rights and ours are stated in the attached Single Limit of Insurance Endorsement For Employment Practices/Fiduciary Liability Coverage Forms

## SECTION VI - EXCLUSIONS

### A. Exclusions Applicable to Damages and Defense Expenses

We will not be liable to pay any "damages" or "defense expenses" under this Coverage Form in connection with any "claim" made against an insured:

**1. Bodily Injury/Property Damage**

For any actual or alleged bodily injury (including death), sickness, disease of any person, or damage to or destruction of any tangible property including loss of use except that this exclusion shall not apply to allegations of emotional distress, humiliation or mental anguish;

**2. Violation of Law**

Based upon, directly or indirectly arising out of, or in any way involving any actual or alleged violation of:

**a.** **(i)** "ERISA or any Similar Act," (ii) the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), as amended, or **(iii)** any other federal, state or local statutory law or common law anywhere in the world governing any employee benefit program, policy, plan or arrangement of any type, including but not limited to laws governing retirement or pension benefit programs, welfare plans, insurance plan, employee stock option ownership or employee stock purchase plans or deferred compensation programs;

**b.** Any law governing workers' compensation, unemployment insurance, social security, disability benefits or any other similar federal, state or local statutory or regulatory law or common law anywhere in the world;

**c.** The Occupational Safety and Health Act of 1970 (OSHA), as amended, or any other federal, state or local statutory or regulatory law or common law anywhere in the world governing workplace safety and health;

**d.** The Fair Labor Standards Act (except the Equal Pay Act), as amended, or any other federal, state or local statutory law or common law anywhere in the world governing wage, hour and payroll policies;

**e.** The Workers' Adjustment and Retraining Notification Act, Public Law 100-379 (1988), as amended, or any other federal, state or local statutory or regulatory law or common

law anywhere in the world governing an employer's obligation to notify or bargain with others in advance of any facility closing or mass layoff.

**f.** The National Labor Relations Act, as amended, or any other federal, state or local statutory or regulatory law or common law anywhere in the world governing employees' rights and the employers duties with respect to unions, bargaining, strikes, boycotts, picketing, lockouts or collective activities.

However, this exclusion shall not apply to any "claim" alleging retaliation or wrongful dismissal or discharge or termination of employment whether actual or constructive, because of a claimant's exercise of a right pursuant to any such laws;

**3. Pollution**

Based upon, directly or indirectly arising out of or in any way involving: any nuclear reaction, radiation or contamination, or any actual, alleged or threatened discharge, release, escape, or disposal of, or exposure to, "pollutants"; any request, direction or order that any of the insureds test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effect of "pollutants" or nuclear reaction, radiation or contamination, or any voluntary decision to do so; or any actual or alleged property damage, or bodily injury, sickness, disease or death of any person resulting from any of the aforementioned matters. However, this exclusion shall not apply to any "claim" alleging retaliation or wrongful dismissal or discharge or termination of employment whether actual or constructive, because of a claimant's exercise of a right pursuant to any such laws;

**4. Prior Wrongful Acts of Subsidiaries**

For:

**(a)** Any "wrongful employment practice" by an insured of any of your subsidiaries, or by such subsidiary occurring before the date such entity became a subsidiary, or

**(b)** Any other "wrongful employment practice," whenever occurring, which, together with a "wrongful employment practice" described in **(a)** above, would constitute "interrelated wrongful employment practices."

**5. Assumed Liability**

Based upon, directly or indirectly arising out of or in any way involving the insured's assumption of the liability of others in any oral or written contract or agreement, unless such liability would have attached to an Insured in the absence of such agreement;

1020000752067314575I231

**B.  Exclusions Applicable to Non-Monetary Relief**

We will not be liable to pay any "damages" under this Coverage Form that represent

1.  The cost of any non-monetary relief, including without limitation any costs associated with compliance with any injunctive relief of any kind or nature imposed by any judgment or settlement;

2.  The costs associated with providing any reasonable accommodations required by, made as a result of, or to conform with the requirements of the Americans With Disabilities Act and any amendments thereto or any similar federal, state or local statute, regulation, or common laws;

3.  Amounts determined to be owing under an express contract with or express severance obligation of yours; however, this exclusion shall not apply if and to the extent that liability would have attached to such insured in the absence of the express contract with or obligation of yours ; or

4.  Medical or insurance benefits to which the claimant allegedly was entitled or would have been entitled had you provided the claimant with a continuation or conversion of insurance.

**SECTION VII – CONDITIONS**

**A.  Bankruptcy**

Bankruptcy or insolvency of the insured or of the "insured's" estate will not relieve us of our obligations under this policy.

**B.  Duties In The Event Of A "Claim"**

1.  If, during the "policy period' or any Extended Reporting Period, if applicable, any "claim" is first made against the "insured," the insured shall, as a condition precedent to our obligations under this Coverage Form, give us written notice as soon as practicable but in no event later than ninety (90) days after the end of the "policy period" or the Extended Reporting Period, if applicable.

2.  You must:

    a.  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

    b.  Authorize us to obtain records and other information; and

    c.  Cooperate with us in the investigation or settlement of the "claim" or defense of the "suit."

3.  No insured shall voluntarily make a payment, assume any obligation, or incur any expense without our written consent.

**C.  Duties in the Event of A "Wrongful Employment Practice" That May Result In A "Claim"**

If, during the "policy period," you first become aware of a specific "wrongful employment practice" which may reasonably give rise to a future "claim," and during the "policy period" give written notice to us of:

1.  The names of any potential claimants and a description of the "wrongful employment practice" which forms the basis of their potential "claim";

2.  The identity of the specific insureds allegedly responsible for such specific "wrongful employment practice";

3.  The consequences which have resulted or may result from such specific "wrongful employment practice";

4.  The nature of the potential monetary damages which may be sought in consequence of such specific "wrongful employment practice"; and

5.  The circumstances by which you first became aware of such specific "wrongful employment practice";

Then any "claim" otherwise covered pursuant to this Coverage Form which is subsequently made and which arises out of such "wrongful employment practice" shall be deemed to have been first made and reported to us by you at the time we received such written notice. No coverage is provided for fees and expenses incurred prior to the time such notice results in a "claim."

**D.  When a "Claim" is Deemed Made**

A "claim" shall be deemed made:

1.  In the case of a civil, administrative or regulatory proceeding or arbitration, on the earliest of the date of service upon or other receipt by the insured of a complaint, or similar document against the insured in such proceeding or arbitration;

2.  In the case of an investigation, on the earliest of the date of service upon or other receipt by the insured of a written notice or subpoena from the investigating authority identifying such "insured person" as an individual against whom a formal proceeding may be commenced;

3.  In the case of a written demand for monetary damages, upon the insured's receipt of such written demand.

**E.  Other Insurance**

The **Other Insurance** clause, Section **H.** of the Common Policy Conditions is deleted and replaced with the following:

If any "damages" and "defense expenses" resulting from any "claim" are insured under any other policies, this Coverage Form shall apply only to the extent the "damages" and "defense expenses" exceed the amount paid under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over this Coverage Form.

## F. Section IV. Estates, Legal Representatives and Spouses/Domestic Partners

Section **L.** of the Common Policy Conditions, Transfer Of Your Rights And Duties Under This Policy, is deleted in its entirety and replaced as follows:

The estates, heirs, legal representatives, assigns, spouses and any "domestic partner" of "insured persons" shall be considered insureds under this Coverage Form; provided, however, coverage is afforded to such estates, heirs, legal representatives, assigns and spouses only for a "claim" arising solely out of their status as such and, in the case of a spouse or "domestic partner," where such "claim" seeks damages from marital community property, jointly held property or property transferred from the "insured person" to the spouse or "domestic partner." No coverage is provided for any act, error or omission of an estate, heir, legal representative, assign, spouse or "domestic partner." All terms and conditions of this Coverage Form, including without limitation the deductible applicable to "damages" and "defense expenses" incurred by the "insured person" shall also apply to "damages" and "defense expenses" incurred by such estates, heirs, legal representatives, assigns, spouses and "domestic partners."

## G. No Action Against Us

1. No action shall be taken against us unless, as a condition precedent, there shall have been full compliance with all the provisions of this Coverage Form nor until the amount of your obligation to pay shall have been finally determined either by final and nonappealable judgment against you after trial or by written agreement by you, the claimant and us.

2. No person or organization shall have any right under this Coverage Form to join us as a party to any "suit" against you to determine your liability, nor shall we be impleaded by you or your legal representatives in any such "suit."

## H. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Form those rights are transferred to us. The insured must do nothing after a "claim" is made to impair them. At our

request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

In no event shall the insured be entitled to recoup from recoveries any amount to satisfy any deductible until after all amounts which we are required to pay or do pay under this Coverage Form are reimbursed to us.

## I. Transfer Of Duties When Limit Of Insurance Is Exhausted

1. If we conclude that, based on "claims" which have been reported to us and to which this insurance may apply, the limit of insurance is likely to be exhausted in the payment of "damages" or "defense expenses," we will notify the first named insured, in writing, to that effect;

2. When the limit of insurance has actually been exhausted by payments of "damages" or "defense expenses," we will:

   a. Notify the first named insured in writing, as soon as practicable, that such limit has been exhausted and that our obligations under this Coverage Form shall be deemed completely fulfilled and extinguished;

   b. Initiate, and cooperate in, the transfer of control, to any appropriate insured, of all open "claims" to you; and

   c. Take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "claims" until such transfer is completed, provided you are cooperating in completing such transfer.

3. Upon receipt of such notice, you must:

   a. Cooperate in the transfer of control of "claims"; and

   b. Arrange for the defense of such "claim" within such time period as agreed to between you and us. Arrangements for the defense of such "claim" must be made as soon as practicable.

4. We will take no action with respect to defense for any "claim" if such "claim" is reported to us after the applicable limit of insurance is exhausted. It becomes your responsibility to arrange defense for such "claim."

5. You will reimburse us as soon as practicable for expenses we incur in taking those steps we deem appropriate in accordance with Paragraph **2.** above.

6. The exhaustion of the applicable limit of insurance and the resulting end of our duty to defend will not be affected by our failure to comply with any of the provisions of this Condition.

1020007520673145751232

SB-300450-A
(Ed. 01/07)

**J.   Named Insured Authorization**

The insureds agree that the first named insured will act on behalf of all insureds with respect to giving of all notice to us (except notices provided in Section **VII.** Paragraph **B** and **C),** the receipt of notices from us, the payment of the premiums, the receipt of any return premiums that may become due under this Coverage Form, and the acceptance of endorsements.

**K.   Assignment of Interest**

Assignment of interest under this Coverage Form shall not bind us unless its consent is endorsed to this Coverage Form.

**L.   Common Policy Conditions**

Unless otherwise stated in this Coverage Form, all of the terms and conditions of the Business Owners Common Policy Conditions Endorsement shall be included and incorporated into this Coverage Form.

**CNA**

SB-300456-A
(Ed. 07/07)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONCURRENT CAUSATION, EARTH MOVEMENT & WATER EXCLUSION CHANGES

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM**

**A.** Section **B. EXCLUSIONS** the first paragraph of **B.1.** is deleted in its entirety and replaced by the following:

1. We will not pay for loss or damage directly or indirectly caused by or resulting from any of the following regardless of: (a) the causes of the excluded event; or (b) other causes of the loss; or (c) any other causes or events, whether or not insured under this Policy, which may have contributed concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurred suddenly or gradually, involved isolated or widespread damage, arose from natural or external forces or acts or omissions of man, or occurred as a result of any combination of any of the following:

**B.** Section **B. EXCLUSIONS** exclusion **B.1.b. Earth Movement** deleted in its entirety and replaced by the following:

**b. Earth Movement**

**(1)** Earthquake, including any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting, including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

Also, Earth Movement, as described in **(1)** through **(4)** applies to acts or omissions of man or any other cause or combination of causes listed above. But if Earth Movement, as described in **(1)** through **(4)** above, results in fire or explosion, and such resulting loss or damage is not otherwise excluded, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic

Action, and such resulting loss or damage is not otherwise excluded, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the Covered Property.

**C.** Section **B. EXCLUSIONS** exclusion **B.1.g. Water** is deleted in its entirety and replaced by the following:

**g. Water**

**(1)** "Flood," surface water, waves, tides, tidal waves, overflow of any body of water, including release of water held by a dam, levy or dike or by a water or flood control device, or their spray, all whether driven by wind or not;

**(2)** Mudslide or mudflow;

**(3)** Water or sewage that backs up or overflows from a sewer, drain or sump; or

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings.

But if water, as described in **g.(1)** through **g.(4)** above, results in fire, explosion, or sprinkler leakage not otherwise excluded, we will pay for the loss or damage caused by that fire, explosion, or sprinkler leakage.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

SB-300456-A
(Ed. 07/07)

**D.** Wherever the word "flood" appears in the Commercial Property Coverage Part, it is amended to a defined term, as per the following, and is added to the Definitions section of each applicable coverage part.

