**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| |
|---|
| ALBUQUERQUE AMBULATORY EYE<br>SURGERY CENTER LLC,<br><br>                          Plaintiff,<br><br>          - against -<br><br>TRANSPORTATION INSURANCE COMPANY,<br><br>                        Defendant. |

Case No. 1:21-cv-00280-KWR-JFR

**DEFENDANT TRANSPORTATION INSURANCE COMPANY'S MOTION TO**
**DISMISS PLAINTIFF'S COMPLAINT**

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................... i

TABLE OF AUTHORITIES .................................................................................. ii

SUMMARY ............................................................................................................1

STATEMENT OF FACTS .....................................................................................2

    A.   The Parties. .............................................................................................2

    B.   The Stay-at-Home Orders and Plaintiff's Alleged Business Losses. .................................3

    C.   The Policy. ...............................................................................................4

    D.   Plaintiff's Claim. ....................................................................................8

STANDARD OF REVIEW .....................................................................................8

ARGUMENT AND AUTHORITIES ....................................................................10

    A.   Plaintiff Does Not Allege a Valid Breach-of-Contract Claim ..........................10

        1. Plaintiff Does Not Allege a Valid Claim for Breach of the Policy's Business Income and Extra Expense Endorsement .........................................10

        2. Plaintiff Does Not Allege a Period of Restoration. ....................................17

        3. Plaintiff Does Not Allege A Valid Civil Authority Claim............................19

        4. Plaintiff Does Not Allege a Valid Dependent Property Claim. ..................21

    B.   Plaintiff Does Not Allege a Valid Bad Faith Claim. ......................................22

    C.   Plaintiff Does Not Allege a Valid Claim for Violations of the NMISPA. ........................24

    D.   Plaintiff Does Not Allege a Valid Claim for Violations of New Mexico's UPA. ............25

    E.   The Court Should Dismiss Plaintiff's Declaratory Judgment Claim................................27

CONCLUSION......................................................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Arash Emami, M.D., P.C., Inc. v. CNA, et al.*, No. 20-18792 (SDW) (LDW),
    2021 WL 1137997 (D.N.J. Mar. 11, 2021) .............................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................8, 24

*B St. Grill & Bar LLC v. Cincinnati Ins. Co*.,
    No. CV-20-01326-PHX-SMB, 2021 WL 857361 (D. Ariz. Mar. 8, 2021) .............................15

*Battishill v. Farmers Alliance Ins. Co.*,
    127 P.3d 1111 (N.M. 2006) ...........................................................................................9

*BBMS, LLC v. Cont'l Cas. Co.*,
    No. 20-0353-CV-W-BP, 2020 WL 7260035 (W.D. Mo. Nov. 30, 2020).........................13, 16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................................8

*Berkseth-Rojas v. Aspen Am. Ins. Co.*,
    No. 3:20-CV-0948-D, 2021 WL 101479 (N.D. Tex. Jan. 12, 2021) .......................................14

*Bhd. Mut. Ins. Co. v. Allstate Ins. Co.*,
    No. CIV 00-415 MV/LFG, 2000 WL 36739597 (D.N.M. Dec. 21, 2000) .............................21

*Brereton v. Bountiful City Corp.*,
    434 F.3d 1213 (10th Cir. 2006) .............................................................................9

*Cafe Plaza de Mesilla Inc. v. Cont'l Cas. Co.*,
    No. 2:20-CV-354-KWR-KRS, 2021 WL 601880 (D.N.M. Feb. 16, 2021).....................passim

*Carolina Cas. Ins. Co. v. Nanodetex Corp.*,
    733 F.3d 1018 (10th Cir. 2013) .............................................................................9

*Chester Cty. Sports Arena v. Cincinnati Specialty Underwriters Ins. Co.*,
    No. 20-2021, 2021 WL 1200444 (E.D. Pa. Mar. 30, 2021) ...................................................16

*Chief of Staff LLC v. Hiscox Ins. Co. Inc.*,
    No. 20 C 3169, 2021 WL 1208969 (N.D. Ill. Mar. 31, 2021)..................................................16

*Clear Hearing Sols., LLC v. Cont'l Cas. Co.*,
   No. 20-3454, 2021 WL 131283 (E.D. Pa. Jan. 14, 2021) ......................................................13

*Daneli Shoe Co. v. Valley Forge Ins. Co.*,
   No. 20-CV-1195-TWR (WVG), 2021 WL 1112710 (S.D. Cal. Mar. 17, 2021)......................12

*deMoura v. Cont'l Cas. Co.*,
   No. 20-CV-2912 (NGG) (SIL), 2021 WL 848840 (E.D.N.Y. Mar. 5, 2021) ..........................12

*Dockery v. Allstate Ins. Co.*,
   431 F. Supp. 3d 1307 (D.N.M. 2020) .......................................................................................9

*Equity Planning Corp. v. Westfield Ins. Co.*,
   No. 1:20-CV-01204, 2021 WL 766802 (N.D. Ohio Feb. 26, 2021)........................................16

*Evanston Ins. Co. v. Desert State Life Mgmt.*,
   434 F. Supp. 3d 1051 (D.N.M. 2020) .................................................................................9, 22

*Fava v. Liberty Mut. Ins. Corp.*,
   No. 17CV00456 WJ/LF, 2018 WL 6705669 (D.N.M. Dec. 20, 2018)..................................22

*Gerhardt v. Mares*,
   179 F. Supp. 3d 1006 (D.N.M. 2016) .....................................................................................27

*Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*,
   No. CV-20-511-R, 2020 WL 8004271 (W.D. Okla. Nov. 9, 2020) .......................................14

*Hauff v. Petterson*,
   755 F. Supp. 2d 1138 (D.N.M. 2010) .....................................................................................25

*Haygood v. United Servs. Auto. Ass'n*,
   453 P.3d 1235 (N.M. Ct. App. 2019).......................................................................................23

*Henderson Rd. Rest. Sys., Inc. v. Zurich Amer. Ins. Co.*,
   No. 1:20 CV 1239, 2021 WL 168422 (N.D. Ohio Jan. 19, 2021) ..........................................16

*Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*,
   No. 1:20-cv-2939-TWT, 2020 WL 5938755 (N.D. Ga. Oct. 6, 2020) ...................................13

*Hillcrest Optical, Inc. v. Cont'l Cas. Co.*,
   No. 1:20-CV-275-JB-B, 2020 WL 6163142 (S.D. Ala. Oct. 21, 2020)............................13, 18

*Hovet v. Allstate Ins. Co.*,
   89 P.3d 69 (N.M. 2004)............................................................................................................25

*In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*,
  MDL No. 2964, 2021 WL 679109 (N.D. Ill. Feb. 22, 2021) ...................................................16

*Jackson Nat'l Life Ins. Co. v. Rececconi*,
  827 P.2d 118 (N.M. 1992) ........................................................................................................22

*Kan. Penn Gaming, LLC v. Collins*,
  656 F.3d 1210 (10th Cir. 2011) ..................................................................................................8

*Knight v. Mooring Capital Fund, LLC*,
  749 F.3d 1180 (10th Cir. 2014) ..................................................................................................9

*Malaube, LLC v. Greenwich Ins. Co.*,
  No. 20-22615-Civ, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) ............................ 13, 18, 19

*Mama Jo's Inc. v. Sparta Ins. Co.*,
  823 F. App'x 868 (11th Cir. 2020) ...........................................................................................15

*Michael Cetta, Inc. v. Admiral Indem. Co.*,
  No. 20 Civ. 4612 (JPC), 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020)...................................14

*Miller v. Cincinnati Ins. Co.*,
  323 F. Supp. 3d 1253 (D.N.M. 2018) ........................................................................................9

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
  487 F. Supp. 3d 834 (N.D. Cal. 2020)................................................................................18, 20

*Naabani Twin Stars, LLC v. Travelers Cos., Inc.*,
  No. CIV 19-00197 RB/JHR, 2020 WL 6196174 (D.N.M. Oct. 22, 2020) ..............................22

*NCMIC Ins. Co. v. Brown*,
  No. 17 CV 1000 JAP/CG, 2018 WL 1508550 (D.N.M. Mar. 26, 2018) ......................9, 11, 24