**"Flood"** means a general and temporary condition of partial or complete inundation of normally dry land areas, whether caused by natural occurrences, acts or omissions of man or any other cause or combination of causes.

All flooding in a continuous or protracted event will constitute a single flood.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**CNA**

SB-300596-A
(Ed. 01/08)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# IDENTITY THEFT/RECOVERY SERVICES ENDORSEMENT

### IDENTITY THEFT/RECOVERY CASE MANAGEMENT SERVICE AND EXPENSE REIMBURSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following changes apply to the **Businessowners Special Property Coverage Form:**

**A. IDENTITY RECOVERY COVERAGE**

The following is added to **Paragraph 5. Additional Coverages:**

We will provide the Case Management Service and Expense Reimbursement Coverage indicated below if all of the following requirements are met:

**1.** There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this policy; and

**2.** Such "identity theft" is first discovered by the "identity recovery insured" during the policy period for which this Identity Recovery coverage is applicable; and

**3.** Such "identity theft" is reported to us as soon as practicable but in no event later than 60 days after it is first discovered by the "identity recovery insured."

If all three of the requirements listed above have been met, then we will provide the following to the "identity recovery insured":

**1. Case Management Service**

Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

**2. Expense Reimbursement**

Reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft."

This coverage is additional insurance.

**B. EXCLUSIONS**

The following additional exclusions are added to **Section B. - Exclusions** and apply to this coverage:

We do not cover loss or expense arising from any of the following:

**1.** Theft of a professional or business identity.

**2.** Any fraudulent, dishonest or criminal act by an "identity recovery insured," or any person aiding or abetting an "identity recovery insured," or by any

authorized representative of an "identity recovery insured," whether acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

**3.** Loss other than "identity recovery expenses."

**4.** An "identity theft" that is first discovered by the "identity recovery insured" prior to or after the policy period for which this coverage applies. This exclusion applies whether or not such "identity theft" began or continued during the period of coverage.

**5.** An "identity theft" that is not reported to us within 60 days after it is first discovered by the "identity recovery insured."

**6.** An "identity theft" that is not reported in writing to the police.

**C. LIMITS OF INSURANCE**

**1.** Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the amount of limit available for Expense Reimbursement coverage.

**2.** Expense Reimbursement coverage is subject to a limit of $25,000 annual aggregate per "identity recovery insured." Regardless of the number of claims, this limit is the most we will pay for the total of all loss or expense arising out of all "identity thefts" to any one "identity recovery insured" which are first discovered by the "identity recovery insured" during a 12-month period starting with the beginning of the present annual policy period. If an "identity theft" is first discovered in one policy period and continues into other policy periods, all loss and expense arising from such "identity theft" will be subject to the aggregate limit applicable to the policy period when the "identity theft" was first discovered.

  **a.** Legal costs as provided under paragraph d. of the definition of "identity recovery expenses" are part of, and not in addition to the Expense Reimbursement coverage limit.



1002000752067314575123 4

SB-300596-A
(Ed. 01/08)

**b.** Lost Wages and Child and Elder Care Expenses as provided under paragraphs e. and f. of the definition of "identity recovery insured" are jointly subject to a sublimit of $250. per day, not to exceed $5,000. in total. This sublimit is part of, and not in addition to the Expense Reimbursement coverage limit. Coverage is limited to lost wages and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured."

**c.** Mental Health Counseling as provided under paragraph g. of the definition of "identity recovery expenses" is subject to a sublimit of $1,000. This sublimit is part of, and not in addition to the Expense Reimbursement coverage limit. Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured."

## D. DEDUCTIBLE

Case Management Service is not subject to a deductible.

Expense Reimbursement coverage is subject to a deductible of $250. Any one "identity recovery insured" shall be responsible for only one deductible under this Identity Recovery Coverage during any one policy period.

## E. CONDITIONS

The following additional conditions are added to **Section F. – Commercial Property Conditions** and apply to this coverage:

### 1. Assistance and Claims

For assistance, the "identity recovery insured" should call the **Identity Recovery Help Line at 1-877-CNA-ASAP (1-877-262-2727) CNA Claims.**

The Identity Recovery Help Line can provide the "identity recovery insured" with:

**a.** Information and advice for how to respond to a possible "identity theft"; and

**b.** Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

As respects Expense Reimbursement coverage, the "identity recovery insured" must send to us within 60 days after our request, receipts, bills or other records that support his or her claim for "identity recovery expenses."

### 2. Services

The following conditions apply as respects any services provided by us or our designees to any "identity recovery insured" under this endorsement:

**a.** Our ability to provide helpful services in the event of an "identity theft" depends on the cooperation, permission and assistance of the "identity recovery insured."

**b.** All services may not be available or applicable to all individuals. For example, "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

**c.** We do not warrant or guarantee that our services will end or eliminate all problems associated with an "identity theft" or prevent future "identity thefts."

### 3. Computer Security

It is the responsibility of each "identity recovery insured" to use and maintain his or her computer system security, including personal firewalls, anti-virus software and proper disposal of used hard drives.

## F. DEFINITIONS

With respect to the provisions of this endorsement only, the following definitions are added to **Section G. – Property Definitions:**

**1.** "Identity Recovery Case Manager" means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured." This includes, with the permission and cooperation of the "identity recovery insured," written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

**2.** **"Identity Theft"** means the fraudulent use of the social security number or other method of identifying an "identity recovery insured." This includes fraudulently using the personal identity of an "identity recovery insured" to establish credit accounts, secure loans, enter into contracts or commit crimes.

SB-300596-A
(Ed. 01/08)

"**Identity theft**" does not include the fraudulent use of a business name, d/b/a/ or any other method of identifying a business activity.

"**Identity theft**" does not include the unauthorized use of a valid credit card, credit account or bank account.   However, "identity theft" does include the fraudulent alteration of account profile information, such as the address to which statements are sent.

3.  "**Identity Recovery Expenses**" means the following when they are reasonable and necessary expenses that are incurred in the United States or Canada as a direct result of an "identity theft":

   a.  Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft."

   b.  Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft."

   c.  Costs for up to twelve (12) credit reports from established credit bureaus dated within 12 months after your knowledge or discovery of an "identity theft."

   d.  **Legal Costs**

   Fees and expenses for an attorney approved by us for:

   (1)  Defending any civil suit brought against an "identity recovery insured" by a creditor or collection agency or entity acting on behalf of a creditor for non-payment of goods or services or default on a loan as a result of an "identity theft"; and

   (2)  Removing any civil judgment wrongfully entered against an "identity recovery insured" as a result of the "identity theft."

   e.  **Lost Wages**

   Actual lost wages of the "identity recovery insured" for time reasonable and necessarily taken away from work and away from the work premises.   Time away from work includes partial or whole work days.   Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days.   Actual lost wages does not include sick days or any loss arising from time taken away from self employment. Necessary time off does not include time off to do tasks that could reasonable have been done during non-working hours.

   f.  **Child and Elder Care Expenses**

   Actual costs for supervision of children or elderly or infirm relatives or dependents of the "identity recovery insured" during time reasonable and necessarily taken away from such supervision.     Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured."

   g.  **Mental Health Counseling**

   Actual costs for counseling from a licensed mental health professional.   Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured."

4.  "**Identity Recovery Insured**" means the following:

   a.  The owner of the entity insured under this policy who meets any of the following criteria:

   (1)  A sole proprietor of the insured entity;

   (2)  A partner in the insured entity; or

   (3)  An individual having an ownership position of 20% or more of the insured entity.

1002000752067314575123S

SB-300849-A
(Ed. 07/09)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS LIABILITY COVERAGE FORM

**A.** The following exclusion is added to Section **B. EXCLUSIONS** of the Businessowners Liability Coverage Form:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Section **B. EXCLUSIONS, Paragraph p.** Personal And Advertising Injury:

**2. Exclusions**

This insurance does not apply to:

**(15) Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**CNA**

SB-146823-B
(Ed. 01/08)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BUSINESS INCOME AND EXTRA EXPENSE – DEPENDENT PROPERTY

This endorsement modifies insurance provided under the following:

BUSINESS INCOME AND EXTRA EXPENSE COVERAGE FORM
BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.6.** Coverage Extensions.

Unless otherwise stated, payments made under the following Coverage Extension is subject to and not in addition to the applicable Limits of Insurance.

**Business Income and Extra Expense – Dependent Property**

1.  When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur due to the "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss or damage at the premises of a Dependent Property, caused by or resulting from a Covered Cause of Loss.

2.  Dependent Property means property operated by other whom you depend on to:

    a.  Deliver materials or services (other than "water supply services," "communication supply services" or "power supply services") to you, or to others for your account (Contributing Locations);

    b.  Accept your products or services (Recipient Locations);

    c.  Manufacture products for delivery to your customers under contract of sale (Manufacturing Locations); or

    d.  Attract customers to your business (Leader Locations).

3.  With respect to this Coverage Extension, the "period of restoration":

    a.  Begins 24 hours after the time of direct physical loss or damage caused by or

resulting from any Covered Cause of Loss at the premises of the Dependent Property;

    b.  Ends on the date when the property at the premises of the Dependent Property should be repaired, rebuilt or replaced with reasonable speed and similar quality; and

    c.  Does not include any increased period required due to the enforcement of any ordinance or law that:

        (1) Regulates the construction, use or repair, or requires the tearing down of any property; or

        (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

4.  This Coverage Extension:

    a.  Applies to Dependent Property premises located within the Coverage Territory; and

    b.  Does not apply when you have more specific insurance under any other policy.

5.  We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations" in whole or in part, by using any other available:

    a.  Source of materials; or

    b.  Outlet for your products.

6.  The most we will pay for Business Income and Extra Expense under this Coverage Extension is $10,000, or the limit shown in the Declarations, whichever is higher, regardless of the number of described premises or number of Dependent Properties involved.

7.  Payments made under this Coverage Extension are in addition to the applicable Limits of Insurance.



1002000752067314575123G

**CNA**

SB-146824-B
(Ed. 01/08)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BUSINESS INCOME AND EXTRA EXPENSE –
## NEWLY ACQUIRED LOCATIONS

This endorsement modifies insurance provided under the following:

BUSINESS INCOME AND EXTRA EXPENSE COVERAGE FORM
BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The following coverage is added to your Businessowners Special Property Coverage Form under Paragraph **A.6.** Coverage Extensions.

Unless otherwise stated, payments made under the following Coverage Extension is subject to and not in addition to the applicable Limits of Insurance.

**Business Income and Extra Expense – Newly Acquired Premises**

1. When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income and necessary Extra Expense you incur due to the "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by or resulting from a Covered Cause of Loss at any premises you newly acquire by purchase or lease (other than at fairs, trade shows or exhibitions).

2. The most we will pay under this coverage for the sum of Business Income and Extra Expense incurred is $250,000 at each location.

3. Insurance under this extension for each newly acquired location will end when any of the following first occurs:

   a. This policy expires;

   b. 90 days expire after you acquire or begin to construct the property;

   c. You report the location to us;

   d. The Business Income or Extra Expense is more specifically insured.

   We will charge you additional premium for locations reported from the date you acquire the property.

4. Payments made under this Coverage Extension are in addition to the applicable Limits of Insurance.



100200075206731457121237



151 N. Franklin St.
Chicago, IL 60606

| Policy Number | From  Policy Period  To | Coverage Is Provided By | Agency |
|---|---|---|---|
| B2067314575 | 06/01/19   06/01/20 | Transportation Insurance Company | 089080650 |

| Named Insured And Address | Agent |
|---|---|
| ALBUQUERQUE AMBULATORY EYE SURGERY CENTER LLC<br>8801 Horizon Blvd NE<br>ALBUQUERQUE, NM  87113 | WESTERN ASSURANCE CORP.<br>3701 PASEO DEL NORTE<br>PO BOX 94600 (87199)<br>ALBUQUERQUE, NM 87113 |

**  PAYMENT PLAN SCHEDULE  **

THE BILLING FOR THIS POLICY WILL BE
FORWARDED TO YOU DIRECTLY FROM CNA.

THE PREMIUM AMOUNT FOR THIS TRANSACTION
IS     $4,851.00 .

THIS PREMIUM WILL BE INVOICED BY CNA ON
A SEPARATE STATEMENT ACCORDING TO THE
PAYMENT OPTION YOU SELECT.