*Nilson v. Peerless Indem. Ins. Co.*,
  484 F. Supp. 3d 1050 (D.N.M. 2020) .......................................................................................26

*O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*,
  No. 20-cv-02951-MMC, 2021 WL 105772 (N.D. Cal. Jan. 12, 2021)....................................13

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*,
  487 F. Supp. 3d 937, 943 (S.D. Cal. 2020) ..............................................................................13

*Pappy's Barber Shops, Inc. v. Farmers G*rp., Inc.,
  491 F. Supp. 3d 738, 740 (S.D. Cal. 2020) .........................................................15

*Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co*.,
  400 F.3d 613 (8th Cir. 2005) ..............................................................................11

*Promotional Headwear Int'l v. Cincinnati Ins. Co.*,
  No. 20-cv-2211-JAR-GEB, 2020 WL 7078735 (D. Kan. Dec. 3, 2020) ..........................14, 16

*Raja v. Ohio Sec. Ins. Co.*,
  305 F.Supp.3d 1206 (D.N.M 2018) .....................................................................26

*Roundabout Theatre Co., Inc. v. Cont'l Cas. Co.*,
  302 A.D.2d 1 (N.Y. App. Div. 2002).....................................................................17

*S. Hosp., Inc. v. Zurich Am. Ins. Co.*,
  393 F.3d 1137 (10th Cir. 2004) ...........................................................................20

*Salopek Tr. for Salopek Family Heritage Tr. v. Zurich Am. Life Ins. Co.*,
  446 F. Supp. 3d 886 (D.N.M. 2020) ..............................................................23, 24

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*,
  488 F. Supp. 3d 690 (N.D. Ill. 2020) ...................................................................11

*Selane Prods., Inc. v. Cont'l Cas. Co.*,
  No. 2:20-cv-07834-MCS-AFM, 2021 WL 609257 (C.D. Cal. Feb. 8, 2021) ..........................13

*St. Paul Fire & Marine Ins. Co. v. Runyon*,
  53 F.3d 1167 (10th Cir.1995) ..............................................................................27

*Stevenson v. Louis Dreyfus Corp.*,
  811 P.2d 1308 (N.M. 1991)..................................................................................25

*Studio 417, Inc. v. Cincinnati Ins. Co.*,
  478 F. Supp. 3d 794 (W.D. Mo. 2020)..................................................................16

*T & E Chi. LLC v. Cincinnati Ins. Co.*,
  No. 1:20-cv-4001 (HDL), 2020 WL 6801845 (N.D. Ill. Nov. 19, 2020).................................14

*Taos Ski Valley, Inc. v. Nova Cas. Co.*,
  153 F. Supp. 3d 1351 (D.N.M. 2015) .....................................................................9

*Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*,
  No. 1:20-CV-665-RP, 2021 WL 972878 (W.D. Tex. Jan. 21, 2020) .....................................14

v

*Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*,
  No. 2:20-cv-03342-JDW, 2020 WL 7024287 (E.D. Pa. Nov. 30, 2020) ................................18

*Torgerson Props., Inc. v. Cont'l Cas. Co.*,
  No. 20-2184 (PAM/KMM), 2021 WL 615416 (D. Minn. Feb. 17, 2021) ..............................12

*Uncork & Create LLC v. Cincinnati Ins. Co.*,
  No. 2:20-cv-00401, 2020 WL 6436948 (S.D. W. Va. Nov. 2, 2020) .....................................16

*Ungarean, DMD v. CNA*,
  No. GD-20-006544, 2021 WL 1164836 (Pa. Com. Pl. Mar. 25, 2021) ...................................16

*United Airlines, Inc. v. Ins. Co. of State of Pa.*,
  385 F.Supp. 2d 343 (S.D.N.Y. 2005), *aff'd*, 439 F.3d 128 (2d Cir. 2006) ............................17

*Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*,
  No. 3:20-cv-1129-H-MDD, 2021 WL 242979 (S.D. Cal. Jan. 22, 2021) ...............................13

*Valdez v. Metro. Prop. & Cas. Ins.*,
  No. CIV 11-0507 JB/KBM, 2012 WL 1132414 (D.N.M. Mar. 31, 2012) .............................25

*VStyles, Inc. v. Cont'l Cas. Co.*,
  No. RIC2003415, slip op. (Super. Ct. Riverside Cnty., Cal. Dec. 23, 2020) .........................13

*Young v. Hartford Cas. Ins. Co.*,
  No. CIV 19-0688 JB/GJF, 2020 WL 7024297 (D.N.M. Nov. 30, 2020)................................25

*Yumukoglu v. Provident Life & Acc. Ins. Co*.,
  131 F. Supp. 2d 1215 (D.N.M. 2001), *aff'd*, 36 F. App'x 378 (10th Cir. 2002) .....................22

*Zwillo V, Corp. v. Lexington Ins. Co.*,
  No. 4:20-00339-CV-RK, 2020 WL 7137110 (W.D. Mo. Dec. 2, 2020) ................................16

**Statutes**
N.M.S.A. § 59A-16-20 ....................................................................................................................25

**Rules**
Fed. R. Civ. P. ("Rule") 12(b)(6) .................................................................................................1

**Other Authorities**
10A *Couch on Ins.* §§ 148:46, 148:52 (3d ed. 2020) .............................................................9, 10

Defendant Transportation Insurance Company ("Transportation") moves to dismiss the claims asserted in Plaintiff Albuquerque Ambulatory Eye Surgery Center LLC's ("Plaintiff") Complaint [Dkt. 1-1] with prejudice. *See* Fed. R. Civ. P. ("Rule") 12(b)(6).

## SUMMARY

This is a first party insurance coverage dispute in which Plaintiff, an eye surgery center in Albuquerque, New Mexico, seeks lost income arising from the COVID-19 pandemic and state and local stay-at-home orders. Plaintiff contends its losses are covered under an insurance policy issued by Transportation, CNA Connect Policy No. B 2067314575 (the "Policy"), effective June 1, 2019, to June 1, 2020,[1] and alleges claims for breach of contract, breach of the duty of good faith and fair dealing, violations of New Mexico's Insurance Practices Act ("NMISPA"), violations of the New Mexico Unfair Trade Practices Act ("UPA"), and declaratory relief.

Plaintiff's Complaint fails to allege facts sufficient to plausibly state a claim. The Policy provides coverage for lost business income only where there is "direct physical loss of or damage to property," which the Complaint does not allege. Instead, the Complaint alleges only that Plaintiff's business was economically impacted by the government restrictions that were intended to reduce the spread of the virus and preserve critically low resources. Plaintiff's Complaint fails to allege facts sufficient to state a claim for at least four reasons:

*First*, as this Court previously determined in a very similar matter, under the Policy and applicable law, Plaintiff can recover only if there was "direct physical loss of or damage to property," which requires a tangible alteration of the property. *See Cafe Plaza de Mesilla Inc. v.*

---

[1]The Policy was attached to Plaintiff's Complaint and is attached to this Motion as Exhibit 1 and marked in accordance with District of New Mexico Local Rule 10.6. For ease of reference, page numbers have been added to the upper righthand corner of the exhibit.

*Cont'l Cas. Co.*, No. 2:20-CV-354-KWR-KRS, 2021 WL 601880, at *5–7 (D.N.M. Feb. 16, 2021). As noted in *Cafe Plaza*, the overwhelming majority of courts in the country have dismissed claims nearly identical to Plaintiff's claims here, concluding the pandemic and associated governmental orders limiting business activities do not trigger coverage under insurance policies like the Policy here, which require direct physical loss of or damage to property. *See id.* at *5–6.

      *Second*, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails because it is dependent on the false assumption Plaintiff has alleged a valid basis for coverage—it has not. Moreover, even if coverage existed, the Complaint does not allege any facts supporting Plaintiff's conclusory allegations that Transportation acted unreasonably.

      *Third*, Plaintiff's claims under the NMISPA and the UPA fail because Plaintiff fails to allege facts capable of plausibly supporting these claims.