ISSUE DATE 04/07/19





**END OF COPY**

Case 1:21-cv-00280-KWR-JFR Document 1-1 Filed 03/26/21 Page 188 of 221



**PROCLAMATIONS**

# Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID–19) Outbreak

Issued on: **March 13, 2020**



In December 2019, a novel (new) coronavirus known as SARS-CoV-2 ("the virus") was first detected in Wuhan, Hubei Province, People's Republic of China, causing outbreaks of the coronavirus disease COVID-19 that has now spread globally.  The Secretary of Health and Human Services (HHS) declared a public health emergency on January 31, 2020, under section 319 of the Public Health Service Act (42 U.S.C. 247d), in response to COVID-19.  I have taken sweeping action to control the spread of the virus in the United States, including by suspending entry of foreign nationals seeking entry who had been physically present within the prior 14 days in certain jurisdictions where COVID-19 outbreaks have occurred, including the People's Republic of China, the Islamic Republic of Iran, and the Schengen Area of Europe.  The Federal Government, along with State and local governments, has taken preventive and proactive measures to slow the

EXHIBIT
2

spread of the virus and treat those affected, including by instituting Federal quarantines for individuals evacuated from foreign nations, issuing a declaration pursuant to section 319F-3 of the Public Health Service Act (42 U.S.C. 247d-6d), and releasing policies to accelerate the acquisition of personal protective equipment and streamline bringing new diagnostic capabilities to laboratories.  On March 11, 2020, the World Health Organization announced that the COVID-19 outbreak can be characterized as a pandemic, as the rates of infection continue to rise in many locations around the world and across the United States.

The spread of COVID-19 within our Nation's communities threatens to strain our Nation's healthcare systems.  As of March 12, 2020, 1,645 people from 47 States have been infected with the virus that causes COVID-19.  It is incumbent on hospitals and medical facilities throughout the country to assess their preparedness posture and be prepared to surge capacity and capability.  Additional measures, however, are needed to successfully contain and combat the virus in the United States.

NOW, THEREFORE, I, DONALD J. TRUMP, President of the United States, by the authority vested in me by the Constitution and the laws of the United States of America, including sections 201 and 301 of the National Emergencies Act (50 U.S.C. 1601 *et seq*.) and consistent with section 1135 of the Social Security Act (SSA), as amended (42 U.S.C. 1320b-5), do hereby find and proclaim that the COVID-19 outbreak in the United States constitutes a national emergency, beginning March 1, 2020.  Pursuant to this declaration, I direct as follows:

Section 1.  Emergency Authority.  The Secretary of HHS may exercise the authority under section 1135 of the SSA to temporarily waive or modify certain requirements of the Medicare, Medicaid, and State Children's Health Insurance programs and of the Health Insurance Portability and Accountability Act Privacy Rule throughout the duration of the public health emergency declared in response to the COVID-19 outbreak.

Sec. 2.  Certification and Notice.  In exercising this authority, the Secretary of HHS shall provide certification and advance written notice to the Congress as required by section 1135(d) of the SSA (42 U.S.C. 1320b-5(d)).

Sec. 3.  General Provisions.  (a)  Nothing in this proclamation shall be construed to impair or otherwise affect:

(i)  the authority granted by law to an executive department or agency, or the head thereof; or

(ii)  the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b)  This proclamation shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c)  This proclamation is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

IN WITNESS WHEREOF, I have hereunto set my hand this thirteenth day of March, in the year of our Lord two thousand twenty, and of the Independence of the United States of America the two hundred and forty-fourth.

DONALD J. TRUMP



# State of New Mexico

Michelle Lujan Grisham
*Governor*

### EXECUTIVE ORDER 2020-004

### ORDER DECLARING A STATE OF PUBLIC HEALTH EMERGENCY AND INVOKING THE POWERS PROVIDED BY THE ALL HAZARD EMERGENCY MANAGEMENT ACT AND THE EMERGENCY LICENSING ACT

On December 31, 2019, several cases of pneumonia with an unknown cause were detected in Wuhan City, Hubei Province, China and reported to the World Health Organization. The underlying virus giving rise to those reported instances of respiratory illness was later identified as a novel coronavirus disease named COVID-19.

Since it was first identified and reported, COVID-19 has spread globally. Over 100 countries have confirmed cases of COVID-19 and more than 100,000 people have been infected.

The incidence of COVID-19 within the United States has similarly increased. The first domestic report of COVID-19 occurred on January 21, 2020, in Washington State. To date, there have been more than 1,000 reported domestic cases of COVID-19 in 39 states.

Several public health organizations have implemented emergency measures intended to slow the spread of the disease. For example, on January 20, 2020, the United States Centers for Disease Control and Prevention activated its Emergency Operations Center in response to the COVID-19 outbreak. The WHO similarly declared a Public Health Emergency of International Concern shortly thereafter. At least twelve of our sister states, including California, Colorado, Florida, Kentucky, Maryland, Massachusetts, New Jersey, New York, North Carolina, Oregon,

EXHIBIT

3

Utah, and Washington, have also implemented emergency protocols intended to mitigate the transmission of COVID-19.

My administration has been proactive in its approach to the COVID-19 epidemic. Over the last several weeks, I have been in direct and frequent contact with officials overseeing the federal response to the COVID-19 outbreak. Further, my office has worked with the New Mexico Secretary of Health and other State emergency services to develop plans to provide a swift and effective response when the inevitability of COVID-19 in New Mexico ultimately materialized.

On March 11, 2020, the first confirmed cases of COVID-19 were reported in New Mexico. For this reason, it is necessary for all branches of State government to take immediate action to minimize the spread of COVID-19 and to minimize the attendant physical and economic harms.

THEREFORE, for the reasons addressed above, I, Michelle Lujan Grisham, Governor of the State of New Mexico, by virtue of the authority vested in me by the Constitution and the laws of the State of New Mexico, do hereby ORDER and DIRECT:

1.      I hereby invoke and exercise all powers vested in my office under the All Hazard Emergency Management Act, NMSA 1978, §§ 12-10-1 through 12-10-10. All branches of State government shall cooperate with federal authorities, other states, and private agencies to provide resources and services necessary to minimize physical and economic harm and assist in the provision of lodging, shelter, health care, food, transportation, or shipping necessary to protect lives or public property. Further, all political subdivisions within New Mexico shall adhere to Section 12-10-10, which mandates compliance with and enforcement of this Order.

2.      I further proclaim a public health emergency in accordance with NMSA 1978, 12-10A-5 of the Public Health Emergency Response Act. This proclamation is necessary to minimize the spread and adverse impacts of the COVID-19 in our State. All political subdivisions and

geographic areas within the State of New Mexico are affected by the COVID-19 outbreak and, to the extent permitted by law, they are subject to the provisions of this Order. The temporal scope of this emergency is for a period of 30 days and shall remain in effect until further notice. If necessary, after consultation with the Department of Health Secretary, this Order will be renewed and extended. See NMSA 1978, § 12-10A-5 (2003). All public health officials, including those employed by the Department of Health, Human Services Department, and Aging and Long-Term Service Department, are required to assist in the implementation of this Order.

3.　　The Department of Health and the Department of Homeland Security and Emergency Management shall collaborate to provide an effective and coordinated response to this public health emergency and shall consult with my office regarding all matters germane to this Order.

4.　　All cabinets, departments, and agencies shall comply with the directives in this Order and any instruction given by the Department of Health.

5.　　Pursuant to NMSA 1978, § 13-1-127 (2019), I direct the General Services Department Secretary and the Department of Finance and Administration to assist in the emergency purchase of all goods and services necessary to contain, respond, and mitigate the spread of COVID-19 in New Mexico.

6.　　The Department of Health and the Department of Homeland Security and Emergency Management shall credential out-of-state professionals who can render aid and necessary services during the pendency of this Order. NMSA 1978, §§ 12-10-10.1 through 12-10-13. (2007).

7.　　The Office of the Superintendent of Insurance shall promulgate emergency regulations maximizing the available insurance coverage for New Mexicans suffering from

COVID-19, pneumonia, or influenza, while simultaneously ensuring that medical costs do not create barriers to testing and treatment.

8.      The Secretary of the New Mexico Department of Workforce Solutions shall adopt such emergency rules, regulations, or declarations as necessary to ensure that individuals who are experiencing a temporary lay-off or furlough status due to forced absences from work because of COVID-19 are eligible to receive unemployment benefits. I direct the Department of Workforce Solutions Secretary to promulgate emergency rules allowing temporary waivers of claims requirements for affected individuals under NMSA 1978, Section 51-1-5(A)(2) & (3) and any other relevant provisions of law. The emergency waiver provisions should be similar to those already provided by 11.3.300.320(E) & (F) NMAC.

9.      I direct the Adjutant General to order into service any elements of the New Mexico National Guard that may be needed to support to civil authorities in response to this public emergency. Such assistance shall be provided during the pendency of this Order at the discretion of the Governor. NMSA 1978, §§ 20-1-1 through 20-1-8; NMSA 1978, §§ 20-4-1- through 20-4-14.

10.     In accordance with NMSA 1978, §§ 12-11-23 through 12-11-25 and § 12-10-4(B)(3), the Department of Finance and Administration shall make available emergency financial resources on a continuing basis as necessary to address this emergency to the Department of Health. NMSA 1978, § 12-11-25 (2005). The funds shall be expended to protect the public health, safety, and welfare; to provide those resources and services necessary to avoid or minimize economic or physical harm on a temporary, emergency basis. The funds shall be paid out only in an amount specified by warrants drawn by the Secretary of the Department of Finance and Administration upon vouchers approved by the Governor or the Department of Health.

11.     This Order may be supplemented or amended.

THIS ORDER supersedes any other previous orders, proclamations, or directives in conflict.  This Executive Order shall take effect immediately and shall remain in effect until the Governor rescinds it.

ATTEST:

MAGGIE TOULOUSE OLIVER
SECRETARY OF STATE

DONE AT THE EXECUTIVE OFFICE
THIS 11TH DAY OF MARCH 2020

WITNESS MY HAND AND THE GREAT
SEAL OF THE STATE OF NEW MEXICO

MICHELLE LUJAN GRISHAM
GOVERNOR





MICHELLE LUJAN GRISHAM
GOVERNOR

KATHYLEEN M. KUNKEL
CABINET SECRETARY

---

## AMENDED PUBLIC HEALTH ORDER
## NEW MEXICO DEPARTMENT OF HEALTH
## CABINET SECRETARY KATHYLEEN M. KUNKEL

### MARCH 16, 2020

### Public Health Emergency Order Limiting Mass Gatherings
### and Implementing Other Restrictions Due to COVID-19

**WHEREAS**, on January 30, 2020, the World Health Organization (WHO) announced the emergence of a novel Coronavirus Disease 2019 (referred to as "COVID-19") that had not previously circulated in humans, but has been found to have adapted to humans such that it is contagious and easily spread from one person to another and one country to another;

**WHEREAS,** on January 31, 2020, the United States Department of Health and Human Services (HHS) Secretary declared a public health emergency as a precautionary tool to facilitate preparation and availability of resources to assure that the federal government had appropriate resources to combat the spread of the COVID-19 virus in our nation through its support of state and community-led preparedness and response efforts;

**WHEREAS,** as of March 15, 2020, the New Mexico Department of Health has confirmed thirteen (13) cases of individuals infected with COVID-19 in New Mexico;

**WHEREAS,** on March 11, 2020, Michelle Lujan Grisham, the Governor of the State of New Mexico, declared in Executive Order 2020-004 ("EO 2020-004") that a Public Health Emergency exists in New Mexico under the Public Health Emergency Response Act, and invoked the All Hazards Emergency Management Act by directing all cabinets, departments and agencies to comply with the directives of the declaration and the further instructions of the Department of Health;

**WHEREAS,** as of March 12, 2020, I issued a Public Health Emergency Order to Limit Mass Gatherings Due to COVID-19, which limited certain public gatherings;

**WHEREAS,** the further spread of COVID-19 in the State of New Mexico poses a threat to the health, safety, wellbeing and property of the residents in the State due to, among other things, illness from COVID-19, illness-related absenteeism from employment (particularly among public safety and law enforcement personnel and persons engaged in activities and businesses critical to the economy and infrastructure of the State), and potential closures of schools or other places of public gathering; and

**WHEREAS**, the New Mexico Department of Health possesses legal authority pursuant to the Public Health Act, NMSA 1978, Sections 24-1-1 to -40, the Public Health Emergency Response Act, NMSA 1978, Sections 12-10A-1 to -10, the Department of Health Act, NMSA 1978, Sections 9-7-1 to -18, the authority granted in EO 2020-004, and in any inherent

---

**EXHIBIT 4**

**OFFICE OF THE SECRETARY**
1190 St. Francis Dr., Suite N4100 • P.O. Box 26110 • Santa Fe, New Mexico • 87502
(505) 827-2613 • FAX: (505) 827-2530 • www.nmhealth.org



constitutional police powers of the New Mexico state government, to preserve and promote public health and safety, to adopt isolation and quarantine, and to close public places and forbid gatherings of people when deemed necessary by the Department for the protection of public health.

**NOW, THEREFORE, I,** Kathyleen M. Kunkel, Cabinet Secretary of the New Mexico Department of Health, in accordance with the authority vested in me by the Constitution and the Laws of the State of New Mexico, do hereby declare the current outbreak of COVID-19 a condition of public health importance as defined in the New Mexico Public Health Act, NMSA 1978, Section 24-1-2(A) as an infection, a disease, a syndrome, a symptom, an injury or other threat that is identifiable on an individual or community level and can reasonably be expected to lead to adverse health effects in the community, and that poses an imminent threat of substantial harm to the population of New Mexico.