      *Fourth,* Plaintiff's request for declaratory judgment is duplicative of its breach-of-contract claim. Because Plaintiff's contract claim resolves all the issues identified in the declaratory judgment claim, the Court should dismiss Plaintiff's declaratory judgment claim.

      Plaintiff fails to state a viable claim against Transportation, and because any attempt to amend would be futile, Plaintiff's Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

**A.**      <u>**The Parties**</u>.

      Plaintiff is an eye surgery center is Albuquerque, New Mexico. Compl. ¶ 1. Transportation is an Illinois insurance company and issued the Policy to Plaintiff. *See id.* ¶¶ 1, 9.

**B.**     __The Stay-at-Home Orders and Plaintiff's Alleged Business Losses__.

Plaintiff alleges that it suffered business losses "stemming from the Coronavirus pandemic and Government Orders." *Id.* ¶ 10. Plaintiff identifies several orders aimed at minimizing the spread of COVID-19, but relies specifically on two orders limiting nonessential business activities: a March 23, 2020 New Mexico Department of Public Health Order, attached as Ex. 2, and a March 24, 2020 New Mexico Department of Public Health Order, attached as Ex. 3 (collectively, the "Orders"). *Id.* ¶ 10; *see also id.* ¶¶ 56–68.

The March 23, 2020 Order seeks to "minimize the spread of COVID-19" and "preserve and promote public health and safety," by prohibiting gatherings of five or more individuals in a single room or connected space and requiring all nonessential businesses to "reduce the in-person workforce at each business or business location by 100%." March 23 Order, Ex. 2 at 1, 4. Essential businesses, like Plaintiff, were permitted to maintain their operations, but were still required "to the greatest extent possible, [to] adhere to social distancing protocol . . . avoid person-to-person contact, and direct employees to wash their hands frequently." *Id.* at 2, 4.

The March 24 Order, issued to "prevent[] the spread of COVID-19" and preserve "critically low" personal protective equipment and supplies, prohibited all health care facilities from "providing non-essential health care services, procedures, and surgeries." March 24 Order, Ex. 3 at 1–2. "[N]on-essential health care services, procedures, and surgeries" included those that could "be delayed for three (3) months without undue risk to the patient's health," but did not include services, procedures, or surgeries that "if not performed would result in a serious condition of a patient worsening." *Id.* at 2. The order specifically identified the "threat of permanent dysfunction of . . . [the] eyes" as an example of a qualifying condition for an essential

health service. *Id.*

Plaintiff alleges these Orders "severely restricted [Plaintiff's] operations to only emergency medical procedures – a significant reduction from its normal practice – and ordered New Mexico residents to 'shelter in place.'" Compl. ¶ 10. It further contends the Orders "effectively prevented AAESC from using its space for the vast majority of its services for at least three months" and resulted in losing physical use of, physical access to, and physical enjoyment of Plaintiff's property," resulting in "significant interruption to AAESC's business . . . and a steep reduction of patient services." *Id.* ¶¶ 66, 75.

**C.     The Policy**.

The Policy provides coverage for the period June 1, 2019, to June 1, 2020, for a covered location in Albuquerque, New Mexico. *Id.* ¶ 20; Policy, Ex. 1 at 8, 10. The Policy provides both property and liability coverage; but Plaintiff's Complaint is based on the property coverage, as set forth in the Businessowners Special Property Coverage Form (Form SB-146801-I) as modified by certain endorsements. Compl. ¶ 1; Policy, Ex. 1 at 17, 39, 65. Plaintiff alleges it is entitled to recover its business losses pursuant to the Policy's Business Income and Extra Expense, Civil Authority, and Business Income and Extra Expense - Dependent Property endorsements. *See* Compl. ¶ 28.

As set forth in the Business Income and Extra Expense endorsement, an insured can recover lost business income caused by the necessary suspension of its operations resulting from a "direct physical loss of or damage to property" at the insured premises:

> Business Income and Extra Expense is provided at the premises described in the Declarations when the Declarations show that you have coverage for Business Income and Extra Expense.

1.   **Business Income**

     . . . .

     b.   We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

Policy, Ex. 1 at 39. "[S]uspension" is the "partial or complete cessation of your [the insured's]

business activities." *Id.* at 36. "[O]perations" means "the type of your business activities

occurring at the described premises and tenantability of the described premises" *Id*. at 34.

     Extra Expense coverage allows an insured to recover reasonable and necessary expenses

incurred during the "period of restoration" that would not have been incurred if there had been

no direct physical loss of or damage to the insured's property from a Covered Cause of Loss:

     a.   Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.

     b.   We will pay Extra Expense (other than the expense to repair or replace property) to:

         (1)   Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations; or

         (2)   Minimize the "suspension" of business if you cannot continue "operations."

*Id.* at 40. Under the Policy, and for purposes of Plaintiff's claim, the "period of restoration":

     a.   Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

     b.   Ends on the earlier of:

      **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      **(2)** The date when business is resumed at a new permanent location.

*Id.* at 34. "Covered Cause of Loss" means "RISKS OF DIRECT PHYSICAL LOSS" unless excluded or limited by the Policy. *Id.* at 18–19.

Civil Authority coverage allows recovery of lost Business Income and Extra Expense when a civil authority—*i.e.*, a government entity—prohibits access to an insured's property because of "direct physical loss of or damage to" property at locations *other than* the insured's premises. *Id.* at 65. For example, the Civil Authority coverage would apply if a government entity prohibited access to an insured's covered property because a fire damaged the building next door. The Civil Authority Endorsement states:

When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss.

*Id.*

The Dependent Property coverage in the Business Income and Extra Expense – Dependent Property Endorsement allows Plaintiff to recover lost business income and extra expense caused by suspension of Plaintiff's operations resulting from "direct physical loss or damage" at a "Dependent Property." *Id.* at 156. Dependent Property coverage is intended to reimburse an insured for lost profits and extra expenses resulting from an interruption of business

at the premises of a customer or supplier, as opposed to a loss arising from physical loss at

insured's premises. The provision states:

> When the Declarations show that you have coverage for Business Income and
> Extra Expense, you may extend that insurance to apply to the actual loss of
> Business Income you sustain and reasonable and necessary Extra Expense you
> incur due to the "suspension" of your "operations" during the "period of
> restoration." The "suspension" must be caused by direct physical loss or damage
> at the premises of a Dependent Property, caused by or resulting from a Covered
> Cause of Loss.

*Id.* "Dependent Property" means "property operated by other whom you depend on to:"

> **a.** Deliver materials or services . . . to you, or to others for your account
>    (Contributing Locations);
>
> **b.** Accept your products or services (Recipient Locations);
>
> **c.** Manufacture products for delivery to your customers under contract of sale
>    (Manufacturing Locations); or
>
> **d.** Attract customers to your business (Leader Locations).

*Id.* "[S]uspension" means the "partial or complete cessation of your [the insured's] business

activities." *Id.* at 36. "[O]perations" means "the type of your business activities occurring at the

described premises and tenantability of the described premises." *Id.* at 34.

> For purposes of Plaintiff's Dependent Property claim, the "period of restoration":
>
> **a.** Begins 24 hours after the time of direct physical loss or damage caused by or
>    resulting from any Covered Cause of Loss at the premises of the Dependent
>    Property;
>
> **b.** Ends on the date when the property at the premises of the Dependent Property
>    should be repaired, rebuilt or replaced with reasonable speed and similar
>    quality.

*Id.* at 156. "Covered Cause of Loss" means "RISKS OF DIRECT PHYSICAL LOSS" unless

excluded or limited by the Policy. *Id.* at 18–19.

D.      <u>**Plaintiff's Claim**</u>.

Plaintiff submitted a claim to Transportation on May 8, 2020, seeking coverage for loss of business income related to COVID-19. Compl. ¶ 92. On May 22, Transportation denied Plaintiff's claim because, among other reasons, Plaintiff had not reported any direct physical loss of or damage to its property. *Id.* ¶ 95. Plaintiff requested Transportation reconsider its coverage decision in July, and Transportation confirmed the denial in October. *Id.* ¶¶ 96, 98. Plaintiff filed the Complaint in state court in Bernalillo County, and Transportation removed the case to this Court on March 26, 2021, and, with leave of the Court, amended its Notice of Removal on April 8, 2021 [Dkts. 1, 9].