The following definitions are adopted for the purposes of this Order:

Definitions:  As used in this Public Health Order, the following terms shall have the meaning given to them, except where the context clearly requires otherwise:

(1)    "Condition of public health importance" means an infection, a disease, a syndrome, a symptom, an injury or other threat that is identifiable on an individual or community level and can reasonably be expected to lead to adverse health effects in the community.

(2)    "Disease" means an illness, including those caused by infectious agents or their toxic products which may be transmitted to a susceptible host.

(3)    "Individuals" means natural persons.

(4)    "Gathering" means any grouping together of individuals in a single connected location.

(5)    "Mass gathering" means any public or private gathering that brings together one hundred (100) or more individuals in a single room or connected space in close proximity to one another, such as an auditorium, stadium, arena, large conference room, meeting hall, theaters, or any other confined indoor or outdoor space, but does not include normal operations at airports, or other spaces where 100 or more individuals may be in transit.  "Mass gathering" also does not include family gatherings such as weddings or funerals, shelters, retail stores or grocery stores, typical office environments, courthouses, correctional and detention facilities, schools and educational institutions, hospitals, clinics, nursing homes, and other health care and congregate care facilities, and places of worship operating during "normal business hours".

(6)    "Normal business hours" means the normal workday or typical time of operation for a "typical office environment".

(7)    "Secretary" or "Secretary of Health" means the Cabinet Secretary of the Department of Health.

(8)    "Typical office environments" includes private entities, governmental organizations, political subdivisions, or other entities engaged in commercial, industrial, or professional activities.  "Typical office environments" does not include restaurants, bars, breweries, eateries, and other similar service establishments.

**I HEREBY DIRECT AS FOLLOWS:**

(1)  All Mass Gatherings are hereby prohibited under the powers and authority set forth in the New Mexico Public Health Act, and all regulations promulgated pursuant thereto.

(2) All restaurants, bars, breweries, eateries, and other food service establishments shall operate at no greater than fifty percent of maximum occupancy, and no greater than fifty percent of seating capacity.  Individual tables and booths may not seat more than six people, and all occupied tables and booths must be separated by at least six feet. Patrons may not be seated at bars and standing patrons shall not be served.

(3) All casinos and horse racing facilities, and attendant restaurant or bar operations shall close during the pendency of this Order.  This directive excludes those casinos operating on Tribal lands.

**I FURTHER DIRECT** as follows:

(1) This Order shall be broadly disseminated in English, Spanish and other appropriate languages to the citizens of the State of New Mexico.

(2) This Order declaring restrictions based upon the existence of a condition of public health importance shall not abrogate any disease-reporting requirements set forth in the New Mexico Public Health Act.

(3) This Order shall remain in effect for the duration of Executive Order 2020-004.  This Order may be renewed consistent with any direction from the Governor.

**I FURTHER ADVISE** the public to take the following preventive precautions:

- **New Mexico citizens are strongly advised to stay at home and undertake only those outings absolutely necessary for their health, safety, or welfare.**
- Avoid contact with people who are sick.
- Wash your hands often with soap and water for at least 20 seconds, especially after blowing your nose, coughing, or sneezing, or having been in a public place.  If soap and water are not available, use a hand sanitizer that contains at least 60% alcohol.
- To the extent possible, avoid touching high-touch surfaces in public places – elevator buttons, door handles, handrails, handshaking with people, etc. Use a tissue or your sleeve to cover your hand or finger if you must touch something.
- Avoid touching your face, nose, eyes, etc.
- Clean and disinfect your home to remove germs: practice routine cleaning of frequently touched surfaces (for example: tables, doorknobs, light switches, handles, desks, toilets, faucets, sinks & cell phones).
- Avoid crowds, especially in poorly ventilated spaces. Your risk of exposure to respiratory viruses like COVID-19 may increase in crowded, closed-in settings with little air circulation if there are people in the crowd who are sick.
- Avoid all non-essential travel including plane trips and cruise ships.

3

**THIS ORDER** amends the Public Health Emergency Order to Limit Mass Gatherings Due to COVID-19 issued on March 12, 2020, supersedes any other previous orders, proclamations, or directives in conflict.  This Order shall take effect immediately and shall remain in effect until otherwise rescinded.


ATTEST:                                            DONE AT THE EXECUTIVE OFFICE
                                                   THIS 16TH DAY OF MARCH 2020

_____                        WITNESS MY HAND AND THE GREAT
MAGGIE TOULOUSE OLIVER                              SEAL OF THE STATE OF NEW MEXICO
SECRETARY OF STATE


                                                   _____
                                                   KATHYLEEN M. KUNKEL
                                                   SECRETARY OF THE STATE OF NEW MEXICO
                                                   DEPARTMENT OF HEALTH



MICHELLE LUJAN GRISHAM
GOVERNOR

KATHYLEEN M. KUNKEL
CABINET SECRETARY

# PUBLIC HEALTH ORDER
# NEW MEXICO DEPARTMENT OF HEALTH
# CABINET SECRETARY KATHYLEEN M. KUNKEL

## MARCH 23, 2020

### Public Health Emergency Order Closing All Businesses and Non-Profit Entities Except for those Deemed Essential and Providing Additional Restrictions on Mass Gatherings Due to COVID-19

**WHEREAS**, on March 11, 2020, because of the spread of the novel Coronavirus Disease 2019 ("COVID-19"), Michelle Lujan Grisham, the Governor of the State of New Mexico, declared that a Public Health Emergency exists in New Mexico under the Public Health Emergency Response Act, and invoked her authority under the All Hazards Emergency Management Act;

**WHEREAS,** COVID-19 continues to spread in New Mexico and nationally.  Since, Executive Order 2020-004 was issued, COVID-19 infections in the United States have increased from 1,000 confirmed cases to over 30,000 confirmed cases;

**WHEREAS,** the further spread of COVID-19 in the State of New Mexico poses a threat to the health, safety, wellbeing and property of the residents in the State due to, among other things, illness from COVID-19, illness-related absenteeism from employment (particularly among public safety and law enforcement personnel and persons engaged in activities and businesses critical to the economy and infrastructure of the State), potential displacement of persons, and closures of schools or other places of public gathering; and

**WHEREAS**, social distancing is the sole way New Mexicans can minimize the spread of COVID-19 and currently constitutes the most effective means of mitigating the potentially devastating impact of this pandemic in New Mexico; and

**WHEREAS**, the New Mexico Department of Health possesses legal authority pursuant to the Public Health Act, NMSA 1978, Sections 24-1-1 to -40, the Public Health Emergency Response Act, NMSA 1978, Sections 12-10A-1 to -10, the Department of Health Act, NMSA 1978, Sections 9-7-1 to -18, and inherent constitutional police powers of the New Mexico state government, to preserve and promote public health and safety, to adopt isolation and quarantine, and to close public places and forbid gatherings of people when deemed necessary by the Department for the protection of public health.

**NOW, THEREFORE, I,** Kathyleen M. Kunkel, Cabinet Secretary of the New Mexico Department of Health, in accordance with the authority vested in me by the Constitution and the Laws of the State of New Mexico, and as directed by the Governor pursuant to the full scope of her emergency powers under the All Hazard Emergency Management Act as invoked through

**EXHIBIT 5**

**OFFICE OF THE SECRETARY**
1190 St. Francis Dr., Suite N4100 • P.O. Box 26110 • Santa Fe, New Mexico • 87502
(505) 827-2613 • FAX: (505) 827-2530 • www.nmhealth.org



Executive Order 2020-004, do hereby declare the current outbreak of COVID-19 a condition of public health importance as defined in the New Mexico Public Health Act, NMSA 1978, Section 24-1-2(A) as an infection, a disease, a syndrome, a symptom, an injury or other threat that is identifiable on an individual or community level and can reasonably be expected to lead to adverse health effects in the community, and that poses an imminent threat of substantial harm to the population of New Mexico.

The following definitions are adopted for the purposes of this Order:

Definitions:  As used in this Public Health Order, the following terms shall have the meaning given to them, except where the context clearly requires otherwise:

(1)    "Condition of public health importance" means an infection, a disease, a syndrome, a symptom, an injury or other threat that is identifiable on an individual or community level and can reasonably be expected to lead to adverse health effects in the community.

(2)    "Disease" means an illness, including those caused by infectious agents or their toxic products which may be transmitted to a susceptible host.

(3)    "Essential business" means any business or non-profit entity falling within one or more of the following categories:

a. Health care operations including hospitals, walk-in-care health facilities, emergency veterinary and livestock services, pharmacies, medical wholesale and distribution, home health care workers or aides for the elderly, emergency dental facilities, nursing homes, residential health care facilities, research facilities, congregate care facilities, intermediate care facilities for those with intellectual or developmental disabilities, supportive living homes, home health care providers, and medical supplies and equipment manufacturers and providers;

b. Homeless shelters, food banks, and other services providing care to indigent or needy populations;

c. Childcare facilities necessary to provide services to those workers employed by essential businesses and essential non-profit entities;

d. Grocery stores, all food and beverage stores, supermarkets, food banks, farmers' markets and vendors who sell food, convenience stores, and other businesses that generate the majority of their revenue from the sale of canned food, dry goods, fresh fruits and vegetables, pet food, feed, and other animal supply stores, fresh meats, fish, and poultry, and any other household consumer products;

e. Farms, ranches, and other food cultivation, processing, or packaging operations;

f.   All facilities used by law enforcement personnel, first responders, firefighters, emergency management personnel, and dispatch operators;

g.   Infrastructure operations including, but not limited to, public works construction, commercial and residential construction and maintenance, airport operations, public transportation, airlines, taxis, private transportation providers water, gas, electrical, oil drilling, oil refining, natural resources extraction or mining operations, nuclear material research and enrichment, those attendant to the repair and construction of roads and highways, solid waste collection and removal, trash and recycling collection, processing and disposal, sewer, data and internet providers, data centers, technology support operations, and telecommunications systems;

h.   Manufacturing operations involved in food processing, manufacturing agents, chemicals, fertilizer, pharmaceuticals, sanitary products, household paper products, microelectronics/semi-conductor, primary metals manufacturers, electrical equipment, appliance, and component manufacturers, and transportation equipment manufacturers;

i.   Services necessary to maintain the safety and sanitation of residences or essential businesses including security services, custodial services, plumbers, electricians, and other skilled trades;

j.   Media services including television, radio, and newspaper operations;

k.   Gas stations, automobile repair facilities, and retailers who generate the majority of their revenue from the sale of automobile repair products;

l.   Hardware stores;

m.   Laundromats and dry cleaner services;

n.   Utilities, including their contractors and suppliers, engaged in power generation, fuel supply and transmission, water and wastewater supply;

o.   Funeral homes, crematoriums and cemeteries;

p.   Banks, credit unions, insurance providers, payroll services, brokerage services, and investment management firms;

q.   Real estate services including brokers, title companies, and related services.

r.   Businesses providing mailing and shipping services, including post office boxes;

     s.   Laboratories and defense and national security-related operations supporting the United States government or a contractor to the United States government;

     t.   Restaurants, but only for delivery or carry out and local breweries or distillers but only for carry out;

     u.   Professional services, such as legal or accounting services, but only where necessary to assist in compliance with legally mandated activities; and

     v.   Logistics and businesses that store, ship or deliver groceries, food, goods or services directly to residences or retailers.

(4)     "Individuals" means natural persons.

(5)     "Gathering" means any grouping together of individuals in a single connected location.

(6)     "Mass gathering" means any public or private gathering that brings together five (5) or more individuals in a single room or connected space, confined outdoor space or an open outdoor space where individuals are within six (6) feet of each other, but does not include the presence of five (5) or more individuals where those individuals regularly reside. "Mass gathering" does not include "individuals" congregated in a church, synagogue, mosque, or other place of worship.

**I HEREBY DIRECT AS FOLLOWS:**

(1)  All Mass Gatherings are hereby prohibited under the powers and authority set forth in the New Mexico Public Health Act, and all regulations promulgated pursuant thereto.

(2) All businesses, except those entities identified as "essential businesses", are hereby directed to reduce the in-person workforce at each business or business location by 100%. "Essential businesses" may remain open provided they minimize their operations and staff to the greatest extent possible. Further, all essential businesses shall, to the greatest extent possible, adhere to social distancing protocol and maintain at least six-foot social distancing from other individuals, avoid person-to-person contact, and direct employees to wash their hands frequently. Further, all essential businesses shall ensure that all surfaces are cleaned routinely.

(3) This Order only requires the closure of physical office spaces, retail spaces, or other public spaces of a business and does not otherwise restrict the conduct of business operations through telecommuting or otherwise working from home in which an employee only interacts with clients or customers remotely.

(4) All casinos and horse racing facilities shall close during the pendency of this Order. This directive excludes those casinos operating on Tribal lands.

(5) Hotels, motels, RV parks, and other places of lodging shall not operate at more than fifty percent of maximum occupancy. Health care workers who are engaged in the

4

provision of care to New Mexico residents or individuals utilizing lodging facilities for extended stays or as temporary housing shall not be counted for purposes of determining maximum occupancy.