## STANDARD OF REVIEW

A complaint must contain "sufficient factual matter that if true, states a claim to relief that is plausible on its face." Rule 12(b)(6); *Cafe Plaza*, 2021 WL 601880, at *3; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

While a court assumes all well-pleaded facts in the complaint are true, that assumption is "inapplicable to legal conclusions." *Kan. Penn Gaming*, 656 F.3d at 1214 (quoting *Iqbal*, 556 U.S. at 678). To avoid dismissal, "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007)). When allegations are fatally flawed and the defects are incurable, the court should dismiss the complaint with prejudice. *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) ("[D]ismissal with prejudice is appropriate where a complaint fails to state a claim . . . and granting leave to amend would be futile." (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006))).

Federal pleading standards govern the sufficiency of Plaintiff's claims, but New Mexico substantive law governs the claims themselves. *Miller v. Cincinnati Ins. Co.*, 323 F. Supp. 3d 1253, 1256 (D.N.M. 2018); *Taos Ski Valley, Inc. v. Nova Cas. Co.*, 153 F. Supp. 3d 1351, 1353 (D.N.M. 2015), *aff'd*, 705 F. App'x 749 (10th Cir. 2017). Under New Mexico law, insurance policies are "construed according to customary principles of contract interpretation." *Dockery v. Allstate Ins. Co.*, 431 F. Supp. 3d 1307, 1311 (D.N.M. 2020) (quoting *Carolina Cas. Ins. Co. v. Nanodetex Corp.*, 733 F.3d 1018, 1022 (10th Cir. 2013)). Policy terms are read in their ordinary, popular, and contemporary sense. *Battishill v. Farmers Alliance Ins. Co.*, 127 P.3d 1111, 1113–14 (N.M. 2006). Disagreement between the parties does not create an ambiguity, and language should not be strained to create to ambiguity where none exists. *Id.* at 1115. An insured bears the initial burden of showing that its loss is covered by the policy. 10A Couch on Ins. § 148:52 (3d ed. 2020); *see also Evanston Ins. Co. v. Desert State Life Mgmt.*, 434 F. Supp. 3d 1051, 1090 (D.N.M. 2020). A complaint alleging breach of an insurance policy must allege facts showing the claims are covered by the Policy.

A court may consider documents "referenced in the Complaint and central to Plaintiff's claim" and documents subject to judicial notice. *NCMIC Ins. Co. v. Brown*, No. 17 CV 1000 JAP/CG, 2018 WL 1508550, at *2 (D.N.M. Mar. 26, 2018). Here, the Complaint refers to the

Policy, the governmental orders issued due to the pandemic, and Plaintiff's correspondence with Transportation during Transportation's claim handling, and makes these documents central to Plaintiff's claims. Thus, it is appropriate for the Court to consider these documents when considering this Motion.

## ARGUMENT AND AUTHORITIES

**A.**     **Plaintiff Does Not Allege a Valid Breach-of-Contract Claim**.

**1.**     **Plaintiff Does Not Allege a Valid Claim for Breach of the Policy's Business Income and Extra Expense Endorsement**.

Plaintiff does not assert a claim under the Business Income and Extra Expense provision. Plaintiff seeks "losses stemming from the Coronavirus pandemic and Government Orders." Compl. ¶ 10. It alleges Orders designed to mitigate the spread of COVID-19 and preserve resources "required Plaintiff and its employees, customers, and others to 'shelter in place' and abide by strict 'social distancing' guidelines," which "resulted in the immediate loss of income for AAESC." *Id*. ¶ 3. Plaintiff contends that "although AAESC was permitted to provide emergency medical care or surgery . . . [it was] prevented [] from using its space for the vast majority of its services for at least three months." *Id*. ¶¶ 66, 69.

Even accepted as true, Plaintiff does not make a valid claim for coverage because it has not alleged direct *physical* loss of or damage to property. The plain, ordinary meaning of the word "physical" is that the loss or damage at issue must be "tangible" or "material." *See, e.g.*, Physical, *Black's Law Dictionary* (11th ed. 2019) (defining "physical" as "[o]f, relating to, or involving material things; pertaining to real, tangible objects"). The "requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal." 10A *Couch on Ins*. § 148:46 (3d ed. 2020). This "preclude[s] any

claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." *Id*.

This Court, "[c]onsistent with other courts evaluating the effects of coronavirus on damage to property in the insurance context," has expressly held "that the phrase 'direct physical loss' unambiguously requires something more tangible" than what Plaintiff alleges here. *Cafe Plaza*, 2021 WL 601880, at *5–6 (explaining "the weight of recent authority, created by the deluge of coronavirus-related insurance disputes, favors [d]efendant's position in almost uniformly rejecting [p]laintiff's reasoning" that the potential presence of COVID-19 constitutes physical loss or damage). Citing *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 693–95 (N.D. Ill. 2020) and other COVID-19 decisions addressing "nearly identical arguments," this Court observed "[t]he words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure." *Id.* at *5–6. To hold otherwise would mean direct physical loss or damage is established any time an insured cannot fully utilize an insured property for every possible intended purpose, rendering superfluous the language requiring a tangible impact on the property. *See id.*; *see also Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613, 616 (8th Cir. 2005) (rejecting argument "direct physical loss or damage is established whenever property cannot be used for its intended purpose," and holding that "mere loss of use or function" is insufficient (emphasis omitted)).

In *Cafe Plaza*, this Court observed that "certain circumstances dictate that a direct physical loss may occur without 'tangible' destruction of property," such as when a substance

enters the building and renders it "useless or uninhabitable," but it rejected the contention that the "loss of use of portions of [property] for their intended use in the face of [] closure orders" qualifies as a "physical loss." 2021 WL 601880, at *5–6. Just like in this case, the *Cafe Plaza* property was neither "useless" nor "uninhabitable" because the government orders expressly exempted the plaintiff's business "from closing" and permitted limited services at its property. *Id.* at *6. Characterizing *Cafe Plaza's* claim as one "based on purely economic loss" resulting from the closure orders, this Court concluded that the claim fell "outside the parameters of the [policy's] coverage" and dismissed the plaintiff's claims. *Id.* at *7.

Again, as this Court noted, *Cafe Plaza* is consistent with the vast majority of federal and state courts that have rejected similar "loss of use" claims for business interruption coverage resulting from the COVID-19 pandemic where, as here, the underlying insurance policy requires direct physical loss or damage to property. This includes at least 12 cases against Transportation affiliates with nearly identical language to the Policy. *See, e.g.*, *Aggie Invs. L.L.C. v. Cont'l Cas. Co.*, No. 4:21-cv-0013-ALM, slip. op. at 7–8 (E.D. Tex. Apr. 20, 2021), attached as Ex. 4; *Daneli Shoe Co. v. Valley Forge Ins. Co.*, No. 20-CV-1195-TWR (WVG), 2021 WL 1112710, at *3 (S.D. Cal. Mar. 17, 2021) (plaintiff failed to allege valid claim because allegation of presence of virus on surfaces was not physical alteration of property); *Arash Emami, M.D., P.C., Inc. v. CNA, et al.*, No. 20-18792 (SDW) (LDW), 2021 WL 1137997, at *2 (D.N.J. Mar. 11, 2021) (allegation that orders limited plaintiff's access "is not enough").[2]

_____

[2] *See also deMoura v. Cont'l Cas. Co.*, No. 20-CV-2912 (NGG) (SIL), 2021 WL 848840, at *5 (E.D.N.Y. Mar. 5, 2021) ("'[D]irect physical loss of or damage to property' requires tangible harm to that property."); *Torgerson Props., Inc. v. Cont'l Cas. Co.*, No. 20-2184 (PAM/KMM), 2021 WL 615416, at *1 (D. Minn. Feb. 17, 2021) (noting "weight of authority is nearly unanimous that state orders restricting business operations because of the pandemic are

Additionally, the following non-exhaustive list of cases in other jurisdictions supports this

Court's determination in *Cafe Plaza*:

- ***California:*** "[L]oss of the ability to continue operating [insured's] business as a result of the government orders" did not qualify as direct physical loss of or damage to property. *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 487 F. Supp. 3d 937, 943 (S.D. Cal. 2020) ("*Pappy's I*"); see also *Unmasked Mgmt., Inc.* v. Ce*ntury-Nat'l Ins. Co.*, No. 3:20-cv-1129-H-MDD, 2021 WL 242979, at *6 (S.D. Cal. Jan. 22, 2021) ("Even assuming, *arguendo*, that [plaintiffs'] allegations demonstrate the presence of COVID-19 in Plaintiffs' businesses, the Court is not persuaded that such allegations demonstrate a physical alteration to Plaintiffs' property, as is required by the Policy.").