(6) All call centers situated in New Mexico are directed to reduce their in-person workforce by 100%.

(7) The New Mexico Department of Public Safety, the New Mexico Department of Homeland Security and Emergency Management, the Department of the Environment, and all other State departments and agencies are authorized to take all appropriate steps to ensure compliance with this Order.

(8) All public and private employers are required to comply with this Order and any instructions provided by State departments or agencies regarding COVID-19.

(9) In order to minimize the shortage of health care supplies and other necessary goods, grocery stores and other retailers are hereby directed to limit the sale of medications, durable medical equipment, baby formula, diapers, sanitary care products, and hygiene products to three items per individual.  NMSA 1978, § 12-10A-6 (2012).


**I FURTHER DIRECT** as follows:

(1) This Order shall be broadly disseminated in English, Spanish and other appropriate languages to the citizens of the State of New Mexico.

(2) This Order declaring restrictions based upon the existence of a condition of public health importance shall not abrogate any disease-reporting requirements set forth in the New Mexico Public Health Act.

(3) This Order shall remain in effect for the duration of Executive Order 2020-004.  This Order may be renewed consistent with any direction from the Governor.

**I FURTHER ADVISE** the public to take the following preventive precautions:

- **<u>New Mexico citizens should stay at home and undertake only those outings absolutely necessary for their health, safety, or welfare.</u>**
- Retailers should take appropriate action consistent with this order to reduce hoarding and ensure that all New Mexicans can purchase necessary goods.
- Avoid crowds.
- Avoid all non-essential travel including plane trips and cruise ships.

**THIS ORDER** amends the Public Health Emergency Order to Limit Mass Gatherings Due to COVID-19 issued on March 19, 2020, supersedes any other previous orders, proclamations, or directives in conflict.

ATTEST:                              DONE AT THE EXECUTIVE OFFICE
                                     THIS 24TH DAY OF MARCH 2020

                                     WITNESS MY HAND AND THE GREAT
_____     SEAL OF THE STATE OF NEW MEXICO
MAGGIE TOULOUSE OLIVER
SECRETARY OF STATE


                                     _____
                                     KATHYLEEN M. KUNKEL
                                     SECRETARY OF THE STATE OF NEW MEXICO
                                     DEPARTMENT OF HEALTH


6



MICHELLE LUJAN GRISHAM
GOVERNOR

NEW MEXICO
DEPARTMENT OF
HEALTH

KATHYLEEN M. KUNKEL
CABINET SECRETARY

---

**PUBLIC HEALTH ORDER**
**NEW MEXICO DEPARTMENT OF HEALTH**
**CABINET SECRETARY KATHYLEEN M. KUNKEL**

**MARCH 24, 2020**

**Public Health Emergency Order Imposing Temporary Restrictions on Non-Essential Health Care Services, Procedures, and Surgeries; Providing Guidance on those Restrictions; and Requiring a Report from Certain Health Care Providers**

**WHEREAS**, on January 30, 2020, the World Health Organization announced the emergence of a novel Coronavirus Disease 2019 ("COVID-19") that had not previously circulated in humans, but has been found to have adapted to humans such that it is contagious and easily spread from one person to another and one country to another;

**WHEREAS,** on January 31, 2020, the United States Department of Health and Human Services Secretary declared a public health emergency as a precautionary tool to facilitate preparation and availability of resources to assure that the federal government had appropriate resources to combat the spread of the COVID-19 virus in our nation through its support of state and community-led preparedness and response efforts;

**WHEREAS,** on March 11, 2020, the New Mexico Department of Health confirmed the first cases of individuals infected with COVID-19 in New Mexico and additional cases have been confirmed each day since then;

**WHEREAS,** on March 11, 2020, Michelle Lujan Grisham, the Governor of the State of New Mexico, declared in Executive Order 2020-004 ("EO 2020-004") that a Public Health Emergency exists in New Mexico under the Public Health Emergency Response Act, and invoked the All Hazards Emergency Management Act by directing all cabinets, departments and agencies to comply with the directives of the declaration and the further instructions of the Department of Health;

**WHEREAS,** the further spread of COVID-19 in the State of New Mexico poses a threat to the health, safety, wellbeing and property of the residents in the State due to, among other things, illness from the COVID-19, illness-related absenteeism from employment (particularly among public safety and law enforcement personnel and persons engaged in activities and businesses critical to the economy and infrastructure of the State), the potential for displacements of persons, and potential closures of schools or other places of public gathering;

**WHEREAS,** the United States Centers for Disease Control and Prevention ("CDC") recommends the use of personal protective equipment ("PPE")—including gloves, medical masks, goggles or a face shield, gowns, and in some cases respirators (N95 or FFP2 standard or equivalent) and aprons—for patients and health care workers as an essential part of treating and preventing the spread of COVID-19;



**OFFICE OF THE SECRETARY**
1190 St. Francis Dr., Suite N4100 • P.O. Box 26110 • Santa Fe, New Mexico • 87502
(505) 827-2613 • FAX: (505) 827-2530 • www.nmhealth.org

 

**EXHIBIT 6**

**WHEREAS,** due to delayed deliveries of PPE from the Strategic National Stockpile, the high demand for PPE throughout the United States and globally, and other supply chain interference related to the COVID-19 pandemic, there is both a statewide and national shortage of PPE and the PPE supplies of New Mexico's hospitals, health care facilities, and first responders are critically low;

**WHEREAS,** local, national, and global health experts predict that the expected continued rise in cases of COVID-19 will strain the capacity and resources of health care providers, including available space and equipment in health care facilities; and

**WHEREAS,** during a declared Public Health Emergency, the New Mexico Department of Health possesses legal authority pursuant to the Public Health Emergency Response Act to "utilize, secure or evacuate health care facilities for public use." NMSA 1978, § 12-10A-6(A)(1). The Department of Health is also permitted to "regulate or ration health care supplies" if "a public health emergency results in a statewide or regional shortage of health care supplies." § 12-10A-6(A)(2), (B). This authority permits the Department of Health to "control, restrict and regulate the allocation, sale, dispensing or distribution of health care supplies." § 12-10A-6(B). The Department of Health also has authority to "control and abate the causes of disease, especially epidemics" and to "maintain and enforce rules for the control of conditions of public health importance." NMSA 1978, § 24-1-3(C) & (Q).

**NOW, THEREFORE, I,** Kathyleen M. Kunkel, Cabinet Secretary of the New Mexico Department of Health, in accordance with the authority vested in me by the Constitution and the Laws of the State of New Mexico, and through the Public Health Emergency declared in EO 2020-004 and by virtue of the Governor's direction under her power to "provide those resources and services necessary to avoid or minimize economic or physical harm until a situation becomes stabilized," NMSA 1978, § 12-10-4(B)(3), do hereby **ORDER** and **DIRECT** as follows:

1.      All hospitals and other health care facilities, ambulatory surgical facilities, dental, orthodontic and endodontic offices in the State of New Mexico are prohibited from providing non-essential health care services, procedures, and surgeries.

2.      For purposes of this Order, "non-essential health care services, procedures, and surgeries" include those which can be delayed for three (3) months without undue risk to the patient's health. Examples of criteria to consider in distinguishing between essential and non-essential actions include: (a) threat to a patient's life; (b) threat of permanent dysfunction of an extremity, including teeth, jaws, and eyes; (c) risk of metastasis or progression of staging; (d) prenatal and postnatal care; and (e) any other factors that will conserve medical resources without creating an undue risk of permanent harm to patients.

3.      This Order's prohibition on non-essential health care services, procedures, and surgeries is not meant to apply to: (a) the provision of emergency medical care or any actions necessary to provide treatment to patients with emergency or urgent medical needs; (b) any surgery or treatment that if not performed would result in a serious condition of a patient worsening (e.g.,

removing a cancerous tumor or a surgery intended to manage an infection); and (c) the full suite of family planning services.

4.      The prohibition on non-essential health care services, procedures, and surgeries will take effect on March 27, 2020.

5.      Within three (3) days of the date of this Order, each health care provider or facility that is subject to the prohibition on non-essential health care services, procedures, and surgeries shall submit to the New Mexico Department of Health a policy addressing how it will comply with this Order and identifying those procedures that will generally be deemed essential and non-essential.

6.      A person who willfully violates this Order may be subject to civil administrative penalties, including fines up to $5,000 per violation, in addition to other civil or criminal penalties that may be available at law.

**I FURTHER DIRECT** as follows:

(1) This Order shall be broadly disseminated in English, Spanish and other appropriate languages to the citizens of the State of New Mexico.

(2) This Order declaring restrictions based upon the existence of a condition of public health importance shall not abrogate any disease-reporting requirements set forth in the New Mexico Public Health Act.

(3) This Order shall remain in effect for the duration of Executive Order 2020-004.  This Order may be renewed consistent with any direction from the Governor.

**THIS ORDER** supersedes any other previous orders, proclamations, or directives in conflict.  This Order shall take effect immediately and shall remain in effect for the duration indicated in the Order unless otherwise rescinded.

ATTEST:

MAGGIE TOULOUSE OLIVER
SECRETARY OF STATE

DONE AT THE EXECUTIVE OFFICE
THIS 24TH DAY OF MARCH 2020

WITNESS MY HAND AND THE GREAT
SEAL OF THE STATE OF NEW MEXICO

KATHYLEEN M. KUNKEL
SECRETARY OF THE STATE OF NEW MEXICO
DEPARTMENT OF HEALTH

3

**IN THE DISTRICT COURT OF CHEROKEE COUNTY
STATE OF OKLAHOMA**



CHEROKEE NATION,
   *ET AL.,*

      **Plaintiffs,**

Vs.

Lexington Insurance Company,
   *ET AL.*

CASE NO. CV-2020-150

~~FILED~~

JAN 1 4 2021

LESA ROUSEY-DANIELS, Court Clerk
CHEROKEE COUNTY
By_____Deputy

      **Respondents.**

### *ORDER*

COMES NOW on this ⎯⎯ 14 ⎯⎯ day of January, 2021 after conducting a hearing,

reviewing the legal authorities, and taking this issue under advisement, the Court grants the

Plaintiffs' Motion for Partial Summary Judgement. This issue is ripe for Summary Judgement as

coverage for "Business Interference Coverage" is a legal issue.

Using language from *Elegant Massage LLC vs. State Farm,* while this insurance policy

was in effect, the Plaintiffs have shown a "plausible claim for a fortuitous 'direct physical loss'".

However, the Respondents have not shown that "exclusionary language in the policy applies to

the facts" which denies Plaintiffs' Business Interference Coverage.

WHEREFORE, It is the Order of this Court that Plaintiffs' Motion for Partial Summary

Judgement is granted.

_____
Judge of the District Court

CC: Michael Burrage

| | | |
|---|---|---|
| Roger Butler | Shannon O'Malley | Amy Churan |
| Kerry Lewis | Margo Shipley | Joe Hampton |
| Larry Ottaway | Dan Millea | |
| Dustin DeBose | Richard Doren | |

**EXHIBIT
7**

2020 WL 6281508 (N.C.Super.) (Trial Order)
Superior Court of North Carolina.
Durham County

NORTH STATE DELI, LLC d/b/a Lucky's Delicatessen, Mothers & Sons, LLC d/b/a Mothers & Sons Trattoria,
Mateo Tapas, L.L.C. d/b/a Mateo Bar De Tapas, Saint James Shellfish LLC d/b/a Saint James Seafood,
Calamari Enterprises, Inc. d/b/a Parizade, Bin 54, LLC d/b/a Bin 54, Arya, Inc. d/b/a City Kitchen and
Village Burger, Grasshopper LLC d/b/a Nasher Cafe, Verde Cafe Incorporated d/b/a Local 22, Floga, Inc. d/
b/a Kipos Greek Taverna, Kuzlna, LLC d/b/a Golden Fleece, Vin Rouge, Inc. d/b/a Vin Rouge, Kipos Rose
Garden Club LLC d/b/a Rosewater, and Gira Sole, Inc. d/b/a Farm Table and Gatehouse Tavern, Plaintiffs,
v.
THE CINCINNATI INSURANCE COMPANY; The Cincinnati Casualty Company;
Morris Insurance Agency Inc.; and Does 1 Through 20, Inclusive, Defendants.

No. 20-CVS-02569.
October 9, 2020.

### Order Denying the Rule 12(b)(6) Motion to Dismiss the Second Amended Complaint Filed by Defendants the Cincinnati Insurance Company and the Cincinnati Casualty Company

Stuart M. Paynter, Gagan Gupta, 106 S. Churton Street, Suite 200, Hillsborough, NC 27278, for plaintiffs.

Andrew A. Vanore III, Post Office Box 1729, Raleigh, NC 27602-1729, for defendant, The Cincinnati Insurance Company.

Kendra Stark, Justin M. Puleo, 421 Fayetteville Street, Suite 330, Raleigh, NC 27601, for defendant Morris Insurance Agency, Inc.

Orlando F. Hudson, Jr.