- ***Florida:*** Plaintiff's inability to operate his business for its intended purpose failed to establish direct physical loss. R. & R. on Def.'s Mot. to Dismiss at *5, *7, *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-Civ, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020).

- ***Georgia:*** An Executive Order issued in response to COVID-19 pandemic "did not represent an external event that changed the insured property. Every physical element of the dining rooms—the floors, the ceilings, the plumbing, the HVAC, the tables, the chairs—underwent no physical change." *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, No. 1:20-cv-2939-TWT, 2020 WL 5938755, at *5 (N.D. Ga. Oct. 6, 2020).

---

not covered under the policy provisions" and a "loss of use or function" is not "direct physical loss or damage" (citation omitted)); *Selane Prods., Inc. v. Cont'l Cas. Co.*, No. 2:20-cv-07834-MCS-AFM, 2021 WL 609257, at *5 (C.D. Cal. Feb. 8, 2021) (concluding that COVID-19 and its impacts do not constitute "direct physical loss of or damage to property"); *Clear Hearing Sols., LLC v. Cont'l Cas. Co.*, No. 20-3454, 2021 WL 131283, at *6 (E.D. Pa. Jan. 14, 2021) ("[T]o assert an economic loss resulting from their inability to operate their premises as intended within the coverage of the Policy's 'physical loss' provision, the loss and the bar to operation from which it results must bear a causal relationship to some *physical condition* of the premises." (citation omitted)); *O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*, No. 20-cv-02951-MMC, 2021 WL 105772, at *3–5 (N.D. Cal. Jan. 12, 2021) (dismissing similar claims for lack of physical damage); *BBMS, LLC v. Cont'l Cas. Co.*, No. 20-0353-CV-W-BP, 2020 WL 7260035, at *4–5 (W.D. Mo. Nov. 30, 2020) (holding that "loss of use alone is insufficient" to trigger business income coverage and that "the weight of authority demonstrates that stay at home orders and the existence of COVID-19, alone, does not qualify as 'direct physical loss of or damage to' property"); *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, No. 1:20-CV-275-JB-B, 2020 WL 6163142, at *7–8 (S.D. Ala. Oct. 21, 2020) (denying claim that "inability to use its property constitutes a direct physical loss"); *VStyles, Inc. v. Cont'l Cas. Co.*, No. RIC2003415, slip op. at 2–4 (Super. Ct. Riverside Cnty., Cal. Dec. 23, 2020) (holding that governmental orders issued to "slow the spread of the virus" do not cause "direct physical loss of or damage to property"), attached as Ex. 5.

- ***Illinois***: "[L]oss of use of property without any physical change to that property cannot constitute direct physical loss or damage to the property." *T & E Chi. LLC v. Cincinnati Ins. Co.*, No. 1:20-cv-4001 (HDL), 2020 WL 6801845, at *5 (N.D. Ill. Nov. 19, 2020).

- ***Kansas***: Dismissing plaintiff's complaint with prejudice, because, among other reasons, "the Policy unambiguously requires more than mere diminution in value or impairment of use of the property" to trigger coverage. *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, No. 20-cv-2211-JAR-GEB, 2020 WL 7078735, at *7, *10 (D. Kan. Dec. 3, 2020).

- ***New York***: "Losing the ability to use otherwise unaltered or existing property simply does not change the physical condition or presence of that property and therefore cannot be classified as a form of 'direct physical loss' or 'damage.'" *Michael Cetta, Inc. v. Admiral Indem. Co.*, No. 20 Civ. 4612 (JPC), 2020 WL 7321405, at *6 (S.D.N.Y. Dec. 11, 2020).

- ***Oklahoma***: Holding that "direct physical loss unambiguously requires a showing of tangible damage," and rejecting argument that such a loss "results when 'property is rendered unusable for its intended purpose.'" *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, No. CV-20-511-R, 2020 WL 8004271, at *2, *4 (W.D. Okla. Nov. 9, 2020) (citation omitted).

- ***Texas***: "[I]t is legally insufficient for a plaintiff merely to allege that steps taken to address a threat to human health have caused [] property to suffer a loss of use or function, without also plausibly pleading that the insured property has itself been physically contaminated." *Berkseth-Rojas v. Aspen Am. Ins. Co.*, No. 3:20-CV-0948-D, 2021 WL 101479, at *5 (N.D. Tex. Jan. 12, 2021); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, No. 1:20-CV-665-RP, 2021 WL 972878, at *8 (W.D. Tex. Jan. 21, 2020) ("Even assuming that . . . COVID-19 was present at Plaintiffs' properties, it would not constitute the direct physical loss or damage required . . . because the virus can be eliminated. The virus does not threaten the structures covered by property insurance policies, and can be removed from surfaces with routine cleaning and disinfectant.").

Plaintiff's allegations suffer from the same defects as the claims this Court considered in *Cafe Plaza* and the cases cited above. Plaintiff does not allege facts showing direct physical loss of or damage to property at its premises, and none exist. Instead, the Complaint alleges that government orders "resulted in [Plaintiff] losing physical use of, physical access to, and physical enjoyment of Plaintiff's property" and caused a "significant interruption to [Plaintiff's] business including the suspension of all non-emergency services and a steep reduction of patient services." Compl. ¶ 75. Plaintiff's limited or temporary inability to use some of its property (and

14

its related economic losses) does not trigger coverage absent some physical alteration to the property. *Cafe Plaza*, 2021 WL 601880, at *5–7.

There is also no such physical alteration alleged here. Plaintiff does not allege that COVID-19 was present on its premises. And even if Plaintiff had alleged that the virus was present, its claims still would fail because, as many courts have recognized, "the presence of the virus itself, or of individuals infected [with] the virus, at [p]laintiffs' business premises or elsewhere do not constitute direct physical losses of or damage to property." *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 491 F. Supp. 3d 738, 740 (S.D. Cal. 2020) ("*Pappy's II*"); *see also* Prelim. Inj. Hr'g Tr. at 4–5, *Soc. Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (VEC) (S.D.N.Y. May 14, 2020), Dkt. 32 (finding COVID-19 does not damage property).

As this Court recognized, there is no physical loss in situations where a contaminant or other substance may be removed by simple cleaning. *Cafe Plaza*, 2021 WL 601880, at *5–6; *see also Mama Jo's Inc. v. Sparta Ins. Co*., 823 F. App'x 868, 879 (11th Cir. 2020) (finding an item or structure that merely needs to be cleaned has not suffered a "direct physical loss"); *B St. Grill & Bar LLC v. Cincinnati Ins. Co*., No. CV-20-01326-PHX-SMB, 2021 WL 857361, at *5 (D. Ariz. Mar. 8, 2021) (same). As another court observed:

> There is a similar risk of exposure to the virus in any public setting, regardless of artful pleading as to the likelihood of the presence of the virus. Secondly, even when present, COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant. Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property. Because routine cleaning, perhaps performed with greater frequency and care, eliminates the virus on surfaces, there would be nothing for an insurer to cover, and a covered "loss" is required to invoke the additional coverage for loss of business income under the Policy.

15

*Uncork & Create LLC v. Cincinnati Ins. Co.*, No. 2:20-cv-00401, 2020 WL 6436948, at *5 (S.D.