**\*1** THIS MATTER was heard on September 23, 2020, before Senior Resident Superior Court Judge Orlando F. Hudson, Jr., with Gagan Gupta appearing for the plaintiff-restaurants (including North State Deli, LLC d/b/a Lucky's Delicatessen; Mothers & Sons, LLC d/b/a Mothers & Sons Trattoria; Mateo Tapas, L.L.C. d/b/a Mateo Bar de Tapas; Saint James Shellfish LLC d/b/ a Saint James Seafood; Calamari Enterprises, Inc. d/b/a Parizade; Bin 54, LLC d/b/a Bin 54; Arya, Inc. d/b/a City Kitchen and Village Burger; Grasshopper LLC d/b/a Nasher Cafe; Verde Cafe Incorporated d/b/a Local 22; Floga, Inc. d/b/a Kipos Greek Taverna; Kuzina, LLC d/b/a Golden Fleece; Vin Rouge, Inc. d/b/a Vin Rouge; Kipos Rose Garden Club LLC d/b/a Rosewater; and Gira Sole, Inc. d/b/a Farm Table and Gatehouse Tavern (collectively, "Plaintiffs")), and Brian Reid and Drew Vanore appearing for defendant-insurers The Cincinnati Insurance Company and The Cincinnati Casualty Company (collectively, "Defendants"). Defendants brought a Rule 12(b)(6) Motion to Dismiss in Lieu of Answer to Plaintiffs' Complaint ("Motion") with respect to Count I (Declaratory Judgment), Count II (Declaratory Judgment), and Count III (Breach of Contract). [1]

THE COURT, having considered the pleadings, the Motion, the briefs filed in support of and in opposition to the Motion, the oral arguments of counsel at the hearing on the Motion, the applicable law, and other appropriate matters of record, DENIES Defendants' Motion.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

(1) Plaintiffs state a viable claim for relief under Count I of the Second Amended Complaint, seeking a declaratory judgment against Defendants pursuant to N.C. Gen. Stat. § 1-253 *et seq.*, ascertaining entitlement to coverage under insurance policy contracts entered into between Plaintiffs and Defendants.

EXHIBIT
8

(2) Plaintiffs state a viable claim for relief under Count II of the Second Amended Complaint, seeking a declaratory judgment against Defendants pursuant to N.C. Gen. Stat. § 1-253 *et seq.*, ascertaining entitlement to coverage under insurance policy contracts entered into between Plaintiffs and Defendants.

**\*2** (3) Plaintiffs state a viable claim for relief under Count III of the Second Amended Complaint, seeking damages and other relief for breach of contract against Defendants pursuant to their failure to provide benefits due under the insurance policy contracts as described in Counts I and II.

This the 7 th day of October, 2020.

<<signature>>

ORLANDO F. HUDSON, JR.

SENIOR RESIDENT SUPERIOR COURT JUDGE

### Footnotes

1       The operative pleading to which this Order applies is the Second Amended Complaint. For background, the Motion was filed by defendant The Cincinnati Insurance Company on August 7, 2020. After Plaintiffs and The Cincinnati Insurance Company exchanged full briefing on the Motion, the Court granted a Consent Motion for Leave to File Second Amended Complaint, consented to by all the parties captioned herein. The sole amendment made by the Second Amended Complaint was the addition of another defendant-insurer, The Cincinnati Casualty Company. Because Plaintiffs and Defendants jointly stipulated that the Second Amended Complaint resulted in no substantive changes to the Motion or the related briefings and arguments, and that the Motion and related briefings and arguments applied with equal force to the newly-added defendant entity, this Order is entered with respect to Counts I-III as those counts are alleged against both The Cincinnati Insurance Company and The Cincinnati Casualty Company in the Second Amended Complaint.

**End of Document**                                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Declined to Follow by    T & E Chicago LLC v. Cincinnati Insurance
Company,  N.D.Ill.,  November 19, 2020

2020 WL 4692385
Only the Westlaw citation is currently available.
United States District Court, W.D.
Missouri, Southern Division.

STUDIO 417, INC., et al., Plaintiffs,

v.

The CINCINNATI INSURANCE
COMPANY, Defendant.

Case No. 20-cv-03127-SRB
|
Signed 08/12/2020

**Synopsis**
**Background:** Insureds, businesses which had purchased
all-risk property insurance policies, brought action against
property insurer, seeking declaratory judgment and class
certification and alleging breach of contract arising from
insurer's denial of coverage for losses resulting from
COVID-19 pandemic. Property insurer moved to dismiss.

**Holdings:** The District Court, Stephen R. Bough, J., held that:

[1] insureds adequately alleged that they incurred direct
physical loss;

[2] insureds plausibly stated claim for civil authority
coverage;

[3] insureds plausibly stated claim for ingress and egress
coverage;

[4] insureds plausibly stated claim for dependent property
coverage; and

[5] insureds plausibly stated claim for sue and labor coverage.

Motion denied.

**Procedural Posture(s):** Motion to Dismiss for Failure to
State a Claim.

**West Headnotes (15)**

**[1]**    **Federal Civil Procedure** 🔑 Construction of
pleadings

        **Federal Civil Procedure** 🔑 Matters deemed
admitted;  acceptance as true of allegations in
complaint

        When deciding a motion to dismiss complaint
for failure to state a claim, the factual allegations
of a complaint are assumed true and construed
in favor of the plaintiff, even if it strikes a
savvy judge that actual proof of those facts is
improbable. Fed. R. Civ. P. 12(b)(6).

**[2]**    **Federal Courts** 🔑 Insurers and insurance

        State law controls the construction of insurance
policies where case is based on diversity
jurisdiction.

**[3]**    **Insurance** 🔑 Questions of law or fact

        Under Missouri law, the interpretation of an
insurance policy is a question of law to be
determined by the court.

        2 Cases that cite this headnote

**[4]**    **Insurance** 🔑 Construction or enforcement as
written

        **Insurance** 🔑 Entire contract

        Missouri courts read insurance contracts as a
whole and determine the intent of the parties,
giving effect to that intent by enforcing the
contract as written.

**[5]**    **Insurance** 🔑 Reasonableness

        **Insurance** 🔑 Favoring coverage or
indemnity;  disfavoring forfeiture

        In Missouri, insurance policies are to be given a
reasonable construction and interpreted so as to
afford coverage rather than defeat coverage.

EXHIBIT
9

**[6]** **Insurance** ⚷ Understanding of Ordinary or Average Persons

Under Missouri law, insurance policy terms are given the meaning which would be attached by an ordinary person of average understanding if purchasing insurance.

**[7]** **Insurance** ⚷ Ambiguity in general

Under Missouri law, when interpreting insurance policy terms, the central issue is determining whether any ambiguity exists, which occurs where there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract.

**[8]** **Insurance** ⚷ Construction or enforcement as written

Under Missouri law, if insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage.

**[9]** **Insurance** ⚷ Ambiguity, Uncertainty or Conflict

Under Missouri law, if language in insurance policies is ambiguous, it will be construed against the insurer.

**[10]** **Insurance** ⚷ Risks or Losses Covered and Exclusions

**Insurance** ⚷ Acts of government or governmental actors

Insureds, businesses which had purchased all-risk insurance policies, adequately alleged that they incurred direct physical loss during COVID-19 pandemic, as necessary to obtain coverage under property insurance policies; insureds alleged causal relationship between COVID-19 and their alleged losses, in that COVID-19 resulted in government orders requiring closure of businesses, and also alleged that COVID-19 was physical substance that lived on and was active on inert physical surfaces, that it was emitted into air, and that COVID-19 attached to and deprived insureds of their property and made it unsafe and unusable.

10 Cases that cite this headnote

**[11]** **Insurance** ⚷ Construction as a whole

**Insurance** ⚷ Entire contract

Court, in interpreting insurance policy, must give meaning to all policy terms and, where possible, harmonize those terms in order to accomplish the intention of the parties.

**[12]** **Insurance** ⚷ Acts of government or governmental actors

Insureds, restaurants and salon which had purchased all-risk insurance policies, plausibly stated claim for civil authority coverage under policy during COVID-19 pandemic; insureds alleged that they suffered physical loss, which was applicable to other property, and that civil authorities issued closure and stay-at-home orders throughout two states, which included property other than insureds' premises, and while insureds admitted that closure orders allowed restaurant premises to remain open for food preparation, take-out, and delivery and that they did not prohibit access to salon premises, they alleged that closure order required businesses that provided personal services to suspend operations and prohibited inside seating at restaurants.

1 Cases that cite this headnote

**[13]** **Insurance** ⚷ Business Interruption; Lost Profits

Insureds, businesses which had purchased all-risk insurance policies, plausibly stated claim for ingress and egress coverage under policy during COVID-19 pandemic; insureds alleged that they suffered physical loss, in that COVID-19 was physical substance that lived on inert physical surfaces and had attached to and deprived insureds of their property, and also alleged that both COVID-19 and resulting closure orders

that government issued to businesses rendered premises unsafe for ingress and egress.

12 Cases that cite this headnote

**[14]** **Insurance** Business Interruption; Lost Profits

Insureds, businesses which had purchased all-risk insurance policies, plausibly stated claim for dependent property coverage under policy during COVID-19 pandemic; insureds alleged that they suffered physical loss, in that COVID-19 was physical substance that lived on inert physical surfaces and had attached to and deprived insureds of their property, and also alleged that they suffered loss of materials, services, and customers because of COVID-19 and resulting closure orders issued by government to businesses.

13 Cases that cite this headnote

**[15]** **Insurance** Minimizing loss

Insureds, businesses which had purchased all-risk insurance policies, plausibly stated claim for sue and labor coverage under policy during COVID-19 pandemic; insureds alleged that, in complying with closure orders issued by government to businesses and by suspending operations, they incurred expenses in connection with reasonable steps to protect covered property.

**Attorneys and Law Firms**

Jack Thomas Hyde, Thomas A. Rottinghaus, Tyler Hudson, Wagstaff & Cartmell, Jeremy M. Suhr, Brandon J.B. Boulware, Boulware Law LLC, Todd M. Johnson, Votava Nantz & Johnson LLC, Kansas City, MO, for Plaintiffs.

Daniel G. Litchfield, Pro Hac Vice, Litchfield Cavo LLP, Chicago, IL, Ericka Hammett, Pro Hac Vice, Litchfield Cavo LLP, Milwaukee, WI, Kelvin J. Fisher, Michael Lloyd Brown, Wallace Saunders, Overland Park, KS, for Defendant.

**ORDER**

STEPHEN R. BOUGH, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is Defendant The Cincinnati Insurance Company's ("Defendant") Motion to Dismiss. (Doc. #20.) For the reasons set forth below, the motion is DENIED.

**I. BACKGROUND**

Because this matter comes before the Court on a motion to dismiss, the following allegations in Plaintiffs' First Amended Class Action Complaint (the "Amended Complaint") are taken as true. (Doc. #16); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations and quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015). [1]

The named Plaintiffs in this case are Studio 417, Inc. ("Studio 417"), Grand Street Dining, LLC ("Grand Street"), GSD Lenexa, LLC ("GSD"), Trezomare Operating Company, LLC ("Trezomare"), and V's Restaurant, Inc. ("V's Restaurant") (collectively, the "Plaintiffs"). Studio 417 operates hair salons in the Springfield, Missouri, metropolitan area. Grand Street, GSD, Trezomare, and V's Restaurant own and operate full-service dining restaurants in the Kansas City metropolitan area.

Plaintiffs purchased "all-risk" property insurance policies (the "Policies") from Defendant for their hair salons and restaurants. (Doc. #1-1, ¶ 26.) All-risk policies cover all risks of loss except for risks that are expressly and specifically excluded. The Policies include a Building and Personal Property Coverage Form and Business Income (and Extra Expense) Coverage Form. Defendant issued each Plaintiff a separate policy, and all were in effect during the applicable time period. The parties agree that the Policies contain the same relevant language.

The Policies provide that Defendant would pay for "direct 'loss' unless the 'loss' is excluded or limited" therein. (Doc. #16, ¶ 27.) A "Covered Cause of Loss" "is defined to mean accidental [direct] physical loss *or* accidental [direct] physical

damage." (Doc. #16, ¶ 31) (emphasis supplied); (Doc. #1-1, pp. 24, 57.) [2] The Policies do not define "physical loss" or "physical damage." The Policies also "do not include, and are not subject to, any exclusion for losses caused by viruses or communicable diseases." (Doc. #16, ¶ 13.) A loss, as defined above, is a prerequisite to invoke the different types of coverage sought in this lawsuit. (*See* Doc. #21, p. 15.) These coverages are set forth below.

First, the Policies provide for Business Income coverage. Under this coverage, Defendant agreed to:

> pay for the actual loss of 'Business Income' ... you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.' The suspension must be caused by direct 'loss' to property at a 'premises' caused by or resulting from any Covered Cause of Loss.

(Doc. #1-1, pp. 37-38.)