W. Va. Nov. 2, 2020).

Like in *Cafe Plaza* and *Mama Jo's*, Plaintiff alleges no loss or damage to the property

that requires repair or replacement based on an actual or tangible problem with the property.

Rather, Plaintiff alleges purely economic damage due to a temporary loss of use, not a direct,

physical change or intrusion onto the property. *See Promotional Headwear*, 2020 WL 7078735,

at *8. Plaintiff does not—and cannot—allege it has suffered "direct physical loss of or damage to

property at the described premises." Policy, Ex. 1 at 39.[3]

---

[3]An extremely small minority of courts have either found a business interruption policy provides coverage when the insured suffers a loss of use due to governmental closure orders or have declined to dismiss at the pleading stage, without finding that plaintiffs had established coverage. *See, e.g.*, *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2964, 2021 WL 679109, at *9 (N.D. Ill. Feb. 22, 2021); *Henderson Rd. Rest. Sys., Inc. v. Zurich Amer. Ins. Co.*, No. 1:20 CV 1239, 2021 WL 168422, at *13 (N.D. Ohio Jan. 19, 2021); *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 800–03 (W.D. Mo. 2020); *Ungarean, DMD v. CNA*, No. GD-20-006544, 2021 WL 1164836, at *6–8 (Pa. Com. Pl. Mar. 25, 2021). These decisions are contrary to New Mexico law and the clear weight of authority requiring tangible, physical loss or damage to property.  Furthermore, these decisions are either contrary to the view of the majority of courts in their jurisdiction or have been not been followed in subsequent decisions by courts in their jurisdiction. *See, e.g.*, *Chief of Staff LLC v. Hiscox Ins. Co. Inc.*, No. 20 C 3169, 2021 WL 1208969, at *4 (N.D. Ill. Mar. 31, 2021) (expressly declining to follow *In re Society* and one other Illinois court that "have interpreted similar contractual language to cover losses due to government-imposed COVID-19 closure or shutdown orders"); *Chester Cty. Sports Arena v. Cincinnati Specialty Underwriters Ins. Co.*, No. 20-2021, 2021 WL 1200444, at *7 (E.D. Pa. Mar. 30, 2021) (finding *Ungarean* to be "unpersuasive," nonbinding, and "contrary to the plain language of the policies, especially when compared to similar cases in the Third Circuit" and "the overwhelming majority of cases across the country deciding the same issue"); *Equity Planning Corp. v. Westfield Ins. Co.*, No. 1:20-CV-01204, 2021 WL 766802, at *12–14 (N.D. Ohio Feb. 26, 2021) (disagreeing with the court's interpretation in *Henderson Road* and citing other Ohio courts that support the contention that direct physical loss or damage requires tangible, actual harm, which plaintiff had not shown); *Zwillo V, Corp. v. Lexington Ins. Co.*, No. 4:20-00339-CV-RK, 2020 WL 7137110, at *6 (W.D. Mo. Dec. 2, 2020) ("Whether the complaint is couched in terms of COVID-19's presence on the premises or of loss of use of premises due to the stay-at-home orders (or the virus itself), . . . the policy does not cover the alleged claim."); *BBMS*, 2020 WL 7260035, at *4 ("[T]he weight of authority demonstrates that

### 2.     <u>Plaintiff Does Not Allege a Period of Restoration</u>.

That the Policy requires tangible alteration of property is further reflected in the Policy's requirement that business income and extra expense coverage applies only for the "period of restoration." Policy, Ex. 1 at 34, 39–40. The period of restoration "[b]egins with the *date of direct physical loss or damage*" and ends on the earlier of the "date when the property at the described premises should be *repaired, rebuilt or replaced* with reasonable speed and similar quality;" or "[t]he date when business is resumed at a new permanent location." *Id.* at 34 (emphasis added). The Policy's restriction of coverage to the period of restoration "support[s] the requirement of physical damage" to trigger coverage and demonstrates that, without the direct physical loss or damage trigger, there is no coverage at all. *United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 346, 349 (S.D.N.Y. 2005) (holding that language limiting coverage to "such length of time [needed] to rebuild, repair or replace such part of the Insured Location(s) as has been damaged or destroyed" supports a "requirement of physical damage"), *aff'd*, 439 F.3d 128 (2d Cir. 2006); *see also Roundabout Theatre Co., Inc. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 7–8 (N.Y. App. Div. 2002) (concluding "rebuild, repair, or replace" supports the conclusion that "coverage is limited to instances where the insured's property suffered direct physical damage" (emphasis omitted)).

Implicit in this provision, which is needed to measure how long the business interruption coverage applies, is the requirement that there be some physical change in the property such that it requires restoration to its pre-loss condition. Without that tangible, physical change in the

---

stay at home orders and the existence of COVID-19, alone, does not qualify as 'direct physical loss of or damage to' property.").

property, there can be no definable period of restoration. In *Hillcrest Optical*, a court interpreted identical policy language and found that a statewide order requiring plaintiff to shut down its business did not trigger coverage. That court noted that the term "'direct physical loss of property' contemplates ***the tangible alteration*** of property which would necessitate a party's absence to fix it or require the party to begin operations elsewhere." 2020 WL 6163142, at *8 (emphasis added). The court rejected the plaintiff's argument that it had properly alleged a need to rebuild, repair, or replace because "its property was not in a sound state . . . because it could not use its property," given that the inability to use the property "was not caused by an unsound . . . or unhealthy condition of the property itself, which necessitated repair, rebuilding, or replacement. *Id.*; *see also Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:20-cv-03342-JDW, 2020 WL 7024287, at *4 (E.D. Pa. Nov. 30, 2020); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 487 F. Supp. 3d 834, 840 (N.D. Cal. 2020) (holding that dispossession of property due to stay-at-home orders does not trigger coverage because "there is nothing to fix, replace, or even disinfect . . . to regain occupancy"); *Malaube*, 2020 WL 5051581, at *9 ("[I]f there was any lingering doubt on whether a loss of use for pure economic reasons could be recoverable under the policy, the ['period of restoration' provision] put[s] that uncertainty to bed.").

Plaintiff does not allege any facts regarding what the period of restoration would be in this situation—nor could it. There was nothing to "rebuild, repair or replace." Instead, Plaintiff contends the "period of restoration" is "still unknown," and suggests it will continue until the end of the pandemic and closures. Compl. ¶ 82. If there is nothing to "rebuild, repair or replace, there is no period of restoration and no coverage. Plaintiff's claims should be dismissed.

18

3.    **Plaintiff Does Not Allege A Valid Civil Authority Claim**.

Plaintiff also fails to allege facts that support a Civil Authority claim. The Civil Authority

endorsement provides coverage for lost business income when a civil authority—*i.e.*, a

government entity—issues an order prohibiting access to an insured's property due to physical

loss or damage to property at locations other than the insured's premises. Policy, Ex. 1 at 65.

Plaintiff's Complaint does not allege any facts showing: (1) direct physical loss of or

damage to property at locations "other" than Plaintiff's premises; (2) a civil authority order or

action that was due to direct physical loss of or damage at property at locations other than

Plaintiff's premises; or (3) action by a civil authority prohibiting access to the premises. Each of

those facts is a prerequisite to a claim under the Policy's Civil Authority provision, but Plaintiff

does not plausibly allege any of them.

Plaintiff does not allege facts identifying physical loss or damage to property at locations

"other" than its premises. *Id.* The Complaint generally alleges the presence of COVID-19 in New

Mexico and discusses its physical attributes, including that it may "infect a variety of surfaces

and objects for a period of hours, days, or weeks," but does not allege any direct physical loss or

damage to property "other" than its property. Compl. ¶¶ 48, 83, 85. As this Court said in *Cafe

Plaza*, "conclusory argument[s] that the widespread existence of the virus locally necessarily

makes it 'reasonable' to infer that the virus was present on the premises" are insufficient to

establish physical loss or damage. 2021 WL 601880, at *6.