Second, the Policies provide "Civil Authority" coverage. This coverage applies to:

**\*2** the actual loss of 'Business Income' sustained 'and necessary Extra Expense' sustained 'caused by action of civil authority that prohibits access to' the Covered Property when a Covered Cause of Loss causes direct damage to property other than the Covered Property, the civil authority prohibits access to the area immediately surrounding the damaged property, and 'the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage[.]'

(Doc. #16, ¶ 42.)

Third, the Policies provide "Ingress and Egress" coverage. This coverage is specified as follows:

> We will pay for the actual loss of 'Business Income' you sustain and necessary Extra Expense you sustain caused by the prevention of existing

ingress or egress at a 'premises' shown in the Declarations due to direct 'loss' by a Covered Cause of Loss at a location contiguous to such 'premises.' However, coverage does not apply if ingress or egress from the 'premises' is prohibited by civil authority.

(Doc. #1-1, p. 95.)

Fourth, the Policies provide "Dependent Property" coverage. This coverage applies if the insured suffers a loss of Business Income because of a suspension of its business "caused by direct 'loss' to 'dependent property.' " (Doc. #1-1, pp. 63-64.) "Dependent property means property operated by others whom [the insured] depend[s] on to ... deliver materials or services to [the insured] ... [a]ccept [the insured's] products or services ... [and] [a]ttract customers to [the insured's] business." (Doc. #1-1, p. 64.)

Finally, the Policies provide what is commonly known as "Sue and Labor" coverage. In relevant part, the Policies require the insured to "take all reasonable steps to protect the Covered Property from further damage," and to keep a record of expenses incurred to protect the Covered Property for consideration in the settlement of the claim. (Doc. #1-1, pp. 49-50.) The Policies do not exclude or limit losses from viruses, pandemics, or communicable diseases. (Doc. #16, ¶ 28.)

Plaintiffs seek coverage under the Policies for losses caused by the Coronavirus ("COVID-19") pandemic. Plaintiffs allege that over the last several months, it is likely that customers, employees, and/or other visitors to the insured properties were infected with COVID-19 and thereby infected the insured properties with the virus. (Doc. #1-1, ¶ 60.) Plaintiffs allege that COVID-19 "is a physical substance," that it "live[s] on" and is "active on inert physical surfaces," and is "emitted into the air." (Doc. #16, ¶¶ 47, 49-60.) Plaintiffs further allege that the presence of COVID-19 "renders physical property in their vicinity unsafe and unusable," and that they "were forced to suspend or reduce business at their covered premises." (Doc. #1-1, ¶¶ 14, 58, 102.)

In response to the COVID-19 pandemic, civil authorities in Missouri and Kansas issued orders requiring the suspension

of business at various establishments, including Plaintiffs' businesses (the "Closure Orders"). The Closure Orders "have required and continue to require Plaintiffs to cease and/or significantly reduce operations at, and ... have prohibited and continue to prohibit access to, the[ir] premises." (Doc. #16, ¶¶ 106-107.) Plaintiffs allege that the presence of COVID-19 and the Closure Orders caused a direct physical loss or direct physical damage to their premises "by denying use of and damaging the covered property, and by causing a necessary suspension of operations during a period of restoration." (Doc. #16, ¶¶ 102.) Plaintiffs allege that their losses are covered by the Business Income, Civil Authority, Ingress and Egress, Dependent Property, and Sue and Labor coverages discussed above. (Doc. #16, ¶¶ 103-108.) Plaintiffs provided Defendant notice of their losses, but Defendant denied the claims. (Doc. #16, ¶¶ 110-115.)

**\*3** On April 27, 2020, Plaintiffs filed this lawsuit against Defendant. The Amended Complaint asserts claims for a declaratory judgment and for breach of contract based on Business Income coverage (Counts I, II), Extra Expense coverage (Counts III, IV), Dependent Property coverage (Counts V, VI), Civil Authority coverage (Counts VII, VIII), Extended Business Income coverage (Counts IX, X), Ingress and Egress coverage (Counts XI, XII), and Sue and Labor coverage (Counts XIII, XIV). The Amended Complaint also seeks class certification for 14 nationwide classes (one for each cause of action) and a Missouri Subclass that consists of "all policyholders who purchased one of Defendant's policies in Missouri and were denied coverage due to COVID-19." (Doc. #16, ¶¶ 117-125; *see also* Doc. #21, pp. 12-13.)

Defendant responded to the Amended Complaint by filing the pending motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Defendant's overarching argument is that the Policies provide coverage "only for income losses tied to physical damage to property, not for economic loss caused by governmental or other efforts to protect the public from disease ... the same direct physical loss requirement applies to all the coverages for which Plaintiffs sue." (Doc. #21, p. 8.) Even if a loss is adequately alleged, Defendant argues that the Amended Complaint fails to state a claim as to each type of coverage at issue. Plaintiffs oppose the motion, and the parties' arguments are addressed below.

## II. LEGAL STANDARD

**[1]** Rule 12(b)(6) provides that a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal, 556 U.S. at 678, 129 S.Ct. 1937* (quoting *Twombly, 550 U.S. at 570, 127 S.Ct. 1955*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC, 799 F.3d 957, 960 (8th Cir. 2015)* (quoting *Iqbal, 556 U.S. at 678, 129 S.Ct. 1937*). When deciding a motion to dismiss, "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable." *Data Mfg., Inc. v. United Parcel Serv., Inc., 557 F.3d 849, 851 (8th Cir. 2009)* (citations and quotations omitted).

**[2]  [3]  [4]  [5]** Because this case is based on diversity jurisdiction, "state law controls the construction of [the] insurance policies[.]" *J.E. Jones Const. Co. v. Chubb & Sons, Inc., 486 F.3d 337, 340 (8th Cir. 2007).* Under Missouri law, "[t]he interpretation of an insurance policy is a question of law to be determined by the Court." *Lafollette v. Liberty Mut. Fire Ins. Co., 139 F. Supp. 3d 1017, 1021 (W.D. Mo. 2015)* (quoting *Mendota Ins. Co. v. Lawson, 456 S.W.3d 898, 903 (Mo. App. W.D. 2015)).*[3] "Missouri courts read insurance contracts 'as a whole and determine the intent of the parties, giving effect to that intent by enforcing the contract as written.' " *Id.* (citing *Thiemann v. Columbia Pub. Sch. Dist., 338 S.W.3d 835, 840 (Mo. App. W.D. 2011)).* "Insurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage." *Cincinnati Ins. Co. v. German St. Vincent Orphan Ass'n, Inc., 54 S.W.3d 661, 667 (Mo. App. E.D. 2001).*

**\*4** **[6]  [7]  [8]  [9]** "Policy terms are given the meaning which would be attached by an ordinary person of average understanding if purchasing insurance." *Vogt v. State Farm Life Ins. Co., 963 F.3d 753, 763 (8th Cir. 2020)* (applying Missouri law) (quotations omitted). When interpreting policy terms, "the central issue ... is determining whether any ambiguity exists, which occurs where there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract." *Id.* (quotations omitted). If the "insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage. If the

language is ambiguous, it will be construed against the insurer." *Id.* (quotations omitted).

## III. DISCUSSION

### A. Plaintiffs Have Adequately Alleged a Direct "Physical Loss" Under the Policies.

Defendant's first argument is that Plaintiffs have not adequately pled a "physical loss" as required by the Policies. (Doc. # 21, pp. 7-8, 15-16, 19-25; Doc. #37, pp. 2-10.) Defendant argues that "direct physical loss requires actual, tangible, permanent, physical alteration of property." (Doc. #21, p. 19) (citing cases). Defendant claims that the Policies provide property insurance coverage, and "are designed to indemnify loss or damage to property, such as in the case of a fire or storm. [COVID-19] does not damage property; it hurts people." (Doc. #21, p. 7.) According to Defendant, the requirement of a tangible physical loss applies to—and precludes—each type of coverage sought in this case.

In response, Plaintiffs agree that "physical loss" and "physical damage" are "the key phrases" in the Policies. (Doc. #31, p. 7.) However, Plaintiffs emphasize that the Policies expressly cover "physical loss *or* physical damage." (Doc. #31, p. 11) (emphasis supplied). This "necessarily means that either a 'loss' or 'damage' is required, and that 'loss' is distinct from 'damage.' " (Doc. #31, p. 11.) As such, Plaintiffs argue that Defendant's focus on an actual physical alteration ignores the coverage for a "physical loss." Plaintiffs further argue that Defendant could have defined "physical loss" and "physical damage," but failed to do so. Plaintiffs argue this case should not be disposed of on a motion to dismiss because "even if [Defendant's] interpretation of the policy language is reasonable ... Plaintiffs' interpretation is also reasonable[.]" (Doc. #31, p. 11.)

Upon review of the record, the Court finds that Plaintiffs have adequately stated a claim for direct physical loss. First, because the Policies do not define a direct "physical loss" the Court must "rely on the plain and ordinary meaning of the phrase." *Vogt*, 963 F.3d at 763; *Mansion Hills Condo. Ass'n v. Am. Family Mut. Ins. Co.*, 62 S.W.3d 633, 638 (Mo. App. E.D. 2001) (recognizing that standard dictionaries should be consulted for determining ordinary meaning). The Merriam-Webster dictionary defines "direct" in part as "characterized by close logical, causal, or consequential relationship." Merriam-Webster, www.merriam-webster.com/dictionary/direct (last visited August 12, 2020). "Physical" is defined as "having

material existence: perceptible especially through the senses and subject to the laws of nature." Merriam-Webster, www.merriam-webster.com/dictionary/physical (last visited August 12, 2020). "Loss" is "the act of losing possession" and "deprivation." Merriam-Webster, www.merriam-webster.com/dictionary/loss (last visited August 12, 2020).

**[10]** Applying these definitions, Plaintiffs have adequately alleged a direct physical loss. Plaintiffs allege a causal relationship between COVID-19 and their alleged losses. Plaintiffs further allege that COVID-19 "is a physical substance," that it "live[s] on" and is "active on inert physical surfaces," and is also "emitted into the air." (Doc. #16, ¶¶ 47, 49-60.) COVID-19 allegedly attached to and deprived Plaintiffs of their property, making it "unsafe and unusable, resulting in direct physical loss to the premises and property." (Doc. #16, ¶ 58.) Based on these allegations, the Amended Complaint plausibly alleges a "direct physical loss" based on "the plain and ordinary meaning of the phrase." *Vogt*, 963 F.3d at 763.

**\*5** **[11]** Second, the Court "must give meaning to all [policy] terms and, where possible, harmonize those terms in order to accomplish the intention of the parties." *Machecia Transp. v. Philadelphia Indem. Ins. Co.*, 649 F.3d 661, 669 (8th Cir. 2011) (applying Missouri law). Here, the Policies provide coverage for "accidental physical loss *or* accidental physical damage." (Doc. #1-1, p. 57) (emphasis supplied). Defendant conflates "loss" and "damage" in support of its argument that the Policies require a tangible, physical alteration. However, the Court must give meaning to both terms. *See* 📙 *Nautilus Grp., Inc. v. Allianz Global Risks US*, No. C11-5281BHS, 2012 WL 760940, at * 7 (W.D. Wash. Mar. 8, 2012) (stating that "if 'physical loss' was interpreted to mean 'damage,' then one or the other would be superfluous").

The Court's finding that Plaintiffs have adequately stated a claim is supported by case law. In 📙 *Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.*, 787 F.2d 349 (8th Cir. 1986), the relevant provision provided that "[t]his policy insures against loss of or damage to the property insured ... resulting from all risks of direct physical loss[.]" 📙 *Id.* at 351. Applying Missouri law, the Eighth Circuit found this provision was ambiguous and affirmed the district court's decision that it covered "any loss or damage due to the *danger* of direct physical loss[.]" 📙 *Id.* at 352 (emphasis in original).

In *Mehl v. The Travelers Home & Marine Ins. Co.*, Case No. 16-CV-1325-CDP (E.D. Mo. May 2, 2018), the plaintiff discovered brown recluse spiders in his home. *Id.* at p. 1. The plaintiff unsuccessfully attempted to eliminate the spiders, and then left the home. *Id.* The plaintiff considered the property uninhabitable and filed a claim under his homeowners insurance policy for loss of use of the property. *Id.* After his insurance company denied the claim, the plaintiff filed suit for breach of contract. The insurance company moved for summary judgment and argued that the policy only covered "direct physical loss" which required "actual physical damage." *Id.* at p. 2.

*Mehl* rejected this argument. As in this case, the *Mehl* policy did not define "physical loss" and the insurance company "point[ed] to no language in the policy that would lead a reasonable insured to believe that actual physical damage is required for coverage." *Id.* Although the policy in *Mehl* provided coverage for "loss of use," *Mehl* supports the conclusion that "physical loss" is not synonymous with physical damage. *Id.*

Other courts have similarly recognized that even absent a physical alteration, a physical loss may occur when the property is uninhabitable or unusable for its intended purpose.