Plaintiff also does not plausibly allege the civil authority orders were promulgated as a

direct result of physical loss or damage to property. None of the orders identify any specific

property loss or damage. Rather, they were issued to mitigate the spread of COVID-19 and

preserve "critically low" resources. March 23 Order, Ex. 2 at 1, 4; March 24 Order, Ex. 3 at 1–2.[4] *See Cafe Plaza*, 2021 WL 601880, at *7 (dismissing civil authority claim where "closure orders were issued to minimize the spread of COVID-19 and not due to any direct physical loss or damage sustained at any adjacent property"); *Mudpie*, 487 F. Supp. 3d at 844 ("Because the orders were preventative . . . the complaint does not establish the requisite causal link between prior property damage and the government's closure order.").

Coverage is also unavailable because, aside from parroting the Civil Authority language in the Policy, Plaintiff does not plausibly allege the Orders prohibited access to its property. *See S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140–41 (10th Cir. 2004) (defining "prohibit" to mean "formally forbid, esp. by authority" or "prevent" (quoting *Oxford Am. Dictionary & Language Guide* 795 (1999))). Nor could it, because Plaintiff, as an essential business, was able to continue its operations at its property in a limited capacity. *See* Compl. ¶¶ 66, 73. New Mexico law is clear that when access to the insured premises is not denied and operations are only limited, coverage is unavailable. *See Cafe Plaza*, 2021 WL 601880, at *8.

Because Plaintiff does not allege any physical loss or damage to "other" property, any causal link between that loss or damage and the Orders, or that the Orders prohibited access to its property, Plaintiff's Civil Authority claim must be dismissed.

---

[4] Although some of the orders state that COVID-19 conditions threaten the health, safety, wellbeing, and property or residents in the state, they do not refer to any property damage caused—or threatened—by COVID-19. Even if they did, any such reference would not change the scientific fact that the virus does not cause physical property damage and, according to the CDC, can easily be cleaned off of surfaces. *See CDC Guidance for Cleaning and Disinfecting: Public Spaces, Workplaces, Businesses, Schools, and Homes*, cdc.gov/coronavirus/ 2019-ncov/community/pdf/reopening_america_guidance.pdf (last visited April 23, 2021).

4.     __Plaintiff Does Not Allege a Valid Dependent Property Claim__.

Plaintiff also fails to allege facts supporting a claim under the Policy's Business Income and Extra Expense – Dependent Property Endorsement because it does not identify any loss of or damage to Dependent Properties. Policy, Ex. 1 at 156. In fact, Plaintiff does not even identify any "Dependent Propert[ies]" in the Complaint. It notes that Plaintiff "relies on its credentialed physicians with privileges to schedule patients directly," and alleges that the same government orders "prohibit[ing] full use of AAESC's property" caused "[s]everal dependent properties that served as referral sources to AAESC" to also "shut down," including facilities "who would have referred patients to AAESC in normal times." Compl. ¶¶ 38, 84, 89–90. Even if these nonspecific references to other businesses and hospitals could be construed as identifying dependent properties (they cannot), Plaintiff has not alleged any facts capable of establishing a "direct physical loss or damage" at the premises of those unidentified dependent properties. Plaintiff's allegations regarding the widespread existence of the virus locally are insufficient. *Cafe Plaza*, 2021 WL 601880, at *6.

Plaintiff also fails to allege facts connecting Plaintiff's suspension of its operations to the alleged presence of the virus at these other locations. Policy, Ex. 1 at 156 (requiring suspension of insured's operations "caused by direct physical loss or damage at the premises of a Dependent Property, caused by or resulting from a Covered Cause of Loss"). Plaintiff's suspension of operations was caused by the Orders, not any purported damage to an allegedly dependent, yet unidentified property. Plaintiff's Dependent Property claim fails. [5]

---

[5]Because Plaintiff's Complaint fails to allege a claim within the Policy's grant of coverage, there is no need to evaluate the exclusions at this stage. *See Bhd. Mut. Ins. Co. v. Allstate Ins. Co.*, No. CIV 00-415 MV/LFG, 2000 WL 36739597, at *3 (D.N.M. Dec. 21, 2000)

**B.**     <u>**Plaintiff Does Not Allege a Valid Bad Faith Claim**</u>.

Because Plaintiff does not plausibly allege a claim that is covered by the Policy, Plaintiff also fails to plead a breach of the duty of good faith and fair dealing. *Naabani Twin Stars, LLC v. Travelers Cos., Inc.*, No. CIV 19-00197 RB/JHR, 2020 WL 6196174, at *9 (D.N.M. Oct. 22, 2020); *see also Fava v. Liberty Mut. Ins. Corp.*, No. 17CV00456 WJ/LF, 2018 WL 6705669, at *5 (D.N.M. Dec. 20, 2018) ("The concept of bad faith or failure to pay in the insurance context does not arise unless there is a contractual duty to pay under the policy."). "Under New Mexico law, an insurer acts in bad faith when it denies a first party claim for reasons that are unfounded or frivolous." *Fava*, 2018 WL 6705669, at *5. "An insurer's incorrect decision to refuse benefits, without more, is not enough to establish bad faith." *Id.* (citing *Yumukoglu v. Provident Life & Acc. Ins. Co.*, 131 F. Supp. 2d 1215, 1226 (D.N.M. 2001), *aff'd*, 36 F. App'x 378 (10th Cir. 2002)). To be "unfounded or frivolous," an insurer must act with "reckless disregard" or exhibit "an arbitrary or baseless refusal to pay, lacking any arguable support in the wording of the insurance policy or the circumstances surrounding the claim." *Yumukoglu*, 131 F. Supp. 2d at 1226 (quoting *Jackson Nat'l Life Ins. Co. v. Receconi*, 827 P.2d 118, 134 (N.M. 1992)).

---

(declining to determine whether exclusion applied where insurer had no liability under policy); *see also Evanston Ins. Co.*, 434 F. Supp. 3d at 1090. The Policy contains exclusions that would apply here. For example, the Pollution exclusion excludes loss or damage caused by or resulting from the "[d]ischarge, dispersal, seepage, migration, release or escape of 'pollutants,'" including "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals [or] waste." Policy, Ex. 1 at 23, 35. The Policy also excludes loss or damage directly or indirectly caused by or resulting from "contact with, exposure to, existence of, or growth or presence of any . . . 'microbes,'" which are defined as "any non-fungal microorganism or non-fungal, colony-form organism that causes infection or disease." *Id.* at 103. Coverage is also excluded for "[d]elay, loss of use or loss of market." *Id.* at 22.

Plaintiff alleges Transportation acted in bad faith when it: (1) failed to properly investigate Plaintiff's claim; (2) refused to timely pay the claim; (3) wrongfully denied Plaintiff's claim; (4) failed to acknowledge coverage within a reasonable time; and (5) failed to reconsider the claim denial. Compl. ¶ 151. Plaintiff cannot state a bad-faith claim predicated on coverage because there is no applicable coverage under the Policy. *See Haygood v. United Servs. Auto. Ass'n*, 453 P.3d 1235, 1242 (N.M. Ct. App. 2019) (recognizing that bad-faith claims for failure to pay cannot exist absent a contractual duty to pay). No reasonable jury could conclude that Transportation's denial of Plaintiff's claim was unfounded or frivolous when Transportation's coverage decision is supported by the vast majority of courts that have considered the issue.

Nor does Plaintiff plead a factual basis for bad faith in the absence of coverage. Plaintiff contends Transportation failed to investigate Plaintiff's claim and failed to render a coverage decision within a reasonable time. Compl. ¶ 151. These allegations are devoid of any factual support. To be sure, Plaintiff's contention Transportation failed to timely render a coverage decision is belied by its own allegations, which suggest the 14 days it took Transportation to issue its  May 22 response to Plaintiff's May 8 claim was premature. *See id.* ¶ 95. The fact Plaintiff asked Transportation to reconsider its decision and Transportation did so, confirming its denial, does not render Transportation's coverage decision untimely. *Id.* ¶¶ 96, 98; *see Salopek Tr. for Salopek Family Heritage Tr. v. Zurich Am. Life Ins. Co.*, 446 F. Supp. 3d 886, 908 (D.N.M. 2020) (concluding four-month delay in coverage decision was not unreasonable).