*See* *Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (affirming denial of coverage but recognizing that "[w]hen the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct [physical] loss to its owner");

*Prudential Prop. & Cas. Ins. Co. v. Lilliard-Roberts*, CV–01–1362–ST, 2002 WL 31495830, at * 9 (D. Or. June 18, 2002) (citing case law for the proposition that "the inability to inhabit a building [is] a 'direct, physical loss' covered by insurance"); *General Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 152 (Minn. Ct. App. 2001) ("We have previously held that direct physical loss can exist without actual destruction of property or structural damage to property; it is sufficient to show that insured property is injured in some way.").

To be sure, and as argued by Defendant, there is case law in support of its position that physical tangible alteration is required to show a "physical loss." (Doc. #21, pp. 19-25; Doc. #37, pp. 3-10.) [4] However, Plaintiffs correctly respond that these cases were decided at the summary judgment stage, are factually dissimilar, and/or are not binding. For example,

Defendant argues that "[a] seminal case concerning the direct physical loss requirement is *Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834 (8th Cir. 2006)." (Doc. #21, pp. 19-20.) However, *Source Food* was decided in the summary judgment context and under Minnesota law. *Source Food*, 465 F.3d at 834-36. Moreover, the facts of *Source Foods* are distinguishable. In that case, the insured's beef was not allowed to cross from Canada into the United States because of an embargo related to mad cow disease. *Id.* at 835. Because of the embargo, the insured was unable to fill orders and had to find a new supplier. Importantly, there was no evidence that the beef was actually contaminated. *Id.*

***6** The insured sought coverage based on a provision requiring "direct physical loss to property." The district court denied coverage, and the Eighth Circuit affirmed, explaining that:

> [a]lthough Source Food's beef product in the truck could not be transported to the United States due to the closing of the border to Canadian beef products, the beef product on the truck was not—as Source Foods concedes—physically contaminated or damaged in any manner. To characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property would render the word 'physical' meaningless.

*Id.* at 838.

The facts alleged in this case do not involve the transportation of uncontaminated physical products. Instead, Plaintiffs allege that COVID-19 is a highly contagious virus that is physically "present ... in viral fluid particles," and is "deposited on surfaces or objects." (Doc. #16, ¶¶ 47, 50.) Plaintiffs further allege that this physical substance is likely on their premises and caused them to cease or suspend

operations. Unlike 🔖 *Source Foods*, the Plaintiffs expressly allege physical contamination. Finally, 🔖 *Source Foods* recognized (under Minnesota law) that physical loss could be found without structure damage. 🔖 *Source Foods*, 465 F.3d at 837 (stating that property could be "physically contaminated ... by the release of asbestos fibers"). Neither 🔖 *Source Foods* nor the other cases cited by Defendant warrant dismissal under Rule 12(b)(6).

Defendant's reply brief cites recent out-of-circuit decisions which found that COVID-19 does not cause direct physical loss. (Doc. #37, pp. 5-6.) For example, Defendant relies on *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, 1:20-cv-03311-VEC (S.D.N.Y. 2020). Defendant argues that "*Social Life* famously states that the virus damages lungs, not printing presses." (Doc. #37, p. 6.) But the present case is not about whether COVID-19 damages lungs, and the presence of COVID-19 on premises, as is alleged here, is not a benign condition. Regardless of the allegations in *Social Life* or other cases, Plaintiffs here have plausibly alleged that COVID-19 particles attached to and damaged their property, which made their premises unsafe and unusable. [5] This is enough to survive a motion to dismiss.

Defendant also contends that if Plaintiffs' interpretation is accepted, physical loss would be found "whenever a business suffers economic harm." (Doc. #21, p. 22; Doc. #37, p. 2.) That is not what the Court holds here. Although Plaintiffs allege economic harm, that harm is tethered to their alleged physical loss caused by COVID-19 and the Closure Orders. (Doc. #1-1, ¶¶ 106-107) (alleging that the COVID-19 pandemic and Closure Orders required Plaintiffs to "cease and/or significantly reduce operations at, and ... have prohibited and continue to prohibit access to, the premises.")[6] For all these reasons, the Court finds that Plaintiffs have adequately alleged a direct physical loss under the Policies.[7]

### B. Plaintiffs Have Plausibly Stated a Claim for Civil Authority Coverage.

**\*7**  **[12]**  Defendant next argues that Plaintiffs' claim for civil authority coverage should be dismissed for failure to state a claim. Defendant presents two arguments in support of dismissal. Defendant first contends that civil authority coverage requires "direct physical loss to property other than the Plaintiffs' property," and that "[j]ust as the Coronavirus

is not causing direct physical loss to Plaintiffs' premises, it is not causing direct physical loss to other property." (Doc. #21, p. 27.)

This argument is rejected for substantially the same reasons as discussed above. Plaintiffs adequately allege that they suffered a physical loss, and such loss is applicable to other property. Additionally, Plaintiffs allege that civil authorities issued closure and stay at home orders throughout Missouri and Kansas, which includes property other than Plaintiffs' premises.

Defendant's second argument is that civil authority coverage "requires that access to Plaintiffs' premises be prohibited by an order of Civil Authority. But, none of the orders Plaintiffs allege prohibit access to their premises. To the contrary, the Plaintiffs admit ... that the Closure Orders allowed restaurant premises to remain open for food preparation, take-out and delivery. Likewise, Plaintiffs concede that the Closure Orders did not prohibit access to salon premises." (Doc. #21, pp. 28-29) (citations omitted).

Upon review of the record, the Court finds that Plaintiffs have adequately alleged that their access was prohibited. With respect to Studio 417's hair salons, the Amended Complaint alleges that a Closure Order "required hair salons and all other businesses that provide personal services to suspend operations." (Doc. #16, ¶ 67.) With respect to Plaintiffs' restaurants, the Closure Orders mandated "that all inside seating is prohibited in restaurants," and that "every person in the State of Missouri shall avoid eating or drinking at restaurants," with limited exceptions for "drive-thru, pickup, or delivery options." (Doc. #16, ¶¶ 71-80.)

At the motion to dismiss stage, these allegations plausibly allege that access was prohibited to such a degree as to trigger the civil authority coverage. *Compare* 🔖 *TMC Stores, Inc. v. Federated Mut. Ins. Co.*, No. A04-1963, 2005 WL 1331700, at \* 4 (Minn. Ct. App. June 7, 2005) ("Because access remained and the level of business was not dramatically decreased, the civil authority section of the insurance policy is inapplicable and the district court did not err in granting summary judgment."). This is particularly true insofar as the Policies require that the "civil authority prohibits access," but does not specify "all access" or "any access" to the premises. For these reasons, Plaintiffs have adequately stated a claim for civil authority coverage.

### C. Plaintiffs Have Plausibly Stated a Claim for Ingress and Egress Coverage.

 **[13]**   Defendant argues that Plaintiffs' claim for ingress and egress coverage should be dismissed for two reasons. First, Defendant argues that such coverage "requires both a direct physical loss at a location contiguous to the insured's property and the prevention of access to the insured's property as a result of that direct physical loss," and that Plaintiffs fail to allege a direct physical loss to any location. (Doc. #21, p. 30.) For substantially the same reasons discussed above, this argument is rejected.

Second, Defendant argues that this "coverage does not apply if ingress or egress from the 'premises' is prohibited by civil authority." (Doc. #21, p. 24; Doc. #1-1, p. 95.) Defendant contends that "[h]ere, the Closure Orders issued by civil authorities are the only identified causes of Plaintiffs' alleged losses." (Doc. #21, p. 30.) However, Plaintiffs have alleged that both COVID-19 and the Closure Orders rendered the premises unsafe for ingress and egress. (Doc. #1-1, p. 3, ¶ 14 ("Plaintiffs were forced to suspend or reduce business at their covered premises due to COVID-19 and the ensuing orders issued by civil authorities[.]"). The Court finds that Plaintiffs have adequately stated a claim for ingress and egress coverage.

### D. Plaintiffs Have Plausibly Stated a Claim for Dependent Property Coverage.

 **\*8**   **[14]**   Defendant argues that Plaintiffs' claim for dependent property coverage should be dismissed for two reasons. First, Defendant argues that this coverage "requires both a direct physical loss to dependent property and a necessary suspension of the insured's business as a result of that direct physical loss." (Doc. #21, p. 30.) Defendant contends that "[h]ere, again, the [Amended] Complaint does not allege any facts that show direct physical loss at any location, let alone a dependent property." (Doc. #21, pp. 30-31.) For substantially the same reasons discussed above, this argument is rejected.

Second, Defendant argues that Plaintiffs have failed to adequately allege a suspension of their businesses because of the lack of material or services from a "dependent property." (Doc. #21, pp. 30-31.) As stated above, dependent property is defined as "property operated by others whom [the insured] depend[s] on to ... deliver materials or services to [the insured] ... [a]ccept [the insured's] products or services ... [or] [a]ttract customers to [the insured's] business." (Doc.

#1-1, p. 64.) The Amended Complaint adequately alleges that Plaintiffs suffered a loss of materials, services, and lack of customers as a result of COVID-19 and the Closure Orders. The Court therefore finds that Plaintiffs have adequately stated a claim for dependent property coverage.

### E. Plaintiffs Have Plausibly Stated a Claim for Sue and Labor Coverage.

 **[15]**   Finally, Defendant moves to dismiss Plaintiffs' claim for sue and labor coverage. Defendant argues that this is not an additional coverage, but instead imposes a duty on the insured to prevent damage and to keep a record of expenses incurred in the event of a covered loss. Defendant argues that because Plaintiffs have failed to adequately allege a covered loss, a claim has not been stated for this coverage.

However, regardless of the title of this claim, Defendant acknowledges that in the event of a covered loss, "the insured can recover these expenses[.]" (Doc. #21, p. 31.) As discussed above, the Court finds that Plaintiffs have adequately stated a claim for a covered loss. Moreover, Plaintiffs allege that in complying with the Closure Orders and by suspending operations, they "incurred expenses in connection with reasonable steps to protect Covered Property." (Doc. #16, ¶ 250.) Consequently, the Court finds that Plaintiffs have adequately stated a claim for sue and labor coverage.

In sum, Defendant's motion to dismiss will be denied in its entirety. The Court emphasizes that Plaintiffs have merely pled enough facts to proceed with discovery. Discovery will shed light on the merits of Plaintiffs' allegations, including the nature and extent of COVID-19 on their premises. In addition, the Court emphasizes that all rulings herein are subject to further review following discovery. Subsequent case law in the COVID-19 context, construing similar insurance provisions, and under similar facts, may be persuasive. If warranted, Defendant may reassert its arguments at the summary judgment stage.

### IV. CONCLUSION

Accordingly, Defendant The Cincinnati Insurance Company's Motion to Dismiss (Doc. #20) is DENIED.

**IT IS SO ORDERED.**

**All Citations**

--- F.Supp.3d ----, 2020 WL 4692385

# Footnotes

1    The Amended Complaint is 54 pages long and contains 253 separate allegations. This Order only discusses those allegations and issues necessary to resolve the pending motion.

2    All page numbers refer to the pagination automatically generated by CM/ECF.

3    Defendant notes that Kansas law may apply to one policy, but contends that Missouri and Kansas law are indistinguishable for purposes of the pending motion. (Doc. #21, p. 13 n.10.) Plaintiffs do not challenge this assertion. For purposes of this Order, the Court assumes that Missouri law applies.

4    *See also* Scott G. Johnson, "*What Constitutes Physical Loss or Damage in a Property Insurance Policy?*" 54 Tort Trial & Ins. Prac. L.J. 95, 96 (2019) ("[W]hen the insured property's structure is unaltered, at least to the naked eye ... [c]ourts have not uniformly interpreted the physical loss or damage requirement[.]")

5    Defendant also relies on *Gavrilides Mgmt. Co., LLC v. Michigan Ins. Co.*, Case No. 20-258-CB (Ingham County, Mich. July 1, 2020) (transcript regarding defendant's motion for summary disposition). (Doc. #37-2.) *Gavrilides* is distinguishable, in part, because the court recognized that "the complaint also states a[t] no time has Covid-19 entered the Soup Shop of the Bistro ... and in fact, states that it has never been present in either location." (Doc. #37-2, p. 21.)

6    Defendant argues that COVID-19 does not present a physical loss because "the virus either dies naturally in days, or it can be wiped away." (Doc. #21, pp. 24-25.) However, as stated, a physical loss has been adequately alleged insofar as the presence of COVID-19 and the Closure Orders prohibited or significantly restricted access to Plaintiffs' premises. *See Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 6675934, at * 6 (D.N.J. Nov. 25, 2014) (recognizing that "courts considering non-structural property damage claims have found that buildings rendered uninhabitable by dangerous gases or bacteria suffered direct physical loss or damage"). Defendant also argues that Plaintiffs have failed to adequately allege that COVID-19 was actually present on their premises. Based on Plaintiffs' allegations, and because of COVID-19's wide-spread, this argument is also rejected.

7    Although it appears to be persuasive, the Court need not address Defendant's additional argument that the Amended Complaint fails to allege "physical damage."

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.