Likewise, Plaintiff fails to offer any facts supporting its contention that Transportation

failed to properly investigate Plaintiff's claim.[6] Under New Mexico law, an insurer must conduct a reasonable investigation under the circumstances; but the law does not "impose a duty on an insurer to conduct a perfect investigation." *Salopek Tr.*, 446 F. Supp. 3d at 907–08. If an insurer has "a reasonable ground for denying [the insured's] claim based on the terms of the Policy and evidence," it has not acted in bad faith. *Id.* at 908. Transportation had a reasonable basis to deny the claim—Plaintiff has not suffered any covered physical loss of or damage to its property. This conclusion is supported by the vast majority of the courts to consider the issue, and no investigation would have changed the outcome. *See supra* pp. 11–14.

**C.    <u>Plaintiff Does Not Allege a Valid Claim for Violations of the NMISPA</u>.**

Plaintiff fails to state a valid claim for relief under the NMISPA because it alleges no facts in support of its claim. The Complaint contains nothing more than generic allegations mirroring the statute's language. *Iqbal*, 556 U.S. at 678. For example, Plaintiff alleges Transportation made misleading statements regarding its Policy, but Plaintiff does not allege who made the misrepresentations, the content of such misrepresentations, or how they were material in any way. Compl. ¶ 159. Plaintiff also challenges Transportation's coverage determination and the timeliness of its investigation, but fails to allege how they were untimely

---

[6]Plaintiff's allegations regarding the nature of Transportation's investigation are internally inconsistent. Plaintiff contends Transportation did not request any information prior to issuing its May 22 denial. *Compare* Compl. ¶ 95, *with id.* ¶¶ 93–94. But, as Plaintiff notes, on May 8 Transportation requested "a copy of the executive orders," which Plaintiff provided on May 11. May 8–11 Transportation & AAESC Email, attached as Ex. 6; Compl. ¶ 95. Transportation relied on this information in denying the claim. May 16 Denial Letter, attached as Ex. 7. Plaintiff does not attach these documents to the Complaint, but the Court may consider them because Plaintiff expressly refers to them in its allegations and they are integral to Plaintiff's bad-faith claim based on a failure to investigate. *See NCMIC Ins.*, 2018 WL 1508550, at *2.

or unreasonable given the fact that Transportation had a reasonable basis for denying Plaintiff's

claim. *See Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1148 (D.N.M. 2010) (explaining insurers

are not required "to settle cases they reasonably believe to be without merit or overvalued."

(quoting *Hovet v. Allstate Ins. Co*., 89 P.3d 69, 78 (N.M. 2004)). Plaintiff also fails to plausibly

allege Transportation acted "knowingly" or "with such frequency as to indicate a general

business practice." N.M.S.A. § 59A-16-20. The Court should dismiss Plaintiff's NMISPA claim.

**D.**    **Plaintiff Does Not Allege a Valid Claim for Violations of New Mexico's UPA**.

     The UPA provides remedies "for unfair, deceptive, or unconscionable trade practices."

*Young v. Hartford Cas. Ins. Co.*, No. CIV 19-0688 JB/GJF, 2020 WL 7024297, at *36 (D.N.M.

Nov. 30, 2020) (quoting *Valdez v. Metro. Prop. & Cas. Ins.*, No. CIV 11-0507 JB/KBM, 2012

WL 1132414, at *19 (D.N.M. Mar. 31, 2012)). To succeed on a claim under the UPA, a party

must show two elements:

> First, the complaining party must show that the party charged made an "oral or
> written statement, visual description or other representation" that was either false
> or misleading. Second, the false or misleading representation must have been
> "knowingly made in connection with the sale, lease, rental or loan of goods or
> services in the extension of credit or . . . collection of debts."

*Id.* at *37 (citations omitted). "The 'knowingly made' requirement is met if a party was actually

aware that the statement was false or misleading when made, or in the exercise of reasonable

diligence should have been aware that the statement was false or misleading." *Id.* (quoting

*Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1311–12 (N.M. 1991)).

     Plaintiff alleges Transportation violated the UPA by (1) "using . . . ambiguity as to a

material fact or failing to state a material fact"; and (2) "failing to deliver the quality . . . of goods

or services contracted for." Compl. ¶¶ 163–64. Plaintiff also contends Transportation engaged in

an "unconscionable trade practice[]" by "tak[ing] advantage of the lack of knowledge, ability, experience or capacity of [Plaintiff] to a grossly unfair degree." *Id.* ¶¶ 165, 170. Plaintiff's allegations closely track the relevant statutory language, but do not allege any facts that would constitute a basis for a claim. Plaintiff does not identify any oral or written statement from Transportation that was false or misleading. Nor does it identify any material facts Transportation knowingly failed to state or misrepresented "using . . . ambiguity" in connection with the sale of the Policy.

Similarly, Plaintiff fails to allege facts supporting its contention that Transportation knowingly misrepresented the quality of the Policy in connection with its sale and failed to deliver the quality of Policy contracted for. The fact Plaintiff disagrees with Transportation's coverage decision does not establish a claim under the UPA. Under the Policy's plain language, coverage is contingent on a showing of "direct physical loss of or damage to property," which Plaintiff has not shown. *See Nilson v. Peerless Indem. Ins. Co.*, 484 F. Supp. 3d 1050, 1089–90 (D.N.M. 2020) (granting insurer summary judgment on insured's UPA claims based on accurate representation of coverage). Nor has Plaintiff alleged any facts supporting its contention Transportation took advantage of Plaintiff's "lack of knowledge, ability, experience or capacity . . . to a grossly unfair degree" in connection with the sale of the Policy. Because Plaintiff fails to support its allegations under the UPA with the requisite factual support, the Court should dismiss Plaintiff's UPA claim. *See Raja v. Ohio Sec. Ins. Co.*, 305 F.Supp.3d 1206, 1251–52 (D.N.M 2018) (dismissing UPA claims for lack of factual support).

**E.**     <u>**The Court Should Dismiss Plaintiff's Declaratory Judgment Claim**</u>.

      Plaintiff's claim for declaratory judgment is duplicative of Plaintiff's breach-of-contract and statutory claims. *See* Compl. ¶¶ 176, 179. "The Tenth Circuit has adopted a five-factor test for evaluating whether a district court should exercise its discretionary jurisdiction over a declaratory judgment [claim]," which includes among other things a consideration of "whether [the] declaratory action w[ill] settle the controversy" or "serve a useful purpose in clarifying the legal relations at issue." *Gerhardt v. Mares*, 179 F. Supp. 3d 1006, 1042 (D.N.M. 2016) (quoting *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir.1995)). Because resolution of Plaintiff's contract and statutory claims necessarily resolves all of the issues identified in Plaintiff's declaratory judgment claim, Plaintiff's declaratory judgment claim serves no "useful purpose in clarifying the legal relations at issue," and should be dismissed.

**CONCLUSION**

      For these reasons, Defendant Transportation Insurance Company respectfully requests Plaintiff's Complaint be dismissed with prejudice.

Dated: April 26, 2021

Respectfully submitted,

HUSCH BLACKWELL LLP

By: _____*Joshua Grabel*_____
        Joshua Grabel

2415 E. Camelback Road, Suite 500
Phoenix, Arizona 85016
Telephone: 480-824-7890
Facsimile: 480-824-7905
josh.grabel@huschblackwell.com

David H. Timmins (Admitted *Pro Hac Vice*)
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
Telephone: 214- 999-6185
Facsimile: 214-999-6170
david.timmins@huschblackwell.com

*Attorneys for Defendant Transportation*
*Insurance Company*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 26th day of April, 2021, I filed the foregoing using the

CM/ECF system, which caused the following parties or counsel to be served by electronic

means, as reflected in the Notice of Electronic Filing.

> Robert E. Hanson
> rhanson@peiferlaw.com
> Peifer, Hanson, Mullins & Baker, P.A.
> 20 First Plaza, Suite 725
> Albuquerque, New Mexico 87102
>
> Kristin C. Davis
> kdavis@thompsonhd.com
> Thompson Hammerman Davis LLP
> 1015 15th Street NW, Suite 600
> Washington, D.C. 20005
>
> *Attorneys for Plaintiff*

/s/  Joshua Grabel
